# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| CLIFFORD BOYNES, CHRIS CHRISTIAN, MARGARET THOMPSON, DELIA ALMESTICA, CARLOS CHRISTIAN, ANNA REXACH-CONSTANTINE, MERVYN CONSTANTINE, NEAL DAVIS, EDNA SANTIAGO, GUIDRYCIA WELLS, O'SHAY WELLS, AARON G. MAYNARD, VERNE MCSWEEN, ROCHELLE GOMEZ, JOAN MATHURIN, MYRNA MATHURIN, ANN MARIE JOHN-BAPTISTE, WARRINGTON CHAPMAN, LEOBA JOHN-BAPTISTE-PELLE, MINOR CHILD "J.M.M.", MINOR CHILD "V.M.", MINOR CHILD "Z.R.C.", MINOR CHILD "M.M", and MINOR CHILD "O.N.", on behalf of themselves and all others similarly situated, | **Case No.** 1:21-cv-00253<br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| LIMETREE BAY VENTURES, LLC; LIMETREE BAY HOLDINGS, LLC; LIMETREE BAY PREFERRED HOLDINGS, LLC; LIMETREE BAY REFINING, LLC; LIMETREE BAY TERMINALS, LLC (D.B.A. OCEAN POINT TERMINALS); ARCLIGHT CAPITAL PARTNERS, LLC; ARCLIGHT ENERGY PARTNER FUND VI, L.P.; ARCLIGHT AIV, LP; EIG GLOBAL | |

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

|  |  |
|---|---|
| ENERGY PARTNERS, LLC; FREEPOINT COMMODITIES, LLC; UNIVERSAL PLANT SERVICES, (VI), LLC; EXCEL CONSTRUCTION AND MAINTENANCE VI, INC.; ELITE TURNAROUND SPECIALISTS, LTD.; PINNACLE SERVICES LLC; VERSA INTEGRITY GROUP, INC.; NATIONAL INDUSTRIES SERVICES, LLC; and JOHN DOES 1-100, |  |
| Defendants. |  |

## FIRST AMENDED CLASS ACTION COMPLAINT[1]

Plaintiffs and Class Representatives CLIFFORD BOYNES, CHRIS CHRISTIAN, MARGARET THOMPSON, DELIA ALMESTICA, CARLOS CHRISTIAN, ANNA REXACH-CONSTANTINE, MERVYN CONSTANTINE, NEAL DAVIS, EDNA SANTIAGO, GUIDRYCIA WELLS, O'SHAY WELLS, AARON G. MAYNARD, VERNE MCSWEEN, ROCHELLE GOMEZ, JOAN MATHURIN, MYRNA MATHURIN, ANN MARIE JOHN-BAPTISTE, WARRINGTON CHAPMAN and LEOBA JOHN-BAPTISTE-PELLE, (the "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class"), bring this Class Action Complaint (the "Action") against Defendants LIMETREE BAY VENTURES, LLC, LIMETREE BAY HOLDINGS, LLC, LIMETREE BAY PREFERRED HOLDINGS, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC (D.B.A. OCEAN POINT TERMINALS), ARCLIGHT CAPITAL PARTNERS, LLC, ARCLIGHT ENERGY PARTNER

---

[1] Plaintiffs previously filed a Motion to Amend Complaint on January 9, 2023, Docket No. 117, but upon this Court's direction, have withdrawn this Motion. Therefore, that Amended Complaint has not been and will not be filed. This is Plaintiff's First Amended Complaint, filed as of right pursuant to Fed. R. Civ. P. 15.

FUND VI, L.P., ARCLIGHT AIV, LP, EIG GLOBAL ENERGY PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, UNIVERSAL PLANT SERVICES (VI), LLC, EXCEL CONSTRUCTION AND MAINTENANCE VI, INC., ELITE TURNAROUND SPECIALISTS, LTD., PINNACLE SERVICES LLC, VERSA INTEGRITY GROUP, INC., NATIONAL INDUSTRIAL SERVICES, LLC, and JOHN DOES 1-100 ("Limetree" or the "Defendants") for violations of law. Additional plaintiffs include the minor child "J.M.M.", by and through his mother Anna Rexach-Constantine; minor child "V.M.", by and through his mother Anna Rexach-Constantine; minor child "Z.R.C.", by and through his mother Anna Rexach-Constantine; minor child "M.M.", by and through his mother Anna Rexach-Constantine; and minor child "O.N.", by and through his mother Guidrycia Wells. The allegations herein are made based on each Plaintiff's personal knowledge as to the allegations pertaining to himself, and upon information, belief, and investigation by counsel as to all other matters.

## I.    INTRODUCTION

1.      The island of St. Croix, home to over 50,000 people, is the largest of the four major islands that make up the United States Virgin Islands, one of the most beautiful places in the world. St. Croix describes itself as being part of "America's Paradise," a place of an "eternal summer caressed by cooling tradewinds."[2]

2.      The beauty of the island makes it a popular tourist destination spot, which helps to sustain the Virgin Islands economy.  St. Croix also has a thriving agricultural industry that produces wholesome and healthy foods for the entire Virgin Islands.

---

[2] visitstcroix.com, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No.** *1:21-cv-00253*
*First Amended Complaint*

3.    The Defendants, who owned and operated a "world class refinery"[3] called the Limetree Bay Refinery (hereinafter the "Refinery"), harmed the property and well-being of the people who live in St. Croix, as well as the island's tourist economy, by wrongfully emitting and discharging toxic substances, gases and odors including (but not limited to) oil, hydrogen sulfide, sulfur dioxide, polycyclic aromatic hydrocarbons, such as naphthalenes, other petroleum hydrocarbons, and other chemicals and particulates (hereinafter the "Toxins"). The location of the Refinery on St. Croix can be seen in the image below.



4.    Years before Defendants took over the Refinery, it had been closed due to, in part, to other environmental disasters that threatened the island's residents and its local economy. Upon Defendants' assurances that the Refinery could be refitted, operated and well maintained in an environmentally safe manner, the Refinery reopened in February of 2021.[4] Defendants assured the public that "[i]ndustry

---

[3] limetreebayenergy.com, (last accessed Jan. 5, 2023).

[4] https://www.limetreebayenergy.com/limetree-bay-ventures-commences-refinery-startup-operations/, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

leading safety performance was maintained throughout the restart project."[5] Within four days of the Refinery's reopening, however, the first environmental disaster since the Refinery's reopening occurred, and numerous incidents have occurred since then, including the Refinery "shower[ing] oil on local residents twice, spew[ing] sulfuric gases into the surrounding area, and releas[ing] hydrocarbons into the air."[6] In May of 2021, the Environmental Protection Agency ("EPA") shut the Refinery down, claiming that the Refinery's continued operation was an "imminent" threat to the health of the people on the island.[7]

5.     The consequences of these incidents have been swift and dire.

6.     Particulate matter, harmful gasses and oily mists have been released into the air containing toxins, and visible droplets of oil have literally fallen from the sky onto the island and the people who reside there and settled on roofs and cistern systems.

7.     According to the EPA, "[t]his … community has suffered through at least four incidents that have occurred at the facility, and each had an immediate and significant impact on people and their property."[8] Specifically, these incidents occurred on February 4, 2021, April 23, 2021, May 5, 2021, and May 12, 2021 (hereinafter the "Incidents")—and the Incidents caused harm to the Plaintiffs and the members of the putative Class.

8.     As such, Plaintiffs, individually and on behalf of others similarly situated, bring this Action in order to seek adequate redress for the harm caused by the Defendants' Refinery and the operation of that Refinery. Plaintiffs and members

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

of the putative Class seek injunctive relief, damages and reasonable attorneys' fees due to the Defendants' violations of law.

## II.   JURISDICTION AND VENUE

9.     This Court has diversity jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d) and 1453 because the putative class consists of at least 100 Class Members; the citizenship of at least one Class Member is different from that of Defendants; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

10.    This Court has federal question jurisdiction over Plaintiffs' claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), pursuant to 28 U.S.C. § 1331 because those claims arise under a federal statute. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of a common nucleus of facts with the federal claims alleged herein.

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District and a substantial part of property that is the subject of this action is situated in this District. Venue is also proper pursuant to 42 U.S.C. § 9613(b) because the unlawful releases and damages occurred within this District.

## III.   PARTIES

12.    **Named Plaintiffs and Class Representatives ("Class Representatives")** are citizens of St. Croix, United States Virgin Islands who live and/or work in communities adjacent to or located downwind from the Refinery, were harmed by the Defendants' Refinery and its operations, and suffered damages as a result. Each Plaintiff resides at or near the points identified in orange or red below:

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*



13.     Class Representative Clifford Boynes, a former Hess Oil Refinery worker, is a resident of St. Croix, United States Virgin Islands (77A Estate Whim, Frederiksted), which was impacted by the Incidents. After the Incidents, oil droplets were found on his vehicle and on the windows and roof of his house. Limetree Bay conducted an inspection of his house and found droplets.  In order for Limetree Bay to conduct cleanup of his cistern, he had to sign a release.  When he tried to retrieve the release, he was told it was too late. He suffers from nasal allergies, which were exacerbated by the strong smell of sulfur and gas he observed between late April and Mid-May 2021. He recognized the odors from his work at the refinery. He also experienced burning in his nose and more sneezing than usual.

14.     Class Representative Chris Christian is a resident of St. Croix, United States Virgin Islands (33A Prince Street, Frederiksted), which was impacted by the Incidents. Mr. Christian is also a former Hess Oil Refinery worker. When the Incidents alleged herein occurred, he recognized the smell of rotten eggs and sulfur on his property and around his home. Thereafter, he had difficulty sleeping and experienced great discomfort from the fumes to the point that he evacuated his family to Christiansted.  He is also asthmatic, which was aggravated by the Incidents.

15.     Class Representative Margaret Thompson is a resident of St. Croix, United States Virgin Islands (9402 Smithfield, Frederiksted), which was impacted

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

by the Incidents. She observed oil droplets around the exterior of her home. Limetree Bay inspected and promised to clean up her property. She was told she would have to sign a release, but she has not heard from Limetree Bay since then. At the time of the Incidents alleged herein, Ms. Thompson smelled a heavy scent of gas for several days. The fumes penetrated the windows to her home and kept her up at night. She suffered from burning eyes and a sore and scratchy throat for about two weeks between April and May 2021.

16.     Class Representative Delia Almestica is a resident of St. Croix, United States Virgin Islands (1 Williams Delight, #174 Frederiksted), which was impacted by the Incidents. In early March 2021, Ms. Almestica found droplets on her vehicle and the walls of her home. A sheen appeared on the surface of her cistern water. When she bathed, the oil residue remained on her skin. She smelled fumes of gas and oil and had difficulty breathing. She is asthmatic, which was aggravated by the Incidents. Ms. Almestica owns a home business where she grows and sells fruit and vegetable plants. Following the incidents, her plants began to die off rapidly. She also has a sewing business that she operates out of her home.  Her sewing equipment and materials were covered in dark brown soot from the heavy smoke released during the incident.

17.     Class Representative Carlos Christian is a resident of St. Croix, United States Virgin Islands (38C Whim, Frederiksted), which was impacted by the Incidents. Mr. Christian works for the National Guard and was among the group of Hazmat first responders that conducted testing outside the perimeter of the Limetree Facility following the flaring incident. Personally, he saw visible droplets of oil on his vehicle and around his home in Frederiksted. His property was inspected by Limetree Bay for oil droplets. He was told they would return to clean his property, but no one from Limetree returned.

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

18.     Class Representative Anna Rexach-Constantine is a resident of St. Croix, United States Virgin Islands (25D Stony Ground, Frederiksted), which was impacted by the Incidents. Following the Incidents, Ms. Rexach-Constantine observed oily smears on the windshield of her vehicle when she attempted to clean it. The windshield had to be cleaned with window cleaner.

19.     Class Representative Mervyn Constantine is a resident of St. Croix, United States Virgin Islands (25D Stony Ground, Frederiksted), which was impacted by the Incidents. Mr. Constantine also works in Frederiksted. Oil droplets were observed in the vicinity of his home and on his vehicle. During the incidents alleged herein, he observed a strong odor and began to experience headaches and difficulty breathing. He is asthmatic, which was aggravated by the Incidents, and had to use his Albuterol pump more often than usual.

20.     Class Representative Neal Davis is a resident of St. Croix, United States Virgin Islands (4801 Estate Quinn, Marley Apartments, Building 3, Apt. 20), which was impacted by the Incidents. Mr. Davis's personal property that was damaged by the release of toxins includes home furnishings, personal clothing and the cistern water. Mr. Davis was hospitalized for symptoms of dizziness, vomiting and weakness after experiencing strong odors at his home. Prior to that, in or around, April, his left eye started burning. The burning exacerbated prior issues with his eyes. In May, the pain got significantly worse.

21.     Class Representative Edna Santiago is a resident of St. Croix, United States Virgin Islands (No. 107 Cane Bay, Frederiksted), which was impacted by the Incidents. She observed the strong odor of gasoline resulting from Defendants' operations of the Refinery. Significant amounts of oil droplets were found on the exterior of her home, several fruit trees, cars, home furnishings and vehicles were damaged by Defendants' release of toxins.  As a result, she suffered headaches, sore

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*
throat, itchy eyes and nausea.

22. Class Representative Guidrycia Wells is a resident of St. Croix, United States Virgin Islands (19B Lorraine Village, Frederiksted), which was impacted by the Incidents. Ms. Wells returned from the hospital on May 4, 2021 after giving birth. The contents of the apartment were damaged by the Incidents. Within days she started to smell strong orders of gasoline, sulfur and rotten eggs. She had difficulty sleeping as a result of the odors. She had to close the windows to her house but could still smell the heavy odor. She experienced severe headaches and nausea.

23. Class Representative O'Shay Wells is a resident of St. Croix, United States Virgin Islands (19B Lorraine Village, Frederiksted), which was impacted by the Incidents. Mr. Wells found oil residue on his vehicle which had to be washed thoroughly to remove the oil. During the string of Incidents alleged herein, Mr. Wells woke up feeling weak. He went to work and started vomiting. His eyes turned yellow.

24. Class Representative Aaron G. Maynard is a resident of St. Croix, United States Virgin Islands (No. 72B Grove Place, Frederiksted), which was impacted by the Incidents. The contents of the home, his fruit trees and cistern water were damaged by the flaring incidents. At the time of the Incidents alleged herein, Mr. Maynard observed a heavy metallic smell of gasoline in early May. He experienced dizziness and stomach aches that lasted until the following day. On the weekend he started feeling the effects of the Incidents more deeply and was weak.

25. Class Representative Verne McSween is a resident of St. Croix, United States Virgin Islands (292A 54 Est. Barren Spot KI Apt. 2), which was impacted by the Incidents. Mr. McSween works at the Lionel A. Jackson National Guard Armory. Mr. McSween observed oily substances on the vehicles at his residence that could

only be removed with a degreaser and on the vehicle he keeps at his parents' home (222 Mount pleasant, Frederiksted, St. Croix). As a result of the Incidents alleged herein, Mr. McSween began experiencing a strong scent of sulfur and rotten eggs. He has suffered stomach aches and diarrhea.

26.    Class Representative Rochelle Gomez is a resident of St. Croix, United States Virgin Islands (1BA Two Brothers, Frederiksted), which was impacted by the Incidents. The property contains two residential structures and several fruit trees that were damaged by the Incidents. Ms. Gomez noted the strong smell of gasoline at the time the Incidents alleged herein occurred. She recalls the weather being very windy and the fumes becoming stronger with the wind. She tried to close the windows, which did not help much. She could not sleep at night. She has experienced sore throat, burning nose, throat and eyes.

27.    Class Representative Joan Mathurin is a resident of St. Croix, United States Virgin Islands (No. 44 Upper Love, Frederiksted), which was impacted by the Incidents.  Ms. Mathurin noted a strong odor of gas and thought gas was escaping from somewhere in her house. Ms. Mathurin's personal belongings also carried a heavy odor of gas. She felt nauseous to the point that she believed she was dying. Her eyes burned. She did not get any relief until she went to the northern part of her property.

28.    Class Representative Myrna Mathurin is a resident of St. Croix, United States Virgin Islands (No. 44 Upper Love, Frederiksted), which was impacted by the Incidents.  Her vehicle and personal belongings were damaged by the Incidents. She noted the strong scent of gas and called the gas company to check for leaks inside the home. None were found. She experienced stomach aches, red eyes and soreness in her throat.

29.    Class Representative Ann Marie John-Baptiste is a resident of St.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

Croix, United States Virgin Islands (763 William's Delight, Frederiksted), which was impacted by the Incidents. The contents of the property were also damaged by the Incidents. Ms. John-Baptiste began to note strong odors of gas sometime in early March and April. The scent was the strongest in her bedroom and prevented her from sleeping comfortably. She was ultimately taken by ambulance to the Juan F. Luis Hospital where she stayed for about a week. She received oxygen and a blood transfusion. Limetree inspected her property and found evidence of petroleum droplets in the waterspouts leading to the cistern. No clean-up was done.

30.     Class Representative Warrington Chapman is a resident of St. Croix, United States Virgin Islands (No. 23 White Lady, Frederiksted), which was impacted by the Incidents. Mr. Chapman had to be evacuated. Mr. Chapman noted strong odors of gas and sulfur for several days. He suffered from nausea, difficulty breathing and strange headaches. He observed oily residue on the fruits in his garden which he believed to be caused by oil particles.

31.     Class Representative Loeba John-Baptiste-Pelle is a resident of St. Croix, United States Virgin Islands and owns real property (No. 961 William's Delight, Frederiksted), which was impacted by the Incidents.

32.     **Other Plaintiffs.**  Plaintiff Minor Child "J.M.M.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands (25D Stony Ground, Frederiksted), which was impacted by the Incidents. Minor Child J.M.M is homeschooled. He suffered burning eyes, watery eyes and runny nose, as well as stomach aches, diarrhea and headaches. The aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

33.     Plaintiff Minor Child "V.M.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands (25D Stony

Ground, Frederiksted), which was impacted by the Incidents. Minor Child V.M. is homeschooled. He suffered from headaches, burning eyes, and frequent nose bleeds to the point of waking up with his pillow full of blood. The aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

34. Plaintiff Minor Child "Z.R.C.", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands (25D Stony Ground, Frederiksted), which was impacted by the Incidents. Minor Child Z.R.C. experienced burning eyes, watery eyes and runny nose, stomach aches, headaches and diarrhea. The aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

35. Plaintiff Minor Child "M.M", by and through his mother Anna Rexach-Constantine, is a resident of St. Croix, United States Virgin Islands (25D Stony Ground, Frederiksted), which was impacted by the Incidents. Minor Child M.M. is homeschooled. He experienced swollen, burning eyes, watery eyes and runny nose. He also experienced stomach aches, diarrhea and headaches. Though he has a history of asthma, he had never had an attack since becoming a teenager. However, he has experienced wheezing since the incidents alleged herein. The aforementioned ailments were a direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

36. Plaintiff Minor Child "O.N.", by and through his mother Guidrycia Wells, is a resident of St. Croix, United States Virgin Islands (19B Lorraine Village, Frederiksted). Plaintiff O.N. is a newborn baby. After exposure to the heavy gas fumes released by Defendants' conduct at his home, his mother took him to the clinic out of concern that the fumes impacted the child. She was told there was nothing that could be done since he was a newborn. The aforementioned ailments were a

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

direct result of physical impacts to the residence caused by the Defendants' Refinery and its operations.

37. **Defendants.** Defendants LIMETREE BAY VENTURES, LLC, LIMETREE BAY HOLDINGS, LLC, LIMETREE BAY PREFERRED HOLDINGS, LLC, LIMETREE BAY REFINING, LLC, LIMETREE BAY TERMINALS, LLC (D.B.A. OCEAN POINT TERMINALS), ARCLIGHT CAPITAL PARTNERS, LLC, ARCLIGHT ENERGY PARTNER FUND VI, L.P., ARCLIGHT AIV, LP, EIG GLOBAL ENERGY PARTNERS, LLC, FREEPOINT COMMODITIES, LLC, UNIVERSAL PLANT SERVICES (VI), LLC, EXCEL CONSTRUCTION AND MAINTENANCE VI, INC., ELITE TURNAROUND SPECIALISTS, LTD., PINNACLE SERVICES LLC, VERSA INTEGRITY GROUP, INC., NATIONAL INDUSTRIAL SERVICES, LLC, and JOHN DOES 1-100 own, operate, repaired, and/or maintained the aforementioned Limetree Bay Refinery which has caused harm to the Plaintiffs and the members of the putative Class.

38. Defendant Limetree Bay Ventures, LLC ("Limetree Bay Ventures") is a holding company that consisted of Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC, and was owned by Arclight (as defined below) and Freepoint Commodities, LLC during the time period giving rise to the incidents alleged in this Complaint. This Defendant is a Delaware limited liability company with its headquarters located in the United States Virgin Islands. This Defendant avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

39. Defendant Limetree Bay Holdings, LLC ("Limetree Bay Holdings") was the entity involved in purchasing the Limetree Bay Facility, which consists of the Limetree Bay Terminal and Limetree Bay Refinery (the "Limetree Bay Facility")

14

out of the HOVENSA bankruptcy (defined below). Upon information and belief, at the time of the purchase of the Limetree Bay Facility, Arclight and Freepoint Commodities, LLC owned Limetree Bay Holdings. This Defendant is a Delaware limited liability company with its headquarters in the United States Virgin Islands. This Defendant avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

40. Defendant Limetree Bay Preferred Holdings, LLC ("LBPH") is a United Stated Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. LBPH holds or held an ownership stake in Defendant Limetree Bay Ventures.

41. Defendant Limetree Bay Refining, LLC ("Limetree Bay Refining") was organized under the laws of the United States Virgin Islands and was doing business in the United States Virgin Islands at all times relevant hereto. Limetree Bay Refining was one of the entities responsible for operating the Refinery at the time of the toxic incidents referenced in this Complaint. Limetree Bay Refining filed for Chapter 11 bankruptcy on July 14, 2021, in the United States Bankruptcy Court for the Southern District of Texas (the "Limetree Bay Refining Bankruptcy"). Because of its prior bankruptcy, Limetree Bay Refining is a nominal defendant "for the purpose of (a) establishing Claims against the Debtors and their Estates, and (b) preserving rights with respect to insurance coverage for such Claims, if any, and for no other purpose." Order Approving Disclosure Statement on a Final Basis and Confirming Chapter 11 Plan Liquidation of Limetree Bay Services, LLC and Affiliated Debtors, *In re: Limetree Bay Services, LLC, et al.*, No. 21-32351, Docket No. 1454 (Bankr. S.D. Tex. May 20, 2022) (the "Plan").

42. At the time of the toxic incidents referenced in this Complaint, Limetree Bay Refining was owned and/or controlled directly or indirectly by

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

Arclight, EIG Global Energy Partners, LLC, and Freepoint Commodities, LLC, among others.

43. As of "the Effective Date, all of the Debtors' rights and their Estates' rights under any Insurance Policy to which the Debtors and/or the Debtors' Estates may have a claim or potential claim for coverage [] vest[ed] with the Liquidating Trust." *Id.* at p. 42.

44. The Plan expressly preserves certain claims for Plaintiffs in this matter, as noted by the following exception contained in the "Release" section of the Plan:

> Notwithstanding anything to the contrary herein, the Insurance Claimants and their counsel may file, assert, and/or continue to assert their Claims and any putative class action litigation, including the Putative Class Action Litigation, against any of the Debtors as nominal defendants for the purpose of (a) establishing Claims against the Debtors and their Estates and (b) preserving rights with respect to insurance coverage for such Claims, and for no other purpose.

*Id.* at Section XIV.B. The term "Insurance Claimants" is defined in the Plan to include, among others, "all named Plaintiffs and all Putative Class Members in the Putative Class Actions" including the above-captioned matter. *Id.* at II.A. ¶¶ 86, 145-46.

45. Defendant Limetree Bay Terminals, LLC (d.b.a. Ocean Point Terminals) ("Limetree Bay Terminals") is responsible for operating the Limetree Bay Terminal. This Defendant is a United States Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. Limetree Bay Terminals, LLC is owned by Arclight Capital Partners, LLC and Freepoint Commodities, LLC. This Defendant avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

46. Defendant ArcLight Capital Partners, LLC ("ArcLight Capital") is a direct or indirect member of the joint venture that owns and operates the Limetree Bay Facility. ArcLight Capital shares this joint venture with Defendant Freepoint Commodities, LLC. ArcLight Capital identifies itself as the "contractual investment advisor" to Defendant ArcLight Energy Partners Fund VI, L.P. and Defendant ArcLight AIV, L.P. ArcLight Capital is a Delaware limited liability company with its headquarters located in Massachusetts. ArcLight Capital avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

47. Defendant ArcLight Energy Partners Fund VI, L.P. ("AEPF") is a Delaware limited partnership. Defendant AEPF's general partner is Arclight PEF GP VI, LLC, and is a Delaware limited liability company with its headquarters located in Massachusetts. AEPF previously held an ownership interest in Defendant Limetree Bay Preferred Holdings, LLC and currently holds an ownership interest in Defendant Limetree Bay Holdings, LLC.

48. Defendant ArcLight AIV, L.P. ("AAIV") is a limited partnership with its office and headquarters in Massachusetts. The citizenship of its members is unknown. AAIV previously held an ownership interest in Defendant Limetree Bay Preferred Holdings, LLC and currently holds an ownership interest in Defendant Limetree Bay Holdings, LLC.

49. ArcLight Capital, AEPF, and AAIV are collectively referenced in this Complaint as "Arclight," unless otherwise specified.

50. Defendant EIG Global Energy Partners, LLC ("EIG") is a private equity company that purports to specialize in private investments in energy and energy-related infrastructure. Funds and accounts managed by EIG led the preferred equity portion ($550 million) of a $1.25 billion financing package that Defendant Limetree Bay Ventures secured in November 2018 to fund the restarting of the

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

Refinery. EIG is incorporated in the State of Delaware with its principal place of business located in Washington, D.C. EIG does business in the United States Virgin Islands.

51.     Defendant Freepoint Commodities, LLC ("Freepoint") is a member of the joint venture that owns and operates the Limetree Bay Facility. Freepoint shares this joint venture with Defendant Arclight Capital Partners, LLC. Freepoint is a Delaware limited liability company with its headquarters located in Connecticut. Freepoint avails itself to this Court by way of the fact that it does business in the United States Virgin Islands.

52.     Defendant Universal Plant Services, (VI), LLC ("UPS") is a United States Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. Defendant UPS performed certain work refitting the Refinery prior to its restart in February 2021. Specifically, on or about February 21, 2019, Defendants UPS and Limetree Bay Refining entered into a contract pursuant to which UPS performed certain services at the Refinery, including "engaging over 250 personnel on-site at the [] refinery to install, uninstall, repair, and overhaul plaint equipment, including fixed, rolling, rotating, reciprocating, and electrical equipment (including steam turbines)." Statement in Support of Proof of Claim of Universal Plant Services (VI), LLC, *In re: Limetree Bay Services, LLC, et al.*, No. 21-32351, Docket No. 1404-10 (Bankr. S.D. Tex. May 16, 2022). UPS indicated that "such services improved the real property of [Defendant Limetree Bay Refining]." *Id.* In the Limetree Bay Refining Bankruptcy, Defendant UPS is listed among the creditors that have the largest claims and are not insiders (Official Form 204) and is noted to have an unsecured claim of $24,423,282.42 related to work that is performed at or for the Refinery. *See* Chapter 11 Voluntary Petition, *In re: Limetree Bay Services,*

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

LLC, *et al.*, No. 21-32351, Docket No. 1 (Bankr. S.D. Tex. July 12, 2021) ("Chapter 11 Petition").

53.     Defendant Excel Construction and Maintenance VI, Inc. ("Excel") is an industrial contractor incorporated and headquartered in the United States Virgin Islands. Defendant Excel performed certain work refitting the Refinery prior to its restart in February 2021. Specifically, Excel entered into a $240 million 24-month contract for work relating to the "restoration and restart" of the Limetree Bay Terminal.[9] The project consisted of two phases. The first phase established an "API-653 Tank Inspection Program, which set forth the requirements to inspect the assigned and report discoveries." *Id.* The reports were to identify "all the repairs to restore the storage tanks to operational services" and establish subsequent inspection intervals. *Id.* In phase two, Excel purportedly developed the "repair execution strategy" and "performed the construction work to recondition the[] tanks." *Id.* In the Limetree Bay Refining Bankruptcy proceeding, Excel is listed among the creditors who have the 30 largest claims and are not insiders (Official Form 204) and is noted to have an unsecured claim of $22,325,200.82 related to work that it performed at or for the Refinery. *See* Chapter 11 Petition.

54.     Defendant Elite Turnaround Specialists, Ltd. ("ETS") is a Texas limited partnership. Defendant ETS's sole general partner is Stronghold Specialty General, LLC, a Texas limited liability company. Defendant ETS is a part of the

---

[9] Excel USA, Limetree Bay Terminal Restoration and Restart, available at https://www.excelusa.com/projects/limetree-bay-terminal-restoration-and-restart (last accessed Feb. 2, 2023); *see also* Notice of Maintenance of Lien Pursuant to Section 546(B) of the Bankruptcy Code, *In re: Limetree Bay Services, LLC, et al.*, No. 21-32351, Docket No. 310 (Bankr. S.D. Tex. Aug. 5, 2021) ("Excel is a contractor to Debtor providing labor and materials incorporated into the work done by Debtor and the Property on a project generally known as the Limetree Refinery Restart Project . . . .").

Stronghold Companies ("Stronghold"), which "work together to provide refining, petrochemical, and tank services."[10] ETS provides "complete turnaround and fabrication services."[11] ETS performed certain work refitting the Refinery prior to its restart in February 2021. In the Limetree Bay Refining Bankruptcy proceeding, ETS is listed among the creditors who have the 30 largest claims and are not insiders (Official Form 204) and is noted to have an unsecured claim of \$15,330,475.03 related to work that it performed at or for the Refinery. *See* Chapter 11 Petition.

55.     Defendant Pinnacle Services LLC ("Pinnacle") is a United States Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. The company was formed in 2002 to specifically "provide a comprehensive set of services to the HOVENSA refinery, now owned and operated by Limetree Bay Terminals, LLC, and its sub-contractors under a shared services delivery model which utilizes the simple concept of centralizing commonly used, non-core services and providing them from a third party."[12] Starting in 2016, Pinnacle "supported Limetree Bay Energy in the restart of the 32 million barrel terminal and the 200,000 barrel per day refinery." *Id.* In the course of its work on this project, Pinnacle "filled over 350 management, supervision and craft positions during the engineering, procurement, construction and commissioning" of the restart project, and thus was responsible for a significant portion of the hiring at the Refinery. *Id.* In the Limetree Bay Refining Bankruptcy proceeding, Pinnacle is listed among the creditors who have the 30 largest claims and are not insiders (Official

---

[10] *Stronghold Companies*, available at https://www.thestrongholdcompanies.com/about-us/companies/ (last accessed Feb. 2, 2023); *About Stronghold Companies*, https://www.thestrongholdcompanies.com/about-us/ (last accessed Feb. 2, 2023).

[11] *About Elite Turnaround Specialists*, https://www.thestrongholdcompanies.com/about-us/companies/companies-ets-efl/ (last accessed Feb. 2, 2023).

[12] *Pinnacle Services Company Overview*, https://pinnaclevi.com/company/about-our-company/ (last accessed Feb. 2, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

Form 204) and is noted to have an unsecured claim of $2,986,320.12 related to work that it performed at or for the Refinery. *See* Chapter 11 Petition.

56.     Defendant Versa Integrity Group, Inc. ("Versa") is a Delaware corporation with its headquarters located in Louisiana. Defendant Versa provides industrial services consisting of inspection, advanced non-destructive testing, asset integrity, heat treatment and rope access.[13] Defendant Versa performed certain work at the Refinery prior to its restart in February 2021. In the Limetree Bay Refining Bankruptcy proceeding, Versa is listed among the creditors who have the 30 largest claims and are not insiders (Official Form 204) and is noted to have an unsecured claim of $4,196,472.15 related to work that it performed at or for the Refinery. *See* Chapter 11 Petition.

57.     Defendant National Industrial Services, LLC ("NIS") is a United States Virgin Islands limited liability company with its headquarters located in the United States Virgin Islands. Defendant NIS is a construction company that focuses on building and improving industrial facilities. Defendant NIS performed work prior to and in connection with the Refinery's restart in February 2021. In the Limetree Bay Refining Bankruptcy proceeding, NIS is listed among the creditors who have the 30 largest claims and are not insiders (Official Form 204) and is noted to have an unsecured claim of $12,052,033.76 related to work that it performed at or for the Refinery. *See* Chapter 11 Petition.

58.     Defendants UPS, Excel, ETS, Pinnacle, Versa and NIS are collectively referenced in this Complaint as "Contractor Defendants."

59.     Defendants John Does 1-100 are individuals or business or corporate entities incorporated in or doing business in St. Croix, United States Virgin Islands,

---

[13] Versa Services, https://www.versaintegrity.com/services/ (last accessed Feb. 2, 2022).

whose true capacities are unknown to Plaintiffs, who therefore sue such defendants by such fictitious names, and who will amend the complaint in this Action to show the true names and capacities of each such Doe defendant when ascertained. Each such Defendant Doe is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Action.

## IV.   FACTUAL ALLEGATIONS

### A.   Refineries

60.   Refineries "separate crude oil into a wide array of petroleum products through a series of physical and chemical separation techniques. These techniques include fractionation, cracking, hydrotreating, combination/blending processes, and manufacturing and transport."[14]

61.   According to the EPA, "[r]efineries in general emit a whole host of pollutants, ranging from nitrous oxides ("NOX"), sulfur dioxide ("SO2"), and carbon monoxide ("CO") to volatile organic compounds ("VOC"), hydrogen sulfide ("H2S"), and particulate matter "(PM")."[15] Additionally, the EPA has stated that "[e]missions … may include carbon particles (soot), unburned hydrocarbons, CO, partially burned and altered hydrocarbons, NOX and, if sulfur containing material such as hydrogen sulfide is flared, SO2."[16]

---

[14] *In the matter of Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC*, Clean Air Act Emergency Order, CAA-02-2021-1003 (E.P.A., Region 2) (May 14, 2021) ("*In re Limetree*").
[15] *Id.* at ¶ 19.
[16] *Id.* at ¶ 23.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

## B. The Limetree Bay Refinery

62. Prior to the reopening of the Refinery, it was called HOVENSA[17] and was one of the world's largest oil refineries.

63. According to the EPA, "[t]he HOVENSA facility ("the facility") is located at Limetree Bay, St. Croix, U.S. Virgin Islands. It is a petroleum refinery covering 1,500 acres in what is known as South Industrial Complex, on the south central coast of St. Croix. Operations at the facility began in 1965 under HOVIC. On October 30, 1998, Amerada Hess Corporation, the parent company of HOVIC, and Petroleos de Venezuela, S.A. (PDVSA) formed a new corporation named HOVENSA LLC, which acquired ownership and operational control of the HOVIC facility. The facility's maximum design capacity was 545,000 barrels (1 barrel = 42 gallons) of crude oil per day. Over 60 different types of crude oil had been processed at the facility. By means of distillation and other refining processes, crude oil is separated into various components. Light ends (fuel gas) are sent to the facility's fuel system; naphtha, jet fuel, kerosene and No. 2 oil are further processed to remove sulfur."[18]

64. In 2012, HOVENSA closed after causing environmental disasters akin to those alleged herein giving rise to violations of the Clean Air Act.[19]

65. The ventures which owned and ran the HOVENSA facility at that time decided to declare bankruptcy[20] ("HOVENSA bankruptcy") and subsequently shut

---

[17] https://www.epa.gov/hwcorrectiveactionsites/hazardous-waste-cleanup-hovensa-llc-christiansted-us-virgin-islands, (last accessed Jan. 5, 2023).
[18] *Id.*

[19] https://www.justice.gov/opa/pr/nation-s-second-largest-refinery-pay-700-million-upgrade-pollution-controls-us-virgin-islands, (last accessed Jan. 5, 2023).
[20] https://www.reuters.com/article/bankruptcy-hovensa/hovensa-faces-bankruptcy-owes-1-86-billion-to-owners-idUSL1N11N20A20150917, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

the plant down rather than invest the $700 million in new pollution controls required by the EPA and the Department of Justice.[21] Accordingly, those pollution controls, as well as other necessary refurbishment of the Facility, were never done.

66. Defendants were at all times aware that private cisterns became the primary source of safe, potable water for the residents of St. Croix. Thus, Defendants understood that if the Limetree Bay Facility was responsible for any further events that impacted cisterns on the island, this would effectively take away the only access to safe, potable water for residents of St. Croix.

### C.  The Doomed Restart of the Limetree Bay Refinery

67. In or around January 2016, Defendants Arclight and Freepoint, through Limetree Bay Holdings, completed the purchase of the Limetree Bay Facility through a Section 363 Bankruptcy Sale in HOVENSA's bankruptcy. After the acquisition of the Limetree Bay Facility from HOVENSA, Dan Revers, the Managing Partner and co-Founder of Arclight Capital Partners, LLC, stated that "[c]losing on the St. Croix Facility represents the culmination of an innovative and complex transaction *executed by Arclight* in conjunction with its partner Freepoint."[22]

68. After their acquisition of the Limetree Bay Facility, Arclight and Freepoint then appointed Darius Sweet as Chief Executive Officer of Limetree Bay Terminals. Upon his appointment, Sweet emphasized how essential Arclight and Freepoint's support was for the proper operation and functioning of the Limetree Bay Facility. Sweet noted, "[w]ith Arclight and Freepoint's strong sponsorship,

---

[21] https://www.justice.gov/opa/pr/nation-s-second-largest-refinery-pay-700-million-upgrade-pollution-controls-us-virgin-islands, (last accessed Jan. 5, 2023).
[22] https://www.prnewswire.com/news-releases/arclight-capital-partners-and-freepoint-commodities-close-acquisition-of-st-croix-refinery-assets-from-hovensa-300201346.html, (last accessed Jan. 5, 2023) (emphasis added).

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. *1:21-cv-00253***
*First Amended Complaint*

L[imetree Bay] Terminals will deploy significant investment to revitalize the St. Croix facility as a safety-oriented, environmentally compliant, multi-purpose energy center . . . ."[23]

69.     Based on its own admissions, Arclight Capital was far from a mere investment advisor to AEPF and AAIV. In Defendant Arclight Capital's own words, Arclight Capital served as a "hands-on" owner and operator of the Limetree Bay Facility.[24] After the acquisition of the Limetree Bay Facility, Arclight Capital confirmed its prominent role in the restart of the Refinery operations. Revers, the Managing Partner and co-Founder of Arclight Capital, indicated that Arclight Capital's involvement ". . . ma[de] full use of Arclight's suite of specialized capabilities including financial structuring, construction management, implementation of operational best practices, commodity management, human resources, and environmental management."[25] As evidenced by the horrific restart of the Refinery, however, Arclight Capital's use of its "specialized capabilities" only served to create an unprecedented disaster generated by the implementation of the worst practices possible.

70.     As to "environmental management," Defendants mismanaged nearly every aspect of environmentally safe operations for the Refinery. Among other federal and state environmental regulations and statutes, the Refinery is subject to the Clean Air Act and the Virgin Islands State Implementation Plan promulgated thereunder. The EPA previously issued a number of permits to HOVENSA pursuant

---

[23] https://electricenergyonline.com/article/organization/22989/567705/ArcLight-Capital-Partners-and-Freepoint-Commodities-Announce-Appointment-of-Darius-Sweet-as-Chief-Executive-Officer-of-Limetree-Bay-Terminals-LLC.htm, (last accessed Jan. 5, 2023).

[24] https://arclight.com/about/, (last accessed Jan. 5, 2023).

[25] https://www.limetreebayenergy.com/limetree-bay-ventures-closes-1-25-billion-financing-to-restart-its-refinery-in-st-croix/, (last accessed Jan. 5, 2023).

to Title V of the Clean Air Act, which were subsequently transferred to the Limetree Bay Facility on or about March 9, 2016 and November 5, 2018.[26] These permits included all applicable requirements that were in effect during HOVENSA's operation. In securing the transfer of these permits, Arclight leveraged its expert capabilities in "environmental management" to avoid a re-permitting process that would have revealed serious deficiencies in the Refinery. The grandfathering of the HOVENSA permits was essential to the doomed restart of Refinery operations, and Defendants' strategic actions amounted to an unprecedented level of environmental *mis*management.

71.     In December 2020, the EPA issued an additional Clean Air Act pollution permit (the "Plantwide Applicability Limit" or "PAL" permit), pursuant to which the Refinery was required to install air monitoring equipment that HOVENSA had refused to install before filing for bankruptcy. However, the Refinery appealed those requirements, among others, arguing that the requirements were too strict and unneeded, and upon information and belief, never installed the air monitoring equipment on which issuance of the PAL permit was conditioned. Once again, Defendants bypassed safe environmental management that could have reduced the serious deficiencies in the Refinery and forged ahead in implementing blatantly unsafe environmental management practices.

72.     As to "implementation of operational best practices," Defendants' operational practices were far from the "best." Instead, Defendants implemented the *worst* operational practices possible. Defendants operated the Refinery as an oil storage facility until it resumed refining operations in early 2021. During that time, Defendants failed to adequately monitor and protect against the environmental

---

[26] *See* https://www.epa.gov/vi/limetree-bay-terminals-and-limetree-bay-refining-llc, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

harms caused by its storage operations. For example, on August 22, 2020, one of the Refinery's stormwater pumps failed as a result of heavy rainfall, and oil-polluted water overflowed into a containment pond and discharged into a nearby harbor. Further, the four releases that occurred in merely four months after the Refinery restart confirms that Defendants engaged in an egregious deviation from the "implementation of operational best practices," as proclaimed by Arclight.

73.   As to "construction management," on February 1, 2021, the Limetree Bay Facility restarted refinery operations for the first time since its closure in 2012. Like Arclight Capital, EIG was far from a passive investor. Limetree Bay Terminals, LLC issued a press release dated February 1, 2021, stating, in pertinent part:

### Limetree Bay Ventures Commences Refinery Startup Operations

ST. CROIX, U.S. Virgin Islands – February 1, 2021 – Limetree Bay Ventures, LLC ("Limetree" or "the Company"), a world-class refinery, terminal and logistics hub ***controlled by EIG Global Energy Partners ("EIG")***, today announced that Limetree Bay Refining ("the Refinery") has successfully resumed operations and begun production and commercial sales of refined products.

The Refinery is capable of processing over 200,000 barrels of crude oil and other feedstocks per day ….

Mr. Rinker continued, "***The restart of a refinery is a complicated endeavor, requiring a first-class team of employees and contractors*** and a collaborative partnership between business and government.[27]

74.   Indeed, Defendants publicized that, "Limetree Bay Refining, LLC, restarted [refinery] operations in February 2021, and is capable of processing around

---

[27] Press Release, Limetree Bay Terminals, LLC, "Limetree Bay Ventures Commences Refinery Startup Operations" (Feb. 1, 2021), available at https://www.limetreebayenergy.com/limetreebay-ventures-commences-refinery-startup operations/ (last accessed January 17, 2023) (emphasis in bold and italics added).

200,000 barrels per day. Key restart work at the site began in 2018, including the 62,000 barrels per day modern, delayed Coker unit, extensive desulfurization capacity, and a reformer unit to produce clean, low-sulfur transportation fuels that will meet International Marine Organization ("IMO") standards required under international law in 2020."[28]

75.    The Limetree Bay Facility, however, was obviously not properly refurbished and/or refitted to function in a safe manner as proclaimed, in part because of the negligent and reckless manner in which the Refinery was owned, restarted, operated, and/or maintained, including, without limitation, because of the negligent and reckless hiring, supervision, and oversight implemented by Defendants, including the Contractor Defendants.

76.    Through their extensive and varied work at and/or for the Refinery, Defendants, including the Contractor Defendants, failed to ensure that the Refinery was properly rehabilitated prior to its restart in February 2021. Defendants, moreover, caused the Refinery to fall into a perilous and unsafe condition, ripe for the inevitable, but entirely preventable, Toxic Incidents that immediately followed.

77.    Such work included, without limitation, negligent and reckless: (a) mechanical, piping, and other work performed by Defendant ETS; (b) pumps, machinery, and other work performed by Defendant UPS; (c) electrical, instrumentations, and other work performed by Defendant Excel; (d) inspection and other work performed by Defendant Versa; (e) hiring, staffing, and other work performed by Defendant Pinnacle; (f) construction and other work performed by Defendant NIS; and (g) general oversight, supervision, quality check, maintenance

---

[28]https://www.limetreebayenergy.com/limetree-bay-appoints-new-chief-financial-officer/, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

work, and sign-off on various aspects of the overall refitting project by the Contractor Defendants.

78.     Within only four days of its reopening, the first of four Incidents would occur at the Refinery—starting an unprecedented sequence of events that caused the harm and damage alleged herein.

### D.     The Incidents Caused by the Limetree Bay Refinery

79.     The aforementioned Incidents occurred on February 4, 2021, in late April, 2021, on May 5, 2021, and on May 12, 2021—each of which caused harm to the Plaintiffs and the members of the putative Class.

#### i.     Incident One

80.     On February 4, 2021, Incident One occurred.

81.     According to the EPA, "a mixture of oil and water, in the form of an oily mist, was emitted as air emissions from Flare #8 at the Facility (the "Feb. 4 Incident"). These emissions included liquid droplets of oil and other toxins. Limetree was aware of the impact this event had on the surrounding community and paid for various cleaning and decontamination work and provided bottled water to the community. In a March 3, 2021 press release, Limetree stated, "Limetree's environmental team was able to field verify the area impacted by the release, which was determined to be the Clifton Hill community."[29]

82.     Additionally, the EPA stated, "[a]s of March 16, 2021, Limetree had reported to EPA that the Feb. 4 Incident resulted in 193 residences with potential contamination and 148 roofs and 245 cars that required cleaning. Samples were taken from 163 cisterns, and at the time, the results of 135 of those samples had been received."[30] Of those 135 cisterns, 70 were identified as contaminated. Many in the

---

[29] *In re Limetree*, ¶¶ 34, 37.

[30] *Id.* ¶ 38.

community nearby the Facility rely on cisterns for their household water use. A March 21, 2021 news article explained that, "Ever since the refinery contaminated St. Croix's groundwater [under HOVENSA's prior operation], cisterns have become a necessity on the island—catching rain to provide water for residents to drink, wash with or . . . irrigate their vegetable gardens."[31]

83.     The Defendants ultimately admitted that the Incident occurred: "during an April 30, 2021, site visit to the Facility by staff from EPA…, Limetree representatives said that Limetree believes that the release was a mist with heavy oil in it."[32]

84.     The EPA indicated that Incident One could have been caused by the Refinery's "knockout drums" that were "not designed with sufficient capacity."[33]

85.     The EPA specified that "[t]his type of event is *not common* for a refinery startup."[34] In other words, this type of event is an unprecedented, egregious deviation of refinery operational norms all done under the control of Arclight, EIG and Freepoint.

86.     As a result of Incident One, and as a result of the Defendants' conduct, the Plaintiffs and members of the putative Class suffered personal harm and harm to their property.

87.     According to the EPA, "[i]n early April, the Refinery stopped operations for a period of time due to undisclosed operational issues. [Limetree Bay Refining] stated in a letter to the EPA that the 'refinery is shut down while we make operational adjustments.'"[35]

---

[31] *Id*. at ¶ 38-39.

[32] *Id*. at ¶ 42.

[33] *Id*. at ¶ 44.

[34] *Id.* (emphasis added).

[35] *Id*. at ¶ 45.

### ii. Incident Two

88. In late April of 2021, Incident Two occurred.

89. Between April 19 and April 23, 2021, specifically, "Limetree reported … exceedances for the 162 parts per million ("ppm") emission standard for H2S concentrations … at the facility."[36]

90. The EPA stated, "H2S is a flammable, colorless gas that smells like rotten eggs. People can usually smell H2S at low concentrations in air when H2S concentrations are in the range of from 0.0005 to 0.3 ppm. Exposure to low concentrations of H2S may cause irritation to the eyes, nose, or throat. It may also cause difficulty in breathing for some asthmatics. Respiratory distress or arrest has been observed in people exposed to very high concentrations of H2S."[37]

91. From April 19-22, 2021, "hydrogen sulfide concentrations measured at the Flare #8 flare header rose to orders of magnitude above the limit of 162 ppm … High hydrogen sulfide readings on each of those four days, measured between 5 AM on April 19 and 5 PM on April 22, rose as high as 31,546.5, 39,475.7, 2,272.4, and 4,046.5 ppm, respectively[.]"[38]

92. Additionally, "Limetree continued to measure high levels of hydrogen sulfide in excess of the 162 ppm limit at the flare header for Flare #8 at the Facility during the evening of April 22 and into April 23, 2021. Hydrogen sulfide readings rose throughout the evening on April 22, 2021 and peaked at a three-hour average of 91,649.0 ppm around 11 AM on April 23—over <u>565 times higher</u> than the concentration limit of 162 ppm."[39]

---

[36] *Id.* at ¶ 46.

[37] *Id*. at ¶ 47.

[38] *Id*. at ¶ 49.

[39] *Id*. at ¶ 51 (emphasis in original).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

93.     In addition to the H2S release, the EPA confirmed the presence of "emissions plumes,"[40] which makes it highly likely that aerosolized oil droplets formed due to the chemical reaction with atmospheric constituents, including water.

94.     According to the EPA, on April 24, 2021, the Virgin Islands Department of Health ("VIDOH") issued a press release alerting St. Croix residents to potential health effects from the Facility's Refinery emissions. It noted Limetree's confirmation of elevated hydrogen sulfide concentrations from Flare #8 and said that a "foul, gaseous smell, which can smell similar to rotten eggs, has permeated throughout the Frederiksted area for the past few days." It explained the potential health effects of breathing hydrogen sulfide, and encouraged residents to report symptoms such as headaches, nausea and symptoms of a respiratory nature to their healthcare providers.

95.     On April 24, 2021, Limetree issued a press release denying any release of hydrogen sulfide occurred from April 22 to 23, 2021. Limetree claimed that the incident involved only an unusually high level of sulfur dioxide emissions, and that the odor of sulfur dioxide (similar to a struck match) can be smelled in amounts far below the level normally considered dangerous to health.

96.     During an April 30, 2021 site visit to the Facility by staff from EPA and other regulators, "Limetree staff explained that the April 23, 2021 incident was related to the main sulfur recovery unit #4's fire eye detecting a lack of flame, and thus diverting the acid gas to the flare rather than treating it. The flare itself had a flame burning at the time that would have burned the hydrogen sulfide, producing sulfur dioxide."[41]

---

[40] *Id*. at ¶ 62.

[41] *Id*. at ¶ 58-60.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

97.     According to the EPA, "Limetree also does not conduct any fenceline monitoring for SO2 or H2S; it only conducts fenceline monitoring for benzene. Limetree's predecessor, HOVENSA, operated five SO2 monitors near the perimeter of the Facility, but those monitors have not been operated since 2013, after HOVENSA stopped operating the Facility's Refinery. Limetree has not restarted those SO2 monitors. On April 30, 2021, EPA issued a Notice of Violation to Limetree for its failure to operate the five SO2 monitors."[42]

### iii.    Incident Three

98.     On May 5, 2021, Incident Three occurred.

99.     According to the EPA, "On May 5, 2021, community members began calling EPA to report that an odor was emitting from the Facility. They described the odor as 'sulfur,' 'gassy,' 'burnt eggs,' and 'rotten.' On May 6, 2021, community members continued to report odor emitting from the Facility. At 7:08 PM est, a citizen caller reported that the odor was continuing and described the fumes as 'noxious.' The caller also stated that the 'materials in the air were causing health problems' for community members, including 'head ache, sore throat, ear ache, nausea, and lips and tongue tingling.'" [43]

100.    Despite these warnings, on May 5, 2021, Limetree issued an initial statement on Facebook once again "denying that there were any problems at the Facility." Limetree stated in its Facebook post that Facility personnel had conducted a preliminary investigation, and Limetree had concluded that "units are operating normally, and there is no activity that would result in an odor."[44]

---

[42] *Id.* at ¶ 66.

[43] *Id.* at ¶ 69.

[44] *Id.* at ¶¶ 69, 71.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

101.   That same day, Limetree admitted environmental violations to the EPA and other agencies, in direct contradiction to its misrepresentations to the public. Per the EPA, "On May 5, 2021, Limetree environmental personnel reported to DPNR and EPA that the Facility had exceeded the H2S limit at Flare #8 at approximately 9 PM est on May 5. At the time the email notification was sent to DPNR and EPA at 10:12 PM est, Limetree environmental personnel stated that H2S was back below the limit."[45]

102.   On the next day, May 6, 2021, Defendants released the following statement: "Limetree Bay has become aware of an odor affecting areas west of the facility. We are conducting maintenance activity at the Coker unit, which has resulted in light hydrocarbon odors. We will continue to monitor the situation, but there is the potential for additional odors while maintenance continues. We apologize for any impacts this may have caused the community. Thank you."[46]

103.   On May 6, 2021, due to the noxious odor released by the Refinery, the U.S. Virgin Islands' Bureau of Motor Vehicles closed due to the presence of a "gas like odor."[47] On the same day, the Virgin Islands' Department of Education closed three schools.[48]

104.   On May 7, 2021, Virgin Islands governor Albert Bryan "activated the … National Guard … to address continuing reports of odor and heightened concern from the community."[49] The government "advised residents with respiratory

---

[45] *Id.* at ¶ 72.
[46] *Id.* at ¶ 73.
[47] *Id.* at ¶ 76.
[48] *Id.* at ¶ 75.
[49] *Id.* at ¶ 77.

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

ailments to avoid going outside or to temporarily relocate to areas of the island that were less affected by the odors."[50]

105. On that same day, the Defendants reported to the EPA that yet another spike of H2S was released into the environment as a result of the Refinery and Defendants' operations thereof.[51]

106. Because of the visible plume, it is highly likely that aerosolized oil droplets formed due to the chemical reaction with atmospheric constituents, including water. These droplets then fell to the ground, contaminating Plaintiffs' and Class Members' residences, property and water supplies.

### iv. Incident Four

107. On May 12, 2021, Incident Four occurred and constituted a release of oil droplets through the community.

108. According to the EPA, "[o]n May 12, 2021 at approximately 5:30 PM, Limetree reported to EPA that around 3:15 PM EST a flaring incident occurred at the Refinery when the pressure in the coker drum rose, causing fire or flames. At the time, Limetree was still unsure what specifically caused the flaring incident. Limetree reported that during its investigation of the fire, Limetree discovered that liquid droplets of oil were on the road west of the Facility."[52] "Liquid droplets of oil" were also reported on properties in the surrounding neighborhood.[53]

109. Additionally, "[a]t 8:50 PM on May 12, 2021, Limetree staff told EPA staff by phone that Limetree was stopping production after such a 'big' incident. This would not be a full shutdown of the Refinery, but Limetree would stop production. Limetree would run some units on circulation and the

---

[50] *Id*.

[51] *Id.* at ¶ 78.

[52] *Id.* at ¶ 79.

[53] *Id*.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

utilities/wastewater would still be in operation. The Limetree staff was not sure how long production would be suspended."[54]

110.   The EPA once again indicated that "this type of event—let alone two such events in a few months—is *not common* for a refinery startup."[55] Or, in other words, such an incident was not common for an operation other than one controlled by Arclight, EIG and Freepoint.

### v.   EPA Intervention

111.   After the Incidents, the EPA had no choice but to intervene.

112.   On March 25, 2021, amid concerns raised by non-governmental organizations and members of the community, the EPA withdrew the PAL permit granted to the Refinery in December 2020, which had never gone into effect due to a number of appeals. Though the permit was withdrawn, the Refinery's operations were permitted to continue pursuant to the dozen other Clean Air Act permits issued to HOVENSA and transferred to the Refinery.

113.   During a visit to the Refinery in April by the EPA, "Limetree representatives stated that Limetree has a single Environmental Department, known as the Health, Safety, and Environmental ("HSE") Department, serving the entire Facility, including the Refinery and marine loading terminal operations. In addition to managing environmental compliance at the Facility, the HSE department also oversees safety and implementation of COVID-19-related procedures. The entire HSE department consists of 5 employees. Limetree representatives noted they did have consultant support."[56]

---

[54] *Id.* at ¶ 84.
[55] *Id.* at ¶ 89 (emphasis added).
[56] *Id.* at ¶ 91.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

114.   The EPA, in response to this revelation stated, "[a] Refinery of this size and complexity would be expected to have 10-20 full time onsite staff in its health, safety and environment department."[57]

115.   As such, the Defendants were not even adequately staffed to run a Refinery of this size—especially given the facility's history and proclivity to cause environmental disasters.

116.   On April 30, 2021, the EPA issued a Notice of Violation to Defendants for Defendants failure to operate five sulfur dioxide ("SO2") ambient air monitors as required by one of the Clean Air Act permits issued to the Refinery.

117.   As a result of the foregoing, the EPA (which decided to invoke emergency powers in order to do so) decided to shut the facility down temporarily— but the damage to the surrounding people, the island of St. Croix and the property on the island was already done.[58]

118.   Following the EPA intervention and subsequent bankruptcy of Limetree Bay Refining, West Indies Petroleum and Port Hamilton Refining and Transportation bought the Refinery in December 2021.[59] By September 2022, less than a year after ownership passed, the EPA conducted an inspection of the Refinery under new ownership and observed "significant corrosion" of equipment, including corrosion of vessels, piping and valves.[60] The deplorable state of the Refinery shows that it was in a similar deplorable state during the Refinery's previous brief operation

---

[57] *Id.* at ¶ 92.

[58] https://www.washingtonpost.com/climate-environment/2021/05/14/limetree-bay-refinery/, (last accessed Jan. 5, 2023).

[59] https://www.reuters.com/business/energy/corrosion-st-croix-refinery-risks-explosion-catastrophic-releases-epa-2022-10-25/, (last accessed Jan. 5, 2023).

[60] https://www.washingtonpost.com/climate-environment/2022/10/28/refinery-st-croix-epa-limetree/, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

and casts serious doubt that the restart was executed in any kind of safe or cautious manner.

### vi. The Disproportionate Effects of Defendants' Conduct on Minority Communities

119. Plaintiffs and members of the putative Class were disproportionately harmed as a result of the Defendants' conduct alleged herein.

120. As the EPA has recognized repeatedly, "Limetree Bay is in a community predominantly made up of people of color and low-income populations who are already disproportionately affected by environmental burdens," and "[t]hese disproportionate burdens present environmental justice concerns."[61]

121. Indeed, the EPA found that in the neighborhoods adjoining the Refinery, 27% of residents live below the poverty line and 75% are people of color, and the EPA concluded that "in light of the burden already experienced by the nearby low income and minority populations, [the EPA] is requiring Limetree to resume an ambient air monitoring network that will measure $NO_2$, $SO_2$ and $PM_{2.5}$."[62]

122. But Defendants balked at those requirements and refused to implement the necessary monitoring to protect these minority populations, as evidenced by the EPA's April 30 notice of violation to the Refinery for failing to install the monitors.[63]

---

[61] https://www.epa.gov/newsreleases/epa-notifies-limetree-bay-clean-air-act-violations, (last accessed Jan. 5, 2023).

[62] U.S. EPA Region 2 Office, *Final Environmental Justice Analysis for Limetree Bay Terminal and Refining (Limetree) PAL Permit*, at p. 14 (Sept. 19, 2019), https://context-cdn.washingtonpost.com/notes/prod/default/documents/993fcf3f-f029-4915-aec6-a6232778de70/note/7b883ce9-4bca-4ca6-84e8-e143c39a3748, (last accessed Jan. 5, 2023).

[63] https://www.epa.gov/newsreleases/epa-notifies-limetree-bay-clean-air-act-violations, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No. 1:21-cv-00253**
*First Amended Complaint*

123. This is not the first time that Defendant Arclight has exploited vulnerable communities of color. According to data analyzed by the University of Massachusetts, Arclight has incurred millions in penalties for environmental violations, with minorities accounting for more than 35% of the impact of those violations.[64]

124. This data shows that Arclight preys on communities of color, where environmental laws are underenforced, by refusing to implement the necessary protective and remedial measures in place to prevent harmful, toxic incidents—like those endured by Plaintiffs and Class Members—on the assumption that these vulnerable communities lack the resources to seek recourse for the harm caused by Arclight's exploitation.

## V.   CLASS ACTION ALLEGATIONS

125. Class Representatives bring this action on behalf of themselves and, under Federal Rules of Civil Procedure 23(a) and (b)(3), as representatives of a Class defined as follows:

> All persons who owned property (real and/or personal), and/or operated a business, and/or worked or resided on St. Croix and who have been harmed by the Defendants' conduct alleged herein from the date on which the Refinery Defendants acquired the Limetree Bay Facility through the present.

126. Alternatively, Class Representatives bring this action on behalf of themselves and the following Sub Class, defined as:

> All persons who owned property, and/or operated a business, on St. Croix who sustained property damage and/or business losses as a result

---

[64]https://grconnect.com/tox100/ry2018/index.php?search=yes&company1=535&chemfac=chemfac&advbasic=adv&sortp=city, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

of Defendants' conduct alleged herein from the date on which the Defendants acquired the Limetree Bay Facility through the present.

127.   **Numerosity.** Members of the Class are so numerous that joinder is impracticable. Plaintiffs do not know the exact size of the Class but believe that there are at least tens of thousands of class members geographically dispersed throughout the United States. As such, a class action is superior to other methods of adjudication due to its capacity for efficiency and its preservation of judicial economy, more specifically.

128.   **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class were damaged by the same wrongful conduct of Defendants.

129.   Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the Class. Accordingly, by proving their own claims, Plaintiffs will prove other class members' claims as well.

130.   **Adequacy of Representation.** Plaintiffs are represented by counsel who are experienced and competent in the prosecution of class action chemical/toxin(s) contamination litigation. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs can and will fairly and adequately represent the interests of the Class and have no interests that are adverse to, conflict with, or are antagonistic to the interests of the Class.

131.   **Commonality.** There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

- Whether Defendants' conduct alleged herein violates the laws as stated in the Cause of Action section, *supra*, at VI;

- Whether Defendants owed a duty to the Class;

- Whether Defendants breached any duties owed to the Class;

- Whether Defendants were negligent in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;

- Whether Defendants were reckless in failing to properly maintain and operate the Limetree Bay Refinery, including without limitation, since its reopening;

- Whether the Defendants allowed a "release" or "threatened release" of a hazardous substance from the Refinery within the meaning of 42 U.S.C. § 9607(a)(4);

- Whether the Limetree Bay Refinery constituted a public nuisance;

- Whether the Limetree Bay Refinery constituted a private nuisance;

- Whether the contamination that resulted from the Toxic Incidents constituted a trespass to the Class Members;

- The appropriate nature of class-wide equitable relief; and,

- The appropriate measurement of restitution and/or measure of damages to the Class Members.

*Boynes et al. v. Limetree Bay Ventures, LLC*
***Case No. 1:21-cv-00253***
*First Amended Complaint*
## VI.   CAUSES OF ACTION

### COUNT I

### NEGLIGENCE

### (Against All Defendants)

132.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

133.   The actions of Defendants were negligent.

134.   Defendants Arclight, EIG and Freepoint, were "hands-on" in the acquisition, rehabilitation, permitting and operation of the Refinery. Through Defendants' Arclight, EIG and Freepoint's subsidiaries, including Defendants Limetree Bay Ventures, Limetree Bay Holdings, Limetree Bay Refining and Limetree Bay Terminals, Defendants bought the Limetree Bay Facility out of the HOVENSA bankruptcy, made repairs and retrofits to the Limetree Bay Facility, sought permitting and waiver of the significant HOVENSA fine levied by the EPA as a means to protect the St. Croix community, and operated the Refinery.

135.   Defendants failed to properly store, use, refine and/or dispose of oil and other Toxins.

136.   Defendants failed to ensure that the Refinery was safe to reopen when they knew or should have known it was not. Defendants also failed to hire and/or train personnel to conduct the reopening in a safe and effective manner.

137.   Despite Defendant Arclight's acclaimed guidance on "environmental management," Defendants continued Refinery operations after the first, second, third *and fourth* Incidents. After each Incident, Defendants had the opportunity to comprehensively evaluate the safety of continued Refinery operations. Despite the clear warnings that the facility was not safe, and should not be operated, Defendants refused to close or limit operations and instead continued to serve their own profit

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

motives. Any stateside refinery would have been immediately shut down after just *one* of these toxic incidents. The Refinery operations were not restricted until so ordered by the EPA—after the occurrence of *four* toxic incidents. Defendants not only failed to implement best practices; Defendants failed to adhere to any inkling of reasonable practices.

138.  Defendants' conduct fell below the standard of care of a reasonable property owner and/or operator in similar circumstances.

139.  Defendants knew and/or should have known that their failure to properly store, use, refine, and/or dispose of oil and other chemicals, toxins, and particulates at the Limetree Bay Refinery would allow these dangerous materials to contaminate nearby neighborhoods and cause their residents personal injuries and property damages, including but not limited to diminution in value.

140.  Defendants failed to warn and/or provide Plaintiffs, the Class and the public at large with adequate and timely notice of the hazards and their potential impacts.

141.  Defendants' negligence caused both physical personal injury and real and personal property damage that also resulted in emotional distress and anxiety to Plaintiffs and Class Members.

142.  As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

## COUNT II

### NEGLIGENCE PER SE

**(Against Defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC (d.b.a. Ocean Point Terminals), as Owners of Operating Permits for the Limetree Bay Facility)**

143.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

144.    The actions of Defendants as set forth herein constitute negligence per se.

145.   Courts in the Virgin Islands have recognized negligence per se as a cause of action. *See Antilles School, Inc. v. Lembach*, 64 V.I. 400, 423 (V.I. 2016) (citations omitted). "A plaintiff suing for negligence per se relies on the doctrine that obviates the normal showings of the duty and breach-of-duty elements of an ordinary negligence claim by relying on the defendant's violation of a statute or other legally-binding regulation; that is, the plaintiff must demonstrate that the defendant had a duty to follow the law, failed to follow the law, and that such failure caused damages to the plaintiff as a person within the class intended to be protected by the statute or regulation." *Id.*

146.   Defendants had a duty to comply with numerous statutes, and subsequently failed to do so. Specifically, Defendants failed to comply with 28 V.I.C. § 331 (Private Nuisance), (*see infra* Count VII), 42 U.S.C. § 7401, *et seq.* (Clean Air Act), 42 U.S.C. § 9601, *et seq.* (CERCLA), 12 V.I.C. § 201, *et seq.* (Virgin Islands Air Pollution Control Act), 12 V.I.C. § 701, *et seq.* (Oil Spill Prevention and Pollution Control Act), and 12 V.I.C. § 181, *et seq.* (Virgin Islands Water Pollution Control Act).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

147.   One of the purposes of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare…." 42 U.S.C. § 7401(b)(1).

148.   Defendants breached the standard of conduct required by the Clean Air Act when the H2S input gas concentration limit specified in 40 C.F.R. § 60.103a(h) and the Refinery's Title V Operating Permit of 162 parts per million volume determined hourly on a 3-hour rolling average basis were violated by multiple orders of magnitude.

149.   Defendants also breached the standard of conduct required by the federal Clean Air Act's National Emissions Standards of Hazardous Air Pollutants ("NESHAPs"). Specifically, 40 C.F.R. § 63.670 regulates flare control devices. These requirements create various operation limits for individual flares, including but not limited to (a) smokeless design capacity (40 C.F.R. § 63.670(c)), (b) maximum flare tip velocity (*id.* at § 63.670(d)), and (c) combustion zone operating limits (*id.* at 63.670(e)). Flare #8 was subject to these requirements due to the nature of the Toxic Incidents and how they were caused by Flare #8, it is highly likely that these operating limits were exceeded.

150.   CERCLA was enacted to ensure '"those responsible for problems caused by the disposal of chemical poisons [must] bear the costs and responsibility for remedying the harmful conditions they created.'" *U.S. v. E.I. Duport De Nemours and Co. Inc.*, 423 F.3d 161, 164 (3d Cir. 2005) (quoting *In re Tutu Water Wells CERCLA Litig.,* 326 F.3d 201, 206 (3d Cir. 2003) (citation omitted)).

151.   Defendants are liable for and breached the standard of conduct required by CERCLA § 107, 42 U.S.C. § 9607, when they released hazardous substances, including H2S (a listed hazardous substance pursuant to 40 C.F.R. § 302.4, Table),

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

polynuclear aromatic hydrocarbons (same), polycyclic organic matter (same), including naphthalene (same), and waste oils into the environment.

152.   Defendants breached the standard of conduct required by the Air Pollution Control Act when they emitted air pollutants in violation of 12 V.I.C. §§ 208 and 217, which prohibit emissions of air contaminants and noxious and objectionable odors.

153.   Defendants breached the standard of conduct required by the Oil Spill Prevention and Pollution Control Act when they discharged oil, petroleum or their byproducts, and other pollutants into or upon coastal waters, estuaries, tidal flats, beaches and land adjoining the seacoast of the Territory in violation of 12 V.I.C. § 704.

154.   Defendants breached the standard of conduct required by Air Pollution Control Act, 12 V.I.C. § 201, *et seq*.

155.   The Air Pollution Control Act's "declaration of purpose" indicates that it seeks "to promote health, safety and welfare" and "to prevent injury to human, plant and animal life, and property."

156.   The purpose of the Air Pollution Control Act is to protect residents of the Virgin Islands from emissions of pollutants, and Plaintiffs and Class Members are among the class of persons the Air Pollution Control Act was meant to protect.

157.   Defendants' discharge of oil and other chemicals, toxins and particulates into Plaintiffs' and Class Members' residences violated the Air Pollution Control Act.

158.   Defendants' actions constitute a violation of the Water Pollution Control Act, 12 V.I.C. § 180, *et seq*.

159.   The Water Pollution Control Act's "declaration of policy" indicates that it seeks "to promote health, and welfare" and "to protect, maintain and improve

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

the quality thereof for public water supplies ... for domestic, recreational and other beneficial uses."

160. The purpose of the Water Pollution Control Act is to protect residents of the Virgin Islands from the discharge of pollutants into and pollution of "any waters of the United States Virgin Islands."

161. "'Waters of the United States Virgin Islands' means all waters within the jurisdiction of the United States Virgin Islands including … all other bodies or *accumulations of water*…. Natural or *artificial*, public or *private*…." Class Members' cisterns and wells constitute Waters of the United States Virgin Islands, 12 V.I.C. § 182(f).

162. Plaintiffs' and Class Members are among the class of persons the Water Pollution Control Act was meant to protect.

163. Unless a person has a current permit to discharge, "the discharge of any pollutant into the waters of the United States Virgin Islands or the causing of the waters of the Virgin Islands, by any person, shall be unlawful." 12 V.I.C. § 185(a).

164. The chemicals emitted from the Refinery during the four Toxic Incidents constitute "pollutants," as defined by 12 V.I.C. § 182(b).

165. The emissions of contaminants from the Refinery during the four Toxic Incidents caused "pollution," which is defined to include "contamination, or other alteration of the physical [or] chemical . . . properties, of any waters of the United States Virgin Islands, including change in … taste, color, … or odor of the waters, or such discharge of any liquid, gaseous, solid…. or other substance into any waters as will or is likely to create a nuisance or render such waters harmful, detrimental, or injurious to public health, safety or welfare…." 12 V.I.C. § 182(a).

166. Defendants' unpermitted discharge of oil and other chemicals, toxins, and particulates into waters of the United States Virgin Islands, including the August

47

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No.** *1:21-cv-00253*
*First Amended Complaint*

2020 overflow resulting from the failure of the Refinery's stormwater pump, as well as pollution of Plaintiffs' and Class Members' cisterns and wells, violated the Water Pollution Control Act.

167.   Each Incident described herein constituted a "discharge," as defined as 12 V.I.C. § 182(i), from a "point source," as defined at 12 V.I.C. § 182(j), as a flare stack is a "discernable, confined and discrete conveyance" and "conduit" "from which pollutants" were discharged.

168.   The purposes of the aforementioned statutes are to protect the interests of Plaintiffs and the Class Members.

169.   As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages and are entitled to injunctive relief pursuant to 12 V.I.C. § 190(a).

## COUNT III

## ABNORMALLY DANGEROUS CONDITION

### (Against All Defendants)

170.    Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

171.   The actions of Defendants as set forth herein constitute maintaining an abnormally dangerous condition.

172.   The Refinery is located just south of certain residential communities, including the community in which Plaintiffs reside or work. Further, the natural resources of the U.S. Virgin Islands are particularly sensitive and precious.

173.   Defendants Arclight, EIG and Freepoint, were "hands-on" in the acquisition, rehabilitation, permitting, and operation of the Limetree Bay Facility. Through Defendants' Arclight, EIG and Freepoint's subsidiaries, including

48

Defendants Limetree Bay Ventures, Limetree Bay Holdings, Limetree Bay Refining and Limetree Bay Terminals, Defendants bought the Limetree Bay Facility out of the HOVENSA bankruptcy, made repairs and retrofits to the Refinery, sought permitting and waiver of the significant HOVENSA fine levied by the EPA as a means to protect the St. Croix community, and operated the Refinery.

174.  Defendants' use, storage, refining, and/or disposal of oil and other chemicals, toxins and particulates was solely for Defendants' business purposes.

175.  Defendants knew and understood that there was a high risk that the oil and other chemicals, toxins and particulates could contaminate nearby neighborhoods, including the risk of contaminating the only other source of clean water for residents, and thereby cause residents personal injuries and property damage, including but not limited to the diminution of value.

176.  Defendants' use, storage, refining and/or disposal of oil and other chemicals, toxins and particulates at the Refinery did in fact cause serious harm to Plaintiffs' and Class Members' person, chattel and property, including both real and personal property.

177.  As a direct and proximate result of Defendants' conduct as set forth herein, Plaintiffs and Class Members have suffered damages.

## COUNT IV

### RESPONSE COSTS UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT

### (Against Defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC (d.b.a. Ocean Point Terminals))

178.  Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

179.  The Refinery is a "facility" within the meaning of 42 U.S.C. § 9601(9).

180.   Each Defendant is (1) a current owner or operator of the Refinery; (2) a former owner or operator of the Refinery at the time the hazardous substances described herein were released; (3) a generator or other party who arranged for disposal of hazardous substances at the Refinery; and/or (4) a transporter of hazardous substances to the Refinery pursuant to 42 U.S.C. § 9607(a).

181.   Defendants have "released" or "threatened release[s]" into the environment of hazardous substances, as defined by 42 U.S.C. § 9601(14), from the facility within the meaning of 42 U.S.C. § 9607(a), including but not limited to H2S, polycyclic organic matter (a listed hazardous air pollutant pursuant to 42 U.S.C. § 7412), including naphthalene (same), waste, oils and other hazardous substances.

182.   To the extent regulated, such releases were in violation of Defendants' Title V Permit and other requirements of the Clean Air Act, and therefore unpermitted.

183.   As a result of the release of hazardous substances from the Refinery, Plaintiffs and Class Members have incurred response costs consistent with the national contingency plan. Response costs include testing and cleaning costs, and the cost to purchase bottled water.

184.   Plaintiffs and Class Members have suffered harm as a result of these releases and are entitled to declaratory judgment, injunctive relief and response costs incurred as a result thereof.

## COUNT V

## PUBLIC NUISANCE

### (Against All Defendants)

185.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

186. The actions of Defendants constitute a public nuisance as defined under 14 V.I.C. § 1461.

187. Specifically, Plaintiffs' and Class Members' homes, bodies, and emotional well-being have been damaged by Defendants' release of oil and other injurious chemicals, toxins and particulates into their neighborhoods. However, the public at large has not endured such damages.

188. Plaintiffs and the Class are entitled to damages as a result thereof.

189. Moreover, Plaintiffs and the Class are further entitled to an injunction requiring Defendants to cease and desist all activities that result in the release of pollutants, and further to an injunction requiring Defendants to remove and remediate all pollutants that have been allowed to escape Defendants' premises.

## COUNT VI

### PRIVATE NUISANCE/TRESPASS

### (Against All Defendants)

190. Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

191. Defendants' actions constitute a private nuisance and/or a trespass.

192. Defendants' discharge of oil and other chemicals, toxins and particulates into Plaintiffs' and Class Members' residences and other properties interfered with Plaintiffs' and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties and caused personal injuries.

193. By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

194.  As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VII

## STATUTORY PRIVATE NUISANCE

### (Against All Defendants)

195.  Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

196.  Defendants' actions constitute a private nuisance in violation of 28 V.I.C. § 331.

197.  Defendants' discharge of oil and other chemicals, toxins, and particulates into Plaintiffs' and Class Members' residences and other properties, interfered with Plaintiffs' and Class Members' use and enjoyment of their homes and properties, damaged their homes and properties and caused personal injuries.

198.  By so doing, Defendants have wrongfully and unreasonably interfered with Plaintiffs' and Class Members' private use and enjoyment of their homes and properties.

199.  As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT VIII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

200.  Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

201.   The actions of Defendants negligently inflicted emotional distress on Plaintiffs and Class Members.

202.   Defendants owed Plaintiffs and Class Members a duty of care to ensure that they did not suffer from serious emotional distress, which duty arose by operating an abnormally hazardous condition, through the common law, and through statutory and regulatory obligations to prevent hazardous material from escaping from the Refinery.

203.   Defendants breached their duty to Plaintiffs and the Class.

204.   As a direct and proximate result of Defendants' breach, Plaintiffs and Class Members have suffered severe emotional injury.

205.   As a result, Plaintiffs and the Class have been damaged as alleged herein.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants)

206.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

207.   The actions of Defendants constitute the intentional infliction of emotional distress on Plaintiffs and Class Members.

208.   In the Virgin Islands, a claim of IIED requires a showing that a party: (1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

209.   Defendants know and understand that exposure to discharge of oil and other chemicals, toxins and particulates and other particulates and hazardous substances presented and continues to present serious risks to the health and property of thousands of St. Croix residents.

210.   Defendants knew that before Defendants' ownership, control, and operation of the Limetree Bay Refinery, the property was owned and operated by HOVENSA, LLC, a joint venture between Hess Corporation and Petroleos de Venezuela, the national oil company of Venezuela, and before that by HOVIC, a wholly-owned subsidiary of the Hess Corporation formerly known as Amerada Hess.

211.   Defendants knew that under HOVIC and HOVENSA, the Refinery exceeded allowable emissions of known harmful substances, including nitrogen oxide, sulfur dioxide, volatile organic compounds and benzene.

212.   Defendants knew that in 2011, investigators discovered that the pipes carrying the Refinery's waste product had been corroding, slowly leaking more than 43 million gallons of oil into the island's largest aquifer.

213.   Defendants knew that as a result of the massive leak, the EPA ordered HOVENSA to pay civil penalties of more than $5 million and to spend more than $700 million in new pollution controls to protect the public health and resolve Clean Air Act violations in St. Croix. The EPA required HOVENSA to implement new and upgraded pollution controls, more stringent emission limits and aggressive monitoring, and leak detection and repair practices to reduce emissions from refinery equipment and process units.

214.   Defendants knew that instead of paying its fines and undertaking the required improvement projects, the Hess Corporation shut down the HOVENSA facility in 2012.

54

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

215.   Defendants knew of the history of prior emissions at the Refinery and their impact on the community.

216.   Defendants knew or should have known that the Refinery was not in a proper condition to reopen, and that the start-up would result in discharges and dangers to Plaintiffs and Class Members.

217.   As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members suffered severe emotional injury.

## COUNT X

### PIERCING OF THE CORPORATE VEIL AND ALTER EGO

**(Against Defendants Limetree Bay Ventures, LLC; Limetree Bay Holdings, LLC; Limetree Bay Preferred Holdings, LLC; Limetree Bay Refining, LLC; Limetree Bay Terminals, LLC (d.b.a. Ocean Point Terminals); Arclight Defendants; EIG Global Energy Partners, LLC; and Freepoint Commodities, LLC)**

218.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

219.   Plaintiffs ask that this Court pierce the corporate veil and find that Defendants Limetree Bay Ventures, Limetree Bay Holdings, Limetree Bay Preferred Holdings, Limetree Bay Refining, Limetree Bay Terminals, Arclight, EIG, and Freepoint are jointly and severally liable.

220.   First, Limetree Bay Refining and Limetree Bay Terminals operated as mere alter egos of each other. For example, Limetree Bay Refining and Limetree Bay Terminals were parties to a Shared Services Systems Agreement ("Agreement") pursuant to which both entities "share[d] services (e.g., water, power, wastewater, etc.), facilities (e.g. on-site office space, employee housing, parking lots, etc.),

employees, and insurance coverage."[65] Additionally, Limetree Bay Refining and Limetree Bay Terminals had a single Health, Safety and Environmental ("HSE") Department that served the *entire* facility. This sharing of services, assets and personnel resulted in an excessive comingling that far exceeds any norms that characterize a sister-company relationship.

221. In addition to agreeing to share costs, employees and a HSE Department, Limetree Bay Refining and Limetree Bay Terminals also blurred all physical separation between the two entities by sharing property as well. The two entities reciprocally conveyed an undivided interest of all properties and facilities owned by each entity to the other entity, such that each entity "jointly own as tenants in common" all properties and facilities owned by both entities.[66]

222. Upon information and belief, Limetree Bay Terminals also siphoned funds from Limetree Bay Refining by way of charging Limetree Bay Refining nearly $5.5 million in "storage costs" each month for storage at a facility that both entities shared and co-owned.

223. Plaintiffs accordingly assert that the legal separateness of Limetree Bay Refining and Defendant Limetree Bay Terminals ceased to exist and that honoring the corporate fiction would result in an injustice.

224. Further, at various times between the purchase of the Refinery out of the HOVENSA bankruptcy and the restart of refinery operations in early 2021, Limetree Bay Ventures, Limetree Bay Preferred Holdings and Limetree Bay

---

[65] Declaration of Mark Shapiro in Support of Chapter 11 Petitions and First Day Motions at p. 9-10 ¶ 26, *In re Limetree Bay Refining*, No. 21-32351 (Bankr. S.D. Tex. July 12, 2021).

[66] *See* Objection and Reservation of Rights to Debtors' Emergency Motion for Entry of Interim and Final Orders at p. 5, *In re Limetree Bay Refining*, No. 21-32351 (Bankr. S.D. Tex. July 31, 2021).

Holdings functioned as mere holding companies of Limetree Bay Refining and Limetree Bay Terminals. Limetree Bay Ventures, Limetree Bay Preferred Holdings and Limetree Bay Holdings served no separate existence or function outside of the corporate interests of Limetree Bay Refining and Limetree Bay Terminals.

225.   Limetree Bay Ventures and Limetree Bay Holdings failed to maintain corporate formalities and acted as a mere alter ego of its subsidiaries, as evidenced by, upon information and belief, the companies': (i) maintenance of insurance coverage for the Refinery, (ii) lack of employees and (iii) shared officers with Limetree Bay Refining and Limetree Bay Terminals.

226.   Upon information and belief, Arclight and Freepoint have a majority equity interest in Limetree Bay Ventures and Limetree Bay Holdings, the holding companies of Limetree Bay Refining and Limetree Bay Terminals during the relevant time period giving rise to this Complaint.

227.   Upon information and belief, Arclight and/or Freepoint and/or EIG, through their investment and ownership in Limetree Bay Holdings, LLC, were the primary entities involved in the purchase of the Limetree Bay Facility and all negotiations with the EPA, including waiving fines from the HOVENSA environmental disaster and securing the issuance of permits to Limetree Bay Facility for operation. Arclight, EIG and Freepoint avoided a re-permitting process that would have revealed serious deficiencies in the Refinery by securing grandfathered permits previously issued to HOVENSA. These actions were essential to the doomed restart of the Refinery.

228.   Arclight, Freepoint and EIG dominated and controlled the Limetree Bay Facility through a mere corporate façade. Upon information and belief, Arclight, Freepoint and EIG were the primary entities responsible for capitalizing, and profiting from, the recommissioning of the Limetree Bay Facility. The entities

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

operating the Limetree Bay Facility—Limetree Bay Ventures, Limetree Bay Holdings, Limetree Bay Refining and Limetree Bay Terminals—were set up as entities merely existing to create layers of separation between Arclight, Freepoint and EIG because of the history of environmental disasters at the Refinery. The separation of these entities is fictitious and an abuse of the privilege of incorporation.

229.  Arclight, EIG and Freepoint woefully undercapitalized the refurbishment and recommissioning of Limetree Bay Facility, specifically the Refinery, for an undertaking of its magnitude. The entity's undercapitalization is evidenced by, among other things, the four significant environmental disasters that occurred in less than four months of operation (one occurring in the first four days of operation), the wholly inadequate staffing at the Refinery in the short time it operated, particularly in the Health, Safety, and Environmental Department, and the Refinery's current deplorable condition. Arclight, EIG and Freepoint intentionally incurred risk that the Refinery would cause more environmental damage to the neighboring community, fully knowing that Limetree Bay Ventures, Limetree Bay Preferred Holdings, Limetree Bay Holdings, Limetree Bay Refining and Limetree Bay Terminals were undercapitalized and could not support such an operation.

230.  Upon information and belief, Arclight, EIG and Freepoint were directly involved in the decision to continue Refinery operations after the first, second, third *and fourth* Incidents. After each environmental disaster, Arclight, EIG and Freepoint had the opportunity to comprehensively evaluate the safety of continued Refinery operations, as expected in operational best practices of environmental management. Despite the clear warnings that the facility was not safe, and should not be operated, Arclight, EIG and Freepoint refused to close operations and instead continued to serve their own profit motives. Any stateside refinery would have been immediately

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

shut down after just *one* of these toxic incidents. The Refinery operations were not restricted until so ordered by the EPA—after the occurrence of *four* toxic incidents.

231.   Based on the foregoing, Plaintiffs are entitled to a determination that the Defendants' corporate existence is a sham and that Defendants Limetree Bay Ventures, Limetree Bay Holdings, Limetree Bay Preferred Holdings, Limetree Bay Refining, Limetree Bay Terminals, Arclight, EIG, and Freepoint are each directly liable to Plaintiffs for the harms that occurred as a result of their purchase, undercapitalization, restart, operation and ownership of the Refinery.

## COUNT XI

## PUNITIVE DAMAGES

### (Against All Defendants)

232.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

233.   From Defendants' acquisition of the Limetree Bay Facility to Defendants' formation and operation of the Facility, Defendants knew and understood the high risk that oil and other chemicals, toxins and particulates could contaminate nearby neighborhoods and cause residents' significant personal injuries and property damage.

234.   Moreover, Defendants knew that the residents of the areas surrounding the Refinery are predominately low-income and people of color, who are already disproportionately affected by environmental burdens and that, as the EPA recognized, "[t]hese disproportionate burdens present environmental justice concerns." [67] Defendants are serial offenders in this regard—Arclight has incurred millions in penalties for environmental violations, with minorities accounting for

---

[67] https://www.epa.gov/newsreleases/epa-notifies-limetree-bay-clean-air-act-violations, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

more than 35% of the impact of those violations.[68] With the Refinery, Defendants acted with the same indifference to the livelihoods of the vulnerable, minority populations harmed by its operations. Although Defendants knew that the operation of the Limetree Bay Facility was unsafe, as evidenced by four environmental disasters in four months, including one occurring less than four days after the reopening of the Refinery, and despite communication from the government and residents of these concerns, Defendants continued to operate the Refinery to serve Defendants' own profit motives.

235.  Defendants continued Refinery operations after the first, second, third *and fourth* Incidents. After each event, Defendants had the opportunity to comprehensively evaluate the safety of continued Refinery operations. Despite the clear warnings that the facility was not safe and should not be operated, Defendants refused to close or limit operations and instead continued to serve their own profit motives. Any stateside refinery would have been immediately shut down after just *one* of these toxic incidents, as such events are unprecedented for refinery operations. However, the Refinery operations were not restricted until so ordered by the EPA—after the occurrence of *four* toxic incidents. Defendants' failure to adequately assess the safety of continued operations demonstrates the worst practice imaginable in such a situation.

236.  Defendants continuously failed to appropriately warn the public and publicly minimized serious chemical releases that endangered the health of Plaintiffs.

---

[68]https://grconnect.com/tox100/ry2018/index.php?search=yes&company1=535&chemfac=chemfac&advbasic=adv&sortp=city, (last accessed Jan. 5, 2023).

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

237.   Defendants pursued this course of conduct with an evil motive or, at minimum, a reckless indifference to the injuries and damages that could be caused, meriting an award of punitive damages in an amount to be proven at trial.

## INJUNCTION TO SUPPLY WATER

### (Against Defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC (d.b.a. Ocean Point Terminals))

238.   Plaintiffs' allegations are incorporated by reference as though fully set forth herein.

239.   The water supply on St. Croix is limited and many people rely on cisterns at their homes or businesses to collect and access safe, clean, potable water for drinking and other uses such as bathing and cooking.

240.   The actions of Defendants, or entities for which Defendants are responsible, contaminated with Toxins and contaminants the roofs and gutters and pipings that collect water for the cisterns and the cisterns and other sources supplying water to the residents of St. Croix, including Plaintiffs and Class Members.

241.   Despite almost two years having passed since the toxic discharges, the Defendants or entities for which Defendants are responsible, have made little or no efforts to clean the roofs, gutters, piping, and clean and seal the cisterns or taken other actions to remedy the effects of the toxic discharges.

242.   Today, the residents of St. Croix, including Plaintiffs and Class Members, are still without adequate supply of clean, safe, potable water, as a direct and proximate cause of Defendants' actions.

243.   In light of the harm caused by Defendants to the water supply in St. Croix, supposedly as a temporary solution, Limetree Bay Refining, LLC and Defendant Limetree Terminals, agreed, in the Limetree Bay Refining Bankruptcy,

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No.** *1:21-cv-00253*
*First Amended Complaint*

to supply clean, safe, potable water to the residents of St. Croix pursuant to a stipulation between Defendants and Plaintiffs.

244.   Pursuant to a stipulation entered October 29, 2021 by the United States Bankruptcy Court for the Southern District of Texas, that program was expanded to include additional communities and distribution centers.

245.   But soon after this stipulation was entered, Defendants began to reduce the amounts of water available and the hours during which that water was distributed.

246.   Ultimately, these reductions resulted in a total cessation of the water program (without court order or approval) as of September 30, 2022.  Plaintiffs and Class Members whose cisterns were contaminated by the releases therefore have no way to access safe, clean, potable drinking water.

247.   Safe, clean, potable water is essential to human health and unless Defendants are enjoined by this Court to continue to provide an adequate supply of safe, clean, potable water to the residents of St. Croix, Plaintiffs and Class Members will be irreparably harmed by Defendants' contamination of the limited sources of water on St. Croix.

248.   Further, the process of continuously having to drive to a location and wait in line every other day for a meager amount of water cannot continue and the underlying cause of the Plaintiffs' and other Class Members inability to have potable water—their contaminated cisterns—must be remedied expeditiously by Defendants.

249.   There are ample funds available to continue the program and to remediate Plaintiffs and Class Members' cisterns, both through the insurance policies available to Defendant Limetree Bay Refining and through Limetree Bay Terminals' resources.

*Boynes et al. v. Limetree Bay Ventures, LLC*
*Case No. 1:21-cv-00253*
*First Amended Complaint*

250.   Because there is a reasonable probability that Plaintiffs and Class Members will prevail on the merits of their negligence per se claim and their claim for statutory private nuisance; Plaintiffs and Class Members will undoubtedly suffer irreparable harm without clean, safe, potable drinking water; granting preliminary relief will not cause any material harm to Defendants (who can afford to continue the water program and remediate cisterns); and because the public interest undoubtedly favors the provision of clean, safe, potable drinking water, Plaintiffs and Class Members are entitled to an injunction requiring Defendants Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC to continue to fund the water program and to remediate cisterns contaminated by their conduct.

251.   Because Plaintiffs and Class Members are predominantly low-income residents of St. Croix, the imposition of the bond requirement set forth by Federal Rule of Civil Procedure 65(c) would impose undue hardship on them, and such requirement should therefore be waived in accordance with the Rule.

## VII.   RELIEF REQUESTED

252.   Plaintiffs and members of the putative Class seek the following relief:

a.) An order naming Plaintiffs' counsel as lead counsel for this matter and any other related or consolidated matters;

b.) An order approving Class Representatives as named herein as Lead Plaintiffs for this matter and any other related or consolidated matters;

c.) Damages;

d.) Response costs pursuant to 42 U.S.C. § 9607(a);

e.) Punitive damages where allowable;

f.) Pre- and post-judgment interest as allowed by law;

g.) Injunctive relief requiring Defendants to supply clean, safe potable water to Plaintiffs, Class Members and other residents of St. Croix,

remediate and restore the roofs, gutters, downspouts, cisterns, and other property contaminated by the Limetree Bay Refinery, or to provide the funds to provide safe, potable water to Plaintiffs and remediate Plaintiffs' and Class Members' cisterns so that potable water is again available at their residents or businesses;

h.) Declaratory judgment that Defendants are responsible for past and future costs (including response costs under 42 U.S.C. § 9607) to remedy the harm caused to Plaintiffs, Class Members and their properties;

i.) Attorneys' fees and costs pursuant to any applicable statutes and/or regulations, including but not limited to 42 U.S.C. § 7604(d), 42 U.S.C. § 7607(f), 42 U.S.C. § 9607 and 5 V.I.C. § 541; and

j.) All other relief this Court deems necessary, just and proper.

## JURY TRIAL DEMAND

253.    Plaintiffs hereby demands a jury trial for all claims so triable.

Dated: February 3, 2023                Respectfully submitted,

*/s/ Hugh Lambert*_____
Hugh Lambert (admitted *pro hac vice*)
J. Christopher Zainey (admitted *pro hac vice*)
Brian Mersman (admitted *pro hac vice*)
**LAMBERT ZAINEY SMITH & SOSO, APLC**
701 Magazine Street
New Orleans, Louisiana 70130
Telephone:  (504) 581-1750
Facsimile:  (504) 529-2931
hlambert@lambertzainey.com
czainey@lambertzainey.com

*Boynes et al. v. Limetree Bay Ventures, LLC*
**Case No.** *1:21-cv-00253*
*First Amended Complaint*

bmersman@lambertzainey.com

Kerry J. Miller (admitted *pro hac vice*)
Paul C. Thibodeaux (admitted *pro hac vice*)
E. Blair Schilling (admitted *pro hac vice*)
Rebekka C. Veith (admitted *pro hac vice*)
C. Hogan Paschal (admitted *pro hac vice*)
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone:   (504) 586-5252
kmiller@fishmanhaygood.com
pthibodeaux@fishmanhaygood.com
bschilling@fishmanhaygood.com
rveith@fishmanhaygood.com
hpaschal@fishmanhaygood.com

Jennifer Jones, Esq. (Bar No. 686)
**LAW OFFICES OF JENNIFER JONES**
9003 Havensight Mall, Ste. 319
St. Thomas, V.I. 00802
Telephone:   (340) 779-7386
Facsimile:    (340) 714-5080
jjones@vienvironmentallaw.com