**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,**<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**LIMETREE  BAY  VENTURES, LLC,  et al.,**<br>  **Defendants.** | **Civil Action No. 2021-0253** |
| **HELEN SHIRLEY, et al.,**<br>  **Plaintiffs,**<br>  **v.**<br>**LIMETREE  BAY  VENTURES,  LLC,  et al.,**<br>  **Defendants.** | **Civil Action No. 2021-0259** |
| **MARY L. MOOREHEAD, et al.,**<br>  **Plaintiffs,**<br>  **v.**<br><br>**LIMETREE  BAY  VENTURES,  LLC,  et al.,**<br>  **Defendants.** | **Civil Action No. 2021-0260** |
| **BEECHER COTTON, et al.,**<br><br>  **Plaintiffs,**<br>  **v.**<br>**LIMETREE  BAY  VENTURES,  LLC,  et al.,**<br>  **Defendants.** | **Civil Action No. 2021-0261** |

**LIMETREE BAY TERMINALS, LLC D/B/A OCEAN POINT TERMINAL'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**
**NON-PARTY LAW FIRMS TO PRODUCE NON-PRIVILEGED DOCUMENTS**
**RELATED TO LITIGATION CONCERNING RUM FUNGUS ON ST. CROIX**

Defendant, Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Terminals"), by and through undersigned counsel, submits this Memorandum of Law in Support of its Motion to Compel Non-Party Law Firms to Produce Non-Privileged Documents Related to Litigation Concerning Rum Fungus on St. Croix (Dkt. No. ), showing the Court as follows:

## INTRODUCTION

This consolidated case arises from four putative class actions filed in 2021 following four emission events ("Incidents") that occurred at the Limetree Bay Refinery ("Refinery") in St. Croix between February 2021 and May 2021.[1]  Through this motion, Terminals seeks an order from this Court compelling certain Plaintiffs' law firms that represented parties to and/or class members in lawsuits filed against Diageo USVI, LLC ("Diageo") and Cruzan Viril, Ltd. ("Cruzan") concerning rum fungus on St. Croix (collectively, the "Rum Fungus Litigation")[2] to fully and adequately respond to Terminals' Non-Party Subpoenas and produce any and all non-privileged documents related to the Rum Fungus Litigation.

The Rum Fungus Litigation, which resulted in an agreed class settlement (after the court denied plaintiffs' contested motion for class certification), concerned allegations that rum fungus and ethanol from Diageo's and Cruzan's alcoholic beverage production operations on St. Croix contaminated plaintiffs' real and personal property – some of which are the same properties that Plaintiffs herein contend were contaminated as a result of the Incidents. Prior instances of alleged environmental contamination of Plaintiffs' properties by way of rum fungus, as well as any related investigation and remediation efforts, are directly relevant to issues of class certification, causation

---

[1] The *Shirely* case (Case No. 1:21-cv-0259) was filed in the Superior Court of the Virgin Islands on May 19, 2021. The *Moorhead* case (Case No. 1:21-cv-0260) and the *Cotton* case (Case No. 1:21-cv-0261) were filed in the Superior Court of the Virgin Islands on May 20, 2021. The *Boynes* case (Case No. 1:21-cv-0253) was filed in this Court on May 21, 2021.

[2] *See e.g., Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 418 (Super. Ct. 2015); *Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 313 (Super. Ct. 2018); *In re Rum Fungus Claims*, 71 V.I. 380, 382–83, 2019 VI SUPER 127, ¶ 2 (Super. Ct. 2019).

and damages in this action. Accordingly, Terminals' requested discovery is proper under Rules 45 and 26 of the Federal Rules of Civil Procedure, and the Law Firms' refusal to produce any responsive documents whatsoever is improper.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I.     Plaintiffs' Allegations in this Consolidated Action

In their proposed Consolidated Second Amended Class Action Complaint,[3] Plaintiffs allege that the Incidents "caused harm to the Plaintiffs and Class Members," "contaminated and harmed the local water supply," and have "deprived Plaintiffs and Class Members of their free use of their real and personal property, including the ability to safely use their cisterns for potable water . . ."[4] Plaintiffs further allege that the "actions of Defendants and the Refinery poisoned the environment, homes, real property, gardens, vegetation, soil, personal property, water, cisterns, and plumbing systems of Plaintiffs and the Class, and exposed them to hazardous, toxic, and carcinogenic material that can and has caused serious bodily injury and/or death."[5] In addition, Plaintiffs contend that there is a need "for massive remediation of the pollution caused by the Refinery . . . including, without limitation, the cleaning of all affected roofs, cisterns, and plumbing systems to assure the delivery of safe water."[6]

### II.     Rum Fungus Litigation and its Relevance to this Consolidated Action.

On April 29, 2013, eight individuals, including Ryan Alleyne, a named plaintiff in this consolidated proceeding, commenced a class action "seeking damages for negligence, nuisance,

---

[3] *See* [ECF. Docket No. 985-1]. Plaintiffs' Rule 15 Motion for Leave to File Consolidated Second Amended Class Action Complaint, [ECF Docket No. 985], is currently pending before the Court.

[4] *Id.* at ¶10.

[5] *Id.* at ¶ 178.

[6] *Id.* at ¶ 184.

and trespass and injunctive relief due to the release of ethanol vapors from the rum storage facilities operated on St. Croix" by Diageo and Cruzan. *Alleyne v. Diageo USVI, Inc.*, 69 V.I. 307, 313 (Super. Ct. 2018). In that action, Plaintiffs alleged that the distillation process caused "*Baudoinia compniacensis* ("Baudoinia"), sometimes referred to as rum fungus, to grow on their homes and on vegetation surrounding their homes." *In re Rum Fungus Claims*, 71 V.I. 380, 382–83, 2019 VI SUPER 127, ¶ 2 (Super. Ct. 2019) (citing *Alleyne*, 69 V.I. 307 at 313). In their complaint, plaintiffs, among other claims, alleged that "[a]s a direct and proximate result of the Defendants' reckless or negligent conduct . . . rum fungus and ethanol from Defendants' St. Croix alcoholic beverage production operations entered upon, accumulated upon, and physically invaded Plaintiffs' real and personal property ... causing harm ..." *Alleyne v. Diageo USVI, Inc.*, 63 V.I. 384, 418 (Super. Ct. 2015) (citing Compl. ¶ 130). Ultimately, the litigation resolved pursuant to a class action settlement.[7]

A key issue in the present litigation relates to alleged contamination of cisterns and Plaintiffs' properties, which was also at issue in the Rum Fungus Litigation. Documents regarding prior alleged environmental contamination of Plaintiffs' properties, and the investigation and remediation of same, is directly relevant to issues of causation and Plaintiffs' purported damages. Given the inevitable overlap between the plaintiffs, class members, and properties in the Rum Fungus Litigation with the plaintiffs and properties in this consolidated proceeding, Terminals sought discovery concerning the Rum Fungus Litigation -via the process that would be the least invasive to the Plaintiffs and the putative class- through subpoenas to the law firms for the plaintiffs

---

[7] After several attempts to certify a class, the Plaintiffs withdrew their class allegations. The former putative class members moved to intervene and approximately 150 individuals were added as party-plaintiffs. The court later dismissed everyone but the first-named plaintiff, Ryan Alleyne, and ordered the remaining Plaintiffs to refile individual complaints. Ultimately, one hundred and twenty cases were filed. *See In re Rum Fungus Claims*, 71 V.I. 380, 382–83, 2019 VI SUPER 127, ¶ 2 (Super. Ct. 2019).

in the Rum Fungus litigation. More specifically, on or about January 21, 2025, Terminals served

Notices of Intent to serve subpoenas to Colianni & Leonard LLC, The Pate Law Firm, and Burns

Charest, LLP (the "Law Firms"), requesting production of:

1. The entire case file(s) related to all litigation concerning *baudoinia compniacensis* (commonly referred to as "Rum Fungus"), excluding materials protected by the attorney-client privilege and/or the attorney work-product doctrine. The requested documents include, but are not limited to:

   a. All non-privileged correspondence, including communications with third parties;

   b. Pleadings, motions, and other court filings;

   c. Discovery requests and responses, including all documents produced therewith;

   d. Any other exhibits, evidence, or materials filed or exchanged between the parties or third parties, including the results of any testing performed;

   e. Non-privileged expert reports, opinions, and materials;

   f. The operative class action settlement agreement; and

   g. Mailers and publications sent to potential class members, along with the list(s) of addresses to which they were distributed.

   True and correct copies of the subpoenas are attached hereto as Exhibit 1.

On or about February 4, 2025, the Law Firms served objections to the Notices of Intent,

generally claiming that the requested documents are irrelevant, publicly available and/or covered

by a  Protective Order entered in the Rum Fungus Litigation. (A true and correct copy of the

Objections is attached hereto as Exhibit 2). On or about February 5, 2025, counsel for Terminals

spoke with counsel regarding the subpoenas and followed up with an email stating that the non-

party subpoenas were proper and requesting that the Law Firms accept service. On or about

February 12, 2025, one of the Law Firms, Colianni & Leonard, served nearly identical objections

to the subpoena.  (A true and correct copy of this objection is attached hereto as Exhibit 3). Between February 5 and February 24, 2025,  counsel for Terminals exchanged several emails with Daniel Charest of Burns Charest, LLP, one of the Law Firms in that litigation and also counsel for the Plaintiffs here, in an effort to resolve the dispute without resorting to motion practice. (A true and correct copy of this email chain is attached hereto as Exhibit 4). The Law Firms still refused to provide any of the requested documents, thus necessitating this motion.

## ARGUMENT AND CITATION TO AUTHORITIES

### I.      Legal Standard.

Rule 26 of the Federal Rules of Civil Procedure states in pertinent part:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*See* FED. R. CIV. P. 26. "It is well established that Rule 26 of the Federal Rules of Civil Procedure allows a very broad scope of discovery." *Williams v. Cost U Less, Inc.*, No. 1:11-CV-00025, 2013 WL 12170641, at *2 (D.V.I. Mar. 8, 2013).

When a non-party is served with a proper subpoena, it is obligated to produce responsive documents in its "possession, custody or control." Fed. R. Civ. P. 45(d)(1). A recipient of a subpoena may object in writing to the discovery demand, and upon receipt of an objection, the issuing party "may move the issuing court for an order compelling production or inspection." *Id.* at 45(c)(B); *See also, Clarke v. Marriott Intern., Inc.,* No. 1:08-cv-86, 2010 WL 520819 (D.V.I. Feb. 10, 2010). A court determining whether to enforce a subpoena and compel the production of documents considers "the relevance and scope of the requested information." *Coactiv Capital*

*Partners, inc. v. Printfacility, Inc.,* Civil Action No. 12-00235 (KSH), 2013 WL 4008904, \*2 (D.N.J. Aug. 5, 2013).

## II.    The Requested Rum Fungus Litigation Materials are Directly Relevant to Plaintiffs' Claims and Proportional to the Needs of this Action.

This Court should enter an order compelling the Law Firms to produce non-privileged documents responsive to Terminals' Subpoenas seeking documents related to the Rum Fungus Litigation. It is well-settled that, under the Federal Rules of Civil Procedure, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The primary complaint in the Rum Fungus Litigation was that *Baudoinia compniacensis*, an allegedly harmful black fungus, accumulated on <u>roofs and cisterns</u> of the Plaintiffs and class members. In the Rum Fungus Litigation, plaintiffs alleged that "rum fungus and ethanol from Defendants' St. Croix alcoholic beverage production operations entered upon, accumulated upon, and physically invaded Plaintiffs' real and personal property ... causing harm ..."

Ryan Alleyne, the first-named plaintiff in the Rum Fungus Litigation, is also a plaintiff in this action, which likewise involves allegations that Plaintiffs' properties—located in geographic areas that overlap with those previously impacted by rum fungus—were contaminated as a result of the Incidents and require remediation, including "the cleaning of all affected roofs, cisterns, and plumbing systems to assure the delivery of safe water."

During his deposition, Mr. Alleyne testified at length regarding the impact of the rum fungus on his property. Mr. Alleyne stated that the damages to his property included "black stuff

on the roof of the property."[8] He further claimed that the quality of the water in his cistern was affected because the "black stuff . . . was coming down through the downspouts and getting into the cistern."[9] He also testified that he tried to "power-wash" the black fungus but it "wouldn't come off because it embedded into the paint," and that he "paint[ed] over" the black fungus."[10]

Similarly, Alvina Ilarraza, a named plaintiff in this action, also claims to have suffered damages from the rum fungus, up until the present day. During her deposition, she testified that "there is always some black stuff – you know, it's still there because every time you try to clean it, it comes back, you know. You know, it's really harassing with the black stuff, yeah."[11] She further testified that the "black stuff" was on her cistern and she decided that the "continuous black stuff" was from the Cruzan Rum and that it is still on her house and cistern to date.[12] Ms. Ilarraza filed a claim and received compensation under the Rum Fungus Litigation settlement in connection with her claims for property contamination. She used that money to "take care of my mom."[13] She is now suing Terminals and others to have that same property cleaned.

While rum fungus and petroleum are different, both have been alleged to contaminate roofs and cisterns of the same plaintiffs in the same geographic areas, leading to similar claims for remediation. If, for example, individuals in these areas previously claimed their roofs and cisterns were contaminated but failed to remediate or continued using their cisterns for drinking water, that fact is directly relevant to the claims and defenses in this case. It bears directly on the issue of

---

[8] *See,* cited excerpts of Deposition Transcript of Ryan Alleyne, dated March 12, 2025, p. 36, attached hereto as Exhibit 5.

[9] *Id.* at p. 38.

[10] *Id.* at pp. 39 and 40.

[11] *See,* cited excerpts of Deposition Transcript of Alvina Ilarraza, dated April 11, 2025, at pp. 26-27, attached hereto as Exhibit 6.
[12] *Id.* at pp. 27-31.
[13] *Id.*

causation and whether Plaintiffs, or any of the putative class members, can establish that the Incidents at issue caused their alleged damages,  either individually or on a classwide basis.

Moreover, any additional overlapping plaintiffs or class members between the Rum Fungus Litigation and this litigation will be witnesses with relevant information. *See, e.g.*, *Green v. Cosby*, 314 F.R.D. 164 (E.D. Pa. 2016) (denying motion to quash subpoena for files of previous litigation, where files contained information about potential witnesses). These are just a couple of the many ways in which the requested materials are likely to lead to relevant, admissible evidence.

In short, prior incidents of roof and cistern contamination—involving at least some of the same individuals in the same geographic area as the purported putative class who recovered damages— are discoverable.

Evidence related to prior contamination and remediation of the same properties at issue here is relevant to the issue of causation and Plaintiffs' damages claims. *See e.g.*, *Seahorn Investments, L.L.C. v. Federal Insurance Company,* Civil Action No. 1:13-cv-320-HSO-RHW, 2015 WL 12912341 (S.D. Miss. April 8, 2015) (denying motion to quash expert documents related to prior litigation relating to damage and remediation of apartment buildings, finding that under the "broad definition of relevance as it pertains to discovery" the reports relating to "how pre-existing damage and remediation efforts are measured" were relevant to subsequent suit on damage and remediation to another apartment building). It is also relevant to class certification issues, in that other potential sources of alleged contamination creates individualized questions of causation. *See, Lloyd v. Covanta Plymouth Renewable Energy, LLC,* 585 F.Supp.3d 646, 658 (E.D. Pa. 2022) (other potential sources of alleged offensive odor precluded certification because "the presence of these alternative odor sources invites individualized inquiries into causation.")

Moreover, Terminals' request is proportional to the needs of this case. Plaintiffs claim that

certain properties previously impacted by rum fungus were contaminated by Defendants in this proceeding. The discovery sought is proportional to both the amount in controversy and the damages alleged, as Plaintiffs seek hundreds of millions of dollars in personal injury and property damages allegedly caused by the Incidents, and they recently filed a Preliminary Approval Motion [ECF Docket No. 1098] seeking approval to settle with certain defendants for $17,500,000.00. The Defendants are incurring millions of dollars in discovery related expenses to respond to these very Plaintiffs' requests (via the same counsel that has refused to produce relevant documents from the other litigation where they sought to recover for the same cleanup costs) and Terminals alone has produced hundreds of thousands of documents.

The Law Firms possess documents concerning the Rum Fungus Litigation that are not publicly available. Considering the importance of this discovery in resolving the issues, and weighing the burden or expense against its likely benefit, these factors strongly favor production. The requested materials may reveal the source, if any, of the alleged contamination of Plaintiffs' cisterns and real property, and whether such contamination was properly remediated. This information is critically important to the resolution of key issues and is likely to yield significant benefit in assessing causation, mitigation, and the extent of damages. Moreover, such information is typically readily available electronically.

Accordingly, Terminals has demonstrated that its discovery request is both relevant and proportional to the needs of this proceeding, and the Law Firms should be compelled to produce all non-privileged documents relating to the Rum Fungus Litigation.[14]

### III.    Terminals is Not Required to Obtain These Documents from Plaintiffs or Defendants in the Rum Fungus Litigation.

---

[14] As conveyed to the Law Firms during the meet and confer process, Terminals is not seeking production of duplicative materials; to the extent one of the Law Firms produces responsive documents, the others need not produce duplicative materials.

In their objections and during the parties' meet and confer, the Law Firms asserted that Terminals is required to obtain this information directly from the Rum Fungus Plaintiffs or Defendants, not the Law Firms. But Rule 45 makes clear that a person or entity subject to a subpoena is required to produce materials in that person's *possession, custody, or control*. There is no "ownership" requirement. *See, Highland Tank & Mfg. Co. v. PS International, Inc.,* 227 F.R.D. 374, 379 (W.D. Pa. 2005) (noting that Rule 45 requires that "the documents subpoenaed [be] within the control of the nonparty witness."); *Ceuric v. Tier One, LLC,* 325 F.R.D. 558, 561 (W.D. Pa. 2018) ("Rule 45 does not require a party to demonstrate that information cannot be obtained from another party before subpoenaing it from a third party. Rather, it requires that 'the documents subpoenaed [be] within the control of the nonparty witness.'")  Indeed, subpoenas for case files— excluding attorney-client communications and attorney work-product—from past lawsuits are not uncommon. *See, e.g.*, *Green*, 314 F.R.D. at 173; *Detrick v. Costa*, No. 4:06-cv-01556, 2012 WL 5421793 (M.D. Pa. 2012); *AP Links, LLC v. Russ*, 299 F.R.D. 7 (E.D.N.Y. 2014).

## CONCLUSION

Wherefore, Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals requests that the Court grant its motion and enter an order compelling the Law Firms to produce any and all documents responsive to Terminals' subpoena, and awarding it attorney's fees and costs for making this motion. A proposed Order is submitted herewith.

Respectfully Submitted,

**Beckstedt & Kuczynski LLP**

Dated: May 13, 2025

*/s/ Carl A. Beckstedt III*
Carl A. Beckstedt III, Esq.
VI Bar No. 684
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, St. Croix

U.S. Virgin Islands 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
carl@beckstedtlaw.com


**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

Dated: May 13, 2025

*/s/ Shubhra R. Mashelkar*

Shubhra R. Mashelkar
Ga. Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant Limetree Bay Terminals, LLC*