## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| **CLIFFORD BOYNES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0253** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| —————————————————— | ) | |
| | ) | |
| **HELEN SHIRLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0259** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| —————————————————— | ) | |
| | ) | |
| **MARY L. MOORHEAD, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0260** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| —————————————————— | ) | |
| | ) | |
| **BEECHER COTTON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 2021-0261** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| —————————————————— | ) | |

## MEMORANDUM OPINION

**Lewis, Senior District Judge**

THIS MATTER comes before the Court on Dismissing Plaintiffs'[1] "Notice of Voluntary Dismissal Without Prejudice of Certain Named Plaintiffs" ("First Notice") (Dkt. No. 904)[2]; Plaintiff Sylvia Browne's ("Plaintiff Browne") "Notice of Voluntary Dismissal Without Prejudice of Named Plaintiff Sylvia Browne" ("Second Notice") (Dkt. No. 987); Striking Defendants'[3] "Motion to Strike Plaintiffs' Notice of Voluntary Dismissal Without Prejudice of Certain Named Plaintiffs" ("First Motion to Strike") (Dkt. No. 924[4]); Striking Defendants' "Motion to Strike Plaintiff Sylvia Browne's Notice of Voluntary Dismissal Without Prejudice" ("Second Motion to Strike") (*Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Mar. 12, 2025), Dkt. No. 1042[5]); Dismissing Plaintiffs' "Alternative Motion to Dismiss Certain Named Class

---

[1] The Dismissing Plaintiffs are: Aaron Maynard, Chris Christian, Joan Mathurin, Josie Barnes, Myrna Mathurin, O'Shay Wells, Rosalba Estevez, Rochelle Gomez, Anisha Hendricks, Arleen Miller, Verne McSween, Beecher Cotton, Pamela Colon, Anna Rexach-Constantine, Carlos Christian, Cesarina Miranda, Warrington Chapman, Neal Davis, Mervyn Constantine, Ann Marie John-Baptiste, Leoba John Baptiste-Pelle, and Minor Children J.M.M., V.M., Z.R.C., and M.M.

[2] All docket numbers, unless noted otherwise, refer to the designated lead docket for the consolidated action, *Boynes v. Limetree*, No. 21-cv-0253. (Dkt. No. 526 at 3, n.2).

[3] The Striking Defendants are: Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("Terminals"), Limetree Bay Ventures, LLC ("LBV"), EIG Global Energy Partners, LLC ("EIG"), Elite Turnaround Specialists, Ltd. ("Elite"), Pinnacle Services, LLC ("Pinnacle"), Versa Integrity Group, Inc. ("Versa"), National Industrial Services, LLC ("NIS"), BP Products North America, Inc. ("BPPNA"), Excel Construction & Maintenance VI, Inc. ("Excel"), and Universal Plant Services (VI), LLC ("UPS").

[4] The Court has ordered that "all filings in any of the consolidated cases shall be filed on the lead docket and then spread to the remaining dockets." (Dkt. No. 526 at 3). The Court notes that the First Motion to Strike was inexplicably filed only on the *Boynes* docket. The Court again reminds the parties to file documents as directed.

[5] Similar to the First Motion to Strike, the Court notes that the Second Motion to Strike was inexplicably filed only on the *Cotton* docket. The Court again reminds the parties to file documents as directed.

Representatives Without Prejudice" ("Alternative Motion to Dismiss") (Dkt. No. 905)[6]; the "Rule 15 Motion for Leave to File Consolidated Second Amended Class Action Complaint" ("Motion to Amend") (Dkt. No. 985) filed by all Plaintiffs in the above-captioned matters ("Plaintiffs"); and Plaintiffs' "Motion for Leave to File Unredacted Document Under Seal" ("Motion to Seal") (Dkt. No. 1001).

For the reasons discussed below, the Court will deny Striking Defendants' First and Second Motions to Strike, and deny as moot Dismissing Plaintiffs' Alternative Motion to Dismiss; grant Plaintiffs' Motion to Amend; and deny as moot Plaintiffs' Motion to File Under Seal. The Court will afford Plaintiffs ten days from the date of the Order accompanying this Memorandum Opinion to file a Consolidated Second Amended Complaint ("CSAC") which incorporates the amendment to the class definition proposed by Plaintiffs in their reply brief. (Dkt. No. 1045 at 6).

## I.    BACKGROUND

This matter involves four consolidated putative class actions—the *Boynes* action filed on June 9, 2021, and the *Charles*, *Shirley*, and *Cotton* actions that were removed to federal court on June 24, 2021. These four actions allegedly arose "from the same incidents: the toxic releases from the Limetree Bay Refinery between February 2021 and May 2021, when the EPA shut down the refinery for its repeated toxic releases." (Dkt. No. 527 at 4 (citing Dkt. No. 453-1 at 7)). In the pre-consolidation phase, four groups of over forty total Plaintiffs collectively brought over nineteen differently formulated claims against over twenty defendants, with not every action asserting every claim and not every action asserting claims against each Defendant. (Dkt. No. 527 at 4). At the time of consolidation, the Consolidated Amended Complaint ("CAC")

---

[6] Plaintiff Browne joins the Alternative Motion to Dismiss should her Notice of Voluntary Dismissal be insufficient to dismiss her claims without prejudice. (Dkt. No. 987 at 2, n.1).

"incorporate[d] substantive factual and legal amendments in addition to consolidating the four current operative complaints"; "reflect[ed] additional facts that Plaintiffs [] uncovered in their ongoing investigation of th[e] matter"; "streamline[d]" and "reduc[ed] the total number of causes of action to twelve"; asserted ten of those claims uniformly against all defendants; "[did] not assert claims against some Defendants who were [previously] Defendants in some of the four actions"; and "substitute[d] a new plaintiff for the lead Plaintiff[]" in the *Charles* case. *Id.* at 6-7 (citation modified). Having concluded that Plaintiffs' request "to consolidate their actions into a single proceeding" was "within the permissible scope of consolidation authorized by Rule 42," (Dkt. No. 527 at 16-17), the Court ordered that the four putative class actions be consolidated "*for all purposes* before the District Court" (Dkt. Nos. 526 at 1; 527 at 20 (emphasis added)). The Court additionally noted in its Consolidation Opinion that courts "treat the master complaint as an operative pleading that supersedes the individual complaints"; that "[t]he master complaint, not the individual complaints, is served on defendants"; and that "[t]he master complaint is used to calculate deadlines for defendants to file their answers." (Dkt. No. 527 at 10).

Following consolidation, thirteen Defendants filed a "Joint Notice Regarding Issues to be Addressed at the March 20, 2024 Status Conference" (Dkt. No. 567), which included "a proposed schedule for the consolidated actions and identif[ied] all scheduling, case management, and discovery issues." (Dkt. No. 567 at 2). The schedule proposed deadlines for certain defendants to file answers. *Id.* at 3. At the Status Conference, both the Court and the parties repeatedly referenced responsive pleadings in the form of an answer or a motion to dismiss. (Dkt. Nos. 621 at 136-37, 147-49, 161-63, 165, 171-73, 175-76, 178-80). The parties agreed upon a deadline of May 1, 2024 for answers or motions to dismiss, *id.* at 176, which was incorporated into the Scheduling Order subsequently issued by the Court. (Dkt. No. 619 at 2). No Defendants filed an

answer. Instead, on May 1, 2024, all Defendants filed a "Joint Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint." (Dkt. No. 642).

### A.    Motions to Strike and Alternative Motion to Dismiss

Counsel for Plaintiffs informed Defendants via email on December 20, 2024 that they "intend[ed] to dismiss as Class Representatives without prejudice approximately between 15-20 of the Named Plaintiffs" under the belief that "they have an absolute right to do so under Fed. R. P. 41(a)(1)(A)(i)." Dismissing Plaintiffs then filed the First Notice on January 7, 2025 (Dkt. No. 904), in which they advised that they were dismissing themselves—twenty-five (25) of the current thirty-eight (38) named plaintiffs—as named plaintiffs under Rule 41(a)(1)(A)(i) ("Rule 41(a)(1)") of the Federal Rules of Civil Procedure, "with the goal of furthering the efficiency of this complex litigation moving forward." (Dkt. No. 904 at 1). Dismissing Plaintiffs further advised that they "will remain absent class members for the remainder of this consolidated class action." *Id.* On the same day, "out of an abundance of caution," Dismissing Plaintiffs filed the Alternative Motion to Dismiss, under Rules 41(a)(2) and 21 of the Federal Rules of Civil Procedure, to achieve the same ends as the First Notice. (Dkt. No. 905 at 1).

Striking Defendants then filed their First Motion to Strike (Dkt. No. 924) in response to Dismissing Plaintiffs' First Notice, and also filed an Opposition (Dkt. No. 923) to Dismissing Plaintiffs' Alternative Motion to Dismiss. In their First Motion to Strike, Striking Defendants argue that because three individual Defendants filed answers prior to the consolidation of the four putative class actions,[7] Dismissing Plaintiffs are no longer entitled to invoke Rule 41(a)(1) to

---

[7] Elite and NIS each filed an answer to the *Cotton* Plaintiffs' Amended Complaint, and Pinnacle filed an answer to the *Boynes* Plaintiffs' Amended Complaint. *See* Elite's Answer and Affirmative Defenses, *Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Mar. 28, 2023), Dkt. No. 327; NIS' Answer to the First Amended Class Action Complaint, *Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Apr. 3, 2023), Dkt. No. 329; Pinnacle's Answer and

voluntarily dismiss their claims.  (Dkt. No. 925 at 5-9).  However, Striking Defendants state that they "do not anticipate opposing dismissal of certain class representatives after they comply with their discovery obligations, including responding to [Striking] Defendants' discovery requests and sitting for depositions."  *Id.* at 9; Dkt. No. 923 at 16.  Accordingly, Striking Defendants ask the Court to Strike the Dismissing Plaintiffs' First Notice and deny Dismissing Plaintiffs' Alternative Motion to Dismiss "without prejudice to refile after they have complied with their discovery obligations."  (Dkt. No. 923 at 9).

Additionally, Plaintiff Browne filed a Second Notice on February 27, 2025.  (Dkt. No. 987).  Plaintiff Browne[8] gave notice that she is dismissing herself as a named plaintiff under Rule 41(a)(1) and incorporated by reference the procedural background and legal arguments set forth by Dismissing Plaintiffs in the First Notice.  (Dkt. No. 987 at 1).  Striking Defendants filed their Second Motion to Strike in response to the Second Notice filed by Plaintiff Browne, and adopted and incorporated by reference all arguments made in support of their First Motion to Strike.  *Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Mar. 12, 2025), Dkt. No. 1042 at 1-2.  Defendant Terminals and Intervenor Limetree Bay Refining, LLC ("Refining") then filed Notices to take Depositions of Dismissing Plaintiffs on April 7, 2025, not including the Dismissing Plaintiffs who are minors.  (Dkt. Nos. 1111-31).

---

Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint, *Boynes v. Limetree Bay Ventures, LLC*, No. 21-cv-0253 (D.V.I. July 11, 2023), Dkt. No. 379.

[8] Plaintiffs "acknowledge that there has been some confusion with respect to the identity of Class Representative Browne, as there is a second putative class member named 'Sylvia Browne' (Sylvia P. Browne).  However, [Plaintiffs represent that] neither Sylvia Browne nor Sylvia P. Browne wish to serve as a Class Representative in this litigation."  (Dkt. No. 986 at 2).

### B.    Motion to Amend

Plaintiffs seek leave to file their proposed Consolidated Second Amended Complaint ("CSAC"), arguing that it is "within the Court's deadline for amendments"; presents "no unfair prejudice to the Defendants"; and is "necessary to ensure the just resolution of these matters." (Dkt. No. 985 at 2). The revisions made in the CSAC are allegedly "based on information learned during discovery" or "otherwise [] on new developments" since the filing of the CAC. (Dkt. No. 986 at 2). The CSAC also "drops" the Dismissing Plaintiffs as named Plaintiffs. *Id.* at n.2. Additionally, the CSAC "renames" Intervenor Refining as a "nominal Defendant" following an Order entered by the U.S. Bankruptcy Court for the Southern District of Texas permitting them to do so with leave of this Court; "adds as an additional defendant Limetree Bay Energy, LLC, which is related to entities already named in the litigation"; "amplifies the allegations" against current Defendants EIG and BPPNA; and "further refines the [proposed] class definition." *Id.* at 2-3. Defendant Terminals filed a "Response to Plaintiffs' Motion for Leave to File Consolidated Second Amended Class Action Complaint" ("Response") (Dkt. No. 1021) which "object[ed] to Plaintiffs' removal of 26 Named Plaintiffs," but otherwise did "not oppose" or took "no position" as to the other amendments. (Dkt. No. 1021 at 2-4). EIG and LBV filed a joint "Response to Plaintiffs' Motion for Leave to File Consolidated Second Amended Class Action Complaint" (Dkt. No. 1032), which this Court construes as a motion to join Defendant Terminals' Response. (Dkt. No. 1032 at 1). Plaintiffs then filed a "Reply in Further Support of Rule 15 Motion for Leave to File Consolidated Second Amended Class Action Complaint" ("Reply") (Dkt. No. 1045) which seeks to further amend the proposed class definition.[9] (Dkt. No. 1045 at 6). Finally, Intervenor

---

[9] The CSAC first refined the proposed class definition to incorporate the proposed alternative "Sub-Class" definition into the proposed class definition, resulting in a proposed definition that encompasses "all person who owned *or rented* property (real and/or personal) within, and/or

Refining filed a "Notice of Non-Opposition to Plaintiffs' Rule 15 Motion for Leave to File a Consolidated Second Amended Class Action Complaint and Au[t]horization to Accept Service" (Dkt. No. 1084) which provides notice that "Refining will not oppose said Motion."  (Dkt. No. 1084 at 2).

### C.     Motion to File Under Seal

Plaintiffs sought to "temporarily" file under seal a complete and unredacted version of Plaintiffs' proposed CSAC.  (Dkt. No. 1001 at 2).  Plaintiffs stated that they "do not agree that the redactions in the publicly filed version of the [CSAC] are necessary" and that "the complete unredacted version of the [CSAC] should ultimat[e]ly be filed publicly" but that "in an abundance of caution," they "publicly filed a redacted version of the [CSAC], consistent with the [Court's standing] Confidentiality Order." *Id.* at 1-2.  Plaintiffs represented that they "sought to confer with counsel for those Defendants whose Protected Information may be implicated" and that Defendants EIG and BPPNA did not consent to having the unredacted version filed publicly. *Id.* at n.1.

The Court's Confidentiality Order requires that any party that "wishes to use any Protected Information in . . . papers filed in this litigation" must "file publicly a redacted . . . filing and cause to be served on this Court and all counsel of record [] a complete and unredacted version of the same."  (Dkt. No. 680 at 7).  Following such a filing, the "Designating Party" who "designat[ed]

---

operated a business within" the affected geographical area.  (Dkt. No. 985-1 at 85 (emphasis added)).  The CSAC included a geographical limit on the proposed class definition to cover the "western portion of the Island of St. Croix" that is "bounded by 64.74 degrees West Longitude and the sea," and refined the time period from "the date on which the Refinery Defendants acquired the Limetree Bay Facility through the present" to "February 3, 2021[] through the present."  *Id.* Plaintiffs' Reply further revised this definition to include "[a]ll persons *or entities*" and formalized a definition of the "Affected Geographic Area" as the geographic coordinates described above. (Dkt. No. 1045 at 6).

as confidential any information that is produced" has "twenty-one (21) days to file with the Court a Motion justifying the sealing or redactions of such Protected Information considering the public's right of access to judicial records." *Id.* at 3, 8. The Confidentiality Order directs parties that "if no such motion is filed, the party that filed any paper containing such Protected Information may refile it publicly." *Id.* at 8. Indeed, in their Motion to File Under Seal, Plaintiffs stated that "[if] Defendants fail to [file with the Court a motion justifying the sealing or ongoing redactions of the CSAC on the public docket], Plaintiffs intend to publicly file a complete and unredacted copy of the CSAC." (Dkt. No. 1001 at 3). To date, no Defendant has filed a motion to justify the sealing of the CSAC. Accordingly, Plaintiffs filed an unredacted copy of the CSAC on the public docket on June 6, 2025, noting that "[i]t has now been more than twenty-one (21) days since the filing of the Rule 15 Motion and neither EIG nor BP[PNA] (let alone any other Defendant) has filed a motion justifying the sealing or redactions of the Protected Information at issue." (Dkt. No. 1251 at 3).

## II.    APPLICABLE LEGAL PRINCIPLES

### A.    Rule 41 Voluntary Dismissal

Rule 41 of the Federal Rules of Civil Procedure provides for three mechanisms for voluntary dismissal. Under Rule 41(a)(1), a plaintiff may dismiss an action "without a court order" by filing either "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" ("Rule 41(a)(1)(A)(i)") or "a stipulation of dismissal signed by all parties who have appeared." Alternatively, "[e]xcept as provided in Rule 41(a)(1)," a plaintiff may dismiss an action under Rule 41(a)(2) "only by court order, on terms that the court considers proper."

For voluntary dismissal by notice under Rule 41(a)(1)(A)(i), a panel of the Third Circuit has noted that there are "three key aspects" of such a dismissal:

> First, a filing under the Rule is a notice, not a motion. Its effect is automatic: the defendant does not file a response, and no order of the district court is needed to end the action. Second, the notice results in a dismissal without prejudice (unless it states otherwise), as long as the plaintiff has never dismissed an action based on or including the same claim in a prior case. Third, the defendant has only two options for cutting off the plaintiff's right to end the case by notice: serving on the plaintiff an answer or a motion for summary judgment.

*In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008).  The Rule "affixes a bright-line test to limit the right of dismissal to the early stages of litigation" which "simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not." *Id.*  This is the only measure of timeliness for a Rule 41(a)(1)(A)(i) notice.  *See Curran v. Mark Zinnamosca & Assocs.*, 2015 WL 136320 at *2 (M.D. Pa. Jan. 8, 2015) ("While this is technically the 'early stages' of the litigation because no answer has yet been filed, the case has nevertheless been pending since April 2012, and [] Defendants have defended themselves through multiple motions to dismiss. However, despite the considerable delay in this case . . . . Plaintiff's notice is timely; timeliness of a Rule 41(a)(1)(A)(I) notice is not measured in months or years.").  Up to this "point of no return," the plaintiff's "right" to dismiss is "unfettered" and dismissal is "automatic and immediate." *In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d at 165.  Such a timely notice of voluntary dismissal "invites no response from the district court and permits no interference by it." *Id.*

The "effect" of a Rule 41(a)(1) dismissal is "to put the plaintiff in a legal position as if he had never brought the first suit." *Hyundai Motor Am. v. Knight Motors, LP*, 2019 WL 5553503 at *5 (W.D. Pa. Oct. 28, 2019).  Courts have observed that "it is not uncommon for plaintiffs to use voluntary dismissal [for tactical maneuvers such as] to secure their preferred forum." *Id.*  While

"such tactics may 'seem distasteful to opposing parties,' a defendant who wishes to prevent a plaintiff from invoking its 'unfettered right' to dismissal under Rule 41 'may do so by taking the simple step of filing an answer.'" *Id.* (quoting *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 293 (5th Cir. 2016)); *see also In re Bath & Kitchen Fixtures Antitrust Litig.*, 535 F.3d at 166 ("Moreover, Rule 41 may permit a strategic advantage for a plaintiff: if prospects for prevailing on the merits appear dim, the plaintiff can obtain a dismissal without prejudice after imposing high costs on defendants and judges. But the drafters of Rule 41 provided for only two responses— answer and motion for summary judgment—as 'points of no return.'").

In contrast to Rule 41(a)(1), a plaintiff may only dismiss under Rule 41(a)(2) by a court order, "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Generally, "a Rule 41(a)(2) motion for voluntary dismissal should be granted unless a defendant can show that it will suffer some plain legal prejudice as a result." *Plavin v. Grp. Health Inc.*, 2022 WL 2310183 at *6 (M.D. Pa. June 27, 2022) (citation modified). Courts have considered the following factors when determining whether legal prejudice may result:

> (1) Whether the defendant has expended efforts or made preparation that would be undermined by granting withdrawal; (2) the plaintiff's delay in prosecuting the action; (3) the adequacy of the plaintiff's explanation as to why withdrawal is necessary; and (4) the stage of the litigation at the time the request is made.

*Id.* The prejudice to the defendant must be "substantial" and "must be more than the prospect of a second lawsuit or tactical advantage." *Young v. Johnson & Johnson Corp.*, 2005 WL 2886218 at *2 (E.D. Pa. Nov. 2, 2005). The prejudice must "entail[] the loss of some vested or substantial right." *Id.* (citation modified).

## B. Rule 15 Amendments

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party may amend its pleading "with the opposing party's written consent or the court's leave," and that "[t]he court

should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also In re Burlington Coat Factory*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has "consistently adopted a liberal approach to the allowance of amendments." *DLJ Mortg. Cap., Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020) ("we have expressed a preference for allowance of the amendment, so long as the opposing party is not prejudiced"). As such, "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

Cases where leave to amend is denied typically involve "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The defendant bears the burden of demonstrating prejudice sufficient to deny leave to amend under Rule 15(a)." *Orbay v. Harrah's Atl. City Operating Co., LLC*, 2023 WL 3478485 at *3 (D.N.J. May 16, 2023). Further, "prejudice is considered undue when it rises to such a level that the non-moving party would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Id.* (citation modified). "Prejudice is generally evaluated by looking at whether the amendment would: (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the non-moving party from bringing a timely action in another forum." *Id.* Finally, "[t]he court may [also] properly deny a party's motion to amend when amendment would be futile." *Knowles v. Temple Univ.*, 2022 WL 3037258 at *1 (3d Cir. Aug. 2, 2022) ("Amendment is considered futile if the amended complaint would not survive a motion to dismiss for failure to state a claim." (citation modified)).

12

### C.     Filing Under Seal

There is a common law public right of access to judicial records and proceedings.  *See In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001).  This right of access "extends beyond" the public's "ability to attend open court proceedings"; it also encompasses the right of the public "to inspect and to copy judicial records."  *Id*.  A document is deemed a judicial record when it "has been filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings."  *Id.*  Judicial records include "the material filed in connection" with "pretrial motions of a nondiscovery nature."  *Id.* at 192-93; *see also Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) (detailing the "wide variety of civil records and documents" that have received "the presumption of public access").

The "strong presumption" of public access "disallows the routine and perfunctory closing of judicial records."  *In re Cendant Corp.*, 260 F.3d at 193-94.  This presumption attaches "once" a document becomes a judicial record.  *In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).  However, "[t]he presumption is just that, and thus may be rebutted."  *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 662 (3d Cir. 1991).  The party seeking the sealing of judicial proceedings and records bears "the burden" of demonstrating "that the interest in secrecy outweighs the presumption."  *Leucadia*, 998 F.2d at 165.  Specifically, the movant must show that "the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure."  *Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994).  In doing so, "specificity is essential" because "[b]road allegations of harm, bereft of specific examples or articulated reasoning, are insufficient."  *In re Cendant Corp.*, 260 F.3d at 194.

## III.  DISCUSSION

### A.    Rule 41 Voluntary Dismissals and Motions to Strike

As noted earlier, under Rule 41(a)(1), a plaintiff may dismiss an action "without a court order" by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."   Fed. R. Civ. P. 41(a)(1)(A)(i).   The parties agree that, prior to consolidation of the actions into a single consolidated master action and the filing of the CAC, three answers were filed by three individual Defendants in two of the four underlying putative class actions.   However, the parties dispute the effect of these pre-consolidation answers on Plaintiffs' subsequent right to voluntary dismissal under Rule 41(a)(1)(A)(i).   Striking Defendants argue that the pre-consolidation answers serve to bar the Dismissing Plaintiffs' right to invoke Rule 41(a)(1)(A)(i).   (Dkt. No. 925 at 5-9).   In that regard, Striking Defendants point to cases where a motion for summary judgment or an answer in response to a prior complaint blocked the plaintiff's ability to invoke Rule 41(a)(1)(A)(i) following an amended complaint.[10]   Plaintiffs argue, on the other hand, that none of the cases cited by Striking Defendants address a Rule 41(a)(1) dismissal in the context of a post-consolidation master amended complaint.   (Dkt. No. 944 at 12).   Further, they argue that imputing the three answers filed in individual, underlying actions to Defendants across all pre-consolidated actions—thereby precluding post-consolidation Plaintiffs against whom those answers were not filed from voluntarily dismissing their claims in

---

[10] *Total Containment, Inc. v. Aveda Mfg. Corp.*, 1990 WL 171518 at *3 (E.D. Pa. Nov. 1, 1990) ("Rule 41(a)(1)(i) does not, either expressly or by implication, call upon the court to inquire into whether the Amended Complaint mooted the issues raised in the July 31, 1990 motion for summary judgment. The only relevant issue is whether and when the summary judgment motion was filed."); *Welsh v. Correct Care LLC*, 915 F.3d 341, 344 (5th Cir. 2019) ("The filing of an amended complaint does not revive the plaintiff[']s absolute right to dismissal under Rule 41(a)(1)(A)(i). Because McLane filed an answer to Welsh's earlier complaint, Welsh cannot utilize Rule 41(a)(1)(A)(i)'s voluntary dismissal without a court order as to that defendant." (citation modified)).

the consolidated action—would improperly vitiate the right of dismissal of the Plaintiffs against whom no answers were filed.  (Dkt. No. 944 at 7, 11).

Striking Defendants are correct that courts in our sister circuits have held that "a plaintiff cannot supersede the cutting off of its right to give notice of voluntary dismissal by filing an amended complaint after an answer or motion for summary judgment has been filed by the defendant."  *Universidad Cent. Del Caribe, Inc. v. Liaison Comm. on Med. Educ.,* 760 F.2d 14, 18 (1st Cir. 1985); *see also Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir. 1971) (holding that the right to dismiss under Rule 41(a)(1)(i) could not be revived by the filing of an amended complaint following dismissal for failure to state a claim of the original complaint when both an answer and a motion for summary judgment had been filed in response to the original complaint); *Tedeschi v. Barney*, 95 F.R.D. 182, 183 (S.D.N.Y. 1982) ("[O]nce the defendants served their original answer, the plaintiffs lost their right to unilateral dismissal under Rule 41(a)(1). The service of an amended complaint which did not change the substance of plaintiffs' original claims did not revive the right of unilateral dismissal.").

It is also true as Plaintiffs argue, however, that none of the cases cited by Striking Defendants involve post-consolidation master amended complaints.  Indeed, looking to pre-consolidation, pre-amendment answers in individual putative class actions to determine the post-consolidation, post-amendment plaintiffs' right to voluntarily dismiss under Rule 41(a)(1) would lead—as here—to anomalous results.  If the answers barred the dismissing plaintiffs' right to dismissal only between the answering defendants and the corresponding pre-consolidation plaintiffs to whom they answered, and for only those causes of action covered by the answer, then the post-consolidation plaintiffs' remaining right to dismissal against the non-answering defendants would fracture the consolidated case into a scattered constellation of varying

alignments of plaintiffs against defendants on varying causes of action. This, in turn, would effectively nullify and impermissibly vitiate the Court's Consolidation Order. On the other hand, if the pre-consolidation answers barred the post-consolidation plaintiffs' right to dismiss against *all* defendants—answering and non-answering alike—then the Court would be improperly imputing those pre-consolidation answers to defendants which are not in that individual putative class action and were not facing those particular causes of action.[11] This, in turn, would vitiate the right of dismissal for certain plaintiffs against whom no answer was ever filed. These results would run contrary to the benefits achieved by consolidation when such action is in the interests of justice, expediency, economy, and necessary to avoid prejudice and duplicative proceedings.

The benefits of consolidation in a case of this nature cannot be overstated. The consolidation of this case reduced a sprawling conglomerate of claims spanning four individual putative class actions comprised of over nineteen claims asserted against over twenty defendants—where not every action asserted every claim and not every action asserted claims against each

---

[11] Courts generally do not to permit one defendant's answer in an action to bar a plaintiff's right to dismiss against another, non-answering defendant. *See, e.g.*, *Welsh v. Correct Care, L.L.C.*, 915 F.3d 341, 344 (5th Cir. 2019) ("[T]he Rules permit voluntary dismissal by notice and without a court order of any defendant who has not served an answer, which in this case is all defendants except McLane."); *Moran v. State Farm Fire & Cas. Co.*, 2024 WL 4607733 at *1 (W.D. Okla. Oct. 29, 2024) ("State Farm's answer does not preclude Plaintiffs from voluntarily dismissing their claims against Val Verde."); *Eckinger v. Xpress Glob. Sys., Inc.*, 2016 WL 738206 at *2 (D. Neb. Feb. 23, 2016) ("Rule 41(a)(1)(A)(i) only permits dismissal on notice before an opposing party has answered or moved for summary judgment; while Vincent's estate has done neither, Xpress has done both. But the prevailing view is that a voluntary dismissal of a particular defendant is available on notice until that defendant answers or moves for summary judgment. Vincent's estate, having neither answered nor moved for summary judgment, may still be dismissed as of right."); *Cooney v. William Robinson Dairy, Inc.*, 744 F.Supp. 841, 843 (N.D. Ill. 1990) ("[T]he Dairy contends that the filing of a motion for summary judgment by the Dairy—itself an adverse party—ostensibly on behalf of Robinson should be sufficient to preclude the Trustees from obtaining a dismissal without prejudice under Rule 41(a)(1). . . . Robinson individually has not answered the complaint or filed a motion for summary judgment so as to preclude the Trustees from filing their notice dismissing their claim against him. . . . Thus, the Trustees were plainly entitled to a dismissal without prejudice.").

16

defendant—into a more streamlined case of twelve causes of actions, ten of which are asserted uniformly against a reduced number of defendants. Consolidation of the four individual putative class actions has resulted in the grouping of Defendants[12] and the reduction and uniformity of the causes of actions—a significant benefit that should not be eviscerated by the application of Rule 41(a)(1) in a manner that would allow three individual pre-consolidation, pre-amendment answers to either control the entire consolidated action or splinter it into various pieces.

Indeed, the combination of amendment and consolidation of this nature is more commonly addressed in the Multi-District Litigation ("MDL") context,[13] and courts have established procedures in that context for determining the legal effect of a "master" consolidated complaint as we have here. (Dkt. No. 527 at 10; *see also* Dkt. No. 619 at 2-3). In this regard, the Supreme Court has noted that "[p]arties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 n.3 (2015). When this occurs, the court "may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings." *Id.* (citing *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590-92 (6th Cir. 2013)). However, "no merger occurs [] when the master complaint is not meant to be a pleading with legal effect but

---

[12] The CAC describes Defendants as each belonging to one of four groups—the "Limetree Defendants," the "Private Equity Defendants," BPPNA, and the "Contractor Defendants" (Dkt. No. 529 at 4-5)—while Defendants describe themselves as five groups—Terminals, LBV, the "Investor Defendants," BPPNA, and the "Contractor Defendants" (Dkt. No. 643 at 8).

[13] The Court notes that parties on both sides apparently recognized the relevance of MDL matters, as they cited both MDL and non-MDL cases interchangeably in Plaintiffs' and a subset of Defendants' (ArcLight Capital Partners, LLC, ArcLight Energy Partner Fund VI, L.P., ArcLight AIV, L.P., along with EIG, Freepoint Commodities, LLC ("Freepoint"), and Terminals) Joint Notice in Support of Consolidation (Dkt. No. 444), without differentiating between the applicability of the caselaw in the MDL context and the non-MDL context. (Dkt. No. 444 at 3, 4, 5, 6 & n.3).

only an administrative summary of the claims brought by all the plaintiffs."[14]  *Id.* (citation modified).  If a "master complaint" requires a "corresponding 'consolidated answer'" and "supersede[s] prior individual pleadings" under *Gelboim*, then it follows that individual pre-consolidation and pre-amendment answers cannot determine the outcome of the post-consolidation master complaint.

When determining the legal effect of a "master" consolidated complaint, courts have applied a five-factor test, in which "relevant signals" include:

> (1) how the plaintiffs labeled the new complaint, (2) whether the plaintiffs served the defendants with the new complaint instead of the original pleadings, (3) whether key deadlines were set in relation to the new complaint, (4) whether the court entertained motions to dismiss the consolidated complaint, and (5) whether the parties and the court looked solely to the allegations in the consolidated complaint when arguing and deciding such motions.

*Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 490 (7th Cir. 2020) (noting that "[t]his last factor is "perhaps most important").  When applied to the instant master complaint, all of these factors weigh in favor of finding that the master complaint has legal effect.

First, Plaintiffs "did not fashion" their CAC as "mere administrative summaries."  *Id.* at 491.  Instead, they filed the CAC as a "Consolidated Amended Complaint."  (Dkt. No. 529). Further, Defendants were served with the CAC (Dkt. Nos. 601-07, 612-17, 622-24, 631); the Court held a Status Conference to determine the deadlines for responsive pleadings to the CAC based upon a Joint Proposal by the parties (Dkt. No. 621); the Court set deadlines for responsive pleadings to the CAC (Dkt. No. 619); and Defendants filed a joint Rule 12 motion directed at the

---

[14] *See also In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 590-91 (6th Cir. 2013) ("In many cases, the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs. When plaintiffs file a master complaint of this variety, each individual complaint retains its separate legal existence. But, in other cases, the court and the parties go further. They treat the master complaint as an operative pleading that supersedes the individual complaints." (citation modified)).

CAC (Dkt. Nos. 642-43).  As in the Seventh Circuit case in *Bell*, "the judge and all parties were treating [the CAC] as the legally operative pleading[], and the defendants moved to dismiss the consolidated complaint[], not the original pleadings."  *Bell*, 982 F.3d at 491.  When litigating and adjudicating the motions to dismiss, the parties addressed and the Court will examine "the sufficiency of only the consolidated complaint[]."  *Id.*  Finally, again as in *Bell*, "the plaintiffs continued to treat [the consolidated amended complaint] as the real complaint[] by seeking leave to amend [it] under Rule 15."  *Id.*  Thus, the master consolidated complaint has been treated by the parties and the Court alike as having merged and superseded the individual complaints.  *Cf. In re Zantac (Ranitidine) Prods. Liab. Litig.*, 339 F.R.D. 669, 681-82 (S.D. Fla. 2021) ("[T]he Plaintiffs' assertion that the master complaints were 'not intended to consolidate for any purpose the separate claims of the individual Plaintiffs in this MDL' is simply not true—that was the precise purpose of the master complaints and at all times the Court and the parties conducted themselves in accordance therewith.").

In fact, the Court's Consolidation ruling reflects a clear intent to consolidate the actions into a merged, master complaint.[15]  In its Consolidation Opinion, the Court noted that post-consolidation, courts "treat the master complaint as an operative pleading that supersedes the individual complaints"; "[t]he master complaint, not the individual complaints, is served on

---

[15] The parties' briefing also reflected that consolidation of the actions into a merged, master complaint was the matter at issue.  In their "Joint Notice in Support of Consolidation" (Dkt. No. 444), Plaintiffs and a subset of Defendants (ArcLight Capital Partners, LLC, ArcLight Energy Partner Fund VI, L.P., ArcLight AIV, L.P., along with EIG, Freepoint, and Terminals) cited *Gelboim* in support of consolidation for the proposition that "[p]arties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings. In such a case, the [] court may treat the master pleadings as merging the discrete actions for the duration of the [] pretrial proceedings."  (Dkt. No. 444 at 6).  The "Contractor Defendants"—Versa, Elite, NIS, and Pinnacle—opposed the "unequivocal[] 'full consolidation of the above captioned matters' through a single, combined pleading for all purposes[.]"  (Dkt. No. 457 at 9).

defendants"; and "[t]he master complaint is used to calculate deadlines for defendants to file their answers." (Dkt. No. 527 at 10). Additionally, the Court later issued a Scheduling Order that set a deadline for Defendants to file answers or a joint motion to dismiss. (Dkt. No. 619 at 2). Thus, the Court's Order consolidating the four putative class actions "for all purposes before the District Court" (Dkt. No. 526 at 3) clearly merged the complaints into a master complaint that superseded the individual complaints.

In addition to this procedural history that makes the intent of the Court clear, the function of the CAC was to serve as a master complaint that merged the individual putative class action pleadings such that the CAC superseded the individual complaints. This Court gave Defendants a deadline of May 1, 2024 by which to file either individual or consolidated answers in response to the master complaint. (Dkt. No. 619 at 2-3).[16] No Defendant availed themselves of that opportunity, despite initial indications that at least some defendants *may* file an answer (Dkt. No. 567 at 3). Rule 41(a)(1)(A)(i) is unforgiving in this regard: "a defendant who wishes to prevent a plaintiff from invoking its 'unfettered right' to dismissal under Rule 41 'may do so by taking the simple step of filing an answer.'" *Hyundai Motor Am.*, 2019 WL 5553503 at *5 (citation modified). Thus, because Defendants filed neither an answer nor a motion for summary judgment following the filing of the master, legally operative, consolidated complaint, Plaintiffs retained the right to voluntarily dismiss the CAC without a court order.

---

[16] Conversely, scheduling orders that prevent the filing of answers have been held to render Rule 41(a)(1)(A)(i) inapplicable. *See In re Genetically Modified Rice Litig.*, 2010 WL 716190 at *8 (E.D. Mo. Feb. 24, 2010), *aff'd,* 764 F.3d 864 (8th Cir. 2014) ("Because my case management orders have prevented the defendants from filing answers in most of the individual cases, the provisions of Rule 41(a)(1)(A)(i), Federal Rules of Civil Procedure, which normally allow plaintiffs to dismiss without prejudice as of right under certain circumstances, do not apply to the cases in this MDL.").

Upon the Dismissing Plaintiffs' invocation of Rule 41(a)(1)(A)(i) with the filing of their respective Notices, the dismissals were "automatic and immediate" and "invite[] no response from the district court and permit[] no interference by it." *In re Bath & Kitchen Fixture Antitrust Litig.*, 535 F.3d at 165. That is, courts may not impose conditions on Rule 41(a)(1) dismissals. *See, e.g.*, *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1065 (3d Cir. 1987) ("Rule 41(a)(1) allows a plaintiff who complies with its terms to dismiss an action voluntarily and without court intervention."); *Larkin Gen. Hosp., Ltd. v. Am. Tel. & Tel. Co.*, 93 F.R.D. 497, 499 (E.D. Pa. 1982) ("[R]ule 41(a)(1) does not authorize me to impose conditions."); 9 Wright & Miller, Federal Practice and Procedure § 2363 (4th ed. 2025) ("[T]he district judge may not impose conditions [on Rule 41(a)(1) dismissals]."). Thus, the Court has no discretion to mandate compliance with pending discovery obligations as a condition of the dismissals effectuated by Dismissing Plaintiffs and Plaintiff Browne under Rule 41(a)(1)(A)(i).

Because the Notices were proper and legally effective, there is no basis upon which to grant the Motions to Strike the Notices. Therefore, the Court will deny the Striking Defendants' First Motion to Strike (Dkt. No. 924) and Second Motion to Strike (*Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Mar. 12, 2025), Dkt. No. 1042). In view of the Court's ruling in this regard, the Court need not reach Dismissing Plaintiffs' Alternative Motion to Dismiss, and the Alternative Motion to Dismiss will therefore be denied as moot.

The "effect" of a Rule 41(a)(1) dismissal is "to put the plaintiff in a legal position as if he had never brought the first suit." *Hyundai Motor Am.*, 2019 WL 5553503 at *5. Thus, the effect of the Notices under the circumstances here is to put Dismissing Plaintiffs and Plaintiff Browne in a legal position as if they had never been named plaintiffs in bringing this lawsuit. Dismissing

Plaintiffs and Plaintiff Browne thus became unnamed, or absent, putative class members[17] on the respective dates of the filing of the Notices.

Defendants are, of course, free to continue to seek discovery from these now-absent putative class members under the discovery framework for absent class members. Although "[d]iscovery of absent class members is disfavored," *Filgueiras v. Midland Funding, LLC*, 2023 WL 3198287 at *3 (D.N.J. Mar. 7, 2023), courts "have endorsed an approach under which written discovery—such as interrogatories or document requests—against absent class members" is permissible if the proper showing is made. *Sessions v. Owens-Illinois, Inc.*, 2011 WL 2415387 at *2 (M.D. Pa. June 13, 2011). Specifically, the "'strong showing' needed to compel absent class member discovery" is based on certain "relevant considerations includ[ing] whether: (i) the information requested is relevant to the decision of common questions; (ii) the requests are tendered in good faith and are not unduly burdensome; (iii) the information sought is unavailable from the class representative parties; (iv) the requests seek information on matters already known to defendants; (v) the requests are designed to take undue advantage of the class members or to reduce the size of the class; (vi) the discovery is necessary to deciding issues common to the class; and (vii) responding to the requests would require the assistance of counsel." *See In re Allergan Generic Drug Pricing Sec. Litig.*, 2021 WL 236594 at *2 (D.N.J. Jan. 25, 2021). The burden lies with the party seeking discovery to make the necessary showing. *Id.*

### B.    Rule 15 Amendment

While Defendants are the parties with the burden of showing that amendment should be denied, Terminals, EIG, and LBV opposed only the removal of the Dismissing Plaintiffs from the

---

[17] *Sessions v. Owens-Illinois, Inc.*, 2011 WL 2415387 at *2 (M.D. Pa. June 13, 2011) ("Absent class members are 'individual class members who are absent from the litigation.'").

CSAC, and did not otherwise oppose Plaintiffs' Motion to Amend.  These Defendants reiterate their objection to the dismissal of certain Plaintiffs and request that the Court not grant Plaintiffs leave to amend "until at least after the requested discovery is provided."  (Dkt. No. 1021 at 2). With the voluntary dismissal issue resolved as discussed above, and with no other reason offered by any Defendant to support a denial of Plaintiffs' Motion to Amend, Rule 15(a)(2) requires that such request to amend be freely given.  *See, e.g.*, *Foman*, 371 U.S. at 182 ("In the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given' . . . . [O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").

Nonetheless, the Court will briefly consider the factors that bear on the consideration of a motion to amend.  The record does not indicate that Plaintiffs have engaged in bad faith or dilatory motives in filing their motion to amend.  Nor has there been any repeated failures to cure deficiencies.  Further, the Motion to Amend is timely, and not delayed—undue or otherwise— because the Court previously set the deadline for the parties to "amend the pleadings or to add parties" as July 11, 2025 (Dkt. No. 677 at 3, 9), and the Motion to Amend was filed on February 27, 2025 (Dkt. No. 985).[18]  As there was no opposition to the substantive changes in the body of the CSAC, it follows that Defendants do not consider those amendments to be unduly prejudicial. And, to the extent that Defendants would claim prejudice on the issue of discovery as to the Dismissing Plaintiffs and Plaintiff Browne, any such claim would clearly not amount to undue prejudice in light of Defendants' ability to obtain discovery from the existing named Plaintiffs,

---

[18]  The Court notes that on April 11, 2025, after the filing of the instant Motion to Amend, Magistrate Judge Emile A. Henderson III issued an "Amended Scheduling Order" extending the deadline to amend the pleadings and to add parties to October 17, 2025.  (Dkt. No. 1160 at 4).

and also to obtain discovery from the Dismissing Plaintiffs and Plaintiff Browne upon a proper showing. Finally, there is no indication that amendment would be futile, as it renames Intervenor Refining as a nominal Defendant following a recent order entered by the U.S. Bankruptcy Court for the Southern District of Texas permitting Plaintiffs to do so with leave of this Court; adds an entity related to parties already named in this litigation as a defendant; amplifies the allegations against two current Defendants; and further refines the proposed class definition. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 ("Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation modified)). Thus, none of the factors which counsel against granting a motion to amend are implicated here.

In view of the foregoing, the Court will grant Plaintiffs' Motion to Amend (Dkt. No. 985). The Court will afford Plaintiffs ten (10) days from the date of the issuance of the Order accompanying this Memorandum Opinion to file the CSAC which incorporates the amendment to the class definition proposed by Plaintiffs in their briefing. (Dkt. No. 1045 at 6). Upon filing, the master CSAC will be the operative complaint in this matter, and motions directed at the CAC will be denied as moot. *See Stapleton v. WenVI, Inc.*, 2013 WL 4591016 at *2 (D.V.I. Aug. 28, 2013) ("District courts commonly exercise their discretion, as appropriate, to dismiss as moot dispositive motions directed at complaints that have been superseded.").

### C.    Filing Under Seal

Complaints are undoubtedly judicial records within the public right to access. *See Purcell v. Gilead Scis., Inc.*, 415 F.Supp.3d 569, 577 (E.D. Pa. 2019) ("We are similarly unpersuaded by Relators' suggestion the amended Complaint is not a judicial record; it is a judicial record having been filed on the docket."). Courts have permitted redactions to complaints filed on the public docket in specific circumstances to protect the privacy interests of individuals or entities, typically

when they are non-parties. *See, e.g.*, *Purcell*, 415 F.Supp.3d at 577 (permitting continued redactions to a non-operative complaint of seventeen individuals' names due to the "potential injury" to those "who are no longer parties"); *Archbrook Laguna LLC v. New Age Elecs., Inc.*, 2008 WL 2987164 at *1-3 (D.N.J. Aug. 4, 2008) (permitting redactions to a complaint to protect an intervener's information regarding an internal investigation into alleged wrongdoing by current and former employees received by Plaintiff in a separate state court action pursuant to that court's protective order).

However, to justify the sealing of a judicial record, the "strong presumption" of public access must be rebutted with "specificity," *In re Cendant Corp.*, 260 F.3d at 193-94, by some demonstration "that the interest in secrecy outweighs [this] presumption," *Leucadia*, 998 F.2d at 165. Here, no parties—neither the moving party nor the designating party—have provided the Court with any specific secrecy interest at play.[19] The designation of information by a party as "Protected Information" pursuant to the Court's Confidentiality Order—without more—is insufficient to justify the sealing or redaction of a judicial record. *See, e.g.*, *Jorjani v. New Jersey Inst. of Tech.*, 2022 WL 1811304 at *5 (D.N.J. June 2, 2022) (" [T]he mere fact that a document, or a portion of a document, was designed as confidential, and thereafter produced pursuant to the Discovery Confidentiality Order, does not relieve the party seeking confidential status from meeting its burden of justifying the designation."); *Tatum v. Chrysler Grp., LLC*, 2013 WL 12152408 at *4 (D.N.J. Aug. 21, 2013) ("[I]t appears that Plaintiffs are under the misapprehension that by virtue of certain information having been previously designated as 'confidential' pursuant

---

[19] Indeed, while Plaintiffs state that they filed their Motion to Seal "in an abundance of caution" and to be "consistent with the [Court's standing] Confidentiality Order," they also state that they "do not agree that the redactions [to the publicly filed document] . . . are necessary" and that their position is that "the complete unredacted version of the CSAC should ultimat[e]ly be filed publicly." (Dkt. No. 1001 at 1-2).

to the Confidentiality Order that said information is necessarily entitled to be sealed.").

Indeed, the Court's Confidentiality Order itself provides that—following the filing of a sealed or redacted document—if the party who "designated as confidential any information" does not file within 21 days a motion "justifying the sealing or redactions" of that confidential information, then the filing party "may refile it publicly." (Dkt. No. 680 at 3, 8). Consistent with that Order, Plaintiffs filed an unredacted copy of the CSAC on the public docket on June 6, 2025, noting that "[i]t has now been more than twenty-one (21) days since the filing of the Rule 15 Motion and neither EIG nor BP[PNA] (let alone any other Defendant) has filed a motion justifying the sealing or redactions of the Protected Information at issue." (Dkt. No. 1251 at 3). Accordingly, the Court will deny as moot Plaintiffs' Motion to Seal (Dkt. No. 1001).

## IV. CONCLUSION

In view of the foregoing, the Court will deny Striking Defendants' "Motion to Strike Plaintiffs' Notice of Voluntary Dismissal Without Prejudice of Certain Named Plaintiffs" (Dkt. No. 924) and Striking Defendants' "Motion to Strike Plaintiff Sylvia Browne's Notice of Voluntary Dismissal Without Prejudice" (*Cotton v. Limetree Bay Ventures, LLC*, No. 21-cv-0261 (D.V.I. Mar. 12, 2025), Dkt. No. 1042). The Court will also grant Plaintiffs' "Rule 15 Motion for Leave to File Consolidated Second Amended Class Action Complaint" (Dkt. No. 985). The Court will afford Plaintiffs ten days from the date of the issuance of the Order accompanying this Memorandum Opinion to file a Consolidated Second Amended Complaint ("CSAC") which incorporates the amendment to the class definition proposed by Plaintiffs in their briefing. (Dkt. No. 1045 at 6). Finally, the Court will deny as moot Plaintiffs' "Motion for Leave to File

Unredacted Document Under Seal" (Dkt. No. 1001) and Dismissing Plaintiffs' "Alternative Motion to Dismiss Certain Named Class Representatives Without Prejudice" (Dkt. No. 905).

An appropriate Order accompanies this Memorandum Opinion.

Dated: July 25, 2025

_____/s/_____
WILMA A. LEWIS
Senior District Judge