**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| CLIFFORD BOYNES, et al.,<br>            *Plaintiffs*,<br>        v.<br>LIMETREE BAY VENTURES, LLC, et al.,<br>            *Defendants*. | Civil Action No. 2021-0253 |
| HELEN SHIRLEY, et al.,<br>            *Plaintiffs*,<br>        v.<br>LIMETREE BAY VENTURES, LLC, et al.,<br>            *Defendants*. | Civil Action No. 2021-0259 |
| MARY L. MOORHEAD, et al.,<br>            *Plaintiffs*,<br>        v.<br>LIMETREE BAY VENTURES, LLC, et al.,<br>            *Defendants*. | Civil Action No. 2021-0260 |
| BEECHER COTTON, et al.,<br>            *Plaintiffs*,<br>        v.<br>LIMETREE BAY VENTURES, LLC, et al.,<br>            *Defendants*. | Civil Action No. 2021-0261 |

**REPLY MEMORANDUM IN SUPPORT OF**
**JOINT EMERGENCY MOTION TO STAY**

Defendants and movers in the Joint Emergency Motion to Stay [Doc. 1298], EIG Global Energy Partners, LLC ("EIG GEP"), Limetree Bay Ventures, LLC ("LBV"), Limetree Bay Refining, LLC ("LBR"), a nominal defendant, and Limetree Bay Terminals, LLC ("LBT") (collectively "Movers"), submit this Reply Memorandum to respond to Plaintiffs' Opposition to Emergency Joint Motion to Stay [Doc. 1322] ("Plaintiffs' Opposition"). Stripped of its hyperbole, incorrect assumptions, and conspiracy accusations, Plaintiffs' Opposition fails to provide a valid basis for their contention that the applicable factors to be considered weigh against a stay order – they do not. To the contrary, as set forth in Movers' Memorandum in Support of Emergency Joint

Motion to Stay ("Memorandum in Support") [Doc. 1301], and as further set forth below, proper consideration of the applicable factors weighs heavily in favor of a stay. Without a stay, the consequence resulting from key defense witnesses invoking their Fifth Amendment privilege – a circumstance over which Movers had no control – is the deprivation of Movers' ability to present a defense in this matter. An approximate 10-month delay to avoid this highly unjust result is warranted.

## I.     PLAINTIFFS' OPENING ASSERTIONS DO NOT WITHSTAND SCRUTINY.

As an initial matter, for this Court to find merit in the arguments advanced in Plaintiffs' Opposition, it would have to accept the irrational assumption that Movers conspired to have key witnesses refuse to testify under the guise of asserting their Fifth Amendment privilege and refuse to give testimony critical to Movers' defense in this litigation. In other words, this Court would have to accept that Movers acted contrary to their best interests. Simply, the premise of Plaintiffs' arguments is absurd. Even more, the unraveling of Plaintiffs' arguments lays bare their internal inconsistencies and factual misrepresentations.

### A.     *Plaintiffs' False Narrative and Skewed "Background" Presentation.*

Plaintiffs' Opposition begins with a series of inaccurate statements. Plaintiffs maintain that Movers are seeking to "delay this litigation" by attempting to "manufacture concern" about the potential for criminal prosecution without "offering any evidence to suggest such action is likely," and that the timing of the Motion to Stay is "suspect."[1] Then, there is the oft-repeated accusation regarding the timing of the request for a stay and Movers' purported failure to "express

---

[1] Plaintiffs' Opposition, pp. 2-3.

concern" or "mention the parallel criminal proceedings or how those might impeded [Movers'] ability to mount a defense in the litigation."[2] Each representation is demonstrably false.

First, contrary to the picture Plaintiffs attempt to paint for this Court, at the point in time that key defense witnesses invoked their Fifth Amendment rights, Movers had no reason to delay discovery and, in fact, were cooperating with the scheduling and taking of depositions of defense witnesses, which Plaintiffs admit.[3] Indeed, Movers' cooperation with scheduling and taking depositions Plaintiffs requested has continued up to the filing of this Reply. In addition to the four (4) defense witness depositions identified in Plaintiffs' Opposition, depositions of another six (6) defense witnesses were taken prior to Mr. Rinker's invocation of his Fifth Amendment privilege on July 9, 2025.[4] Even then, after Mr. Rinker's assertion of his Fifth Amendment privilege, Movers moved forward with the depositions of five (5) additional defense witnesses, four of which were taken after the Motion to Stay was filed.[5] In total, fifteen (15) of the thirty-one (31) witnesses who have been deposed in this litigation were defense witnesses.[6]

Second, to be clear, Movers were not the driving force behind the assertions of Fifth Amendment privilege by Jeffrey Rinker, Robert Weldzius, or Fermin Rodriguez,[7] and Movers did

---

[2] *Id.*, pp. 3-4.

[3] *Id.*, p. 16, footnote 42, Plaintiffs' listing of the depositions of key witnesses that have already taken place.

[4] Coking.com on 6/17/25, John Fowler (Jacobs Engineering) on 3/7/25, Eddie Gonzalez (Versa Integrity) on 2/6/25, David Meier (UPS) on 5/28/25, Gregory Travis Penn (ETS) on 12/9/24, and Jeff Wester (UPS) on 5/30/25. *See* Exhibit "11," Declaration of Kenneth M. Klemm dated 08/05/25, ¶ 14 and Exhibit "A" to the Declaration, attached hereto and made a part hereof.

[5] Arvind Gadhiya (BP) taken 07/11/25, Shiv Baloo (BP) taken 07/18/25, Rick Caplan (EIG GEP) taken 07/22/25, Excel taken 7/25/25, and Mr. Parikh (EIG GEP) taken 07/30/25. *Id.*

[6] *Id.*

[7] On 8/4/26, Movers filed a Local Rule 7.1(b) Submission to file Exhibit "10" into the record. Exhibit "10" is an email exchange in which Plaintiffs' counsel confirms that Fermin Rodriguez will invoke his Fifth Amendment privilege and refuse to answer questions during a deposition takin in this matter. A copy of Exhibit "10" is attached.

not become aware that any witness was considering the invocation of the privilege until the first week of July 2025.[8]

Third, Plaintiffs' suggestion that Movers are "manufacturing" concern about the potential for criminal prosecution is both curious and wrong. Attorneys for Messrs. Rinker, Weldzius, and Rodriguez have, in fact, given notice that their clients will invoke their Fifth Amendment privilege should their depositions be taken. Attempting to deflect from the clear stated invocation of the privilege by these witnesses, Plaintiffs argue that Movers are seeking a stay "because of the **purported concern** that two executives (Jeffrey Rinker and Robert Weldizus) **might invoke the Fifth Amendment** in their upcoming depositions."[9] Again, Messrs. Rinker and Weldzius, as well as Mr. Rodriguez, have affirmatively asserted their Fifth Amendment privilege.

Fourth, contrary to the law, including that cited in Plaintiffs' Opposition, there is no requirement that Movers offer "evidence" that criminal charges are "likely" to obtain a stay or for a witness to assert rights under the Fifth Amendment. To the contrary, Plaintiffs acknowledge that in *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 323 (D. N.J. 1998), the Court stated that "[i]t is 'still possible' to obtain a stay, even though an indictment or information has not yet been returned."[10] And, the Fifth Amendment privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding. *United States v. Balsys*, 524 U.S. 666, 672 (1998), citing *Kastigar v. United States,* 406 U.S. 441, 444–445 (1972)

---

[8] Exhibit "11," ¶ 7 and Exhibit "12," Declaration of Adam B. Zuckerman dated 8/5/25, ¶ 7, attached hereto and made a part hereof.

[9] Plaintiffs' Opposition, p. 3 (emphasis added).

[10] *Id.*, p. 12. While Plaintiffs' attempt to distinguish *Walsh Securities* from the present matter, as shown below, that attempt is not successful.

and *McCarthy v. Arndstein,* 266 U.S. 34, 40 (1924) (the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it").

Here, Plaintiffs acknowledge that the government began a criminal investigation, including the request for Mr. Weldzius to be interviewed and the issuance of subpoenas to EIG Management Company, LLC and LBT in 2023.[11]  The fact that Plaintiffs are unaware of any additional steps the government has taken (or is taking) toward potential criminal charges is of no moment given the "importance of secrecy" in grand jury proceedings.  *In re Grand Jury Subpoena*, 223 F.3d 213, 218 (3d Cir. 2000) ("[o]ne of the most significant, if not the most significant, differences stemming from the investigative role of the grand jury is the importance of secrecy, particularly when an investigation is on-going").  That potential for the filing of criminal charges remains until the statute of limitations has run or the U.S. Department of Justice confirms that the criminal investigation has been closed.  According to Mr. Weldzius' personal attorney, the criminal investigation "insofar as I know is still pending and not closed."[12]

Lastly, Plaintiffs' complaint that the timing of the Motion to Stay is "suspect" is premised upon their unsupported claim of no developments in the criminal investigation since the 2023 grand jury subpoenas and because, prior to the filing of the Motion to Stay, Movers failed to mention "the parallel criminal proceedings" or how they may affect this litigation.[13] As just noted, the fact that Plaintiffs are unaware of any steps taken in the ongoing criminal investigation is inconsequential (and perhaps unknowable), and Movers had no reason to raise any concern about the "parallel criminal proceedings" until their critical witnesses invoked their rights under the Fifth

---

[11] *Id.*, p. 11.

[12] Doc. 1301-3.

[13] Plaintiffs' Opposition, pp. 3-4 ("Movers' motion confirms the suspect timing").

Amendment. Prior to that point, Movers were preparing, just as Plaintiffs claim to have been doing, for Mr. Rinker's deposition.[14]

### B.    The Rescheduling of Mr. Rinker's Deposition Does Not Impact This Court's Consideration of Movers' Motion to Stay.

Plaintiffs' recitation of the attempts to schedule Mr. Rinker's deposition is exaggerated and editorialized but, more importantly, does nothing to support Plaintiffs' contention that a stay of this litigation is not warranted. While Movers disagree with Plaintiffs' account of events, belaboring those discrepancies is unnecessary. Movers do not dispute that Mr. Rinker was scheduled for deposition on February 26, 2025, or that the deposition was rescheduled because of a dispute between Robert Bittman, Mr. Rinker's personal attorney, and Plaintiffs' counsel,[15] or that Mr. Rinker's deposition was rescheduled for April 15, 2025. Nevertheless, the rescheduling of Mr. Rinker's deposition to April 15, 2025 did not just result from an email sent by Adam Zuckerman as Plaintiffs suggest.[16] Following the filing of Movers' Motion to Extend Deadlines,[17] which this Court granted,[18] the parties agreed to reschedule Mr. Rinker's deposition and Mr.

---

[14] Exhibit "11," ¶ 6 and Exhibit "12," ¶ 6. Clearly, counsel for EIG and LBV would not have participated in preparations to present Mr. Rinker's testimony if they had any reason to believe that Mr. Rinker would invoke his Fifth Amendment privilege.

[15] That dispute was unnecessarily and improperly escalated when Plaintiffs' counsel sent a letter to Judge Emile A. Henderson, III requesting an informal conference to resolve a discovery dispute regarding Mr. Rinker's 2/26/25 deposition. In that letter, Plaintiffs' counsel incorrectly represented to Judge Henerson that "if [Mr. Rinker fails to appear at his deposition, his failure to appear will be in violation of Federal Rule of Civil Procedure 45." Exhibit "13," Letter dated 2/20/25, from Kerry Miller, Fishman Haygood, to the Honorable Emile A. Henderson, III, attached hereto and made a part hereof. Mr. Rinker, however, had not been served with a subpoena as at the time Plaintiffs requested an informal conference and, even if he had been served, the proper forum for resolving a dispute over that subpoena would have been in the Southern District of Texas, as Mr. Bittman stated in his 2/21/25 letter to Judge Henderson [Doc. 1322-3]. The "wrongful obfuscation and delay" allegation made against Mr. Rinker in Plaintiffs' Opposition [Doc. 1322, p. 6], like Plaintiffs' counsel's representation to Judge Henderson that Mr. Rinker had been served with a subpoena, are false.

[16] Plaintiffs' Opposition, p. 7.

[17] Doc. 978.

[18] Doc. 1159.

Zuckerman then sent the email proposing the July 16, 2025 date for Mr. Rinker's deposition.[19]  At the same time, Mr. Zuckerman proposed a date for the depositions of Rick Caplan, Shalin Parikh, and Blair Thomas.[20]

The July 9, 2025 notice of Mr. Rinker's invocation of his Fifth Amendment rights was the catalyst for the present Motion to Stay.[21]  Notice that Mr. Weldzius was also invoking his Fifth Amendment privilege was given by his personal attorney on July 14, 2025,[22] before the filing of the Motion to Stay.  And, after the filing of the Motion to Stay, confirmation that Mr. Rodriguez had similarly invoked his rights under the Fifth Amendment was provided by Plaintiffs' counsel.[23]

## II.    PLAINTIFFS' ARGUMENTS ARE INTERNALLY INCONSISTENT AND LEGALLY FLAWED.

Plaintiffs first state that the stay of a civil proceeding is an extraordinary remedy.  Movers accept that some courts have so held.  Still, Plaintiffs inaccurately state that a stay in a civil matter is "disfavored"[24] citing *Forrest v. Ccorzine*, 757 F.Supp.2d 473, [476] (D. N.J. 2010), citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The district court that rendered *Forrest* did state that a stay of a civil proceeding is "extraordinary," but it did not state that a stay is disfavored, but rather "not favored."  *Forrest*, 757 F.Supp.2d at 476.  And, notably, the *Forrest* Court's statement regarding the extraordinary nature of the remedy is not a quote from the U.S. Supreme Court's decision in *Landis*.  *Landis* did not hold that a stay of a civil procedure is "extraordinary," nor did it hold that a stay is "disfavored" or even "not favored."  The *Landis* Court stated:

---

[19] Doc. 1322-7, pp. 1-2.

[20] *Id.*, p. 2.  The depositions of Mr. Caplan and Mr. Parikh were completed.  *See* Exhibit "11 (A)."

[21] Doc. 1301-1.

[22] Doc. 1301-3.

[23] Exhibit "10."

[24] Plaintiffs' Opposition, p. 9.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance.  [Citations omitted.]  True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.[25]

The Court added:  "We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions."  *Landis*, 299 U.S. at 254-55.

Movers submit that, regardless of whether the remedy is "extraordinary," the U.S. Court of Appeals for the Third Circuit nevertheless observed that "[i]t is not uncommon for a civil case to be stayed pending the resolution of a related criminal case."  *Reyes v. Freeberry*, 141 Fed.App'x. 49, 51 (3d Cir. 2005), cited and relied upon in *Deloitte Consulting LLP v. Sagitec Solutions, LLC*, No. CV 23-325-WCB, 2023 WL 6037201, at *1 (D. Del. Sept. 15, 2023), and in *Kaplan v. Mashinsky*, 22-cv-0456-SDW-ESK, 2024 WL 261263, *5 (D. N.J. Jan. 24, 2024).  Furthermore, the consequence of the circumstance created by at least three key witnesses invoking their Fifth Amendment privilege – the deprivation of Movers' due process right to present a defense – is an extraordinary circumstance that warrants an extraordinary remedy.

Plaintiffs' Opposition provides an editorialized version of the six factors to be considered. Purporting to quote the six factors set forth in *Deloitte*, Plaintiffs' Opposition states:

> Those factors include: "(1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, **including whether any defendants have been indicted**; (3) **the plaintiff's interests in expeditious civil proceedings weighed against** the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interest of the court; and (6) the public interest."[26]

---

[25] This rare circumstance in *Landis* was particular to the facts of the case and have no bearing here.

[26] Plaintiffs' Opposition, pp. 9-10.

The phrases highlighted in bold above are not included in *Deloitte* and Plaintiffs omit from their purported quote a phrase from of one of the factors that was set forth in *Deloitte* (highlighted in bold below).

> The *Deloitte* Court actually held:

> In evaluating a request to stay an action pending the resolution of a related criminal action, courts generally weigh the following non-exhaustive set of factors: (1) the degree of overlap between the civil and criminal actions; (2) the stage of the criminal proceedings; (3) the prejudice to the nonmoving party that would result from a stay; (4) the burden on the **moving party of permitting concurrent litigation**; (5) the interests of the court; and (6) the public interest.

*Deloitte*, 2023 WL 6037201 at *1 (emphasis added).

While Plaintiffs are certainly entitled to argue the application of the six factors, Plaintiffs are not at liberty to recreate the six factors by adding language to their benefit and omitting language that would weigh in favor of a stay in this matter, particularly while presenting their altered factors as a direct quote. These are not harmless or inconsequential changes.

The attempt to recreate the six factors, the internal inconsistencies, and the attempt to analogize inapplicable jurisprudence with the present matter demonstrate the lack of merit to Plaintiffs' Opposition as will be shown below.

### A.    *The Issues in the Potential Criminal Proceeding and this Civil Proceeding Do More than Overlap, They Are Identical.*

Plaintiffs admit that the degree of overlap is the "most important threshold issue" in determining whether to impose a stay, but Plaintiffs' argument related to this factor reveals an internal inconsistency in Plaintiffs' Opposition. In the second paragraph of Plaintiffs' Opposition, Plaintiffs argue that the possibility of a criminal case being brought is "speculative" because even though it has been "over four years since the events at the heart of this case, no such criminal case

has been filed."[27]  Despite the clear acknowledgement that any potential criminal charges stem from the same "events at the heart of this case," in the section discussing the "Overlap of Issues," Plaintiffs argue the exact opposite.

Incredibly, Plaintiffs claim that "[w]ithout an indictment and relying on actions by the United States Department of Justice from over two years ago, Movers entirely fail to satisfy the threshold and most important factor supporting a stay."[28]  As briefed in Movers' original Memorandum in Support and reiterated above,[29] the lack of an indictment is not fatal to a request for a stay where the statute of limitations has not yet run and the potential for criminal charges exists.  Plaintiffs cannot escape several facts: grand jury proceedings were instituted, grand jury subpoenas were issued, the grand jury proceedings appear to remain pending, the grand jury process is secret and, again, the statute of limitations has not yet run.

Additionally, Plaintiffs' argument that the facts herein are analogous to cases in which a stay was denied lacks merit.  Plaintiffs first submit that the circumstances presented in *Soroush v. Ali*, 09-3703, 2009 WL 3467897 (E.D. Pa. Oct. 28, 2009), are "similar to those present here,"[30] because without an indictment, there is "no readily-definable criminal proceeding" and without an answer to Plaintiffs' complaint, there is no "definable civil proceeding."[31]  Whatever reason the district court in *Soroush* felt it could not define the issues in the criminal and civil proceedings (which is far from clear), no doubt exists that in this matter, the civil proceeding and any potential criminal proceeding arise out of the *exact same operative facts*.  Furthermore, in addition to Plaintiffs' admission that that any potential criminal charges stem from the same "events at the

---

[27] *Id.*, p. 2.

[28] *Id.*, p. 10 (emphasis omitted).

[29] Doc. 1301, pp. 11-12.

[30] Plaintiffs' Opposition, p. 11.

[31] *Id.*

heart of this case," Movers' original Memorandum in Support references the EPA's Emergency Order, Notice of Violation, and Complaint that contain an outline of the factual findings it claims support civil violations of the Clean Air Act ("CAA"), and shows how those same factual findings could potentially support several criminal provisions of the CAA.[32]  Those factors, combined with the fact that Plaintiffs specifically incorporate the EPA's factual findings into their Complaint, compel this Court to find that the overlap between the cases weighs heavily in favor of a stay of these proceedings.

Plaintiffs, in their attempt to establish that Movers' reliance on *Walsh Securities* is misplaced, posit that the "key point" in *Walsh Securities*, "not present here" is that the Government was conducting an "active parallel criminal investigation."[33]  According to Plaintiffs, Movers "point to absolutely no evidence of an ongoing or current, active investigation."[34]  Beside Plaintiffs' attempt to have this Court impose an impossible standard on Movers, Plaintiffs' argument misses the point.  Movers need only show, and they have shown, that the threat of criminal prosecution exists and that because of that threat three witnesses critical to their defense have invoked their Constitutional right and refused to provide deposition testimony.

Still, there is evidence of an ongoing criminal investigation. Movers established that 1) the U.S. Attorney put the Refinery on notice that "one or more of the recent events at Limetree Bay Refinery may constitute a criminal violation of the federal Clean Air Act,"[35] 2) at least one key witness was asked to "testify/be interviewed" by the U.S. Department of Justice,[36] 3) EIG

---

[32] Doc. 1301, p. 7.

[33] Plaintiffs' Opposition, p. 12.

[34] *Id.*, p. 13.

[35] Doc. 1301-5.

[36] Doc. 1301-3.

Management Company, LLC and LBT were issued grand jury subpoenas (as Plaintiffs admit),[37] and 4) Mr. Weldzius' criminal counsel stated as recently as July 14, 2025, that "insofar as [she] knows," the "federal criminal matter" is "still pending and not closed."[38]  Additionally, Plaintiffs cannot dispute that the three witnesses who invoked their Fifth Amendment privilege are being represented by prominent criminal defense attorneys or that criminal attorneys are not engaged where there is no risk of criminal prosecution.  Thus, in the absence of any evidence to establish otherwise, it must be concluded that the threat of criminal charges remains.

Because the threat of criminal prosecution remains and because the issues presented in this matter are identical to the issues that would be presented in a potential criminal proceeding, this most important threshold issue weighs heavily in favor of a stay.

### B.    The Status of the Criminal Proceedings – the Grand Jury Investigation is Pending.

As noted above, at this juncture, without some clear indication that the U.S. Department of Justice has closed its file, it must be acknowledged that the U.S. Department of Justice's criminal investigation is pending and is not closed.  As also noted above, because of the secrecy that grand jury investigations are afforded, that may be all that is knowable.  What is significant to this Court's consideration of this Motion to Stay is that the statute of limitations will run in approximately ten months.

Plaintiffs argue that the only fact this Court need consider in its evaluation of this factor is that the "defendant filing a motion to stay has not been indicted."[39]  This oversimplistic generalization ignores the rationale provided by the Court in the cases cited by Plaintiffs in which

---

[37] Plaintiffs' Opposition, p. 2.

[38] Doc. 1301-3.

[39] Plaintiffs' Opposition, p. 13.

the Court determined that the lack of indictment was sufficient to find this factor weighs in favor

of denying a stay. For instance, in *State Farm Mut. Auto. Ins. Co. v. Beckham-Beasley*, CIV. A.

01-5530, 2002 WL 31111766, *2 (E.D. Pa. Sept. 18, 2002), the Court found, as Plaintiffs point

out, that there was uncertainty "when, if ever, indictments will be issued, as well as the effect of

the delay on the civil trial."[40] Moreover, the party seeking the stay in that matter was the party

who was potentially subject to criminal prosecution. Here, the stay requested is only for a limited

duration, *i.e.*, the duration of applicable statute of limitations which is estimated to be

approximately ten months, and Movers are not the party invoking the protection of the Fifth

Amendment. (As corporate entities, Movers are not entitled to assert the privilege afforded by the

Fifth Amendment.[41])

In sum, the two facts regarding the status of the potential criminal proceedings that are

significant to this Court's consideration of this factor are: 1) the criminal investigation remains

open; and 2) the approximate ten months remaining in the applicable statute of limitations for

filing criminal charges related to the emissions at the Refinery. Weighing a requested stay for a

limited, relatively short period against the severe consequences that will follow if Plaintiffs are

allowed to proceed with deposing key defense witnesses who have invoked their rights under the

Fifth Amendment, the ten-month stay is clearly warranted. At the risk of being repetitive, the

prejudice that will befall Movers if discovery is allowed to proceed is the very real potential for

---

[40] *Id.*

[41] *See*, *United States v. Kordel*, 397 U.S. 1, 8, n. 12 (1970) ("[t]hat the corporation has no privilege is of course long
established, and not disputed here. *See George Campbell Painting Corp. v. Reid*, 392 U.S. 286, 288-289, 88 S.Ct.
1978, 1979-1980, 20 L.Ed.2d 1094; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 196, 208, 209-210, 66 S.Ct.
494, 498, 505, 505-506, 90 L.Ed. 614; *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 726-727, 64 S.Ct.
805, 815, 88 L.Ed. 1024; *Essgee Co. of China v. United States*, 262 U.S. 151, 155-156, 43 S.Ct. 514, 516, 67 L.Ed.
917; *Wheeler v. United States*, 226 U.S. 478, 489-490, 33 S.Ct. 158, 162, 57 L.Ed. 309; *Baltimore & Ohio R. Co. v.
ICC*, 221 U.S. 612, 622-623, 31 S.Ct. 621, 626-627, 55 L.Ed. 878; *Hale v. Henkel*, 201 U.S. 43, 74-75, 26 S.Ct. 370,
378-379, 50 L.Ed. 652; *cf. Curcio v. United States*, *supra*; *United States v. White*, 322 U.S. 694, 698, 705, 64 S.Ct.
1248, 1251, 1254, 88 L.Ed. 1542").

the imposition of an adverse inference against Movers (which Plaintiffs have indicated they will seek) caused by a circumstance over which they have no control that deprives Movers of their due process right to present a defense in this matter. Accordingly, this factor also strongly supports a stay.

### C.      A 10 Month Delay Will Not Prejudice Plaintiffs.

Movers' argument that Plaintiffs will not be prejudiced by a 10-month stay is well-supported in Movers' original Memorandum in Support,[42] some of which is reiterated above. Plaintiffs' fail to produce the requisite evidence to show a "particularly unique injury," such as "the dissipation of assets or an attempt to gain an unfair advantage from the stay,"[43] or the risk of misappropriation, elderly Plaintiffs, fading memories, or misplaced documents."[44]

Instead of identifying any "unique particular injury," Plaintiffs cite this Court to cases that stand for the unremarkable position that a party whose conduct results in criminal charges should not be allowed as a shield against a civil suit. *See*, *State Farm Mut. Auto. Ins. Co.*, 2002 WL 31111766, at *3, and *Paine, Webber, Jackson & Curtis, Inc. v. Malon S. Andrus, Inc.*, 486 F.Supp. 1118, 1119 (S.D.N.Y. 1980). Movers are not, however, attempting to shield themselves from the civil proceeding. The purpose of the requested stay is to ensure that Movers can fully participate in this civil proceeding on a level playing field instead of being relegated to the sidelines to suffer a loss without the ability to participate in the game.

Plaintiffs only attempt to support their contention of prejudice, is a quote from this Court's May 17, 2024 Order.[45] Denying a request for a stay at that time, this Court noted the previous

---

[42] Doc. 1301, pp. 14-16.

[43] *Barker v. Kane*, 149 F.Supp.3d 521, 528 (E.D. Pa. 2016). With apologies to the Court and counsel, this case was completely miscited in Movers' original Memorandum in Support, p. 14, as "*Kane v. Baker*, 149 F.Supp.2d."

[44] *Frantatoro v. Grabato*, No. 23-53, 2023 WL 5605669, at *5 (D. New Jersey Aug. 30, 2023).

[45] Doc. 1322, p. 15, quoting from Doc. 663.

stays – the first necessitated by the LBR bankruptcy and the second by Plaintiffs' motion for injunctive relief – and the potential risk of losing evidence.[46]   This Court also noted that the requested stay was "indefinite."[47]   LBR's bankruptcy proceeding was not a purposeful attempt to delay this litigation and stay associated with Plaintiffs' quest for injunctive relief is certainly not attributable to any attempt by Movers to delay this proceeding.   As for the risk of losing potential evidence, to the extent the risk ever existed, that risk no longer exists.   Since this Court voiced this concern over a year ago, the parties have completed their document productions consisting of hundreds of thousands of pages.   The evidence is well preserved.

In short, a 10-month delay poses nothing more than a limited, relatively brief pause in this litigation that would not result in any prejudice whatsoever to Plaintiffs.   Conversely, Movers may suffer irreparable damage if this Court fails to enter a stay order through the end of the applicable five-year statute of limitations for criminal charges to be filed.

This factor also weighs in favor of a stay order.

### D.   The Failure to Enter a 10-Month Stay Order is Fatal to Movers' Defense.

This factor requires consideration of the "burden on the moving party of permitting the current litigation."   *Deloitte*, 2023 WL 6037201 at *1.   Here, consideration of the burden on Movers if the current litigation proceeds.   Again, Movers maintain that the assertion of the Fifth Amendment privilege by Messrs. Rinker, Weldzius, and Rodriguez will deprive Movers of due process by precluding them from presenting a meaningful and substantive defense.   Plaintiffs present no valid opposition.

---

[46] *See* Doc. 1322, p. 15.

[47] *Id.*

In another incredible representation, Plaintiffs argue that Movers "fail to articulate "any basis for how their defenses may be impacted by two individuals feigning the Fifth Amendment concerns."[48] Not only does the representation contains a false premise, but it is also nothing more than an unsupported, baseless insult that does not warrant any consideration. Implicit in Plaintiffs' next accusation is the suggestion that Movers would make a false representation to this Court and counsel. Plaintiffs represent that Movers failed to substantiate their statement that "based on information and belief there are other former high-level personnel of LBV, LBR, and LBT who have individually retained counsel that intend to invoke their Fifth Amendment rights should Plaintiffs seek to depose them."[49] According to Plaintiffs, the failure to substantiate this assertion "demonstrates Movers' overall failure of proof."[50] This is a *non sequitur*. It certainly does not necessarily follow that the statement of Movers' belief on this one discrete representation constitutes an "overall failure of proof" – an obvious exaggeration and overreach by Plaintiffs.

To the extent Plaintiffs' argument has any merit, which is denied, the filing of the email from counsel for Fermin Rodriguez confirming that Mr. Rodriguez will also invoke his rights under the Fifth Amendment cures this alleged unsubstantiated statement.[51] Still, even without evidence of Mr. Rodriguez's invocation of his Fifth Amendment rights, the invocation of the right by Messrs. Rinker and Weldzius is sufficient to establish Movers' contention of fatal prejudice.

In any event, the suggestion that Mr. Rinker's testimony is not critical to Movers' defense ignores the fact that Mr. Rinker is the only witness identified in LBVs initial disclosures and one (1) of only five (5) witnesses identified in EIG GEP's initial disclosures and dismisses out of hand

---

[48] Plaintiffs' Opposition, p. 16.

[49] *Id.*

[50] *Id.*

[51] Doc. 1326, Local Rule 7.1(b) Submission attaching Exhibit "10."

the obvious significance of the testimony of the CEO of LBV, LBR, and LBT.  Certainly, Mr. Rinker's significance as an essential witness to the defense of this matter cannot be legitimately disputed. Furthermore, Plaintiffs' representation that other high-level personnel have already been deposed and have not "expressed any Fifth Amendment concerns"[52] is curious.  The statement is contrary to Plaintiffs' representation that Movers are purposely trying to delay discovery and thwart Plaintiffs' attempts to depose key witnesses and, in any event, in no way diminishes Mr. Rinker's significance or that of any other key witness.   And, Plaintiffs are obviously not retreating from their request for the depositions of these key witnesses.

The remainder of Plaintiffs' representations and arguments regarding this factor are irrelevant and/or factually inaccurate, beginning with the statement that "Defendant EIG [GEP] . . . allowed one corporate witness, who qualifies as 'high-level personnel,' [namely, Rick Caplan] to be deposed without invoking the Fifth Amendment."[53]  The statement is wrong because EIG GEP did not, and would not, counsel its former employees regarding their Fifth Amendment privilege and counsel for EIG GEP did not engage in any such communications with Mr. Rinker during  its limited engagement as counsel for Mr. Rinker.[54]  The statement also has no relevance except to reveal another of the internal inconsistencies in Plaintiffs' Opposition.  Moreover, the statement disproves Plaintiffs' contention that Movers are purposely having witnesses "feign" fear of criminal charges to delay these proceedings.

Plaintiffs' next contention borders on being ludicrous.  Plaintiffs submit that Mr. Caplan's testimony that Mr. Rinker never communicated any belief of being in any personal criminal jeopardy somehow disproves that Mr. Rinker's "Fifth Amendment privilege is genuinely being

---

[52] Plaintiffs' Opposition, p. 16.

[53] *Id.*, p. 17.

[54] Exhibit "11," ¶ 4 and Exhibit "12," ¶ 4.

threatened, much less support that the two witnesses' invocation of the Fifth Amendment will actually prevent Movers from presenting a defense."[55]  The statement is another *non sequitur* – the two proposed conclusions do not logically follow the premise.  Mr. Rinker's failure to discuss his concern about potential criminal jeopardy with Mr. Caplan in no way shows that no such concern exists or that Mr. Rinker's testimony is not critical to Movers' defense.

Finally, Plaintiffs' contention that an adverse inference is not sufficient to warrant a total stay here is not consistent with *S.E.C. v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir. 1994), a decision Plaintiffs also cite.[56]  Plaintiffs acknowledge that in *Graystone*, the Third Circuit stated that while "the invocation of the privilege may not be too 'costly,' [i]t does not mean that it must be 'costless.'"[57]  Plaintiffs miss the point.  Implicit in that quote is that the invocation of the privilege may be too costly – one of the reasons district courts are afforded the discretion to grant a stay.  Additionally, this excerpt from *Graystone* involves the cost to a witness that results from that witness's invocation of his Fifth Amendment privilege, not the cost to another that results from the assertion of the right.  The proper consideration in this matter is the cost to Movers caused by former high-level personnel invoking their Fifth Amendment privilege.  When the cost amounts to a total deprivation of due process, it is far too high.

For all these reasons, this factor weighs heavily in favor of a stay order.

### E.    The Interests of the Court Weigh in Favor of a Stay.

Movers do not dispute Plaintiffs' representation that Courts have a "responsibility to keep its docket moving to provide litigants with a timely and effective resolution of their claims."[58]

---

[55] Plaintiffs' Opposition, p. 17.

[56] Plaintiffs try to diminish the significance of an adverse inference despite immediately threatening to seek an adverse inference after the first witness, Mr. Rinker, invoked the privilege.  *See* Doc. 1301-2.

[57] *Id.*, p. 18.

[58] *Id.*

Movers conceded this point in their original Memorandum in Support.[59]  Nevertheless, judicial efficiency must yield to this Court's overarching obligation to ensure that litigants are afforded due process.  *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463 (2000) ("Due process . . . required that [the defendant] be given an opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him"); and *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits . . . . What the Constitution does require is an opportunity granted at a meaningful time and in a meaningful manner . . . for a hearing appropriate to the nature of the case" (internal quotations and citations omitted)).

In this matter, the interests of this Court must necessarily focus on ensuring that Movers are afforded an opportunity to present a defense – an opportunity that requires a stay of these proceedings for the 10-month period necessary to allow key witnesses to testify without fear of criminal prosecution – providing Plaintiffs with a substantial and insurmountable advantage.

Accordingly, this factor also weighs in favor of the requested stay.

### E.    *A 10-Month Stay Will Not Harm the Public Interest.*

According to Plaintiffs, "[t]h public also has a significant interest in ensuring the flow of this Court's judicial docket so that justice may be administered to the instant litigants, as well as all other litigants before this Court, in a timely fashion.'"[60]  On this point, Movers are in complete agreement.  As litigants in this matter, Movers are entitled to have this Court ensure that justice is properly administered.  Under the particular facts of this case, for the reasons stated and repeated

---

[59] Doc. 1301, p. 19:  "To be sure, 'the Court has an interest in managing its cases efficiently,'" quoting *Frantatoro v. Grabato*, 2023 WL 5605669, *5, and referencing *Walsh Securities*, 7 F.Supp.2d at 528 (same).

[60] Plaintiffs' Opposition, p. 19.

above, justice requires the issuance of a stay order. Indeed, the issuance of the requested stay is necessary to ensure that Movers will be afforded the due process rights to which they are entitled, and that the public expects, will be protected by the Court. A stay of the limited duration being sought in no way harms the public interest. [61]

## III.    CONCLUSION AND REQUESTED RELIEF.

Plaintiffs respectfully urge this Court to grant a stay of these proceedings until May 30, 2026, reserving the rights of any party to seek to extend and/or lift the stay at any time prior to May 30, 2026. Each of the six factors this Court must consider in deciding the Motion to Stay weighs heavily in favor of the limited duration stay and the failure to do so will result in Movers being deprived of their due process rights. The assertion of their Fifth Amendment rights by key defense witnesses comes with an unacceptable cost to Movers that this Court is compelled to avoid. The severe prejudice to Movers of being unable to present a substantive defense or worse, the imposition of adverse inferences that Plaintiffs intend to pursue and a likely adverse judgment, necessitates a ten-month stay to avoid this unjust outcome.

Movers, however, are aware that this Court maintains the discretion to fashion an appropriate remedy based on the particular facts of the case." *See*, *Graystone*, 25 F.3d at 192. Should this Court determine that the facts herein do not warrant a ten-month stay of these proceedings, as an alternative remedy, Movers respectfully urge this Court to grant a stay precluding the deposition of any witness who invokes their Fifth Amendment privilege through and until May 30, 2026. Because trial of this matter is not set to commence until November 2026, sufficient time exists for these witnesses to be deposed months before trial commences.

---

[61] *See Frantatoro v. Grabato*, 2023 WL 5605669, at *5 ("[g]enerally, the grant of a stay of a civil case does not harm the public interest," citing *Walsh*, 7 F.Supp.2d at 529.

Respectfully submitted,

Dated: August 5, 2025

*/s/ Kenneth M. Klemm*

Kenneth M. Klemm (solely with respect to case nos. 21-00253, 00260 & 00261, admitted *pro hac vice*)
Adam B. Zuckerman (solely with respect to case nos. 21-00253, 00259 & 00260, admitted *pro hac vice*)
Anne Derbes Wittmann (admitted *pro hac vice*)
Leonard J. Yanez (admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
kklemm@bakerdonelson.com
azuckerman@bakerdonelson.com
awittmann@bakerdonelson.com
lyanez@bakerdonelson.com

*and*

Amy L. Champagne (solely with respect to case nos. 21-00253, 00259 & 00261, admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Telephone: (601) 351-8912
achampagne@bakerdonelson.com

*and*

Dated: August 4, 2025

*/ s/ Adam N. Marinelli*

Adam N. Marinelli (V.I. Bar No. 1294)
BOLTNAGI PC
Merchants Financial Center
4608 Tutu Park Mall, Suite 202
St. Thomas, Virgin Islands 00802-1816
Telephone: (340) 774-2944
amarinelli@vilaw.com

*Attorneys for EIG Global Energy Partners, LLC and Limetree Bay Ventures, LLC*

*and*

Dated: August 4, 2025        */s/ Carolyn F. O'Connor, Esq*

Carolyn F. O'Connor, Esq.
V.I. Bar Number R2100
Joseph T. Hanlon, Esq.
V.I. Bar Number R2099
WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
7 Giralda Farms,
Madison, NJ 07940
Telephone: (973) 624-0800
carolyn.oconnor@wilsonelser.com
joseph.hanlon@wilsonelser.com

*Attorneys for Limetree Bay Refining, LLC,*
*a Nominal Defendant*

*and*

Dated: August 4, 2025        */s/ Carl A. Beckstedt, III, Esq.*

Carl A Beckstedt , III
Earnesta L. Taylor
BECKSTEDT & KUCZYNSKI LLP
2162 Church St.
Christiansted, VI 00820
340-719-0601
Fax: 800-886-6831
Email: earnesta@beckstedtlaw.com

*and*

Dated: August 4, 2025        WEINBERG WHEELER HUDGINS GUNN &
DIAL, LLC

*/s/  Shubhra R. Mashelkar*

Shubhra R. Mashelkar
Ga. Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Limetree Bay Terminals, LLC*

## **CERTIFICATE OF SERVICE**

I certify that on August 5, 2025, the foregoing Reply Memorandum was served on all counsel of record via electronic mail and/or via the Court's CM/ECF system.

_/s/ Kenenth M. Klemm_