**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

CLIFFORD BOYNES, et al.,

    Plaintiffs,

    v.                                          **1:21-cv-0253-WAL-EAH**

LIMETREE BAY VENTURES, LLC et al.,

    Defendants.
_____

HELEN SHIRLEY, et al.,

    Plaintiffs,

    v.                                          **1:21-cv-0259-WAL-EAH**

LIMETREE BAY VENTURES, LLC et al.,

    Defendants.
_____

MARY L. MOORHEAD, et al.,

    Plaintiffs,

    v.                                          **1:21-cv-0260-WAL-EAH**

LIMETREE BAY VENTURES, LLC et al.,

    Defendants.
_____

BEECHER COTTON, et al.,

    Plaintiffs,

    v.                                          **1:21-cv-0261-WAL-EAH**

LIMETREE BAY VENTURES, LLC et al.,

    Defendants.
_____

**TO:**

| | |
|---|---|
| John K. Dema, Esq. | Ke Zhang, Esq. |
| Rebekka C. Veith, Esq. | Martin A. Sheldon, Esq. |
| Brian James Mersman, Esq. | Michael L. Sheesley, Esq. |
| Gregg R. Kronenberger, Esq. | Kevin F. D'Armour, Esq. |
| C. Hogan Paschal, Esq. | Lisa Michelle Komives, Esq. |
| Gaylin Vogel, Esq. | Carly Jonakin, Esq. |
| Hugh P. Lambert, Esq. | Jon F. Carmer Jr, Esq |
| Alexis Hill, Esq. | Martin A. Shelton, Esq. |
| J. Christopher C. Zainey, Jr., Esq. | Ronald S. Masterson, Esq. |
| William J. Sheppard, Esq. | Meredith Pohl, Esq. |
| Kerry J. Miller, Esq. | Keith Kodosky, Esq. |
| Shubhra Mashelkar, Esq. | Rob Dille, Esq. |
| Lee J. Rohn, Esq. | Charlotte K. Perrell, Esq. |
| Ethan A. Wilkinson, Esq. | Derek Y. Sugimura, Esq. |
| Paul C. Thibodeaux, Esq. | Kenneth M. Klemm, Esq. |
| Christopher G. Garten, Esq. | Adam B. Zuckerman, Esq. |
| Jennifer Jones, Esq. | Jose A. Herrera Paez, Esq. |
| Brendan Doherty, Esq. | Alexander M. Lyon, Esq. |
| Daniel H. Charest, Esq. | Amy L. Champagne, Esq. |
| Earnesta L. Taylor, Esq. | Jennifer G. Levy, Esq. |
| Nick P. Panayotopoulos, Esq. | Anna Rotman, Esq. |
| Charles Edward Lockwood, Esq. | Jennifer A. Adler, Esq. |
| Daniel T. Donovan, Esq. | Hadley J. Hurst, Esq. |
| Erin Quick, Esq. | Brian Epstein, Esq. |
| Mary Elizabeth Miller, Esq. | Kristin Dupre, Esq. |
| Matthew Scott Owen, Esq. | Aimee Adams, Esq. |
| J. Daryl Dodson, Esq. | Anna Katherin Benedict, Esq. |
| Arthur Justin Herskowitz, Esq. | Tracy Myers, Esq. |
| Francis Healy, Esq. | Sarah K. Casey, Esq. |
| Kanaan Le'Roy Wilhite, Esq. | Camalla K. Guyton, Esq. |
| Melvin Brosterman, Esq. | N. Kordell Caldwell, Esq. |
| Adam Nicholas Marinelli, Esq. | Carolyn F. O'Conner, Esq. |
| Lori B. Leskin, Esq. | Joseph T. Hanlon, Esq. |
| Rhonda R. Trotter, Esq. | Julie S. Meaders, Esq. |
| Robert Franciscovich, Esq. | Ronald Schirtzer, Esq. |
| Schuyler A. Smith, Esq. | Leopoldo J. Yanez, Esq. |
| Andres Pino, Esq. | Anne D. Wittmann, Esq. |
| Chivonne Thomas, Esq. | Alexander Heydemann, Esq. |
| Jennifer Quildon Brooks, Esq. | Aaron Cohn, Esq. |
| Ryan C. Stutzman, Esq. | David Kerschner, Esq. |
| Alex M. Moskowitz, Esq. | Lloyd A. Lim, Esq. |

## ORDER

**THIS MATTER** comes before the Court on the "Motion to Stay the Magistrate Judge's May 16, 2025 Order Pending Review of Objections" filed by third-party Sedgwick Claims Management Service ("Sedgwick") on May 30, 2025. Dkt. No. 1231.[1] Sedgwick seeks to stay an Order of this Court, Dkt. No. 1220, directing it to comply with a subpoena issued by Plaintiffs by disclosing certain documents in its possession. After setting an expedited briefing schedule, the Court held a hearing on the motion on June 20, 2025.[2] For the reasons that follow, the Court will deny Sedgwick's motion to stay.

## BACKGROUND

According to Plaintiffs' Consolidated Second Amended Class Action Complaint, in early 2021 the Limetree Bay Refinery (the "Refinery") on St. Croix discharged hazardous chemicals into the air on at least four occasions. *See* Dkt. No. 1327 at 5. Following the fourth, and largest, discharge, "Limetree hired the catastrophic response team of Sedgwick claims administrators to inspect properties for contamination. Sedgwick physically inspected these properties for contamination." *Id.* at 60. Sedgwick inspected thousands of homes and created "claims files" for each home it surveyed. *See* Dkt. No. 1220 at 4-5. Those claims files described the impact of the Refinery's discharges on the inspected homes.

There is some debate about who hired Sedgwick to conduct the inspections, but it seems that Sedgwick was hired by either Limetree Bay Terminals, LLC ("LBT") or Limetree

---

[1] All citations to the docket in this Order refer to the docket in *Boynes v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00253.

[2] At the June 20 hearing, the Court also heard arguments on a related motion filed by Plaintiffs requesting that this Court certify to the District Judge the facts surrounding Sedgwick's failure to produce documents in response to a Court Order as a charge of civil contempt. *See* Dkt. No. 1237. The Court shall address those arguments and Plaintiffs' motion in a separate Order.

Bay Refining, LLC ("LBR") (collectively "the Limetree Bay entities"). *See id.* at 16 n.3 ("Sedgwick believes that it was hired by LBT, not LBR. LBT disputed that claim."). Regardless, no entity paid Sedgwick for the work it did when it inspected homes. *Id.* at 4. At some point after the discharges, LBR filed for bankruptcy. During LBR's bankruptcy proceedings, LBR moved to compel the turnover of the claims files from Sedgwick. *See id.* at 10, 16-17. Sedgwick opposed the motion. *Id*. Ultimately, the parties came to an agreement that the bankruptcy court overseeing LBR's bankruptcy endorsed in an order dated September 2, 2021 (the "Bankruptcy Court Order"). *Id*. The bankruptcy court ordered Sedgwick to turn over a spreadsheet containing certain information related to its claims files, but permitted Sedgwick to retain the claims files themselves. *Id*.; *see also* Dkt. No. 969-3. The Bankruptcy Court Order also provided Sedgwick with a $1.15 million general unsecured claim against LBR's insurers. *Id.* At some point after that, Sedgwick sued LBT for breach of contract. Dkt. No. 1220 at 16. Sedgwick and LBT settled their lawsuit for an undisclosed amount. *Id*. Sedgwick retained the right to reopen its lawsuit against LBT for the remainder of the amount allegedly owed to it if certain confidential conditions precedent were met. *Id*. at 17.

On February 4, 2025, Plaintiffs filed a motion to compel Sedgwick to produce its claims files and related documents pursuant to a Rule 45 subpoena. *See* Dkt. No. 943. Sedgwick objected to turning over its claims files and moved to quash Plaintiffs' subpoena because it had not been paid for the work it undertook to create the claims files. *See* Dkt. No. 969. Sedgwick argued that the subpoena placed an undue burden on it because of the economic loss it would face if it turned the claims files over to Plaintiffs, who would in turn have to disclose the claims files to the Limetree Bay entities. *Id*. In short, Sedgwick was seeking to use the claims files—and their utility in the instant lawsuit—as collateral for the amount that the Limetree Bay entities owed to it. Sedgwick also argued that the Bankruptcy

Court Order conferred commercial confidentiality over the claims files, which entitled Sedgwick to payment from Plaintiffs for the value of the files if Sedgwick was made to comply with the subpoena. *Id.*

The Court held a hearing on the motions to compel and to quash on March 24, 2025. Following that hearing, on May 16, 2025, the Court entered an Order granting Plaintiffs' motion to compel and denying Sedgwick's motion to quash (the "May 16 Order"). *See* Dkt. No. 1220. The Court determined that compliance with the subpoena imposed no undue burden on Sedgwick because disclosure of the files would not *cause* Sedgwick a clearly defined and serious injury. *Id.* at 26-27. The Court further found that even if disclosure did cause such an injury, the balance of factors weighed in favor of disclosure. *Id.* Moreover, the Court found that the Bankruptcy Court Order did not bestow commercial confidentiality on the files, and that even if it had, Sedgwick was not entitled to compensation because complying with the subpoena would not cause Sedgwick any compensable losses aside from the expenses directly related to compiling the requested discovery into a produceable format, which expenses the Court ordered Plaintiffs to pay.[3] *Id.* at 29-31. Therefore, the Court directed Sedgwick to turn over the requested documents "within two weeks" of the Order: by May 30, 2025. *Id.* at 32.

On May 30, 2025, Sedgwick timely filed objections to the May 16 Order. *See* Dkt. Nos. 1229, 1230; *see also* 1236.[4] It contemporaneously filed the instant motion to stay.

---

[3] The parties agreed that it would cost Sedgwick $25,000.00 to comply with the subpoena. The May 16 Order directed Plaintiffs to pay Sedgwick $25,000 "[u]pon receipt" of the claims files and related documents. Dkt. No. 1220 at 32-33.

[4] The Clerk of Court's office directed Sedgwick to refile its objections. The refiled version, which was substantively identical to the original, was filed on June 2, 2025 at Docket Number 1236.

### I.     Sedgwick's Objections

Sedgwick raised three objections to the May 16 Order. First, it asserted—for the first time—that the claims files at issue are the property of LBR's bankruptcy estate and that bankruptcy courts retain exclusive jurisdiction over all property of a debtor and the debtor's estate. *Id*. at 7 (citing, *e.g.,* 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate")). Thus, this Court lacked jurisdiction over the claims files. According to Sedgwick, the May 16 Order "grant[ed] LBR/LBT relief that they were unable to obtain from the only court with exclusive jurisdiction over the Claims Files." *Id*. at 8.

Second, Sedgwick argued that the May 16 Order's holding that compliance with Plaintiff's subpoena would not *cause* Sedgwick a clearly defined and serious injury was an "oversimplification." *Id*. at 10. Sedgwick asserted that the May 16 Order failed to recognize that compliance with the subpoena would cause it a separate injury from that caused by the Limetree Bay entities' non-payment: compliance would render the claims files worthless and would strip Sedgwick of the protections afforded it by the Bankruptcy Court Order. *Id*. at 10-11.

Third, Sedgwick argued that the May 16 Order wrongly found that Plaintiffs' need for the documents was substantial enough to justify finding that the request placed no undue burden on Sedgwick. *Id*. at 11. Sedgwick agreed to provide Plaintiffs with photographs and GPS coordinates of the homes it evaluated, which afforded Plaintiffs a significant starting point to recreate the information they sought from the claims files. Therefore, although Plaintiffs would be inconvenienced if the Court denied their subpoena, their need for the documents was minimal relative to the burden placed on Sedgwick by ordering it to comply

with the subpoena. *Id*. Likewise, Sedgwick asserted that the Court failed to adequately weigh the fact that because this is Plaintiffs' case, "it is their burden to marshal evidence in support of their claim" when evaluating whether the subpoena placed an undue burden on Sedgwick. *Id*.

## II.    The Stay

### A.  Sedgwick's Motion

On May 30, 2025, Sedgwick filed a motion to stay the May 16 Order and accompanying memorandum in support of its motion. Dkt. Nos. 1231, 1232. Sedgwick noted that a court must consider four factors when evaluating whether to stay an order pending appeal: "(1) whether the [movant] has made a strong showing of the likelihood of success on the merits; (2) will the [movant] suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015).

In its memorandum, Sedgwick argues that, as to the first factor, it has made a sufficient showing that it will prevail in its objections to the May 16 Order because the bankruptcy court overseeing LBR's bankruptcy proceedings continues to retain exclusive jurisdiction over all of LBR's property. Dkt. No. 1232 at 5. Accordingly, Sedgwick avers, this Court lacked jurisdiction to enter an Order affecting that property—which property included the claims files. *Id*. Moreover, Sedgwick asserts a stay is necessary here because "'maintaining the status quo is appropriate when a serious legal question is presented.'" *Id*. (quoting *Prometheus Radio Project v. F.C.C.,* 2003 WL 22052896, at *1 n.3 (3d Cir. 2003)). Regarding the second factor, Sedgwick argues that if the May 16 Order is not stayed, it will suffer a harm that cannot be prevented or rectified by a successful appeal. *Id*. at 6. Because turning over the documents would moot Sedgwick's objections, "without the stay of the

Magistrate Judge's Order, as a practical matter, Sedgwick will be stripped of its right to lodge objections to that order and will suffer irreparable harm as a result." *Id.* Third, the prejudice Plaintiffs will suffer from a stay is minimal. The only possible prejudice to Plaintiffs is delay. Such prejudice can be mitigated through an extension of the pending deadlines, if necessary, and is far outweighed by the harm Sedgwick will suffer if it is made to comply with the subpoena without exercising its appellate rights. *Id.* at 6-7. Finally, Sedgwick argues that because it is settled law that a court lacking jurisdiction over bankruptcy estate property cannot compel the production of that property, the public has an interest in this stay to ensure an outcome consistent with governing law. *Id.* at 7.

### B. Plaintiffs' Response

Plaintiffs maintain that stays are exceptional, and that Sedgwick has not established justification for a stay. Dkt. No. 1258 at 2-3. Moreover, Plaintiffs assert that Sedgwick waiting until the afternoon of its compliance deadline to file the motion to stay is in-and-of-itself cause to deny the motion. *Id.* at 3 (citing *In re Lernout & Hauspie Sec. Litig.*, 219 F.R.D. 28, 30–31 (D. Mass. 2003) ("If a party seeks a stay of such an Order, it has the duty to seek the stay sufficiently in advance of the date set for compliance so that the Court will have the opportunity to rule on the motion prior to the compliance date.")).

More substantively, Plaintiffs argue that Sedgwick has not made a sufficient showing that it is likely to be successful on appeal. Sedgwick's new theory that LBR owns the claims files was never asserted by anyone, including Sedgwick and LBR, until Sedgwick lodged its objections to this Court's Order. The assertion that LBR owns the claims files "flatly contradicts [Sedgwick's] prior positions before this Court and before the Bankruptcy Court."

*Id.* at 5.[5] According to Plaintiffs, "Sedgwick makes no showing whatsoever that LBR has or ever had a legal or equitable interest in the Sedgwick claims files." *Id.* at 7. Thus, it is of no moment whether a bankruptcy court retains exclusive jurisdiction over a bankruptcy estate's property, since the claims files are not LBR or its estate's property. *Id.* at 8. However, even were the claims files property of LBR, that fact would still not oust this Court of jurisdiction over the subpoena. The subpoena was directed to Sedgwick, a third-party custodian of the claims files, not the debtor. *Id.* Sedgwick cites no authority holding that a third-party custodian of debtor property cannot provide copies of documents within their possession, control, or custody pursuant to Rule 45 because no such authority exists. *Id.* The May 16 Order did not require Sedgwick to turn over or transfer title of the actual property, but rather only to turn over copies of the claims files, which Sedgwick has not demonstrated is disallowed, even where a bankruptcy court retains exclusive jurisdiction over the property itself. *Id.*

As to the second stay factor, Plaintiffs assert that Sedgwick's concerns regarding its objections being mooted if the Order is not stayed are meritless. *Id.* at 9 (citing, *e.g., In re Platinum Partners Value Arbitrage Fund L.P.*, No. 18-cv-5176, 2018 WL 3207119, at *7 (S.D.N.Y. June 29, 2018) ("A showing of irreparable harm requires more than the possibility of mootness [of an appeal], particularly because courts have the ability to fashion at least some form of relief if a discovery production order is reversed on appeal.")). Plaintiffs add

---

[5] Plaintiffs argue that Sedgwick should be judicially estopped from asserting that LBR owns the claims files, because its new position is clearly irreconcilably inconsistent with its previous position that LBR was not the owner of the claims files, its reversal is made in bad faith to avoid compliance with a court order, and estoppel here is appropriate to "preserve the authority and integrity of this Court" in light of Sedgwick's about-face. Dkt. No. 1258 at 6-7.

that "[a]llowing such arguments to justify a stay would effectively grant parties unilateral power to halt discovery simply by filing objections or threshold motions." *Id*. at 10.

As to the third factor, Plaintiffs assert that they would be significantly harmed by the stay. Plaintiffs have already "suffered" through significant delays as this case enters its fifth year. *Id*. at 11. The claims files are critical to Plaintiffs' claims and are necessary for Plaintiffs' experts, whose work is already underway. *Id*. Additionally, a trial date has long been set. Delay pursuant to Sedgwick's objections will likely impair timely expert discovery and briefing on class certification and potentially trial, and therefore constitutes real and significant prejudice. *Id*.

Finally, Plaintiffs argue that it "is not in the public interest to reward litigation tactics that withhold compliance with valid discovery orders while raising baseless jurisdictional objections at the last minute." *Id*. at 12. Rather, the public has an interest in timely discovery and compliance with court orders. *Id*. Particularly in this case, where Plaintiffs' claims impact thousands of Virgin Islands residents, the public interest strongly weighs against granting this stay. *Id*.

### C. Sedgwick's Reply

In reply, Sedgwick asserts that subject-matter jurisdiction can never be waived. Therefore, it is improper to suggest that Sedgwick should be estopped from raising a question of jurisdiction now. Dkt. No. 1268. Furthermore, the Bankruptcy Court Order states that that court retains jurisdiction with respect to matters of implementation or interpretation of the order, indicating that this Court lacks jurisdiction to even interpret the Bankruptcy Court Order. *Id*. at 4-5. Moreover, Sedgwick asserts that disclosure of the claims files will cause irreparable harm in that disclosure would cause it to permanently lose the commercial value of its claims files. *Id*. at 7-8. In similar scenarios, courts have found it

appropriate to stay an order unsealing certain documents pending an appeal of that order. *Id*. at 8 (citing, *e.g.*, *Joint Stock Soc. v. UDV N. Am., Inc.*, 104 F. Supp. 2d 390, 406–07 (D. Del. 2000) and *Granato v. City & Cnty. of Denver*, No. 11-cv-0-304, 2011 WL 1335854, at *2 (D. Colo. Apr. 7, 2011) ("[A] stay may be appropriate where enforcing the existing discovery order would require the disclosure of arguably privileged information, trade secrets to a competitor, or the like.")). Additionally, the functional loss of appellate rights is an irreparable harm. *Id*. Sedgwick also rejects Plaintiffs' theory of prejudice caused by delay. It notes that Plaintiffs are responsible for their case schedule, not third-party Sedgwick. *Id*. at 9.

### III.    The Hearing

At the June 20, 2025 motions hearing, Sedgwick asserted that the most significant facet of its objections to the May 16 Order was its claim that the Court lacked jurisdiction over the property the Court has compelled Sedgwick to turn over.  Attorney Lloyd Lim argued on behalf of Sedgwick that the bankruptcy court could not grant Sedgwick a $1.1 million claim against LBR for the claims files unless the bankruptcy court was implicitly acknowledging that the claims files belonged to LBR. And because there was a question as to ownership of the property, Plaintiffs should have sought leave from the bankruptcy court, not this Court, to obtain access to the requested property. The Court's failure to consider its subject matter jurisdiction over the claims files—or lack thereof—constituted clear error.

Attorney Daniel Charest, on behalf of Plaintiffs, responded by stating that they are *not* seeking any of LBR's property. They are seeking copies of documents. And being granted access to copies of documents does not, in any way, dispossess LBR of those documents. The only value being disrupted here is the value of the labor Sedgwick performed for the Limetree Bay entities. That is what the Bankruptcy Court Order secured for Sedgwick. It did

*not* secure the value of the claims files themselves. Thus, there is no need to go to the bankruptcy court to access copies of the claims files. Moreover, LBR's bankruptcy plan has been confirmed by the bankruptcy court. The plan liquidated LBR into a new entity, transferring all of LBR's property into a liquidating trustee. Therefore, even if the claims files were the property of LBR's estate, that is no longer the case since the bankruptcy estate no longer exists. Attorney Lim challenged, without specific explanation, the contention that the bankruptcy estate no longer exists.

## DISCUSSION

### I.    Legal Principles

Per the Local Rules, "[t]he filing of a notice of objection does not operate to stay the [Magistrate Judge's] order pending a determination by the District Judge. A stay of a Magistrate Judge's order must be sought in the first instance from the Magistrate Judge whose order has been objected to[.]" LRCi 72.2(b).[6] When a magistrate judge considers whether to stay his order pending appeal to a district judge, he must weigh the same factors a court considers when determining whether to stay an order pending appeal to a circuit court. *See Illinois Nat'l Ins. Co. v. Cornett*, No. 1:20-cv-00008, 2021 WL 1711361, at *1 (D.V.I. Apr. 29, 2021). Those factors are "(1) whether the [movant] has made a strong showing of the likelihood of success on the merits; (2) will the [movant] suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and

---

[6] Although Sedgwick waited until the date compliance was due to move for a stay of the May 16 Order, the Court disagrees with Plaintiff's contention that this, in and of itself, justifies denying the motion to stay. While Sedgwick's refusal to turn over the documents by the deadline may have opened it up to sanctions, the timing does not prohibit Sedgwick from seeking a stay.

(4) whether a stay is in the public interest." *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir.

2015)).

> In *In re Revel AC*, the Third Circuit held:

> all four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not [necessarily] greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Id.* at 571 (citation modified). Accordingly, "it isn't enough that the failure to obtain a stay

will be 'a disaster' for the stay movant but only a 'minor inconvenience to the [stay

opponent],' as '[e]quity jurisdiction exists only to remedy legal wrongs; [thus,] without some

showing of a probable right[,] there is no basis'" for granting the stay. *In re Revel AC*, 802 F.3d

at 568 (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 387 (7th Cir. 1984)).

Therefore, *both* of the first two factors must be met for a court to consider granting a stay of

its orders. *Id.*

If both of the first two factors are met, courts must engage in a "sliding-scale"

approach to weighing all four factors. *Id.* "Under the sliding-scale approach, the greater 'the

moving party's likelihood of success on the merits, the less heavily the balance of harms must

weigh in its favor, and vice versa.'" *Smith v. Ostrander*, No. 3:21-cv-0010, 2023 WL 2497859,

at *5 (D.V.I. Mar. 14, 2023) (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)).

## II.    Application

### A.  Success on the Merits

A district judge will "modify or set aside" a magistrate judge's order on a non-

dispositive matter only when the order "is clearly erroneous or is contrary to law." Fed. R.

Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). "A magistrate judge's finding is clearly erroneous if, upon consideration of the record evidence, the district court is 'left with the definite and firm conviction that a mistake has been committed' and 'is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law.'" *Hoffman v. Hammerhead Constr., LLC*, No. 3:21-cv-0046, 2023 WL 6121972, at *1 (D.V.I. Sept. 19, 2023) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)). With this high standard in mind, the Court holds that Sedgwick's objections[7] promise no more than a "negligible" chance of success. *In re Revel AC*, 802 F.3d at 571.

### 1. The Subject Matter Jurisdiction Argument

#### a. The Bankruptcy Court Order Did Not Impute Ownership of the Claims Files to LBR

Since at least 2021, when the claims files first became an issue in LBR's bankruptcy proceedings, through the March 24, 2025 hearing, and ultimately until the filing of the instant motion, Sedgwick has ardently maintained that the claims files at issue did *not* belong to LBR or its bankruptcy estate. As an exhibit to their opposition to the motion to stay, Plaintiffs attached a brief that Sedgwick filed in opposition to LBR's motion to compel the turnover of the claims files during the LBR bankruptcy proceedings. Dkt. No. 1258-1. In that bankruptcy brief, Sedgwick stated that the claims files were not the property of LBR. *Id.* at 1. In fact, Sedgwick asserted that it was "circulating drafts of an addendum to the Agreement [it had with LBT] which would have added [LBR] to the Agreement, effective as May 13, 2021. This addendum was never finalized or signed by [LBR] despite Sedgwick's efforts to constantly

---

[7] To determine whether the movant "has made a strong showing of the likelihood of success on the merits," and thus whether to grant the motion for a stay, this Court must conduct an initial evaluation of Sedgwick's objections to the May 16 Order. The District Judge will ultimately rule on the merits of Sedgwick's objections.

contact [LBR] regarding the status of the addendum and timing for its execution." *Id.* at 3 n.2. Indeed, even LBR never argued that it owned the claims files. *See* LBR's Motion for Turnover, Dkt. No. 506 at 4, *In re Limetree Bay Services, LLC*, No. 21-32351 (Bankr. S.D. Tex. Sept. 1, 2021) (LBR specifically argued that the claims files did not need to be the property of its estate for the bankruptcy court to compel Sedgwick to turn the files over to it).[8]

Moreover, at the hearing on Plaintiff's motion to compel and Sedgwick's motion to quash, Sedgwick acknowledged that LBR never claimed to own the claims files. *See* Transcript of March 24, 2025 Motions Hearing 119:9-12 [hereinafter Tr.] ("Plaintiffs' position here that they're not an owner is the same position that Limetree Bay Refining took when it filed this emergency motion, it was not the owner."). In fact, as Plaintiffs note, Sedgwick's new argument that LBR owns the claims files completely contradicts its argument and the testimony of its witnesses at the hearing on the motion to compel. *See, e.g.,* Tr. 58:3-7 (in its bankruptcy proceedings, LBR was requesting the claims files for the purpose of this litigation "even though they're not the owners of the information."); Tr. 118:21-25 ("And Limetree Bay Refining also didn't claim . . . they were an owner."); Tr. 117:9-18 (Attorney Kömives explaining that "Sedgwick is the owner of the information"); Tr. 277:6-8 (Attorney Lim stating that the owner of the work is LBT).

Notwithstanding this history, Sedgwick now asserts that, in fact, LBR is and always has been the owner of the claims files. As evidence for this new position, Sedgwick cites to a portion of the Bankruptcy Court Order that states that LBR "shall allow Sedgwick's general unsecured claim of approximately $1,115,000. To the extent that Sedgwick receives payment

---

[8] To be clear, LBR neither claimed nor denied ownership of the claims files. Instead, it argued to the bankruptcy court that the claims files should have been turned over, regardless of whether LBR was the owner.

on this claim from any other source, such payment will reduce the amount of Sedgwick's claim." Dkt. No. 969-3. Sedgwick says that the bankruptcy court could not grant it such a claim against LBR unless the court specifically found that the claims files were the property of LBR, which would mean that the bankruptcy court retains exclusive jurisdiction over the claims files as property of the bankruptcy estate.[9] The Court finds this argument unavailing.

Perhaps the best evidence demonstrating that the claims files are not the property of LBR was raised in argument by Sedgwick at the March 24 hearing. If the claims files were, in fact, the property of LBR and they, in fact, had value to LBR's estate, Sedgwick would have been required to turn the documents over at the beginning of LBR's bankruptcy proceedings. *See* 11 U.S.C. § 542(a) (an entity "in possession, custody, or control," of a bankruptcy estate's property "shall deliver to the trustee [of the bankruptcy estate], and account for, such property or the value of such property"); *see also* 11 U.S.C. § 543(b)(1) (a custodian shall "deliver to the trustee any property of the debtor held by or transferred to such custodian"). Because the bankruptcy court did not Order Sedgwick to "deliver" its claims files to LBR, this Court cannot find that the bankruptcy court somehow implicitly declared the claims files as property of LBR.

Moreover, the term "claim" is defined in the Bankruptcy Code as a "right to payment" or "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). "Congress opted for an expansive" definition of the word "claim" that includes "all possible legal obligations . . . 'of the debtor, no matter how remote

---

[9] For the purposes of this Order only, the Court presumes that Sedgwick is correct that it can raise this subject-matter jurisdiction argument for the first time in an objection, given that "subject matter jurisdiction is non-waivable [and] courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76-77 (3d Cir. 2003). For the same reason, the Court will not consider Plaintiffs' argument that Sedgwick should be judicially estopped from raising the argument.

or contingent.'" *In re Remington Rand Corp.*, 836 F.2d 825, 829 (3d Cir. 1988) (quoting H.R. Rep. No. 595, 95th Cong., 2d Sess. 309, *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6266). Bankruptcy courts are directed to broadly authorize claims, regardless of whether the claims are "'contingent . . . disputed, undisputed,'" or "remote." *Remington Rand Corp.*, 836 F.2d at 829 (quoting 11 U.S.C. § 101(5)). This broad definition of "claim" does not comport with Sedgwick's argument that a bankruptcy court would never grant a party a claim unless the claim was for the debtor's property—a position for which it provides no authority in support.

Significantly, no party has disputed that Sedgwick may have a right to payment from LBR as a remedy for breach of performance. It seems that all parties, including the Limetree Bay entities, agree that Sedgwick performed a service for one or both of the Limetree Bay entities, and that it was not paid for that service. Furthermore, it must be noted that the Bankruptcy Court Order itself does *not* state that Sedgwick's $1.1 million unsecured claim is for the claims files. Instead, the phrasing of the Bankruptcy Court Order indicates that the claim afforded to Sedgwick was for this work, *not* the claims files. If the bankruptcy court found that the claims files were the property of the LBR estate, it likely would have provided Sedgwick with a claim against LBR that was secured by the claims files rather than a general unsecured claim. *See, e.g., In re Samson Res. Corp.*, 559 B.R. 360, 367 (D. Del. 2016) (where claimant has not identified any asset of the debtor that could constitute collateral, the claimant must be granted an unsecured, rather than secured, claim against the debtor). That the bankruptcy court instead provided Sedgwick with an entirely unsecured claim—a low priority claim that offers no collateral—indicates that it did not consider the claims files to be property of the bankruptcy estate. *See* 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim . . . and

is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim"); *see also* Hon. Joan N. Feeny & Michael J. Stepan, 1 Bankr. L. Manual § 6.2, *Claims and interests–Types of claims and interests* (5th ed. 2025) ("In a bankruptcy case, a claim is secured to the extent of the value of the creditor's interest in the estate's interest in the underlying collateral"); *id.* § 6.47, *Secured claims–Generally* (a secured claim "is secured by a valid lien . . . and the value of the property of the estate which serves as the secured creditor's collateral equals or exceeds the amount owed to the secured creditor"). Because the bankruptcy court did not grant Sedgwick a lien on the claims files or otherwise grant Sedgwick a secured claim, it seems that the court did not believe the bankruptcy estate had any interest in the claims files.

### b. Even if the Claims Files Were LBR's Property, the Bankruptcy Court No Longer Retains Exclusive Jurisdiction Over LBR's Property

A bankruptcy court's exclusive jurisdiction over bankruptcy estate property lapses after the bankruptcy court confirms a debtor's Chapter 11 plan. *See* 11 U.S.C. § 1141(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."); *see also J. Louis Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 164-65 (3d Cir. 2004) (explaining that confirmation of a debtor's Chapter 11 plan diminishes bankruptcy court's jurisdiction). Section 1334(e) "creates exclusive jurisdiction over 'property' for a limited period of time—until confirmation and the property vests in the reorganized debtor." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 837-38 (4th Cir. 2007); *see also In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011) (if a bankruptcy court retained any jurisdiction over disputed property post-confirmation, such jurisdiction was "non-exclusive").

In *Valley Historic*, the Fourth Circuit found that, pursuant to § 1141(b), where a confirmation plan did not provide that certain legal claims would remain property of the debtor, those claims "vested in the reorganized Debtor and could no longer be considered 'property of the estate' under § 1334(e)." 486 F.3d at 838. The same is true here. Neither LBR's proposed Chapter 11 plan nor the bankruptcy court's confirmation of the Chapter 11 plan mentioned the Sedgwick claims files. *See* Order Approving Disclosure Statement on a Final Basis and Confirming Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors, Dkt. No. 1454, *In re Limetree Bay Servs., LLC*, No. 21-32351 (Bankr. S.D. Tex. May 20, 2022). Instead, LBR was specifically reorganized into a new entity, the "Transition Refinery Entity," which now possesses LBR's former property, except where explicitly stated otherwise. *Id.* at 18-19, 111-12. Therefore, even if the claims files did, at some point, belong to LBR, which the Court doubts, the bankruptcy court no longer has *exclusive* jurisdiction over those claims files.[10]

### 2. Sedgwick's Other Objections

Sedgwick's other objections to the May 16 Order are equally ineffective. First, Sedgwick takes issue with the Court's holding that the claims files are not commercially confidential. But that objection is of no moment, given that the Court expressly found that even if the files were commercially confidential, Sedgwick would still not be entitled to any compensation aside from the $25,000 it ordered Plaintiffs to pay pursuant to an agreement between Plaintiffs and Sedgwick as to the cost of complying with the subpoena. Dkt. No. 1220 at 30-31. Thus, the Court's holding was justified regardless of whether the bankruptcy court

---

[10] Although the Court finds Plaintiffs' remaining argument—that they would not need to seek approval from a bankruptcy court to obtain *copies* of documents that lack value to a debtor engaged in an active bankruptcy proceeding when those documents are being held by a third-party—convincing, it need not, and therefore does not, rule on that argument.

might have interpreted its order as conveying commercial confidentiality over the claims files.

Furthermore, the fact that the Bankruptcy Court Order stated that the bankruptcy court "shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of [the] Order," Dkt. No. 969-3, does not imply that it retained *exclusive* jurisdiction to interpret the order. "Well-settled law supports" the contention that bankruptcy courts retain jurisdiction to interpret their own orders. *See In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 387, n.28 (Bankr. D. Del. 2011) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders" especially when the order "explicitly retained jurisdiction.")). However, that a bankruptcy court retains jurisdiction over the interpretation and enforcement of its orders does not dislodge other courts of competent jurisdiction from sharing *concurrent* jurisdiction to interpret its orders. *See In re G-I Holdings, Inc.*, 580 B.R. 388, 428 (Bankr. D.N.J. 2018) ("Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction.").

Second, Sedgwick contends that the May 16 Order misstated the injury caused to Sedgwick by complying with the subpoena. The subpoena may not have caused Sedgwick to lose nearly $1 million, Sedgwick avers, but it will render it impossible for Sedgwick to collect the money it is owed. The Court rejected this argument because it found that turning over the claims files to Plaintiffs would not force Sedgwick to forgo its ability to pursue a breach of contract claim against at least LBT, if not also LBR's insurers. That remains true. It is nonsensical to say that something loses its value when it is provided to a contracting party prior to payment. Parties often provide services prior to payment, and if a non-payment occurs, the law acts to enforce the service-provider's right to payment after the fact.

Finally, Sedgwick takes issue with the Court's finding that, on balance, Plaintiffs' need for the claims files weighed in favor of disclosure, notwithstanding the fact that disclosure may cause some perceived injury to Sedgwick. However, the Court offered its "need" analysis *arguendo*, despite holding that Sedgwick had not made the initial showing that "disclosure will cause it [the] clearly defined and serious injury" necessary to balance the factors a court must consider when determining whether to quash a subpoena. *See* Dkt. No. 1220 at 26-27. Regardless, the Court's factual findings regarding Plaintiffs' need for these documents is well-supported by the record, and it is highly unlikely that it would be considered "clearly erroneous." Moreover, Sedgwick's argument that Plaintiffs are required to marshal the evidence for their case completely ignores the fact that by issuing and litigating the subpoena it served on Sedgwick, Plaintiffs *are* attempting to marshal their evidence. The rules of discovery do not impose any duty on a party to recreate pre-existing evidence when such evidence can be gathered through a valid subpoena.

In light of the foregoing, none of Sedgwick's objections demonstrate a "significantly better than negligible" likelihood that they will be successful on appeal. *In re Revel AC*, 802 F.3d at 571. Nor does the Court find that any of Sedgwick's objections present a "serious legal question." Dkt. No. 1232 at 6. Because the Court has determined that Sedgwick has not shown "probable right," the Court need not consider the other stay factors. *In re Revel AC*, 802 F.3d at 568. Nevertheless, out of an abundance of caution, the Court will briefly consider the remaining stay factors to determine whether, on balance, there is any other reason for the Court to exercise its discretion and grant the stay.

### B.  Irreparable Harm

To sufficiently demonstrate irreparable harm, a movant must show that the injury complained of is "more apt to occur than not." *Id.* at 569. "The possibility that adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* at 571 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Indeed, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement." *Id.* at 572.

The claims files are not trade secrets, whose publication instantly encumbers Sedgwick with a significant competitive disadvantage. Sedgwick's sole objection to disclosing its claims files is, and always has been, that it will suffer economic harm from disclosure. But such harm is readily compensable, if necessary, following Sedgwick's appeal.[11] Therefore, denying this stay will not render Sedgwick's appeal moot. Moreover, if the District Judge finds error in the May 16 Order, the Judge can fashion a clawback provision that will leave the parties in the position they would have been in had Sedgwick never been compelled to produce its claims files in the first instance.[12] Accordingly, Sedgwick has not shown that denying the stay will cause it irreparable harm.

### C. Harm to Other Parties

Plaintiffs have made a strong showing that the harm they will suffer from a delay of the execution of the May 16 Order is significant. The District Judge has stated that the "Sedgwick Data . . . represents the most voluminous data set presently before the Court" and the "parties agree that the Sedgwick Data provides the most reliable and complete picture of the extent of contamination." *Boynes v. Limetree Bay Ventures, LLC*, No. 2021-cv-0253, 2023

---

[11] As the Court has reiterated several times in this Order and its May 16 Order, Sedgwick's right to sue LBR or LBT for breach of contract remains unaffected. The Court, therefore, does not believe that any compensation from Plaintiffs will be necessary, even if its May 16 Order is overturned on appeal.
[12] As Sedgwick has repeatedly contended, the value of the claims files comes from their value to these parties in this litigation. If the parties are later prohibited from using Sedgwick's disclosures to litigate their case, the value of the claims files to Sedgwick is instantly restored.

WL 4637319, at *10 (D.V.I. July 20, 2023). This Court has found that the claims files "are necessary for their contemporaneity alone." Dkt. No. 1220 at 28. Thus, these documents are crucial to this litigation and further delay in obtaining them will leave Plaintiffs' experts with less time to review these critical documents and may result in a need for Plaintiffs to seek a further extension of the deadlines in this case, which extension they are not guaranteed. Moreover, Plaintiffs have been diligently litigating this case for many years. It is difficult to justify further delay because of a meritless objection from a subpoenaed third-party.

### D. Public Interest

In considering the final factor, the Court must determine "how a stay decision has consequences beyond the immediate parties." *In re Revel AC*, 802 F.3d at 569 (internal quotation marks omitted). Both the putative class members—made up of a significant portion of the island's population—and the Defendants have an interest in as speedy a resolution to this case as possible. Moreover, the public has an extremely strong interest in being assured that court orders are followed and that compliance with orders cannot be avoided through frivolous motion practice. Furthermore, the Court rejects Sedgwick's contention that denying the stay will in any way hamper the public's interest in "an outcome that is consistent with settled law." Dkt. No. 1232 at 7. If the District Judge determines that the May 16 Order is, in fact, inconsistent with settled law, such determination can be made regardless of the Court's ruling on the instant motion. Therefore, the public interest weighs strongly in favor of denying the requested stay.

### III.    Delivery of the Documents

Sedgwick has complained that the Court provided it with insufficient time to comply with the May 16 Order because compliance with the Order would moot its objections. Although Sedgwick makes much of the fact that the deadline to file its objections and to turn

over the documents fell on the same day, Sedgwick's real protest is that the Court ordered it to turn over the claims files before its objections could be ruled on. Therefore, Sedgwick is effectively arguing that the filing of its objections should automatically stay the May 16 Order. The Local Rules expressly reject such automatic stays. *See* LRCi 72.2(b). This makes sense, given that Sedgwick can produce the claims files without its objections becoming moot. *See supra*, Discussion Section II.B.

While Sedgwick has taken issue with the May 30, 2025 deadline set in the May 16 Order, it has not moved for an extension of that deadline, meaning the May 30 deadline remained active, even as Sedgwick's motion to stay was pending. Accordingly, Sedgwick is now more than two months late in complying with its obligations. Although the May 30 deadline remains pending, and considering the Court's ruling herein, the Court will again direct Sedgwick to turn the requested documents over to Plaintiffs. Sedgwick shall have until **August 18, 2025** to comply.

## CONCLUSION

Sedgwick failed to demonstrate a sufficient likelihood that its objections to the May 16 Order will be successful on appeal. This alone requires that the Court deny its motion to stay. Even considering the remaining stay factors to determine whether a stay was at all justified, each factor weighed against granting Sedgwick the stay it seeks.

Accordingly, it is hereby **ORDERED:**

1. Sedgwick's "Motion to Stay the Magistrate Judge's May 16, 2025 Order Pending Review of Objections," Dkt. No. 1231, is **DENIED**.

2. Sedgwick remains bound by the Court's May 16 Order and shall turn over the documents requested by Plaintiffs no later than **August 18, 2025**. Upon receipt of the

documents, Plaintiffs shall pay Sedgwick $25,000 to mitigate the burden imposed by

complying with the subpoena.

3.  Nothing in this Order shall be construed as affecting any claims Sedgwick may have

    against the Limetree Bay entities for the work Sedgwick performed for the Limetree

    Bay entities in early 2021.

ENTER:


Dated: August 7, 2025                   /s/ Emile A. Henderson III
                                        EMILE A. HENDERSON III
                                        U.S. MAGISTRATE JUDGE