# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| CLIFFORD BOYNES, et al., | Civil Action No. 2021-0253 |
| *Plaintiffs*, | |
| v. | |
| LIMETREE BAY VENTURES, LLC, et al., | |
| *Defendants*. | |
| HELEN SHIRLEY, et al., | Civil Action No. 2021-0259 |
| *Plaintiffs*, | |
| v. | |
| LIMETREE BAY VENTURES, LLC, et al., | |
| *Defendants*. | |
| FRANCIS E. CHARLES, et al., | Civil Action No. 2021-0260 |
| *Plaintiffs*, | |
| v. | |
| LIMETREE BAY VENTURES, LLC, et al., | |
| *Defendants*. | |
| BEECHER COTTON, et al., | Civil Action No. 2021-0261 |
| *Plaintiffs*, | |
| v. | |
| LIMETREE BAY VENTURES, LLC, et al., | |
| *Defendants*. | |

### <u>Memorandum of Law in Support of Second Amended Motion to Dismiss Claims Against BP Products North America Inc.</u>

Defendant BP Products North America ("BPPNA") neither operated nor managed the Limetree Bay Refinery; therefore, the Consolidated Second Amended Class Action Complaint (the "SAC") should be dismissed with respect to BPPNA. This case concerns the "failed restart of the Limetree Bay Refinery" and the "emission release and discharge" of "hazardous and toxic chemicals" from the facility. SAC ¶ 1. Plaintiffs have not demonstrated how BPPNA—a party contractually prohibited from operating the refinery—owed any duty to them, nor have they pled any facts as to how BPPNA breached such a duty. Indeed, commonsense dictates that a party that did not operate or manage the refinery could not have caused the alleged emissions.

BPPNA was a contractual counterparty and entered into long-term tolling, product offtake, and feedstock supply agreements (collectively, "the Agreements") with the owners and operators of the refinery, Limetree Bay Refining ("LBR").[1] The Agreements, referenced extensively throughout the SAC, expressly confirm that BPPNA neither operated nor controlled the refinery. Under the Agreements, BPPNA was responsible for supplying feedstock, receiving refined products, and making monthly toll payments to LBR once operations commenced. Ignoring the clear language of the Agreements, the SAC simply groups BPPNA with other defendants

---

[1] Plaintiffs allege that BPPNA entered into these agreements with "the Limetree Defendants," which, collectively, include Limetree Bay Ventures ("LBV"), Limetree Bay Holdings ("LBH"), LBPH, and Limetree Bay Terminals ("LBT"). SAC ¶¶ 3, 47. The agreements were between BPPNA and Limetree Bay Refining, LLC and Limetree Bay Refining Marketing, LLC. *See* Exhibits 1–7.

in conclusory allegations asserting that BPPNA was somehow responsible for the releases. However, this amounts to impermissible group pleading and further shows how the SAC does not adequately plead a case against BPPNA.

Given the plain language of BPPNA's agreements with LBR, Plaintiffs instead make conclusory allegations that BPPNA (1) participated in the initial strategy and design of the refinery, and/or (2) "leveraged" its contractual position to "pressure" LBR to reopen the facility. However, such blanket assertions without specific factual allegations cannot plausibly support a claim, especially where they are directly contradicted by the plain language of the Agreements. To the contrary, even if – as Plaintiffs' allege – BPPNA participated in initial discussions as to the scope of the restart project, the Agreements on their face demonstrate that final design authority did not reside with BPPNA and Plaintiffs' do not allege that BPPNA's initial participation limited any further decisions by LBR. Plaintiffs reliance on repeated, conclusory statements that BPPNA was a "heavily involved partner," "maintained a presence," and was "integral" to the restart strategy and design, without articulating any factual allegations supporting them does not meet Federal pleading standards. Similarly, simply asserting that BPPNA "leveraged" the terms of the Agreements provides no basis for any conclusion that it did anything more than enforce the terms of an existing, valid contract. In sum, the broadbrush, conclusory statements about BPPNA that permeate the SAC are simply insufficient to support any theory by which BPPNA can be held liable for the actions of others.

## BACKGROUND

In November 2018, BPPNA entered into Agreements with LBR through which BPPNA agreed to make certain "toll payments" for the right to provide feedstock to and offtake product from the Refinery, once the Refinery established stable commercial operations, meaning "[t]he Refinery's units are producing merchantable Products." *See* Exhibit 1 (Product Offtake Agreement) at § 13; Exhibit 2 (Feedstock Supply Agreement) at § 13; Exhibit 3 (2018 Tolling Agreement) at §§ 1, 3.2.

The initial term of these agreements was five years commencing after the Refinery achieved stable commercial operations (the "Toll Start Date").[2] *See* Ex. 1 at

---

[2] Plaintiffs have cited the agreements with BPPNA in the SAC. Under the incorporation by reference doctrine, on a motion to dismiss, the Court may consider documents that are "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *see generally Hess Oil Virgin Islands Corp. v. Daniel*, 72 V.I. 676 (V.I. Super. 2020) (finding the incorporation by reference doctrine further "limits the ability of ***the plaintiff*** to take language out of context, because the defendants can point the court to the entire document . . . [and] enables courts to dispose of meritless complaints at the pleading stage") (emphasis added); and *In re Donald J. Trump Casino Securities Litigation-Taj Mahal Litigation,* 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to notice, matters of public record, orders, [and] items appearing in the record of the case.'").

§ 13; Ex. 2 at § 13; Ex. 3 at §§ 1, 3.2.[3] If the Toll Start Date had not occurred by December 31, 2020, either party could terminate the agreements. *Id.* at (a)(i). These terms were valid, negotiated terms between BPPNA and LBR; Plaintiffs make no allegations to the contrary.

After the Refinery failed to reach SCO, the parties negotiated a new Amended and Restated Tolling Agreement which extended the date for commercial operations to August 15, 2021. *See* Exhibit 6 (February 2021 Amended and Restated Tolling Agreement) at § 3.2.

The Agreements expressly disclaim BPPNA's involvement with the Refinery's operations. For example, both the Tolling Agreement and the Amended Tolling Agreement expressly provide:

Section 4.1 Refinery Management

(a) Except as otherwise expressly provided in Section 4.1(b) of this Agreement, **all management powers in respect of the business and affairs of the Refinery shall be exclusively vested in the Limetree Parties and neither [BPPNA] nor its Affiliates shall have any management power or authority over the business and affairs of the Refinery.** The Limetree Parties shall have full power and authority to do all things on such terms as they, in their sole discretion, may deem necessary or appropriate to conduct the business of the Refinery and to exercise the powers and to effectuate the purposes set forth in this Agreement, the Refinery Operating Agreement and any other contractual obligation between any Limetree Party and its Affiliates or third parties in connection with the Refinery and related facilities.

---

[3] Pursuant to the court order dated March 6, 2025 (Dkt No. 1008), BPPNA provided the court with unredacted excerpts of exhibits 1–7 filed with its memorandum in support of its motion to dismiss (Dkt No. 643 Exhibit E) and reply memorandum in support of its motion to dismiss (Dkt No. 690 Exhibit E). Collectively these agreements are referred to herein as the "Agreements."

Section 7.1 Inspections and Access Rights

(b) [BPPNA] and the Limetree Parties agree that the [BPPNA] Representatives and alternates shall have the right to observe the work at the Refinery, assess progress on projects, and provide input on projects; *provided, however*, that the **[BPPNA] Representatives and alternates shall have no operational control over, or oversight responsibilities regarding, construction or operations at the Refinery and the Limetree Parties shall have no obligation to accept any such input, except as otherwise provided in this Agreement. [BPPNA] acknowledges and agrees that all control and oversight over construction and operational matters at the Refinery shall be conducted by the Limetree Parties, in their sole discretion.**

*See* Exs. 3 and 6 at §§ 4.1(a), 7.1(b) (emphasis added).[4]

Aside from Plaintiffs' allegations that BPPNA entered into the Agreements, the only other conduct specifically attributed to BPPNA in the SAC is that it allegedly was "'integral' in developing the Refinery restart strategy and facility design," SAC ¶ 47, and "pressure[d]" LBR to perform as provided by the contracts—i.e., begin refining crude oil—or face cancellation of the agreements, SAC ¶¶ 100, 108, 111, 113, 115, 217. But Plaintiffs allege no facts to support these wholly conclusory allegations.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST BPPNA IN THE COMPLAINT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (*quoting Bell Atl.*

---

[4] The Feedstock Supply Agreement likewise expressly provides that "[t]he Parties acknowledge that LBR (Limetree Bay Refining, LLC), with input from the Buyer (Limetree Bay Refining Marketing, LLC), is the operator of the Refinery, and that Seller (BPPNA) is not the operator of the Refinery." *See* Ex. 2 at § 4(a)(iii).

5

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint "must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("The pleading must contain sufficient factual allegations so as to state a facially plausible claim for relief."). Moreover, the Court can reject as implausible any allegations that are contrary to the face of the relied upon documents. *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp.2d 505 n.6 (E.D. Pa. 2009) (granting defendant's motion to dismiss and noting a claim should not proceed "when the terms of the written documents are clearly contrary to the Plaintiffs' allegations would not only violate *Iqbal* and *Twombly*, but other long-standing principles of federal jurisprudence").

Plaintiffs' claims fail because they allege no facts to establish that their injuries were the result of BPPNA's actions. Each of Plaintiffs' claims are based on the alleged release of toxic materials from the Refinery. Plaintiffs do not – and cannot – allege that BPPNA operated or managed the refinery. Throughout the SAC, Plaintiffs detail specific allegations as to LBR's, LBT's, ArcLight's and even EIG's conduct. But no such specificity is alleged as to BPPNA.

Instead, Plaintiffs repeatedly aver in conclusory fashion that BPPNA was "heavily involved" and "integral" in the development of the "restart strategy and

6

facility design." SAC ¶ 47. This is not enough to maintain a claim—pleadings that "are no more than conclusions are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. But more importantly, Plaintiffs' conclusory allegations are contradicted by the referenced agreements themselves and certainly do not give rise to a plausible inference that BPPNA operated the Refinery or was otherwise responsible for its operation.

### A. Plaintiffs Fail to State a Claim for Negligence or Gross Negligence

Plaintiffs' have failed to allege how BPPNA owed a duty, much less that it breached any duty, owed to them. Therefore, Plaintiffs' negligence claims fail. *Quinones v. U.S.*, 492 F.2d 1269, 1274 (3d Cir. 1974) (a negligence claim requires the plaintiff to "plead a legal duty, a breach of that duty, proximate or legal cause, and actual damage or injury."); *Booth v. Bowen*, Civ. No.2006–217, 2008 WL 220067, at *3 (D.V.I. Jan.10, 2008) (to maintain a gross negligence claim requires a plaintiff to plead specific "conduct that not only demonstrates 'an unreasonable risk of physical harm to another' but also that . . . 'is substantially greater than that which is necessary to make the conduct negligent.'") *quoting* RESTATEMENT (SECOND) OF TORTS § 500 (AM. L. INST. 1965).

### 1. *Plaintiffs Are Not Owed A Duty Of Care As A Third Party To The Contractual Agreements Between BPPNA And LBR*

Plaintiffs' allege that BPPNA's duty arose out of the Agreements BPPNA made with LBR. *See* SAC ¶¶ 47, 228. Contracts, however, do not create an independent duty of care to a third party bringing a negligence claim. *See Benjamin v. Thomas Howell Grp.*, 2002 WL 31573004, at *2–3 (D.V.I. Apr. 22, 2002) (holding that

defendant "owed no duty" to plaintiff and could not "maintain their negligent misrepresentation claim"); *see also Perkins v. Washington Mut., FSB*, 655 F. Supp. 2d 463, 471 (D.N.J. 2009). A duty of care arising from a contractual agreement extends only to the contracting parties and, at times, third party beneficiaries. *See Benjamin*, 2002 WL 31573004, at *2–3. Plaintiffs' are not third party beneficiaries as the Agreements were not meant to benefit Plaintiffs. *See Banks v. Int'l Rental and Leasing Corp.*, 2008 WL 2149380, at *3 (D.V.I. May 19, 2008) (noting that a Plaintiff that is "'asserting third party beneficiary status must establish that the contract was made for the benefit of that third party within the intent and contemplation of the contracting parties'"). Given that Plaintiffs' are not third party beneficiaries to the Agreements, Plaintiffs improperly allege that a duty of care exists based on the Agreements. Plaintiffs fail to allege an independent duty of care owed to them by BPPNA. Without this independent duty of care, Plaintiffs' negligence claims cannot survive and must be dismissed.

### 2. BPPNA Was Not The Operator Of the Refinery and Therefore Had No Duty To Plaintiffs

Plaintiffs' allege that BPPNA entered into agreements to sell crude oil to the Refinery and market refined petroleum products from the Refinery, SAC ¶ 47, and knew "that the Refinery was not in a safe condition." *Id.* at ¶ 111. But, these industry standard oil refining agreements did not turn BPPNA into an operator of the Refinery or otherwise impose any duty on BPPNA outside of the four corners of the Agreements regarding the Refinery's operations. Negating any possible contrary inference, the Agreements plainly state that LBR had a duty to operate the Refinery and that

8

BPPNA had no right, much less a duty, to do so. The owner and operator of the Refinery is the only entity that has a duty of care since they are the only entity that can prevent harm from occurring. *See Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135, 141 (3d Cir. 1985) (a duty to prevent harm is "considered to have shifted when . . . 'full responsibility and control of the situation and prevention of the threatened harm has passed to the third party'") (internal citation omitted); *Brown v. McBro Planning and Development Co.*, 660 F. Supp. 1333, 1336 (D.V.I. 1987) (Typically liability shifts to the third party when there is "an express agreement . . . that the [third party] will assume all liability").[5]

For example, the 2018 Tolling Agreement and February 2021 Tolling Agreement provide that "all management powers in respect of the business and affairs of the Refinery shall be exclusively vested in the Limetree Parties and neither [BPPNA] nor its Affiliates shall have any management power or authority over the business affairs of the Refinery" and that "[BPPNA] Representatives and alternates shall have **no operational control over, or oversight responsibilities regarding, construction or operations at the Refinery**." Exs. 3, 6 at §§ 4.1(a), 7.1(b) (emphasis added). And, in both the Tolling and Feedstock Supply Agreements,

---

[5] Plaintiffs' sole conclusory allegation that BPPNA knew "that the Refinery was not in a safe condition," SAC ¶ 111, is insufficient to impose any extracontractual duty with respect to the Refinery as the Limetree entities had the "full responsibility and control of the situation and prevention of the threatened harm". *See Gutzan*, 766 F.2d 135 at 141. Moreover, Plaintiffs do not allege facts that raise plausible inference that BPPNA's pursuit of its contractual rights involved an unreasonable risk of harm or that any misconduct by another party was foreseeable in pursuing such rights.

the parties acknowledged that LBR—and not BPPNA—operated the Refinery "in their sole discretion." *Id.* at § 7.1(b); *see also* Ex. 2 at § 4(a)(iii).[6]

### 3. *Plaintiffs Do Not Allege How BPPNA's Actions Constitute a Breach of Any Duty*

While the SAC fails to allege how BPPNA owed Plaintiffs any duty because it was not an operator of the Refinery, the SAC also fails to allege how BPPNA's actions constitute a breach of any alleged duty. Although Plaintiffs allege that Defendants, collectively, "failed to properly store, use, refine, and/or dispose of oil and other Toxins," "failed to ensure that the Refinery was safe to reopen when they knew or should have known it was not," "failed to hire and/or train personnel to conduct the reopening in a safe and effective manner," and "continued the Refinery operations after the first, second, *and third* Incidents," they allege no facts as to any conduct specifically by BPPNA.  SAC ¶¶ 218–20. The complaint does not allege how BPPNA specifically, as a contractual counterparty with no responsibility for the operation of the Refinery, was responsible for any of these alleged acts. Pleadings that "are no more than conclusions are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Thus, courts regularly dismiss claims for lack of specificity as to conduct by any particular defendant. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015); *see generally Fogle v. Sokol,* 957 F.3d 148, 162 n.14 (3d Cir.

---

[6] Plaintiffs cannot contradict the express terms of these agreements by citing to an internet article that includes a purported quote from the United States Virgin Islands Government House that LBR "reached a 'definitive agreement' with British Petroleum to **operate** the refinery on St. Croix's south shore." SAC ¶ 111 (emphasis in original).

10

2020) (citing with approval Weiland's comprehensive survey of the law regarding shotgun pleadings).

If the Court here searched for such factual assertions, it would come up wanting as Plaintiffs do not plead any specific wrongful conduct or duty with respect BPPNA that caused the releases.[7] For example, Plaintiffs' state that the "Restart Defendants wielded their power and influence to sidestep those requirements [including pollution controls and other refurbishments ordered by the EPA] through a series of misrepresentations to the U.S. Virgin Islands' government and by pulling political strings at the U.S. EPA." *Id.* ¶¶ 74–75. Yet, the approximately 30 allegations following this paragraph are allegations about communications only the ArcLight and Limetree Defendants had with the government. *See id.* ¶¶ 76–105.

Lumping BPPNA into the "Restart Defendants" group, is impermissible group pleading. Courts routinely dismiss complaints, such as Plaintiffs', for this type of lack of specificity. In *Falat v. City of Hunterdon*, the court dismissed the "impermissibly vague group pleading" because the pleading alleged that all "Defendants engaged in

---

[7] Plaintiffs allege conduct by the collective and undifferentiated "Restart Defendants" throughout each count against BPPNA. "Restart Defendants" is defined to also include ArcLight Capital Partners, LLC, ArcLight Energy Partner Fund VI, LP, ArcLight Limetree AIV, L.P., EIG Global Energy Partners, and Freepoint Commodities, LLC. SAC ¶ 3. Within these counts, any specific references to BPPNA are nothing more than conclusions in which BPPNA is named within a list of multiple defendants. *See* SAC ¶ 6 ("haphazardly restarted the previously mothballed Refinery"); ¶ 34 ("own, operate and/or performed work" at the Refinery); ¶ 123 ("through the actions of BP Products" without any detail of the actions); ¶ 262 ("BP Products' direct involvement in the acquisition, rehabilitation, permitting and/or operation of the Refinery" without any detail of BPPNA's involvement). It is impossible to determine what specific conduct is being attributed to BPPNA with respect to this conclusory and collective conduct.

11

certain wrongful conduct" without specifying what conduct to attribute to each defendant. No. Civ. 12-6804, 2013 WL 1163751, at *3–4 (D.N.J. Mar. 19, 2013); *see also K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. Civ. 14-145, 2015 WL 5039460, at *15 (D.N.J. Aug. 26, 2015) (dismissing a complaint with "group pleading" allegations against multiple defendants as "impermissibly vague"). In *Falat*, the court noted that the plaintiff failed to connect the factual allegations to the specific claims in the complaint. 2013 WL 1163751, at *3. With multiple defendants and multiple claims brought in the complaint, the *Falat* court said "[i]t is not the Court's job to laboriously search the Complaint for factual assertions, that could, in theory, be used to support one legal claim or another." *Id.*

## B.    Plaintiffs Alternative Negligence Theories Also Fail

Failing to establish that  BPPNA was negligent as an operator of the refinery – which it was not – the SAC asserts that BPPNA is negligent by either pressuring the actual refinery operators to prematurely restart the refinery, or through BPNA's involvement in the initial design of the refinery restart. Neither theory is  supported by any factual allegations in the SAC.

### 1.    *Plaintiffs Fail To Allege That BPPNA Pressured The Operators to Restart the Refinery*

Plaintiffs' allegations that BPPNA "pressure[d]" LBR to prematurely begin operating the Refinery by "threatening to pull out" of the Agreements are supported by no factual allegations. SAC ¶¶ 47, 111, 217. Plaintiffs point only to BPPNA decisions to exercise their rights under the contract. As discussed above, these conclusory statements asserting that BPPNA "leveraged this pressure," is not

supported by any facts in the SAC. ¶111; *see supra at* 5–7. In fact, the language of Agreements contradict Plaintiffs' unsupported allegation because BPPNA agreed to an Amended and Restated Tolling Agreement which extended the deadline for commercial operations, alleviating any alleged "pressure." *See* Ex. 6.

### 2. Plaintiffs' Allegations of BPPNA's Involvement with the Design of the Refinery is Not Supported by the Documents Themselves

To get around the fact that the Agreements confirm that BPPNA was not the operator of the refinery, Plaintiffs also try to allege that BPPNA was "integral" in developing the initial strategy and design of the Refinery. SAC ¶ 47. Plaintiffs refer to the Jacobs Consultancy report (the "Report") and the Report's "over-arching principles" for the Refinery restart to support Plaintiffs claim that the restart scope and design were insufficient. *Id.* ¶ 104–05.

The Report, however, does not support Plaintiffs' allegation because it is completely consistent with BPPNA's later defined contractual relationship with LBR. *See* Exhibit 8 (Jacobs Consultancy Report). *See supra* at 3 n.2. The Report states "Limetree Bay Refinery (LBR) has Owner/Operator inspection authority and responsibility for Process Design, Mechanical Integrity and Facility Operations decisions. BP[PNA] will provide relevant input, with the ***final design per Jacobs Consultancy and Jacobs Engineering direction and as approved by Limetree's representative***." Ex. 8 at BP_Limetree_0013436 (emphasis added). BPPNA was only to "provide relevant input" to the strategy and design of the Refinery. The ultimate decisionmaker and driver of the strategy and design was solely LBR. LBR provided Jacobs Consultancy with the scope, cost estimate, and

13

"detailed engineering for the proposed refinery recommissioning," *id.* at BP_Limetree_0013434, and "[t]he facility owner [defined as Limetree Bay Refinery] will determine the approach and timing required to complete the HAZOP review." *Id.* at BP_Limetree_0013482. The Report does not support any allegations of specific conduct by BPPNA and clarifies that BPPNA had no decision making authority.

Plaintiffs omitted the language in the Report that clarified the final design approval for the Refinery restart must be "approved by Limetree's representative." *Id.* at BP_Limetree_0013436. As described above, the Agreements memorialize this same understanding. Prior to entering into the Agreements, LBR had full knowledge and involvement in the pre-contractual design work. *See generally id.* Plaintiffs selecting specific language on the "Restart Premise" in the Report does not change the fundamental language of the governing Agreements, which plainly establish that BPPNA did not operate the Refinery and that others were charged with the safe and prudent operations of the Refinery. The clear and unambiguous langue in the agreement controls, and that language states that Limetree is the sole owner and operator of the Refinery. *See Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) ("[T]he evidence entitled to the greatest weight when interpreting a contract is the language of the contract itself.").

Plaintiffs additionally fail to articulate how the Report itself creates any responsibility on the part of BPPNA for the Refinery's decision, years later, to attempt to restart the Refinery. Section 5.2 of the Refinery Operating Agreement between the Government of the Virgin Islands and LBR, LLC, SAC ¶¶ 76–77, requires Limetree

14

to "perform all operations of or related to the Refinery . . . in compliance with Applicable Law." Ex. 7. This language is consistent with the Report: Limetree was charged with final approval on the design of the Refinery restart. *See* Ex. 8. Neither the allegations in Plaintiffs' SAC nor the specific documents referenced impose any extra-contractual duties on BPPNA.

## II. Plaintiffs' Other Claims Fail as Plaintiffs Do Not Allege Actionable Conduct by BPPNA

The remainder of Plaintiffs' claims against BPPNA fail as Plaintiffs do not allege actionable conduct by BPPNA under any of the asserted theories of liability. Specifically, Plaintiffs fail to allege that (i) BPPNA's conduct interfered with or invaded upon any common or private property rights (trespass, public, private, or statutory private nuisance claims), *see* SAC ¶¶ 288–91 (Count IX); *see, e.g., United States v. Roberts*, Civ. No. 2014-95, 2017 WL 1193727, at *5 (D.V.I. Mar. 30, 2017) (dismissing nuisance claims for failure to allege harm from alleged nuisance); *L-Henri, Inc. v. Vulcan Materials Co.*, 53 V.I. 794, 803 (D.V.I. 2010) (citing *Manchester v. National Gypsum Co.*, 637 F. Supp. 646, 656 (D.R.I. 1986)) ("[L]iability for damage caused by a nuisance turns on whether the defendants were in control over the instrumentality alleged to constitute the nuisance, either through ownership or otherwise."); (ii) BPPNA should have realized that its conduct in contracting to sell crude oil to the Refinery and agreement to buy refined petroleum products involved an unreasonable risk of causing distress (negligent or intentional infliction of emotional distress claims), *see* SAC ¶¶ 292–97 (Count X), 298–309 (Count XI); *see e.g. Anderson v. Gov't of Virgin Islands*, 180 F.R.D. 284, 287 (D.V.I. 1998) ("[T]o recover

15

on a claim of negligent infliction of emotional distress, [Plaintiff must] demonstrate . . . that it was reasonably foreseeable that defendants' actions would result in [Plaintiff's] injuries."); *Illaraza v. HOVENSA LLC*, 73 F. Supp. 3d 588, 613–15 (D.V.I. 2014)) (dismissing negligent and intentional infliction of emotional distress claims based on lack of reasonable foreseeability); and (iii) BPPNA was involved with and/or owed a duty with respect to the Refinery operations that gave rise to the alleged emissions, much less that BPPNA was negligent in carrying out those duties (medical monitoring claim), *see* SAC ¶¶ 310–314 (Count XII); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir. 1990)).

Plaintiffs' claim for punitive damages against BPPNA also fails because Plaintiffs have not stated a substantive claim against BPPNA that could support a damages recovery. *Greene v. Virgin Islands Water & Power Auth.*, 67 V.I. 727, 730 n.1 (V.I. 2017) ("[A] claim for punitive damages is not an independent cause of action."). Moreover, Plaintiffs fail to allege facts showing that BPPNA's conduct was outrageous and its actions were intentional, reckless, or malicious as is required to maintain a punitive damages claim. *In re Lemington Home for the Aged*, 777 F.3d 620, 633 (3d Cir. 1984) (internal citation omitted).

## III.    Plaintiffs' Claims Must Be Limited To The Content Of Their SAC

Prior to the filing of the SAC, Plaintiffs made several attempts to gloss over deficiencies in its actual allegations against BPPNA through hypotheticals asserted by counsel at the March 20, 2024, oral argument on a motion to stay discover and an extraneous and non-defined "Notice of Supplemental Information." Some of the allegations in the "Notice of Supplemental Information" are now included in the SAC.

Nevertheless, there are other issues that are still not included in the SAC. For example, at the hearing, counsel "**suspected**" that BP "**may**" have sent engineers or other employees to the Refinery when the restart was delayed, Hr. Tr. 82:12-16, and presented a hypothetical "**what if**" scenario where Limetree told BP that they were not ready, *id.* 94: 12-20. Despite these theories, Plaintiffs' omission of any facts in the SAC to support either theory indicates that these are clearly speculative hypotheticals. *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 266 (3d Cir. 2001); *David v. AMR Services Corp.*, 191 F.R.D. 89, 94 n.1 (D.V.I. 2000). Any extraneous facts Plaintiffs' attempt to raise during oral argument or in a later supplemental filing should not be considered by this Court. Plaintiffs' had their chance to amend the Complaint and did so with the knowledge of their previously filed Notice of Supplemental Information and hearing on the Motion to Stay Discovery. The allegations that are included in the SAC must be the only allegations this Court considers.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' claims against BPPNA with prejudice.

**Dated: August 18,  2025**          Respectfully submitted,


                              /s/ *Chivonne Thomas*

*Counsel for Defendant*          Schuyler A. Smith, Esq. (V.I. Bar No. 1271)
*BP PRODUCTS NORTH*          ssmith@hamiltonmillerlaw.com
*AMERICA INC.*              Jennifer Brooks, Esq. (V.I. Bar No. 1109)
                              jmiller@hamiltonmillerlaw.com

17

Chivonne Thomas, Esq. (V.I. Bar No. 1186)
cthomas@hamiltonmillerlaw.com
Hamilton, Miller & Birthisel, VI P.C.
150 Southeast Second Avenue, # 1200
Miami, Florida 33131
Telephone: 305-379-3686

*and*

Lori B. Leskin (admitted *pro hac vice*)
lori.leskin@arnoldporter.com
David A. Kerschner (admitted *pro hac vice*)
david.kerschner@arnoldporter.com
Robert T. Franciscovich (admitted *pro hac vice*)
robert.franciscovich@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 W. 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000

Rhonda R. Trotter (admitted *pro hac vice*)
rhonda.trotter@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, Suite 4400
Los Angeles, CA 90017
Telephone: (213) 243-4000

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on **August 18, 2025**, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system and has been served on all counsel of record via transmission generated by CM/ECF.

s/ *Chivonne Thomas*
Chivonne Thomas, Esq.

18