**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 2021-0253** |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **HELEN SHIRLEY, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0259** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **MARY L. MOOREHEAD, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No. 2021-0260** |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **BEECHER COTTON, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0261** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |

**DEFENDANT LIMETREE BAY TERMINALS, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE JUDGE'S AUGUST 19, 2025 ORDER (DKT. NO. 1367)**

COMES NOW Defendant Limetree Bay Terminals, LLC ("LBT"), through its undersigned counsel, and hereby files its Memorandum in Support of *Notice of Objections to and Appeal of the Magistrate Judge's August 19, 2025 Order (Dkt. No. 1367)* ("the Objection").

Pursuant to LRCi 7.1(f), counsel for LBT sought concurrence from counsel for Plaintiffs and counsel for the Law Firms[1] prior to filing the Objection, and they declined to do so. Additionally, while the Magistrate Judge did hear oral argument, LBT is not aware of any transcript of a hearing before the Magistrate Judge wherein findings of fact were made that would be required to be included in this Objection pursuant to LRCi. 72.4(a).

As set forth below, LBT objects to and appeals the Magistrate Judge's non-dispositive Order (the "Order," Dkt. No. 1367)[2], filed on August 19, 2025, which denied LBT's Motion to Compel Non-Party Law Firms to Produce Non-Privileged Documents Related to Litigation Concerning Rum Fungus on St. Croix (the "Motion to Compel," Dkt. No. 1218). LBT objects to the Order to the extent that the Court did not permit discovery as requested in the Motion to Compel or, at a minimum, compel a production limited to the expert reports, files, and disclosures exchanged in the so-called "Rum Fungus Litigation."

---

[1] "The Law Firms" are the non-parties – Colianni & Leonard LLC, The Pate Law Firm, and Burns Charest, LLC – who objected to the subpoenas served on them by LBT and which are at issue in the underlying Order at issue in this Objection. Two of the Law Firms actively represent Plaintiffs in this case while the third was co-counsel in one of the prior cases (Case: 1:21-cv-00259-WAL-EAH, "the *Shirley* case") that was consolidated into this one.

[2] All citations to the docket in this Objection refer to the docket in *Boynes v. Limetree Bay Ventures, et al.*, No. 1:21-cv-523.

# I. <u>INTRODUCTION</u>

LBT filed the Motion to Compel seeking non-privileged materials from the Law Firms that related to litigation concerning rum fungus contamination to properties within the putative class on St. Croix, as requested by certain subpoenas ("<u>the Subpoenas</u>," Dkt. No. 1219-1). After briefing and a hearing, United States Magistrate Emile A. Henderson denied the Motion to Compel through the Order on August 19, 2025.

LBT contends that the Magistrate Judge abused his discretion because he imposed an excessively heightened evidentiary standard to show the relevance of the requested documents, when the specific purpose of the Motion to Compel was to gain the very "evidence" now required of it. While LBT recognizes that a higher standard of relevance exists when a party is seeking discovery from non-parties, to require LBT to produce evidence to show the *relevance* of the very discovery it is seeking imposes an impermissibly high burden on LBT and makes it virtually impossible to obtain third-party discovery. This is contrary to Rule 26 and the purposes of the discovery process. In fact, the showing of relevance demanded by the Magistrate Judge was already affirmatively demonstrated by the nearly identical allegations of harm set forth by the plaintiffs in the Rum Fungus Litigation and Plaintiffs in this case, along with specific deposition testimony.

In so doing, the Magistrate Judge reached a decision that was contrary to the law, and the Court should reverse the Order and grant the Motion to Compel. Alternatively, this Court should reverse the Order in part and order the Law Firms to produce the expert reports, files, and disclosures exchanged by the parties in the Rum Fungus Litigation (collectively, "<u>the Rum Fungus Expert Materials</u>").

## II. PROCEDURAL AND FACTUAL BACKGROUND[3]

The background and allegations in this case are well-known to the Court, and so LBT focuses solely on the matters relevant to the Motion to Compel and this Objection. Plaintiffs in this case "are a putative class of thousands of individuals with property on St. Croix," (Order, at 4). They allege that "between February and May 2021, the Limetree Bay Refinery discharged toxic materials on at least for occasions," that purportedly contaminated their property [*id.* (citing Plaintiffs' Consolidated Second Amended Class Action Complaint ("CSAC," Dkt. No. 1327, at 5)].

### A.  The Instant Plaintiffs' Allegations of Harm or Damages.

These events, according to Named Plaintiffs' allegations, "caused 'heavy oil' to spread like a mist and rain over Plaintiffs' properties." (Order, at 4.) It is alleged that "these events 'poisoned' their homes, property, vegetation, soil, water, cisterns, and plumbing," (Order, at 4).

Based on these events, Named Plaintiffs allege that the resulting

harm has among other things *negatively affected property values*, contaminated and harmed the local water supply, is a blight and nuisance on Plaintiffs' and the Class Members' communities, and has deprived Plaintiffs and Class Members of their free use and enjoyment of their real and personal property, including the ability to safely use their cisterns for potable water *and damage to foliation and crops*.

(Dkt. 1327, at ¶ 10) (italics added). Multiple Named Plaintiffs specifically alleged potential damage to their plants or "crops." [*See, e.g.*, Dkt. 1327, at ¶¶ 19, 20, 28, 31, 194.] For example, Delia Almestica, a Named Plaintiff who resides in Williams Delight, allegedly "owns a home

---

[3] To the extent that the Order is based on certain "facts" identified by the Magistrate Judge, the Court is required to accept them unless they are "clearly erroneous," as discussed *infra*. As such, LBT recites them herein solely for purposes of this Objection, but LBT does not otherwise accept or admit to them for purposes of the case in its entirety.

business where she grows and sells fruit and vegetable plants. Following the incidents, her plants began to die off rapidly."(Dkt. 1327, at ¶ 19.)

### B. <u>The Rum Fungus Litigation's Alleged Harm and Damage</u>.

The instant case followed a previous lawsuit ("<u>the Rum Fungus Litigation</u>") filed in 2013.[4] That suit "alleg[ed] that the alcohol distilling process used by Diageo USVI, LLC and Cruzan Viril, Ltd. on St. Croix failed to capture ethanol vapors, which dispersed across parts of the island and caused *Baudoinia compniacensis*, commonly referred to as 'rum fungus,' to grow and accumulate on their properties." (Order, at 3.) Rum Fungus manifested on buildings and other surfaces as "a black mold," or "that 'black stuff,'" according to Ryan Alleyne, a named plaintiff in *both* lawsuits. (Order, at 6.) This included "go[ing] down the downspouts and get[ting] into his cistern." (Order, at 6.)

As a result of the "rum fungus," the plaintiffs in the Rum Fungus Litigation alleged four harms. *First*, it affected their use of property and its value because it

> Require[ed] abnormal and costly cleaning and maintenance, early destruction/weathering of surfaces affected by the fungus and cause[d] unreasonable and substantial annoyance and unreasonable interference with the use and enjoyment of the property, and, as a result of which, the value, value of use and/or the rental value of the property [was] reduced.

(Rum Fungus Complaint, at ¶ 3; *see also id.*, at ¶ 4.) This "harm" involved "the value, value of use and/or the rental value of the property [being] reduced." (*Id.*, at ¶ 3). This included "adversely

---

[4] Although not previously filed by any party, the Magistrate Judge made it clear that he considered the initial Complaint, dated April 26, 2013, filed in the Rum Fungus Litigation in connection with the Order. [Order, at 3-4; *see also id.*, at 4, n. 3 ("the Court takes notice of the Superior Court complaint cited herein").] A copy of the initial Complaint cited to by the Magistrate Judge in the Order (the "<u>Rum Fungus Complaint</u>") accompanies this Objection as Attachment 1.The Magistrate Judge did not cite to the operative amended complaint in that case which referenced cisterns.

affect[ing] the price potential buyers (if any) [would] be willing to pay for the affected real and personal property." (*Id.*, at ¶ 49.)

*Next*, the Rum Fungus Litigation plaintiffs continued:

Rum fungus also accumulates on fruit and vegetable bearing trees and plants, as well as the fruit harvested from these trees and plants, interfering with the natural maturation of the tree and/or plant as well as any fruit or vegetable growing on the tree and/or plant, rendering the fruit or vegetable, unsightly, undesirable, inedible and/or unmarketable.

(*Id.*, at ¶ 5.) They further allege that rum fungus is "damaging," (*id.*, at 37), because

the accumulation of rum fungus on plant matter, including trees plants, fruits and vegetables inhibits regular maturation of the plant matter and renders the fruit and vegetables unsightly, undesirable inedible and/or unmarketable Because rum fungus cannot be removed from the trunk, branches and foliage of ornamental plants, shrubs and trees [Rum Fungus] *Plaintiffs are required to replace said plants and trees at great expense*.

[*Id.*, at ¶ 38 (italics added).]

*Third*, the plaintiffs in the Rum Fungus Litigation also alleged that the rum fungus "requires an abnormal amount of time, money, energy and equipment to clean external surfaces, including gutters, siding, roofing, fencing and vehicles,"[5] (*id.*, at ¶ 40), and their removal efforts "must be repeated often because [the rum manufacturers] continual discharge of ethanol causes the continual germination of new rum fungus spores," (*id.*, at ¶ 41). "Rum fungus can only be removed from surfaces of homes and personal property *with extreme cleaning measures such as* a high-pressure washing or *the application of caustic chemicals such as chlorine bleach*," [*id.*, at ¶ 39 (italics

---

[5] It is well-established that cisterns are ubiquitous across the relevant areas and the cistern catchment water system is constituted of "external surface[s]," including guttering and "roofing," as identified in the Rum Fungus Complaint, notwithstanding those plaintiffs' failure to specifically identify cisterns as damaged property therein.

added).] As a result, "[r]um fungus and the extreme cleaning methods necessary for its removal cause early destruction and weathering of surfaces affected by the fungus." (*Id.*, at ¶ 43.)

*Finally*, as in this case, the plaintiffs in the Rum Fungus Litigation specifically alleged that rum fungus could affect their health: "many residents in the affected estates have publically [sic] *expressed concern for their health and the health of their family*. Because *there are no studies on the health effects of this fungus*, these concerns coupled with uncertainty" harm them. [*Id.*, at ¶ 49 (italics added).]

**C.  Similar Allegations of Harm and Damages in Both This Case and the Rum Fungus Litigation.**

Thus, in both this case and the Rum Fungus Litigation, the plaintiffs alleged harm or damage to their property, their cisterns, and their "crops"/"fruits or vegetables." Both sets of plaintiffs complain that the defendants' alleged actions damaged property, diminished property values, and required costly cleaning or remediation efforts. Further, as noted by the Magistrate Judge, the Law Firms acknowledge that one of the Named Plaintiffs admitted "that his water tasted different after rum fungus got into his cistern," (Order, at 9). And both lawsuits included allegations of harm to the named plaintiffs' health. The nearly identical nature of these allegations alone demonstrates that the Rum Fungus files are relevant to issues of what, if anything, actually *caused* Named Plaintiffs' alleged damages and, importantly, demonstrate that these issues must be examined on a property-by-property basis and are not amenable to class treatment.[6]

---

[6] Indeed, after several attempts to certify a class, the plaintiffs in the Rum Fungus litigation withdrew their class allegations.

### D.    The Order's Excessive Reliance on The Need for Evidence.

In denying LBT's Motion to Compel the Law Firms' production of non-privileged documents related to the Rum Fungus Litigation in response to the Subpoenas, the Magistrate Judge found that LBT "failed to show that the harms to health and property caused by rum fungus could not be readily distinguished from the harms caused by heavy pitch oil." (Order, at 13.) And, without such "evidence," the Magistrate Judge concluded that LBT's "mere assertion of relevance is not proof of relevance." (Order, at 13.) As explained below, this was reversible error by the Magistrate Judge.

### III. MEMORANDUM OF LAW

### A.    The Applicable Legal Standard.

The Court's consideration of this timely Objection is governed by Federal Rule of Civil Procedure 72(a), as the Order was entered within the last 14 days and it related to a pretrial discovery matter that was "not dispositive of a party's claim or defense."

The Court's consideration of the Objection and its review of the Order are subject to the "clearly erroneous or contrary to law" standard. *See, e.g.,* Fed. R. Civ. P. 72(a); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992). This standard is bifurcated based on whether the magistrate judge makes a factual finding or reaches a legal conclusion. The "clearly erroneous" standard applies to factual findings and it allows this Court to reverse the magistrate judge's finding of fact if it "has 'the definite and firm conviction that a mistake has been committed.'" *Haines*, 975 F.2d at 92. If it is reviewing the magistrate judge's legal conclusion, the Court conducts a *de novo* review. *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017). The legal conclusion is reversible "when the magistrate judge has misinterpreted or misapplied the applicable law." *Allen v. Banner Life Ins. Co.*, 340 F.R.D. 232,

236 (D.N.J. 2022). The burden of meeting either standard falls on LBT, as the party filing the objection. *Allen*, 340 F.R.D. at 237.

The Motion to Compel at issue involves a discovery matter and "the denial of a motion to compel discovery is a question of law subject to *de novo* review." *Thuy Van Vo v. Gilmore*, 2:18-cv-1364-NR-MPK, 2020 WL 1935519, * 1 (D.N.J. April 22, 2020). The Order is reviewed "for abuse of discretion," *Allen*, 340 F.R.D. at 236. "A court abuses its discretion if its decision . . . is based upon an incorrect legal standard," *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 240 (3d Cir. 2007). Alternatively, "[a]n abuse of discretion is a clear error of judgment, and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *Tracinda Corp.*, 502 F.3d at 240 (quoting *SEC v. Infinity Group Co.*, 212 F.3d 180, 195 (3d Cir. 2000).

### B.    Argument.

#### 1. *The Materials Requested from the Law Firms through the Subpoenas are Relevant.*

Federal Rule of Civil Procedure 26(b)(1) governs the permissible scope of discovery, and it provides in pertinent part that:

> Parties may obtain discovery regarding *any nonprivileged matter that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Information within this scope of discovery need not be admissible in evidence to be discoverable.*

(Italics added.) In short, LBT may obtain discovery that is relevant, even if it is not admissible. It is well-settled that the "scope of discovery in civil matters is quite broad." *Falato v. Fotografixusa, LLC,* Civil Action No. 09-5232 (MAS), 2013 WL 1846807, * 3 (D.N.J. Apr. 30, 2013). Relevance is "liberally construed especially during discovery." *In re Novo Nordisk Sec. Litig.,* 530 F.Supp.

– 9 –

3d 495, 503 (D.N.J. 2021). This is true even assuming that discovery directed towards non-parties such as the Law Firms requires "a stronger showing of relevance" than party discovery *See, e.g., Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 344 F.R.D. 207, 215 (D.N.J. 2023) (quoting *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990)). But the Law Firms cannot hide behind their status as non-parties because, "[o]f course, discovery from nonparties is necessary in many cases." *Cook v. U.S. Xpress, Inc.*, No. CV 23-3228 (MAS) (RLS), 2025 WL 593745, at *6 (D.N.J. Feb. 24, 2025). The "stronger showing of relevance," required by the Magistrate Judge on page 12 of the Order, does not operate as a complete bar to discovery; indeed, in *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014), the case cited to, the district court ordered the non-parties to produce the requested materials, *i.e.*, reports and investigative files. Further, the reason for this heightened standard is the non-parties' role as "mere bystanders to a litigation," *id.*, as they should not "suffer[] harassment or inconvenience," *Avago Techs. U.S., Inc v. IPtronics Inc.*, 309 F.R.D. 294, 297 (E.D. Pa. 2015). Here, however, the Law Firms are not "bystanders;" two of them – Colianni & Leonard LLC and Burns Charest LLP – are actively involved in this litigation as counsel for Named Plaintiffs, while the third – The Pate Law Firm – was their co-counsel when the *Shirley* case was first filed and it remains counsel of record in that case.

Moreover, the non-privileged documents sought from the Rum Fungus Litigation are uniquely relevant in this case because they relate to nearly identical allegations and harms for the precise properties and people at issue in this case. The information contained therein cannot be easily duplicated or examined elsewhere. Even if LBT presented the evidence demanded by the Magistrate Judge, it could not replicate what the Rum Fungus Litigation could offer: details that are directly applicable to the "Affected Geographic Area" identified by Named Plaintiffs as a means to identify potential class members in this case. Contrary to the Magistrate Court's order

that LBT failed to show that "the effects of rum fungus and pitch oil are similar," plaintiffs expressly claim the exact same damages from both. But the harms alleged, including loss of use and enjoyment of the property and diminution in value to the property that occur because of various sources of contamination is what LBT is entitled to explore. Similarly, the requested non-privileged materials could contain pertinent admissions, statements, or other disclosures that could be admissible evidence in this case. LBT does not specifically know what is in the requested non-privileged Rum Fungus Litigation documents (meanwhile Plaintiffs, through their counsel, do), but there is no other means by which LBT could find out what was in the requested materials or otherwise gain a level evidentiary playing field with Named Plaintiffs.

2.   ***The Magistrate Judge Abused His Discretion By Requiring "Evidence" When there Was Already Evidence in the Record and the Purpose of the Subpoenas Was to Gain Further Potential "Evidence."***

In his Order, the Magistrate Judge recognized "the importance of affording litigants access to evidence that might demonstrate that multiple sources caused the harms alleged in a complaint." (Order, at 12.) The Order went on to state that the information sought would be "apposite if LBT had demonstrated that rum fungus could cause the harms Plaintiffs complain of in the instant lawsuit" but that there was no such "evidence." This is what LBT is trying to do, but the Order then deviated from this recognized path when the Magistrate Judge required LBT to present additional evidence to support its discovery efforts. The Order's premise that "mere assertion of relevance is not proof of relevance" assumes, however, that LBT was claiming relevance "solely because it says" it is. (Order, at 13.)

But LBT was not "solely" saying so. It presented significant anecdotal evidence, which was acknowledged by the Magistrate Judge (*i.e.*, deposition testimony from certain Named Plaintiffs and direct allegations in the two lawsuits) in support of its discovery efforts. There was

evidence from certain Named Plaintiffs who had already "testified during depositions taken in this case about the lasting impact the rum fungus has had on their property," including "get[ting] into" cisterns, (Order, at 6). Moreover, there was specific testimony by a Named Plaintiff that "rum fungus got into his cistern and made his water taste different," (Order, at 9).

Moreover, and importantly, the various plaintiffs' own allegations establish this connection. The allegations in the Rum Fungus Litigation and this case are eerily similar and they claim identical harms:

- **Rum Fungus:** Plaintiffs alleged that rum fungus "accumulate[s] on real and personal property, including shrubs, trees, and plants," (Rum Fungus Complaint, ¶ 2), as well as "fruit and vegetable-bearing trees and plants, as well as the fruit harvested from these trees and plants . . . rendering the fruit or vegetable unsightly, undesirable, inedible and/or unmarketable," (*id.*, ¶ 5). They allege that it appears as a "black stain, black dots, and soot," (*id.*, at ¶ 37), and that it is "very visible on homes, businesses, vehicles, trees/plants and fruits/vegetables," (*id.,* ¶ 37). As a result, according to Plaintiffs, it is damaging "*and causes . . . unreasonable interference with the use and enjoyment of the property, and, as a result of which, the value, value of use and/or the rental value of the property is* reduced." [*Id.*, ¶ 3 (italics added); *see also id.*, ¶¶ 4 (same for personal property), 38, 48, 76, and 81.]

- **This case:** Named Plaintiffs allege that the emissions in this case have damaged their "homes, cisterns, gardens, vegetation, cars, and other personal property." (CSAC, ¶ 191). They allege that their cisterns are contaminated. (*Id.*, ¶ 194) As a result, according to *Plaintiffs they have been deprived of their free use and enjoyment of their property.*" [*Id.*, ¶ 192 (italics added); 280; 285-86; 290.]

- **Rum Fungus:** Plaintiffs allege that the rum fungus contamination "*adversely affect[ed] the price potential buyers (if any) will be willing to pay for the affected real and personal property*." [Rum Fungus Complaint, ¶ 49 (italics added).]

- **This case:** Named Plaintiffs allege that the emissions in this case have caused "*diminution in value*" of their properties. [CSAC, ¶¶ 222 (italics added).]

- **Rum Fungus:** Plaintiffs (specifically, a plaintiff residing in Williams Delight) allege that rum fungus (which Plaintiffs specifically allege does not go away and keeps coming back) "inhibits regular maturation of the plant matter and renders the fruit and vegetables *inedible and unmarketable*." [Rum Fungus Complaint, ¶ 56 (italics added).]

- **This case**: Plaintiff Delia Almestica, who resides in Williams Delight alleges that following the incidents, her plants for her *fruit and vegetable business began dying*. (CSAC, ¶ 19)

Thus, the *same* plaintiffs, residing at the *same* properties, claimed (1) concern for residents' health, (2) permanent damage to both real and personal property, (3) fatal harm to trees, plants, and other vegetation, and (4) diminution in value of their properties. Stated a different way, the Rum Fungus Litigation showed pre-existing damage and harm for the same matters at issue in this case. This goes directly to the issue of whether other sources of contamination caused the Plaintiffs' alleged damages. This information is critical to class certification and whether causation and damages for the *thousands* of putative class members can be determined on a classwide basis. *See, e.g., Henry v. St. Croix Alumina, LLC,* Civil Action No. 1999-0036, 2008 WL 2329223, *6 (D.V.I. June 3, 2008) ("The extent to which each of [plaintiffs'] alleged losses can be attributed to defendants' conduct and not to some other cause can only be addressed on an individual basis."); *Reilly v. Gould, Inc.,* 965 F.Supp. 588, 602 (M.D. Pa. 1997) ("[T]he presence of additional

individualized factors affecting individual plaintiffs which wreaks havoc on the notion that all plaintiffs' injuries have been caused solely by the defendant's actions." The non-privileged Rum Fungus Litigation documents sought in the Subpoenas indisputably meet the standard of relevance in this case.

Despite this evidence, the Magistrate Judge incorrectly concluded that LBT failed to "demonstrate that rum fungus could cause the harms Plaintiffs complain of in the instant lawsuit." (Order, at 13.) The Magistrate Judge continued, positing that "LBT did not put forward any evidence suggesting that the effects of rum fungus and pitch oil are the same." (Order, at 13.) The Magistrate Judge abused his discretion by requiring scientific evidence or "data" that "link[ed] the two contaminants," (Order, at 14), while ignoring the significant anecdotal evidence presented to him. But regardless the foundational premise of the Magistrate Judge's reasoning – that there was *no* evidence – is inaccurate and, therefore, the Magistrate Judge reversibly erred.

**3.** ***Alternatively, the Court Should Sustain this Objection in Part and Compel the Production of the Rum Fungus Expert Materials.***[7]

Alternatively, to the extent that the Magistrate Judge required relevant "evidence," then he abused his discretion by refusing to order the Law Firms to produce the Rum Fungus Expert Materials, as discussed at the hearing, because such Materials would provide the necessary and appropriate "evidence" of harm or property damage sustained by the Rum Fungus plaintiffs. These Materials can then be compared to expert materials related to the allegations of harm and property damage in this case. Indeed, because "there [were] no studies on the health effects of" rum fungus when the Rum Fungus Litigation was commenced, it is possible that the only subsequent "studies"

---

[7] At the July 22, 2025 hearing on the Motion to Compel, the Magistrate Judge specifically suggested the possibility of parsing the scope of the Subpoenas into particular issues and/or documents.

related to rum fungus were performed in connection with the Rum Fungus Litigation and would be limited to, and contained within, the Rum Fungus Expert Materials. In that situation, the only means available for LBT to gain access to the very studies now required by the Magistrate Court would be through the Subpoenas that he rejected in the Order.

By refusing LBT access to the very "evidence" he required, the Magistrate Judge abused his discretion.

## IV. <u>CONCLUSION</u>

Accordingly, for the foregoing reasons, LBT respectfully requests that the Court vacate the Magistrate Judge's ruling on the foregoing discovery issue, as set forth in the Order, sustain LBT's Objection to it, and grant the Motion to Compel. Alternatively, LBT requests that the Court reverse the Order in part, sustain this Objection in part, and order the Law Firms to produce the Rum Fungus Expert Materials in lieu of producing all non-privileged documents responsive to the Subpoenas.

Respectfully submitted,

**Beckstedt & Kuczynski LLP**

Dated: September 2, 2025

*/s/ Carl A. Beckstedt III*
Carl A. Beckstedt III, Esq.
VI Bar No. 684
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
carl@beckstedtlaw.com

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

Dated: September 2, 2025

*/s/ Shubhra R. Mashelkar*
Shubhra R. Mashelkar
Ga. Bar No. 475388

3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant Limetree Bay Terminals,
LLC*

– 16 –

**<u>ATTACHMENT 1</u>**

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

*/s/ Shubhra R. Mashelkar*
Shubhra R. Mashelkar
Ga. Bar No. 475388
