## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC,**<br>**et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0253** |
| **HELEN SHIRLEY, et al.,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC,**<br>**et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0259** |
| **MARY L. MOORHEAD,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC,**<br>**et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0260** |
| **BEECHER COTTON, et al.,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC,**<br>**et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0261** |

**LIMETREE BAY VENTURES, LLC, LIMETREE BAY ENERGY, LLC, LIMETREE BAY TERMINALS, LLC, LIMETREE BAY REFINING, LLC, AND EIG GLOBAL ENERGY PARTNERS, LLC'S JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED SECOND <u>AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

Preliminary Statement................................................................................................1

Background ................................................................................................................2

      A.     The Refinery and the Parties.....................................................................2

      B.     The Refinery Restart. ................................................................................3

      C.     Plaintiffs' Claims. ....................................................................................3

Pleading Standard .....................................................................................................4

Argument ...................................................................................................................5

      I.     Plaintiffs Fail To State A Claim For Abnormally Dangerous Condition ................5

            A.     The Restatement Of Torts Sets Forth The Appropriate Test For Deciding Whether Operating A Refinery Is An Abnormally Dangerous Condition ....................................................................5

            B.     Operating A Refinery Is Not An Abnormally Dangerous Activity ..............7

      II.     Plaintiffs Fail To State A Claim For Medical Monitoring....................................10

      III.     Plaintiffs Fail To State A Claim For Intentional Infliction Of Emotional Distress ...........................................................................13

      IV.     Plaintiffs Fail To State A Claim For Negligent Infliction Of Emotional Distress ...........................................................................17

      V.     Plaintiffs Fail To State A Claim For Trespass .....................................................18

      VI.     Plaintiffs Fail To Allege A Public Nuisance.........................................................18

Conclusion ...............................................................................................................20

Certificate of Service ..............................................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Acosta v. Honda Motor Co., Ltd.*,
717 F.2d 828 (3d Cir. 1983) ........................................................................................ 15

*Acosta v. HOVENSA, LLC*,
53 V.I. 762 (D.V.I. Feb. 23, 2010)................................................................................ 15

*Ainger v. Great Am. Assurance Co.*,
No. 1:20-cv-00005, 2022 WL 4379794 (D.V.I. Sept. 22, 2022)................................... 13, 15, 17

*Anderson v. Farmland Indus., Inc.*,
136 F. Supp. 2d 1192 (D. Kan. 2001) .......................................................................... 10

*Arno v. Hess Corp.*,
71 V.I. 463 (V.I. Super. Ct. 2019)................................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................. 4, 5, 10

*Badillo v. American Brands, Inc.*,
16 P.3d 435 (Nev. 2001)............................................................................................... 12

*Banks v. Intl. Rental & Leasing Corp.*,
55 V.I. 967 (V.I. 2011)...............................................................5, 6, 10, 11, 12, 13, 19

*Baptiste v. Rohn*,
No. 13-cv-0104, 2016 WL 1273887(D.V.I. March 29, 2016) ..................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................... 4

*Bell v. Radcliffe*,
Case No. ST-13-CV-392, 2015 WL 5773561 (V.I. Super. Ct. Apr. 30, 2015) .......... 18

*Bower v. Westinghouse Elec. Corp.*,
522 S.E.2d 424 (W. Va. 1999)..................................................................................... 12

*Comm'r of the Dep't of Plan. & Nat. Res. v. Century Aluminum Co.*,
No. 05-cv-062, 2014 WL 184445 (D.V.I. Jan. 16, 2014)......................................... 6, 7, 8, 9, 10

*Dejesus v. Virgin Islands Water & Power Auth.*,
55 V.I. 402 (V.I. Super. Ct. 2011).............................................................................. 6

*Donastorg v. Daily News Publ'g Co.*,
63 V.I. 196 (V.I. Super. Ct. 2015)............................................................... 13, 15, 16, 17

*Dumas v. Angus Chem. Co.*,
    728 So. 2d 441 (La. App. 2 Cir. 1999) ................................................................ 14, 15

*Exxon Mobil Corp. v. Albright*,
    71 A.3d 30 (Md. 2013) ........................................................................................ 12, 13

*Fagan v. Superior Ref. Co. LLC*,
    471 F. Supp. 3d 888 (W.D. Wis. 2020) ...................................................................... 9

*Flanagan v. Ethyl Corp.*,
    390 F.2d 30 (3d Cir. 1968) ...................................................................................... 10

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) ...................................................................................... 4

*Gov't of United States Virgin Islands v. Takata Corp.*,
    67 V.I. 316 n.350 (V.I. Super. Ct. June 19, 2017) .................................................. 19

*Gov't of Virgin Islands v. Connor*,
    60 V.I. 597 (V.I. 2014) ............................................................................................... 6

*Grant v. APTIM Env't & Infrastructure, Inc.*,
    No. 19-cv- 0025, 2021 WL 2188570 (D.V.I. May 28, 2021) ................................. 4, 5

*Hall v. Amoco Oil Co.*,
    617 F. Supp. 111 (S.D. Tex. 1984) .......................................................................... 10

*Hansen v. Mountain Fuel Supply Co.*,
    858 P.2d 970 (Utah 1993) ........................................................................................ 12

*Hartzog v. United Corp.*,
    No. SX-04-CV-095, 2011 WL 13136520 (V.I. Super. Ct. Sep. 7, 2011) ................. 14

*Henry v. Dow Chem. Co.*,
    701 N.W.2d 684 (Mich. 2005) ................................................................................. 11

*Henry v. St. Croix Alumina, LLC*,
    No. 99-cv-0036, 2008 WL 2329223 & n.1 (D.V.I. June 3, 2008) ............................ 11

*Henry v. St. Croix Alumina, LLC*,
    No. 99-cv-036, 2009 WL 2778011 (D.V.I. Aug. 28, 2009) ....................................... 6

*Hinton v. Monsanto Co.*,
    813 S.2d 827 (Ala. 2001) ......................................................................................... 11

*Hirsch v. CSX Transportation., Inc.*,
    656 F.3d 359 (6th Cir. 2011) ................................................................................... 12

*Hiss v. Com. Sec., LLC., Inc.*,
    No. SX–15–CV–104, 2016 WL 3092511 (V.I. Super. Ct. Apr. 8, 2016) .................................. 17

*Illaraza v. HOVENSA LLC*,
    73 F. Supp. 3d 588 (D.V.I. 2014) .................................................................................... 16, 17

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*,
    No. 10-03261, No.,12-1713, 2020 WL 638571 (E.D. La. Feb. 11, 2020) ............................... 15

*In re Paoli R.R. Yard PCB Litig.*,
    916 F.2d 829 (3d Cir.1990) (applying Pennsylvania law) ........................................................11

*In re Prempro*,
    230 F.R.D. 555 (E.D. Ark. 2005) ........................................................................................ 12

*Jennings v. U.S.*,
    530 F. Supp. 40 (D.D.C. 1981) ............................................................................................. 8

*Mamouzette v. Jerome*,
    No. 13-0117, 2023 WL 5928134 (D.V.I. Sept. 12, 2023) ............................................................ 5

*Joseph v. Sugar Bay Club & Resort Corp.*,
    No. ST-2013-CV-491, 2014 WL 1133416 (V.I. Super. Ct. Mar. 17, 2014)............................... 13

*Josephat v. St. Croix Alumina, LLC*,
    No. 1999-0036, 2000 WL 1679502 (D.V.I. Aug. 7, 2000) ...................................................11, 13

*Klein v. Bassil*,
    No. 2021-0044, 2023 WL 8716520 (V.I. Dec. 18, 2023)........................................................ 18

*Lewis v. CITGO Petroleum Corp.*,
    561 F.3d 698 (7th Cir. Ill. Apr. 6, 2009)............................................................................... 16

*Liburd v. Gov't of Virgin Islands*,
    No. 2011020, 2013 WL 960780 (D.V.I. Mar. 13, 2013) .......................................................... 17

*Louis v. Caneel Bay, Inc.*,
    50 V.I. 7 (V.I. Super. Ct. 2008)..........................................................................................11, 13

*Majca v. Beekil*,
    682 N.E.2d 253 (Ill. App. Ct. 1997)..................................................................................... 16

*Maximin v. Rudy Rivera & Meridian Eng'g*,
    25 V.I. 20 (V.I. Terr. Ct. 1990) ............................................................................................. 8

*Metro-North Commuter R.R. Co. v. Buckley*,
    521 U.S. 424 (1997)............................................................................................................ 12

v

*Moore v. Scroll Compressors, LLC*,
   632 S.W.3d 810 (Mo. Ct. App. 2021) ................................................................ 12

*Petito v. A.H. Robins Co. Inc.*,
   750 So. 2d 103 (Fla. Dist. Ct. App. 1999) ........................................................ 12

*Purjet v. Hess Oil Virgin Islands Corp.*,
   22 V.I. 147 (D.V.I. 1986) .................................................................................. 10

*Quiroz v. ALCOA Inc.*,
   416 P.3d 824 (Ariz. 2018) ................................................................................. 12

*Redland Soccer Club, Inc., v. Dep't of the Army*,
   696 A.2d 137 (Pa. 1997) ................................................................................... 12

*Robbins v. Kass*,
   516 N.E.2d 1023 (Ill. App. Ct. 1987) ............................................................... 16

*Robinson v. Island Time Watersports (Caribbean) LLC*,
   No. 3:23-cv-0053, 2024 WL 1211932 n.3 (D.V.I. Mar. 20, 2024) ...................... 4

*Samuel v. V.I. Joint Bd. of Elections*,
   No. 2012-0094, 2013 WL 842946 (D.V.I. Mar. 7, 2013) .................................... 4

*Sickler v. Mandahl Bay Holding Inc.*,
   Case No. ST-10-CV-331, 2014 WL 3107449 (V.I. Super. Ct. July 7, 2014) ........ 19

*Smith v. Elias*,
   49 V.I. 65 (V.I. Super. Ct. 2007) ...................................................................... 14

*Smith v. Law Offs. of Karin A. Bentz, P.C.*,
   No. ST-17-cv-116, 2017 WL 3123463 n.58 (V.I. Super. Ct. July 20, 2017) ........ 16

*Theer v. Philip Carey Co.*,
   628 A.2d 724 (N.J. 1993) .................................................................................. 12

*Todman v. Hicks*,
   70 V.I. 430 (V.I. Super. Ct. 2019) .................................................................... 15

*Tutein v. InSite Towers, LLC*,
   No. CV 12-71, 2018 WL 6599163 (D.V.I. Dec. 17, 2018) ........................... 19, 20

*Vega v. Instrument & Control Sys., Inc.*,
   No. 1:15-cv-00035, 2016 WL 3407802 (D.V.I. June 13, 2016) ........................... 4

*Xavier v. Philip Morris USA, Inc.*,
   No. 3:10-cv-02067-WHA, 2010 WL 3956860 (N.D. Cal. Oct. 8, 2010) ............. 11

**Statutes and Rules**

Fed. R. Civ. P. 8 ..................................................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................................4

Restatement (Second) of Torts § 46 (Am. Law Inst. 1965)................................................13, 14, 15

Restatement (Second) of Torts § 158 (Am. Law Inst. 1965)..............................................18

Restatement (Second) of Torts § 519 (Am. Law Inst. 1965) ...........................................6, 7, 9

Restatement (Second) of Torts § 520 (Am. Law Inst. 1965) .........................................7, 8

Restatement (Second) of Torts § 821 (Am. Law. Inst. 1965) ................................................. 19, 20

VT. STAT. TITLE 12, § 7201.................................................................................................12

14 V.I.C. § 1461 ................................................................................................................. 19

V.I. Code Ann. tit. 29, § 228 ............................................................................................. 8

**Other Authorites**

Megan Noonan, *The Doctor Can't See You Yet: Overcoming the "Injury" Barrier to Medical Monitoring Recovery for PFAS Exposure*, 45 Vt. L. Rev. 287 (2020)......................................11

Defendants Limetree Bay Ventures, LLC ("LBV"), Limetree Bay Energy, LLC ("LBE"), Limetree Bay Terminals, LLC ("Terminals"), Limetree Bay Refining, LLC ("LBR"), and EIG Global Energy Partners, LLC ("EIG GEP") (collectively, "Defendants"), by and through their undersigned counsel, present this Joint Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint [Docket No. 1327, *Boynes et al.* (Civil No. 3:21-cv-253)] (the "SAC").[1]

### PRELIMINARY STATEMENT

Plaintiffs' SAC asserts twelve causes of action against eighteen defendants arising out of the 2021 restart and operation of the Limetree Bay refinery (the "Refinery"). Plaintiffs' claims for abnormally dangerous condition (Count IV), medical monitoring (Count XII), intentional infliction of emotional distress ("IIED") (Count XI), negligent infliction of emotional distress (X), trespass (Count IX), and public nuisance (Count VI) fail as a matter of law and should be dismissed for the following reasons.

***First***, Plaintiffs' abnormally dangerous condition claim fails because operating a refinery is not abnormally dangerous. As a court in this District previously held, the operation of this specific Refinery was not abnormally dangerous because reasonable care can reduce the risks arising from operating the Refinery, the Refinery is appropriate for the area in which it is located, and the Refinery provides significant value to the community, including through job creation and other economic benefits. ***Second,*** medical monitoring has not been recognized as a viable cause of action under Virgin Islands law. As such, Plaintiffs' claim cannot stand as an independent cause

---

[1] This memorandum addresses grounds for dismissal of certain counts—namely, Counts IV, VII, VIII, IX, X, XI and XII—that are  common to Defendants herein.  Additional bases for dismissal are set forth in Defendants' respective supplemental briefs, attached hereto as follows: (i) EIG GEP's Supplemental Memorandum (Exhibit A); (ii) LBV and LBE's Supplemental Memorandum (Exhibit B); and (iii) Terminals and LBR's Supplemental Memorandum (Exhibit C).

of action and, if anything, should only be recognized as a potential remedy. Further, even if the Court were inclined to recognize medical monitoring as an independent cause of action, Plaintiffs fail to state a claim because they do not allege that any Plaintiff sustained an existing physical injury.

*Third,* Plaintiffs fail to plead a viable claim for IIED because they fail to plead specific allegations that give rise to a plausible inference that any Defendant exhibited the requisite intent to engage in any conduct designed to inflict emotional distress. Specifically, there are no well-pled allegations supporting the conclusion that Defendants engaged in "extreme and outrageous" conduct or that Plaintiffs sustained "severe" emotional injury, as required to state a claim for IIED. *Fourth,* Plaintiffs fail to plead a negligent infliction of emotional distress claim because they fail to allege that any Defendant owed any duty to Plaintiffs or that Plaintiffs suffered sufficiently severe emotional injury to maintain a negligent infliction of emotional distress claim.

*Fifth,* Plaintiffs fail to plead that Defendants had the requisite intent to trespass as is required to state a trespass claim. *Sixth,* Plaintiffs have neither specified a public right with which Defendants have interfered nor alleged any facts demonstrating that their alleged harms are of a different nature that those suffered by the public as required to state a claim for public nuisance.

## BACKGROUND

### A.    The Refinery and the Parties.

This action arises from the restart and operation of the Refinery in early 2021. SAC ¶ 1. In January 2016, defendant Limetree Bay Holdings, LLC purchased the Refinery and related terminal facility from its prior owner and operator, HOVENSA, LLC ("HOVENSA") through a bankruptcy sale. *Id.* ¶ 64. Terminals was responsible for operating the terminal assets (*Id.* ¶ 40) and LBR owned and operated the Refinery. *Id.* ¶ 30. Plaintiffs allege that Terminals and LBR were owned by LBV until on or around April 20, 2021, when ownership of Terminals and LBR

2

transferred to LBE. *Id.* ¶ 35.

Plaintiffs allege that EIG-managed investment vehicles that held indirect equity interests in LBV (that is, the limited liability company that allegedly owned LBR and Terminals). *Id.* ¶ 45. Plaintiffs further allege that EIG GEP and Defendant BP Products North America, Inc. ("BPPNA") – who entered into certain agreements with the Limetree Defendants – pressured the Limetree and Contractor Defendants to restart the Refinery as quickly and cheaply as possible. *Id.* ¶¶ 47, 109, 113

**B.      The Refinery Restart.**

Plaintiffs allege that LBV secured more than $1.25 billion to finance the restart of Refinery operations and that multiple contractors were retained to assist with rehabilitation efforts. *Id.* ¶¶ 45, 48-54. After more than three years of construction, maintenance and repair work on the Refinery costing well over the original $1.25 billion financing package (*see id.* ¶¶ 107-109), the Refinery was restarted on February 1, 2021. *Id.* ¶ 114.

Following the restart, Plaintiffs allege that the operation of the Refinery caused pollutants to be emitted on February 4, between April 19-23, May 5, and May 12, 2021 (the "Incidents"). *Id.* ¶¶ 116-163. Following these Incidents, LBR filed for bankruptcy on July 14, 2021. *Id*. ¶ 39. Plaintiffs acknowledge that pursuant to such proceedings Plaintiffs name LBR as a nominal Defendant for the following limited purpose only: "(a) establishing Claims against the Debtors and their Estates and (b) preserving rights with respect to insurance coverage for such Claims, if any, and for no other purpose." SAC, ¶¶ 39, 213.

**C.      Plaintiffs' Claims.**

Plaintiffs assert twelve causes of action arising from the Incidents at the Refinery.  Two of the claims—for negligence per se (Count III) and for response costs under CERCLA (Count V)—are asserted against LBR and Terminals only. *See* SAC ¶¶ 231-57, 267-73.  The remaining ten

3

claims are all asserted against all Defendants collectively.

## PLEADING STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though the Court must accept factual allegations as true, "bare-bones' allegations," legal conclusions, and "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Samuel v. V.I. Joint Bd. of Elections*, No. 2012-0094, 2013 WL 842946, at *2 (D.V.I. Mar. 7, 2013) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. *Vega v. Instrument & Control Sys., Inc.*, No. 1:15-cv-00035, 2016 WL 3407802, at *2 (D.V.I. June 13, 2016).

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to set forth in her complaint "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." A complaint that alleges "collective action by [multiple] defendants without factual allegations as to each defendant fails to meet the pleading requirements under Rule 8, as it fails to put a defendant on notice of the factual allegations upon which the claims rest." *Grant v. APTIM Env't & Infrastructure, Inc.*, No. 19-cv- 0025, 2021 WL 2188570, at *9 (D.V.I. May 28, 2021). Although Rule 8(a) does not require detailed factual allegations, it demands "more than an unadorned, the-defendant-unlawfully- harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Robinson v. Island Time Watersports (Caribbean) LLC*, No. 3:23-cv-0053, 2024 WL 1211932, at *5 n.3 (D.V.I. Mar. 20,

4

2024) (quoting *Iqbal*, 556 U.S. at 678).[2]

## ARGUMENT

## I.  PLAINTIFFS FAIL TO STATE A CLAIM FOR ABNORMALLY DANGEROUS CONDITION

Plaintiffs allege that all Defendants are strictly liable for maintaining an abnormally dangerous condition by operating the Refinery. SAC ¶¶ 258-66. Plaintiffs' strict liability claim fails at the outset.

### A.    The Restatement Of Torts Sets Forth The Appropriate Test For Deciding Whether Operating A Refinery Is An Abnormally Dangerous Condition

As numerous courts have held, including in this Court with respect to this same Refinery, operating a refinery does not qualify as an "abnormally dangerous condition" as a matter of law. *Comm'r of the Dep't of Plan. & Nat. Res. v. Century Aluminum Co.*, No. 05-cv-062, 2014 WL 184445, at *7 (D.V.I. Jan. 16, 2014).  As Plaintiffs allege no facts warranting a departure from *Century Aluminum*, this claim should be dismissed.

Here, the requisite *Banks* and Restatement (Second) of Torts ("Restatement") analysis shows that operating this Refinery does not qualify as an "abnormally dangerous activity" sufficient to impose strict liability. Under *Banks*, the Court must "consider 'three non-dispositive factors' to determine Virgin Islands common law: '(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin

---

[2] With the exception of Counts III and V, Plaintiffs' claims do not meaningfully distinguish between the conduct of the various defendants but merely allege the claims against all "Defendants."  This group pleading is improper. *See, Grant v. APTIM Env't & infrastructure, Inc.,* No. 19-cv-0025, 2021 WL 2188570, *9 (D.V.I. May 28, 2021) (conclusory allegations against "Defendants" generally asserting "collective action by [them] without factual allegations as to each defendant" does not mee the plausibility test of *Iqbal*.); *Mamouzette v. Jerome,* No. 13-0117, 2023 WL 5928134, *3, 5 (D.V.I. Sept. 12, 2023) (dismissing claims against Defendant, in part, on grounds that the complaint was an improper shotgun pleading).

Islands.'"[3] *Gov't of Virgin Islands v. Connor*, 60 V.I. 597, 600 (V.I. 2014). Each of the *Banks* factors weigh in favor of applying the six-factor test set out in the Restatement to assess whether operating a refinery qualifies as an "abnormally dangerous activity." Restatement §§ 519, 520.

*First*, courts in the Virgin Islands have consistently applied the six factor Restatement test to evaluate abnormally dangerous condition claims. *See Century Aluminum*, 2014 WL 184445, at *3 (explaining that "the Virgin Islands looks to the principles of law embodied in the Restatement, §§ 519 and 520" when considering a claim for damages based on strict liability for pollution from "the operation of the petroleum refinery on St. Croix"); *Dejesus v. Virgin Islands Water & Power Auth.*, 55 V.I. 402, 408 (V.I. Super. Ct. 2011) (citing Restatement §§ 519 and 520 when considering whether operation of high tension power lines is an abnormally dangerous activity); *Henry v. St. Croix Alumina, LLC*, No. 99-cv-036, 2009 WL 2778011, at *3 (D.V.I. Aug. 28, 2009), *order clarified on reconsideration*, 2009 WL 3248112 (D.V.I. Oct. 7, 2009) ("The Virgin Islands has adopted the Restatement, which imposes strict liability, that is, liability without regard to fault, for 'the kind of harm, the possibility of which makes the activity abnormally dangerous.'"). *Second*, the overwhelming majority of courts recognizing a claim for abnormally dangerous condition have adopted Sections 519 and 520 of the Restatement. The comments to § 519 indicate that twelve federal appeals courts, forty-seven federal district courts, and approximately fifty-eight appellate state courts have cited it as an authority.[4] *Third*, the Restatement approach is eminently sound because it gives due consideration to protecting the public from unreasonable risk

---

[3] The Virgin Islands Supreme Court has not yet addressed whether it should recognize the strict liability tort of abnormally dangerous activity. In order for this Court to predict whether the Supreme Court would recognize this tort, and, if so, its elements, a *Banks* analysis should be undertaken. *See Baptiste v. Rohn*, No. 13-cv-0104, 2016 WL 1273887, *4 and n.4 (D.V.I. Mar. 29, 2016) (discussing the use of a *Banks* analysis to predict VI Supreme Court's ruling on issue of local law), *aff'd*, 694 F. App'x 880 (3d Cir. 2017); *see also Banks v. Intl. Rental & Leasing Corp.*, 55 V.I. 967, 976 (V.I. 2011)."

[4] *See* Restatement § 519 (citations omitted). Of the 45 states that recognize a cause of action for abnormally dangerous condition, 37 of them rely on the Restatement, §§ 519 and 520. *See* Appendix 1, Survey of Jurisdictions Recognizing Strict Liability for an Abnormally Dangerous Condition or Activity.

6

of harm while also appropriately limiting strict liability in a way that will not stifle investments in activities that provide significant value to the community.

### B.    Operating A Refinery Is Not An Abnormally Dangerous Activity

Under the Restatement, an "abnormally dangerous activity" imposes strict liability for harm to a person or property despite the exercise of "the utmost care to prevent the harm." Restatement § 519.  To determine whether an activity is abnormally dangerous, courts consider: (1) whether there is a high degree of risk of some harm to the person, land or chattels of others; (2) the likelihood that the harm that results from it will be great; (3) whether there is an inability to eliminate the risk by the exercise of reasonable care; (4) the extent to which the activity is not a matter of common usage; (5) the inappropriateness of the activity to the place where it is carried on; and (6) the extent to which its value to the community is outweighed by its dangerous attributes. *Id.* § 520.  At bottom, "[t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." *Id.*

Plaintiffs do not and cannot allege facts sufficient to meet the Restatement factors.  Indeed, this Court in *Century Aluminum* carefully evaluated and applied the Restatement factors and concluded that the operation of the St. Croix refinery was *not* an abnormally dangerous activity.[5]  2014 WL 184445, at *6-7.  In arriving at its decision, the District Court observed that the third factor—whether the risk of operating the refinery can be eliminated by the exercise of reasonable care—"deserves particular weight." *Id.* at *5.  The Court found that this factor "weighs

---

[5] The court concluded that the first, second, and fourth factors weighed in favor of finding an abnormally dangerous condition because "leaks are a fact of life in the storage and handling of petroleum and other substances at a petroleum refinery" and oil refinery operation is not "carried on by the great mass of mankind." 2014 WL 184445, at *6.

against concluding that the storage and handling of hazardous substances at a petroleum refinery . . . constitutes an abnormally dangerous activity" because, while risk of harm "cannot be completely eliminated," it "can be significantly reduced with reasonable care in the selection, maintenance, and replacement of equipment." *Id.*  The SAC acknowledges as much, as it asserts negligence claims and alleges that the risk associated with operating the Refinery could have been eliminated had Defendants utilized "environmental safeguards." *See, e.g.*, CAC ¶¶ 5, 115. *See Maximin v. Rudy Rivera & Meridian Eng'g*, 25 V.I. 20, 22-23 (V.I. Terr. Ct. 1990) (holding that "[t]he claim that the carrying of asphalt is an abnormally dangerous or ultrahazardous activity is completely without basis and is **inconsistent with the plaintiffs' negligence theory** in any event") (emphasis added) (citing *Jennings v. U.S.*, 530 F. Supp. 40 (D.D.C. 1981)).  As such, this factor weighs heavily in favor of finding that there was no abnormally dangerous condition.

The *Century Aluminum* court also found that the fifth factor—the appropriateness of the activity to the place where it is carried on—weighs against strict liability for three reasons: (1) the area where the Refinery is located is zoned I–1 for Heavy Industry, which permits "Petroleum Refining & Related Industries," *id.* (quoting V.I. Code Ann. tit. 29, § 228); (2) the Refinery "site was selected with the encouragement and approval of both the Governor and the Legislature of the Virgin Islands," meaning that "[p]ublic officials, who are also charged with the protection of the Territory's natural resources, 'determined that the highest and best use of the refinery site is refining operations'"; and (3) the Refinery "was placed along the shoreline by necessity" because of the requirement to have access to petroleum imports.[6] *Id.*  Plaintiffs allege no facts that would warrant a departure from this sound logic.  To the contrary, the SAC acknowledges that the

---

[6] As to the third factor, the court noted that the sensitive character of the location—e.g., in that the location might have potential to impact ground water—"may weigh less heavily than it otherwise might" where, as here, "the activity 'can be carried on only in a particular place.'" *Id*. (quoting Restatement § 520 cmt. j).

Refinery is located on a 1,500-acre industrial complex on the south-central coast of St. Croix and that "[o]perations at the facility began in 1965." CAC ¶ 58. The fact that the Refinery is located on a dedicated industrial site and has been for decades cuts against the notion that its operations were inappropriate "to the place where [they were] carried on." Restatement § 519.

Finally, the *Century Aluminum* court held that the sixth Restatement factor—the extent to which the activity's value to the community is outweighed by its dangerous attributes—"weigh[s] substantially" against the imposition of strict liability. 2014 WL 184445, at *6. The court reasoned that the "value of the refinery in supporting the economy and creating jobs has been very significant" and noted, among other things, that the "Legislature of the Virgin Islands declared . . . that a refinery would be 'vital to the prosperity of the entire region,' and it went on to find the proposed HOVIC/HOVENSA facility to be in the public interest." *Id.* The SAC supports this conclusion as well, as it alleges that the project to restart the Refinery would add 1,200 workers for the construction phase alone, and, upon restart, the Refinery would provide "$775 million in revenues to the government over the next 10 years" as well as "the massive economic benefits that will be conferred upon the Territory in general, and St. Croix in particular, by the infusion of $1.4 billion in direct capital investment and the creation of as many as 700 new full-time permanent jobs." SAC ¶ 104. The sixth Restatement factor therefore also weighs significantly against finding the Refinery to be an abnormally dangerous condition.

This Court should follow the *Century Aluminum* decision and reaffirm that the operation of the Refinery is not an abnormally dangerous condition. Such a result would be consistent with decisions around the country that have likewise concluded that operating a refinery is not an abnormally dangerous condition.[7] Plaintiffs proffer nothing to warrant a departure from *Century*

---

[7] *See, e.g., Fagan v. Superior Ref. Co. LLC*, 471 F. Supp. 3d 888, 894 (W.D. Wis. 2020) (collecting cases and explaining that "[o]ther federal district and appellate courts have also declined to generalize operations at oil refineries as

9

*Aluminum*. Rather, Plaintiffs allege only that "the actions of Defendants . . . constitute maintaining an abnormally dangerous condition." SAC ¶ 259. Such conclusory allegations are insufficient to state a claim. *See Iqbal*, 556 U.S. at 681 (conclusory allegations "are not entitled to the presumption of truth").

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR MEDICAL MONITORING

Plaintiffs allege that they have been placed at an increased risk of contracting latent illnesses due to their exposure to certain toxics released in the Incidents and, as a result, the Court should establish a Defendant-funded medical monitoring regime. CAC ¶¶ 311-14. Plaintiffs' medical monitoring claim fails because it is not a cognizable claim in the Virgin Islands and, even if the Court were to recognize it as an independent tort claim, Plaintiffs fail to allege an existing injury. Because medical monitoring has not been recognized as a cause of action by the Virgin Islands Supreme Court, *see Arno v. Hess Corp.*, 71 V.I. 463, 505 (V.I. Super. Ct. 2019) ("Assuming the Virgin Islands were to recognize a medical monitoring or fear of future illness  cause of action..."), this Court should conduct a *Banks* analysis. Under *Banks*, the Court should, at a minimum, require Plaintiffs to demonstrate an existing injury that is a fundamental element of all tort claims under Virgin Islands law. *See, e.g.*, *Purjet v. Hess Oil Virgin Islands Corp.*, 22 V.I. 147, 154 (D.V.I. 1986) (dismissing medical monitoring claim where there was no "demonstrable injury").

As to the first *Banks* factor, courts in the Virgin Islands require plaintiffs to establish a present physical injury to sustain a medical monitoring claim. For example, in *Purjet*, the plaintiffs

---

ultrahazardous in terms of strict liability"); *Anderson v. Farmland Indus., Inc.*, 136 F. Supp. 2d 1192, 1201 (D. Kan. 2001) ("Taken as a whole, the factors under Restatement Section 520 lead the court to conclude that the operation of the Coffeyville refinery is not an abnormally dangerous activity."); *Hall v. Amoco Oil Co.*, 617 F. Supp. 111, 112 (S.D. Tex. 1984) (considering the factors enumerated in Restatement Section 520 and concluding "that the operation of an oil refinery in an industrial community such as Texas City does not constitute an ultrahazardous activity"); *cf. Flanagan v. Ethyl Corp.*, 390 F.2d 30, 31 (3d Cir. 1968) (invoking the Second Restatement and applying Pennsylvania law to conclude that refinery operations are not "ultra-hazardous").

asserted that they were entitled to periodic medical monitoring due to prolonged exposure to asbestos. 22 V.I. at 153. The district court disagreed, finding that a claim for medical monitoring requires not only a future expectation of harm, but a then-existing physical injury, which the plaintiffs had not shown. *See id.* at 154 ("We are bound . . . to follow the Restatement's rule that actual injury is an indispensable element of a tort cause of action[.]"). Similarly, in *Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 17–18 (V.I. Super. Ct. 2008), the superior court granted summary judgment and dismissed plaintiffs' medical monitoring claim where they "base[d] their claim merely on future expectations of harm and fail[ed] to show any present impact from their asbestos exposure."[8]

As to the second *Banks* factor, the majority of states that have squarely addressed medical monitoring require plaintiffs to show an existing injury to recover. *See, e.g.*, *Hinton v. Monsanto Co.*, 813 S.2d 827, 828-29 (Ala. 2001) (rejecting medical monitoring claim due to Alabama's requirement that plaintiffs allege a "manifest, present injury before [they] may recover in tort"); *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 686 (Mich. 2005) (remanding plaintiffs' medical monitoring claim for summary disposition in favor of defendant where no present injury alleged).[9] Of the twelve states that do not require an existing physical injury, eight recognize medical monitoring only as a remedy, not as an independent tort claim, as asserted here. *See, e.g.*, *Xavier v. Philip Morris USA, Inc.*, No. 3:10-cv-02067-WHA, 2010 WL 3956860, at *5-6 (N.D. Cal. Oct. 8,

---

[8] *But see Josephat v. St. Croix Alumina, LLC*, No. 1999-0036, 2000 WL 1679502, at *11-12 (D.V.I. Aug. 7, 2000) (certifying medical monitoring subclass based on plaintiffs' potential ability to show, among other things, "a reasonable physician would prescribe for him or her a monitoring regime different than the one that would have been prescribed in the absence of that particular exposure" (citing *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 852 (3d Cir.1990) (applying Pennsylvania law))). As discussed below, however, Pennsylvania is one of several states that, contrary to the majority approach, recognizes a cause of action for medical monitoring absent physical injury. Moreover, the *Josephat* plaintiffs ultimately dropped their medical monitoring claim, and the district court decertified the medical monitoring subclass. *See Henry v. St. Croix Alumina, LLC*, No. 99-cv-0036, 2008 WL 2329223, at *1-2 & n.1 (D.V.I. June 3, 2008).

[9] *See also* Appendix 2, Survey of Jurisdictions Recognizing Medical Monitoring; Megan Noonan, *The Doctor Can't See You Yet: Overcoming the "Injury" Barrier to Medical Monitoring Recovery for PFAS Exposure*, 45 Vt. L. Rev. 287, 306-07 (2020) (listing states that do not recognize claims for medical monitoring absent present injury).

2010) ("In California, medical monitoring is a remedy which must rely upon underlying claims. It does not stand alone."); *Moore v. Scroll Compressors, LLC*, 632 S.W.3d 810, 819 (Mo. Ct. App. 2021) ("Missouri law does not recognize medical monitoring as a separate cause of action.").[10] Only five states have expressly recognized independent causes of action for medical monitoring in the absence of an existing injury.[11]  And certain states do not appear to recognize medical monitoring as a claim or remedy at all.[12]

As to the third *Banks* factor, the soundest rule for the Virgin Islands is to recognize medical monitoring as a remedy, not a standalone claim.  That a defendant's conduct caused the need for medical monitoring does not, in and of itself, create an independent tort.  In such circumstances, medical monitoring can be included as an element of damages.  That said, regardless of whether the Court is inclined to recognize medical monitoring as an independent cause of action or a remedy, requiring Plaintiffs to plead an existing injury is critical because allowing purely speculative damages claims to proceed would unduly increase the costs of insurance in the Virgin Islands and otherwise chill economic growth in a jurisdiction in need of outside investment. *Cf. Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 442 (1997) (rejecting medical monitoring claim under FELA absent allegations of present injuries and noting the unfettered liability that could result where "tens of millions of individuals" who may have suffered exposure to substances seek medical monitoring).  This approach is also consistent with longstanding Virgin

---

[10] *See also Quiroz v. ALCOA Inc.*, 416 P.3d 824, 832-33 (Ariz. 2018); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 77 (Md. 2013); *Badillo v. American Brands, Inc.*, 16 P.3d 435, 437 (Nev. 2001); *Theer v. Philip Carey Co.,* 628 A.2d 724, 733 (N.J. 1993); *Hirsch v. CSX Transportation., Inc.*, 656 F.3d 359, 363 (6th Cir. 2011) (applying Ohio law).

[11] *See, e.g., Redland Soccer Club, Inc., v. Dep't of the Army*, 696 A.2d 137, 145-46 (Pa. 1997); *Petito v. A.H. Robins Co. Inc.*, 750 So. 2d 103, 106-07 (Fla. Dist. Ct. App. 1999); *Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 979 (Utah 1993); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 426 (W. Va. 1999); VT. STAT. TIT. 12, § 7201.

[12] *See, e.g., In re Prempro*, 230 F.R.D. 555, 569 (E.D. Ark. 2005) ("Arkansas has rejected medical monitoring as a cause of action, and questions its availability as a remedy.").

Islands jurisprudence, which considers actual injury an indispensable element of all tort claims. *See, e.g.*, *Louis*, 50 V.I. at 17.

Plaintiffs' medical monitoring claim should be dismissed because, if anything, medical monitoring should be recognized as a remedy, not a standalone claim. In any event, the SAC fails to plead an existing injury or illness but rather alleges that Plaintiffs have been placed at an "increased risk of contracting latent illness and disease, including . . . cancer." *See* SAC ¶¶ 312. This is insufficient to plead the existing injury element of the claim. Moreover, even if the Court were to disregard the physical injury requirement, Plaintiffs' medical monitoring claim would still fail because they have not alleged that "a reasonable physician would prescribe for him or her a monitoring regime different than the one that would have been prescribed in the absence of that particular exposure," as required. *Josephat*, 2000 WL 1679502, at *11. This is particularly significant here, given that Plaintiffs have alleged that the prior Refinery operator, HOVENSA, released "approximately as much petroleum into St. Croix's groundwater as four times that of the 1989 Exxon Valdez spill." SAC ¶ 59. Accordingly, Plaintiffs' medical monitoring claim fails as a matter of law and should be dismissed.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Virgin Islands law, in order to state a claim for IIED, "a plaintiff must allege that the defendant '(1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress.'" *Ainger v. Great Am. Assurance Co.*, No. 1:20-cv-00005, 2022 WL 4379794, at *17 (D.V.I. Sept. 22, 2022) (Lewis, J.) (quoting *Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 295 (V.I. Super. Ct. 2015) (citing Restatement § 46 and following *Banks* analysis in *Joseph v. Sugar Bay Club & Resort*

13

*Corp.*, No. ST-2013-CV-491, 2014 WL 1133416, at *3 (V.I. Super. Ct. Mar. 17, 2014)) (finding that Restatement § 46 represents the soundest rule for the Virgin Islands), *rev'd in part on other grounds*, S. Ct. Civ. No. 2014-0048, 2015 WL 682117 (V.I. Feb. 17, 2015). Plaintiffs fail to plead sufficient facts to meet any of these factors.

Plaintiffs fail to plead that any Defendant intentionally engaged in extreme conduct designed to inflict emotional distress. "It has not been enough that the defendant has acted with an intent which is tortuous [sic] or even criminal . . . or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Smith v. Elias*, 49 V.I. 65, 75 n.5 (V.I. Super. Ct. 2007). Rather, "[t]he defendant must desire to inflict severe emotional distress or know that it is substantially certain to result." *Hartzog v. United Corp.*, No. SX-04-CV-095, 2011 WL 13136520, at *6 (V.I. Super. Ct. Sep. 7, 2011). Here, Plaintiffs have failed to adequately plead that any Defendant engaged in conduct that it knew or should have known would lead to severe emotional distress. *Dumas v. Angus Chem. Co.*, 728 So. 2d 441 (La. App. 2 Cir. 1999), is instructive. In *Dumas*, involving an explosion at a fertilizer plant that injured plaintiffs, including some fatally, the court rejected plaintiffs' IIED claim, holding that even assuming defendants intended to destroy the plant, "it is absurd to suggest that not only would their intent be to kill or wound workers and cause millions of dollars in damages, but also that their conduct would be calculated to cause severe emotional distress directed at plant workers, Sterlington residents, and their relatives spread around the world." *Id.* at 446-47. So too here.

Nor are Plaintiffs' allegations that Defendants were aware of environmental incidents that occurred at the Refinery when owned by HOVIC and HOVENSA, *see* SAC ¶¶ 299-309, sufficient to plead the requisite intent. Even if Defendants were aware of prior environmental incidents,

14

Plaintiffs acknowledge that more than three years and $1.25 billion was spent preparing the Refinery for restart. SAC ¶ 45. Simply put, Plaintiffs fail to allege any facts to support a plausible inference that Defendants intended or deliberately disregarded[13] a high degree of probability that emotional distress would result from pursuing a restart under these circumstances.

Nor do Plaintiffs allege the kind of "extreme and outrageous" conduct required to state a claim for IIED. Indeed, devoting substantial time and more than $1.25 billion, SAC ¶ 45, to restart a refinery as part of a government-approved deal that would provide thousands of jobs to the local economy does not "exceed all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society." *Ainger*, 2022 WL 4379794, at *17. At bottom, the SAC alleges an environmental accident of the type for which courts routinely deny IIED liability. *See*, *e.g.*, *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on April 20, 2010*, No. 10-03261, No. 12-1713, 2020 WL 638571, at *6 (E.D. La. Feb. 11, 2020) (rejecting plaintiffs' claim for IIED because the "complaint contains [only] conclusory, threadbare element recitals"); *Dumas*, 728 So. 2d at 446-47 (rejecting IIED claim based on explosion at fertilizer plant).[14]

Finally, Plaintiffs' IIED claim fails because Plaintiffs do not sufficiently allege that Plaintiffs suffered "severe mental distress." SAC ¶¶ 299-309. To state a claim for IIED, a plaintiff must allege that he or she has suffered mental injury that is so "***serious* or *severe***" that "a reasonable person, normally constituted, would not be expected to endure the mental stress engendered by the circumstances of the plaintiffs case." *Donastorg*, 63 V.I. at 295, 302–11[15] (emphasis added);

---

[13] *See Todman v. Hicks*, 70 V.I. 430, 446 (V.I. Super. Ct. 2019) (citing Restatement § 46, cmt. i for the proposition that an actor "recklessly causes emotional distress where he or she acts in deliberate disregard of a high degree of probability that the emotional distress will follow.").

[14] For the same reason, the SAC fails to meet the standard for punitive damages, which "are generally only allowed 'for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" *Acosta v. HOVENSA, LLC*, 53 V.I. 762, 782 (D.V.I. Feb. 23, 2010) (quoting *Acosta v. Honda Motor Co., Ltd.*, 717 F.2d 828, 834 (3d Cir. 1983)). Plaintiffs' prayer for punitive damages must therefore be rejected.

[15] The Virgin Islands Supreme Court has yet to articulate the elements of a claim for either intentional or negligent infliction of emotional distress, which vary across jurisdictions. *Donastorg*, 63 V.I. at 302, 294–95, 302–09. The test

15

*accord Illaraza v. HOVENSA LLC*, 73 F. Supp. 3d 588, 615 (D.V.I. 2014) ("This court has previously made clear . . . that a plaintiff may only recover on an intentional infliction of emotional distress claim if 'the distress inflicted is so severe that no reasonable man could be expected to endure it.'"). Courts in the Virgin Islands routinely reject IIED claims based on emotional injuries that fail to meet this high standard. *See, e.g.*, *Smith v. Law Offs. of Karin A. Bentz, P.C.*, No. ST-17-cv-116, 2017 WL 3123463, at *6 n.58 (V.I. Super. Ct. July 20, 2017) (holding complaint failed to state a claim for intentional or negligent infliction of emotional distress despite allegations of significant distress manifesting in "migraine/headaches, stress and other ailments" because "migraine headaches and upset feelings are not sufficiently serious forms of emotional injury to merit recovery for a claim of . . . emotional distress" and collecting cases[16]); *Illaraza*, 73 F. Supp. 3d at 615 (granting summary judgment where alleged emotional distress stemmed from "regular headaches and sleeplessness," "stress and anxiety," including "stress about how [the plaintiff] will pay his bills and meet his obligations to his family," and "backaches and frequent stomachaches for which [the plaintiff] has sought medical attention" because such "symptoms cannot properly be characterized as 'so severe that no reasonable person could be expected to endure them'").

Plaintiffs' scant and conclusory allegations are insufficient to demonstrate that their emotional distress was sufficiently "severe" to support an IIED claim. Allegations that Plaintiffs

---

the *Donastorg* court adopted for IIED claims was arguably less stringent than other courts. Because Plaintiffs have failed to plead a viable claim even under the standard recognized by the *Donastorg* court, Defendants assume those standards solely for purposes of this motion. Defendants reserve the right to argue that the proper standard for emotional distress claims are more stringent than articulated in *Donastorg*.

[16] *See Smith*, 2017 WL 3123463, at *6 n.58 (citing, *e.g.*, *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 707 (7th Cir. Ill. Apr. 6, 2009) (holding "mild anxiety that causes her to recheck her work, but that only minimally interferes with her everyday life and for which she has not sought treatment—does not rise to the level of severity required . . . for an emotional injury to be compensable"); *Majca v. Beekil*, 682 N.E.2d 253, 255 (Ill. App. Ct. 1997) (requiring "medically verifiable manifestations of severe emotional distress" to limit false or magnified claims and concluding that plaintiff's reasonable fears were "not severe enough to justify compensation through the courts"); *Robbins v. Kass*, 516 N.E.2d 1023, 1027–28 (Ill. App. Ct. 1987) (concluding that "crying, sleeplessness, increased migraine headaches and upset feelings" were not sufficiently serious emotional injuries to merit recovery for claims of negligent infliction of emotional distress" where plaintiff "did not seek or receive medical attention" for such manifestations)).

16

suffered from "stress and emotional distress," the "worry of long-term health impacts," and "fear" of hypothetical future incidents at the Refinery, *see, e.g.*, SAC ¶¶ 23, 24 fail to demonstrate the severity of the alleged distress or how it manifested as a result of Defendants' alleged conduct. Such "unenhanced conclusory factual assertions of emotional distress" are "not entitled to an assumption of truthfulness," *Hiss v. Com. Sec., LLC., Inc.*, No. SX–15–CV–104, 2016 WL 3092511, at *5 (V.I. Super. Ct. Apr. 8, 2016), and, in any event, do not show that Plaintiffs have suffered emotional distress that is so severe that "no reasonable man could be expected to endure it.'" *Illaraza*, 73 F. Supp. 3d at 615; *see also Liburd v. Gov't of Virgin Islands*, No. 2011020, 2013 WL 960780, at *11 (D.V.I. Mar. 13, 2013) (holding bare allegations that "Plaintiffs have suffered emotional distress" fail to state a claim because, "[w]ithout supporting factual allegations in the Complaint, district courts may disregard such bare legal conclusions").

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

To plead a claim of negligent infliction of emotional distress, Plaintiffs must allege that "(1) that the defendant owed the plaintiff a duty of care to ensure the plaintiff does not suffer serious or severe emotional injury, which duty either arose by contract or was imposed as an independent legal obligation; (2) that the defendant breached its contractual or legal obligation, i.e. its duty; and (3) that, as a direct and proximate result of defendant's breach, the plaintiff suffered a serious or severe emotional injury." *Ainger*, 2022 WL 4379794, at *17 (citing *Donastorg*, 63 V.I. at 314). The SAC fails to plead all three elements.

As to duty of care, Plaintiffs allege that Defendants owed them a duty that "arose by operating an abnormally hazardous condition, through the common law, and through statutory and regulatory obligations to prevent hazardous materials from escaping from the Refinery." SAC ¶ 294. However, as discussed above, refinery operations do not constitute an abnormally

17

dangerous condition. Additionally, Plaintiffs do not allege any specific common law, statutory, or regulatory obligations that give rise to a duty of care by all Defendants or any factual basis that otherwise would give rise to such a duty. SAC ¶ 294. Accordingly, without adequately pleading that all Defendants owed Plaintiffs a duty of care, Plaintiffs cannot plead the requisite breach necessary to maintain their claim.[17]

Plaintiffs also fail to adequately plead that Plaintiffs suffered "severe" emotional injury. Rather, Plaintiffs merely offer a conclusory allegation to that effect. *See* SAC ¶ 296. Such allegations are insufficient to maintain a claim for negligent infliction of emotional distress. *See Smith*, 2017 WL 3123463, at *6 (recognizing "[i]t would be anomalous...to require severe injury for a claim of intentional infliction of emotional distress but not for emotional distress that is caused by mere negligence").

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS

To plead a claim of trespass, a plaintiff must allege "that the defendant intentionally (a) entered land in the possession of the other, or caused a thing or a third person to do so, or (b) remained on the land, or (c) failed to remove from the land a thing which he was under a duty to remove." *Klein v. Bassil*, No. 2021-0044, 2023 WL 8716520, at *8 (V.I. Dec. 18, 2023) (citing Restatement § 158).  The SAC is devoid of allegations that any Defendants had the requisite intent to discharge oil onto Plaintiffs' property.  For the same reasons discussed above concerning Plaintiffs' IIED claim, Plaintiffs' failure to plead the requisite intent is fatal to its trespass claim.

## VI.    PLAINTIFFS FAIL TO ALLEGE A PUBLIC NUISANCE

To state a claim for public nuisance, a plaintiff must plead that the defendant caused "an unreasonable interference with a right common to the general public." *Bell v. Radcliffe*, Case No.

---

[17] Plaintiffs also fail to plead any duties were owed to particular Defendants as set forth in their supplemental briefs.

ST-13-CV-392, 2015 WL 5773561, at *9 (V.I. Super. Ct. Apr. 30, 2015) (quoting Restatement (Second) of Torts § 821B(1)); *Tutein v. InSite Towers, LLC*, No. CV 12-71, 2018 WL 6599163 (D.V.I. Dec. 17, 2018).[18] "A public right is one common to all members of the general public," meaning allegations of interference with private rights are insufficient. *Tutein v. InSite Towers, LLC*, 2018 WL 6599163, at *5 (D.V.I. Dec. 17, 2018) (quoting Restatement (Second) of Torts § 821B cmt. g). That remains true even if the alleged interference affects the private rights of many individuals. *Id.* ("Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of persons.") (quoting Restatement (Second) of Torts § 821B cmt. g)). To recover for public nuisance, "one must have suffered harm *of a kind different* from that suffered by other members of the public exercising the right common to the general public that was the subject of interference." *Bell,* 2015 WL 5773561 at * 8 (emphasis in original).

Where, as here, a plaintiff fails to specify a public right that a defendant purportedly infringed, the claim should be dismissed. In *Tutein*, 2018 WL 6599163, at *5, the plaintiffs alleged that the defendant "interfered with [their] public health, safety, peace and general welfare." In dismissing plaintiffs' claim, the court found that, while plaintiffs alleged "a series of harms they themselves have suffered" they failed to "specify any public right with which Defendant has interfered" *Id.* Similarly, in *Bell,* 2015 WL 5773561 at *9, the court dismissed plaintiffs' public nuisance claim where they merely alleged that defendants "caused environmental damage to [their]

---

[18] Plaintiffs cite to the definition of "public nuisance" in the Virgin Islands Criminal Code as the basis of their allegation that "[t]he actions of Defendants constitute a public nuisance." SAC, ¶ 275 (citing 14 V.I.C. § 1461). Although one post-*Banks* decision from the Superior Court for the Virgin Islands looked to the statutory definition of public nuisance when dismissing a claim for public nuisance, it did so without performing a *Banks* analysis. *See Sickler v. Mandahl Bay Holding Inc.*, Case No. ST-10-CV-331, 2014 WL 3107449, at *6 (V.I. Super. Ct. July 7, 2014). Subsequent cases have performed the three-part *Banks* analysis and found that "the Virgin Islands should continue to rely on § 821B(l)'s definition of public nuisance. *Bell*, 2015 WL 5773561, at *9; *see also Gov't of United States Virgin Islands v. Takata Corp.*, 67 V.I. 316, 404 n.347, 405 n.350 (V.I. Super. Ct. June 19, 2017) (adopting the *Banks* analysis from *Bell* instead of the approach in *Sickler* and explaining that "the criminal definition of public nuisance does not dictate the law governing the civil tort of public nuisance").

property and to the soil and land of neighboring parcels and the surrounding community." The court found that this was nothing more than a "'naked factual assertion'" devoid of sufficient 'factual enhancement' that is not entitled to the assumption of truth." *Id.* (internal citations omitted).

Here, Plaintiffs' allegations of alleged private harms similarly fail. Plaintiffs claim that their "homes, bodies, and emotional wellbeing now and into the foreseeable future have been damaged by Defendants' release of oil and other injurious chemicals, toxins, and particulates into their neighborhoods." SAC, ¶ 276. As in *Tutein* and *Bell,* this is nothing more than a conclusory allegation of private harms and fails to allege facts supporting interference with a public right.[19]

Plaintiffs also fail to allege any facts showing how their alleged harms are of a different nature than those suffered by the public. Rather, they merely allege that "the public at large has not endured such damages." SAC, ¶ 276. This conclusory assertion – devoid of any facts whatsoever – is insufficient as a matter of law to state a claim for public nuisance. *See, Tutein,* 2018 WL 6599163 at *5 (plaintiffs' conclusory allegation failed to show how the harms they allegedly suffered "were of a different kind than those that have been foisted upon the general public.") Plaintiffs' public nuisance claim should be dismissed.

**CONCLUSION**

For the foregoing reasons, and those stated in the supplemental briefs, Plaintiffs' claims for abnormally dangerous condition (Count IV), medical monitoring (Count XII), intentional infliction of emotional distress (Count XI), negligent infliction of emotional distress (X), trespass (Count IX), and public nuisance (Count VI) should be dismissed with prejudice.

---

[19] Indeed, in their claim for private nuisance, Plaintiffs allege that the exact same conduct interfered with their "*private* use and enjoyment of their homes and properties." *Id.* at ¶¶ 280-81, 285-86.

20

Respectfully submitted,

Dated:  September 12, 2025

/s/ Adam B. Zuckerman
Kenneth M. Klemm (solely with respect to case nos. 21-00253, 00260 & 00261, admitted *pro hac vice*)
Adam B. Zuckerman (solely with respect to case nos. 21-00253, 00259 & 00260, admitted *pro hac vice*)
Anne Derbes Wittmann (admitted *pro hac vice*)
Leonard J. Yanez (admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
kklemm@bakerdonelson.com
azuckerman@bakerdonelson.com
awittmann@bakerdonelson.com
lyanez@bakerdonelson.com

and

Amy L. Champagne (solely with respect to case nos. 21-00253, 00259 & 00261, admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Telephone: (601) 351-8912
achampagne@bakerdonelson.com

and

Dated:  September 12, 2025

/s/ Adam N. Marinelli
Adam N. Marinelli (V.I. Bar No. 1294)
BOLTNAGI PC
Merchants Financial Center
4608 Tutu Park Mall, Suite 202
St. Thomas, Virgin Islands 00802-1816
Telephone: (340) 774-2944
amarinelli@vilaw.com

**Counsel for Limetree Bay Ventures, LLC and Limetree Bay Energy, LLC**

21

Dated: September 12, 2025

*/s/ Carl A. Beckstedt*
Carl A. Beckstedt III, Esq.
V.I. Bar No. 684
**BECKSTEDT & KUCZYNSKI LLP**
Attorneys for Limetree Bay Terminals, LLC
2162 Church Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
carl@beckstedtlaw.com

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

Dated: September 12, 2025

*/s/ Shubhra R. Mashelkar*
Shubhra R. Mashelkar
Ga. Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant Limetree Bay Terminals, LLC*

Dated: September 12, 2025

**Wilson Elser Moskowitz Edelman & Dicker LLP**

/s/ *Carolyn F. O'Connor, Esq*
Carolyn F. O'Connor, Esq.
V.I. Bar Number R2100
Joseph T. Hanlon, Esq.
V.I. Bar Number R2099
7 Giralda Farms,
Madison, NJ 07940
Telephone: (973) 624-0800
carolyn.oconnor@wilsonelser.com
joseph.hanlon@wilsonelser.com

*Attorneys for Defendant Limetree Bay Refining, LLC*

22

**CERTIFICATE OF SERVICE**

I certify that on September 12, 2025, the foregoing notice was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send a notification of such filing (NEF) to all counsel of record.

*/s/ Adam B. Zuckerman*
Adam B. Zuckerman
