# Exhibit A

## EIG GEP's Supplemental Memorandum

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,** Plaintiffs,<br>v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0253** |
| **HELEN SHIRLEY, et al.,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0259** |
| **MARY L. MOORHEAD,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0260** |
| **BEECHER COTTON, et al.,**<br>        **Plaintiffs,**<br>v.<br>**LIMETREE BAY VENTURES, LLC, et al.,**<br>        **Defendants.** | **Civil Action No. 2021-0261** |

## EIG GLOBAL ENERGY PARTNERS, LLC'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

Preliminary Statement............................................................................................................1

Background...........................................................................................................................2

Legal Standard .....................................................................................................................3

Argument ..............................................................................................................................3

    I.        Plaintiffs' Claims Against Eig Gep Are Derivative In Nature. ...............................3

            A.      Basic Principles of Corporate Law Bar Plaintiffs' Derivative Claims Against EIG GEP. ......................................................................................4

                 1.      EIG GEP is Not Liable for the Conduct of Distinct Corporate Entities. ..................................................................................4

                 2.      Plaintiffs Cannot Pierce The Corporate Veil...................................5

    II.       Plaintiffs Fail To Plead Any Direct Claim Against Eig Gep.................................12

            A.      The SAC Does Not Allege Any Tortious Conduct By EIG GEP. ..............12

            B.      Plaintiffs Fail to Plead Proximate Causation. .........................................19

Conclusion ..........................................................................................................................20

Certificate Of Service .........................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ainger v. Great Am. Assurance Co.*,
2022 WL 4379794 (D.V.I. Sept. 22, 2022) ................................................................. 6

*Arunachalam v. Int'l Bus. Machines Corp.*,
No. 20-cv-1020-LPS, 2021 WL 7209362 (D. Del. Dec. 29, 2021) ........................................ 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................. 13, 15, 17, 20

*Austrian, M.D. v. United Health Grp., Inc.*,
No. X06-cv-054010357S, 2007 WL 2363301 (Conn. Super. Ct. July 17, 2007) ..................... 18

*Balbo Corp. v. Enighed Condos., LLC*,
58 V.I. 93 (V.I. Super. Ct. 2013)........................................................................ 5, 6

*Bank of Am. Corp. v. City of Miami, Fla.*,
581 U.S. 189 (2017).................................................................................. 19

*Batista v. Countrywide Home Loans, Inc.*,
627 F. App'x 178 (3d Cir. 2015) ............................................................. 13, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................... 13, 18

*Brown v. GE Capital Corp. (In re Foxmeyer Corp.)*,
290 B.R. 229 (Bankr. D. Del. 2003) ....................................................... 10

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
491 B.R. 335 (S.D.N.Y. 2013) ..............................................................11

*Cesar Castillo, Inc. v. Healthcare Enters., L.L.C.*,
2016 WL 5660437 (D.V.I. Sept. 27, 2016) .................................................. 5

*D'Addario v. Johnson & Johnson*,
2020 WL 3546750 (D.N.J. June 30, 2020) ................................................ 13

*Dillard v. Morris Cnty. Prosecutor's Off.*,
2020 WL 4932527 (D.N.J. Aug. 24, 2020)................................................. 13

*Doberstein v. G- P Indus., Inc.*,
2015 WL 6606484 (Del. Ch. Oct. 30, 2015).......................................... 7, 9

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003)....................................................................... 4, 5

*eCommerce Indus., Inc. v. MWA Intel., Inc.*,
2013 WL 5621678 (Del. Ch. Sept. 30, 2013) ...............................................................11

*Egervary v. Young*,
366 F.3d 238 (3d Cir. 2004) ...................................................................................... 19

*Etrailer Corp. v. Unbeatablesale.com, Inc.*,
No. 21-cv-10172-RK-RLS, 2024 WL 1016200 (D.N.J. Mar. 8, 2024) ................................... 15

*Gambina v. Fed. Bureau of Prisons*, No.,
10-cv-02376, 2011 WL 4502085 (D. Colo. Sept. 29, 2011) ....................................................... 17

*Grand Union Supermarkets v. H.E. Lockhart Mgmt., Inc.*,
2013 WL 163830 (D.V.I. Jan. 10, 2013) ......................................................................... 6

*Griffin Industries, Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ..................................................................................... 15

*Guzman v. City of Newark*,
No. 20-cv-6276, 2022 WL 1044957 (D.N.J. Apr. 7, 2022) ....................................................... 17

*Herman v. Blockbuster Ent. Grp.*,
18 F. Supp. 2d 304 (S.D.N.Y. 1998) ..................................................................... 12, 20

*Hodge v. Nat'l Rural Utilities Coop. Fin. Corp.*,
2014 WL 1757229 (D.V.I. Apr. 28, 2014) ..................................................................... 5, 13

*In re Bayou Steel BD Holdings, L.L.C.*,
642 B.R. 371 (Bankr. D. Del. 2022) ................................................................................ 6

*In re Livent, Inc. Noteholders Sec. Litig.*,
151 F. Supp. 2d 371 (S.D.N.Y. 2001) ........................................................................... 15

*In re Opus East, LLC*,
528 B.R. 30 (D. Del. 2015) ........................................................................................... 10

*In re RSL COM PRIMECALL, Inc.*,
2003 WL 22989669 (Bankr. S.D.N.Y. Dec. 11, 2003) ........................................................... 10

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) .......................................................................................... 16

*In re Sunstates Corp. S'holder Litig.*,
788 A.2d 530 (Del. Ch. 2001) ......................................................................................... 6

*Ingris v. Borough of Caldwell*,
No. 14-855, 2015 WL 3613499 (D.N.J. June 9, 2015) ........................................................... 16

*Int'l Env't Mgmt., Inc. v. Envirotron, Ltd.*,
 724 F. Supp. 2d 230 (D. Mass. 2010) ................................................................................ 8

*Klein v. Bassil*,
 No. 2021-0044, 2023 WL 8716520 (V.I. Dec. 18, 2023) ................................................ 19

*Harthman v. Texaco, Inc. (In re Tutu Wells Contamination Litig.)*,
 909 F. Supp. 1005 (D.V.I. 1995) ...................................................................................... 9

*Machado v. Yacht Haven, U.S.V.I., LLC*,
 61 V.I. 373 (V.I. 2014) .................................................................................................... 20

*Mason v. Network of Wilmington, Inc.*,
 2005 WL 1653954 (Del. Ch. July 1, 2005) ...................................................................... 6

*McCurdy v. Johnson & Johnson*,
 No. 1:23-cv-00018-WAL-EAH, 2023 WL 10512305 (D.V.I. Oct. 16, 2023) ................ 19, 20

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.*,
 945 F.2d 635 (3d Cir. 1991) ............................................................................................ 4

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .............................................................. 7, 8, 9

*Pearson v. Component Tech. Corp.*,
 247 F.3d 471 (3d Cir. 2001) ............................................................................................ 5

*Robinson Mech. Contractors, Inc. v. PTC Grp. Holdings Corp.*,
 2017 WL 2377509 (E.D. Mo. June 1, 2017) ................................................................. 10

*Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*,
 52 V.I. 410 (V.I. Nov. 23, 2009) .................................................................................... 19

*Shaw v. Hous. Auth. of Camden*,
 2012 WL 3283402 (D.N.J. Aug. 10, 2012) ................................................................... 13

*Sheeran v. Blyth Shipholdings S.A.*,
 2015 WL 9048979 (D.N.J. Dec. 16, 2015) ................................................................... 14

*Thomas v. Hobbs*,
 2005 WL 1653947 (Del. Super. Ct. Apr. 27, 2005) ........................................................ 4

*Towe v. Martinson*,
 195 B.R. 137 (D. Mont. 1996) ......................................................................................... 8

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ......................................................................................................... 12

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
   2022 WL 611274 (Del. Ch. Mar. 2, 2022) ................................................................. 6

*Wallace v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999) ......................................................................... 6, 8

*Wenske v. Blue BellCreameries, Inc.*,
   2018 WL 5994971 ............................................................................................. 12

*Zimmerman v. Puccio*,
   613 F.3d 60 (1st Cir. 2010) ................................................................................ 8

*Zubik v. Zubik*,
   384 F.2d 267 (3d Cir. 1967) ............................................................................... 4

**Statutes**

6 Del. C. § 18-303 .............................................................................................. 4, 12

**Other Authorities**

R.A. Horton, *Liability of corporation for torts of subsidiary*,
   7 A.L.R.3d 1343 (originally published in 1966) .................................................... 5

Defendant EIG Global Energy Partners, LLC ("EIG GEP")[1] submits this Supplemental Memorandum of Law in support of its motion to dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint (the "SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

Plaintiffs fail to allege any plausible basis to pursue any claims against EIG GEP. The SAC pleads no facts connecting EIG GEP with the alleged wrongdoing on which this action is based—emissions from the operation of the Refinery. The only facts alleged are that EIG GEP is a private equity company that "managed" funds and accounts that participated in a financing package secured to finance the restart of the Refinery in 2018; in March 2020, EIG GEP assumed control of the board of directors of the Refinery; and in 2021, EIG GEP was a controlling investor in LBV. SAC ¶ 45. Plaintiffs have not plead a claim for corporate veil piercing, and even if they had, the SAC lacks any facts suggesting that EIG GEP enjoyed exclusive domination and control of LBR to the point that LBR no longer has legal or independent significance of its own and/or that LBR's corporate structure existed for no other purpose than as a vehicle for fraud, as required to maintain such a claim. Moreover, it is blackletter law that merely owning a controlling interest in a limited liability company does not give rise to liability.

The remaining allegations in the SAC cannot be credited as against EIG GEP because they (i) are nothing more than labels and conclusions (for example, allegations regarding unspecified "direct involvement in the acquisition, rehabilitation, permitting and operation of the Refinery," SAC ¶ 217), (ii) are internally inconsistent with more specific allegations in the SAC (compare SAC ¶¶ 64 & 261, alleging that, in January 2016, "Arclight, EIG, and Freepoint's subsidiaries . . .

---

[1] Unless otherwise indicated, all terms defined in Defendants' Joint Memorandum of Law shall have the same meaning herein.

1

bought the Limetree Bay Facility out of the Hovensa Bankruptcy" with SAC ¶ 45, acknowledging that the EIG-managed funds did not make their first investment until nearly three years later in November 2018), (iii) constitute impermissible group pleading (*e.g.*, allegations that "Defendants Arclight, EIG and Freepoint, were 'hands-on' in the acquisition, rehabilitation, permitting and operation of the Refinery"), and/or (iv) are otherwise vague.

In light of these pleading defects, the SAC does not come close to plausibly alleging that EIG GEP engaged in any tortious conduct or was the proximate cause of any of Plaintiffs' alleged Injuries. The SAC therefore fails to state a claim on which relief can be granted against EIG GEP and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

As alleged in the SAC, EIG GEP is a private equity company specializing in private investments in energy and energy-related infrastructure.[2] SAC ¶ 45. The SAC alleges that, in November 2018, "[f]unds and accounts managed by EIG led the preferred equity portion ($550 million) of a $1.25 billion financing package secured for initial funding of the Refinery restart." *Id.* Plaintiffs further allege that EIG GEP "led an additional capital contribution in November 2019 when the Refinery faced major cost overruns and budgetary constraints," that as "a result of this additional capital contribution, EIG and other preferred investors took 49% of common equity in the Limetree Bay refinery and the right to board control if the Refinery faced further cost overruns," and that by "March 2020, EIG assumed control of the board of directors amid additional cost overruns." *Id.* Plaintiffs further allege that, in 2021, LBV was "controlled by EIG." *Id.*

---

[2] Any reference to or characterization of Plaintiffs' allegations herein is not an admission by EIG GEP regarding the allegations' truth. EIG GEP expressly reserves all rights to challenge the accuracy of the allegations in the CAC.

2

Plaintiffs assert ten causes of action against EIG GEP, all of which are asserted against all eighteen Defendants collectively, and all of which arise from injuries allegedly caused by emissions from the Refinery. *See* SAC ¶¶ 214-230, 258-266, 274-314.[3] As to EIG GEP, Plaintiffs' alleged theory is that it either (i) had some sort of "direct involvement in the acquisition, rehabilitation, permitting and/or operation of the Refinery," *id.* ¶ 217; or (ii) exerted "pressure" on the Limetree Defendants and Contractor Defendants that led to them carrying out a "hurried and substandard Refinery restart," *id.* ¶ 111. As discussed further below, the SAC's allegations of "direct involvement" and "pressure" are entirely conclusory as to EIG GEP and cannot be credited for purposes of a motion to dismiss.

## LEGAL STANDARD

The applicable standards for a Rule 12(b)(6) motion to dismiss are set forth in Defendants' Joint Memorandum at pp. 4-5, and are expressly incorporated herein by reference.

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS AGAINST EIG GEP ARE DERIVATIVE IN NATURE.

Plaintiffs' claims against EIG GEP are, at their core, derivative in nature given that Plaintiffs seek to hold EIG GEP responsible for the acts of LBR and other parties who allegedly owned and operated the Refinery. *See* SAC ¶¶ 39, 40, 41, 46.  To this end, the SAC alleges that that EIG GEP owned LBV and LBE and/or managed funds and accounts that invested in LBV, *id.* ¶¶ 35-36, 45, and that LBV and LBE were limited liability companies organized under Delaware law that held the equity of LBR and Terminals, SAC ¶¶ 35-36. The SAC further alleges that EIG GEP should be held liable for acts allegedly carried out "[t]hrough [its] subsidiaries." *Id.* at ¶ 216

---

[3] The causes of action asserted against EIG GEP (and all Defendants) are negligence, gross negligence, abnormally dangerous condition, public nuisance, private nuisance, statutory private nuisance, trespass, intentional infliction of emotional distress, negligent infliction of emotional distress, and medical monitoring. SAC ¶¶ 214-230, 258-266, 274-314.

(emphases added). As such, Plaintiffs' claims are derivative in nature and Plaintiffs must therefore proceed, if at all, under a corporate veil-piercing theory.

### A. Basic Principles of Corporate Law Bar Plaintiffs' Derivative Claims Against EIG GEP.

Black-letter legal principles bar Plaintiffs' claims against EIG GEP. The members of a limited liability company are not liable for the acts of that company. The SAC alleges that LBR and other parties owned and operated the Refinery. *See* SAC ¶¶ 39, 40, 41, 46. Plaintiffs allege that EIG GEP was an indirect equity owner of LBR and/or managed funds and accounts of indirect equity owners of LBR. Fundamentals of corporate law prevent holding EIG GEP liable for LBR's acts, and Plaintiffs have not pleaded the extraordinary facts necessary to justify an exception to that rule.

### 1. EIG GEP is Not Liable for the Conduct of Distinct Corporate Entities.

Plaintiffs cannot hold EIG GEP liable for the purported tortious conduct of *other* LLCs in which it purportedly either made investments and/or managed funds and accounts for those who did. Indeed, Plaintiffs' allegations run counter to a foundational principle of corporate law: LLCs and their members are distinct legal entities. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also Thomas v. Hobbs*, 2005 WL 1653947, at *2 (Del. Super. Ct. Apr. 27, 2005) ("As with a corporation, a member of a limited liability company may not be held liable for the debts, obligations and liabilities of the company. *See* 6 Del. C. § 18-303." (footnote omitted)). For more than fifty years, the U.S. Court of Appeals for the Third Circuit has recognized that "the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967) (collecting citations); *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 643 (3d Cir. 1991) ("[T]here is a presumption that a corporation, even when it is a wholly owned subsidiary of another, is a separate entity.").

4

Accordingly, EIG GEP is not liable for conduct of separate legal entities in which it allegedly holds an economic interest. *Hodge v. Nat'l Rural Utilities Coop. Fin. Corp.*, 2014 WL 1757229, at *3 (D.V.I. Apr. 28, 2014); *see also Dole Food Co.*, 538 U.S. at 475 ("A corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary."); R.A. Horton, *Liability of corporation for torts of subsidiary*, 7 A.L.R.3d 1343 (originally published in 1966) ("[T]he mere fact that [a] parent corporation owns stock in [a] subsidiary . . . is insufficient" to render the parent corporation liable "for the torts of the subsidiary.").

These basic principles require dismissal of Plaintiffs' claims against EIG GEP. The SAC alleges that EIG GEP "owned" LBV and LBE, which are Delaware holding companies, which in turn owned direct or indirect interests in companies that ultimately owned LBR and Terminals. *Id.* ¶¶ 35-36. In other words, Plaintiffs admit they are suing members for the acts of indirectly owned LLCs, a proposition antithetical to the core purpose of the corporate form: "to allow shareholders to invest without incurring personal liability for the acts of the corporation." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001); *see also Cesar Castillo, Inc. v. Healthcare Enters., L.L.C.*, 2016 WL 5660437, at *4 (D.V.I. Sept. 27, 2016) (Lewis, J.). These claims fail as a matter of law.

### 2.      **Plaintiffs Cannot Pierce The Corporate Veil.**

Plaintiffs have not pleaded a veil piercing claim, but to the extent they seek to plead such claim, they cannot make the extraordinary showing required for ignoring the corporate form. Virgin Islands courts look to the law of the state of organization in determining whether to pierce the corporate veil. *Balbo Corp. v. Enighed Condos., LLC*, 58 V.I. 93, 104 (V.I. Super. Ct. 2013). Because EIG GEP is a Delaware limited liability company, SAC ¶ 45, Delaware law applies,

*see Balbo*, 58 V.I. at 104 (applying Delaware law in determining whether to pierce the corporate veil of a Delaware LLC).

Delaware law imposes a heavy burden on parties seeking to pierce the corporate veil. *Wallace v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (noting that "disregard[ing] the corporate entity is a difficult task"); *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022); *In re Bayou Steel BD Holdings, L.L.C.*, 642 B.R. 371, 399 (Bankr. D. Del. 2022) (observing that "Delaware embraces and protects corporate separateness unless ***exceptional circumstances*** are present") (emphasis added)); *see also Ainger v. Great Am. Assurance Co.*, 2022 WL 4379794, at *25 (D.V.I. Sept. 22, 2022) (Lewis, J.) (rejecting veil piercing claim where plaintiffs failed to allege plausible facts in support beyond ownership); *Grand Union Supermarkets v. H.E. Lockhart Mgmt., Inc.*, 2013 WL 163830, at *3 (D.V.I. Jan. 10, 2013) ("Piercing the corporate veil is . . . a fact notoriously difficult to show."). As relevant here, "the act of one corporation is not regarded as the act of another merely because the first corporation is a subsidiary of the other, or because the two may be treated as part of a single economic enterprise for some other purpose." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530, 534 (Del. Ch. 2001).

The degree of control required to pierce the veil is "exclusive domination and control . . . to the point that [the entity] no longer has legal or independent significance of its own." *Wallace*, 752 A.2d at 1183-84 (citations omitted). To carry their burden to pierce the corporate veil, Plaintiffs must establish that "the corporate structure cause[s] fraud or similar injustice," meaning the corporation is "a sham" that "exist[s] for ***no other purpose*** than as a vehicle for fraud." *Id.* at 1184 (emphasis added); *see also Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) (noting that Delaware law requires "fraud to pierce the corporate veil");

6

*Doberstein v. G- P Indus., Inc.*, 2015 WL 6606484, at \*4 (Del. Ch. Oct. 30, 2015) (explaining that "an overall element of injustice or unfairness must always be present" (footnote omitted)). Plaintiffs must also show that disregard of the corporate form is warranted based on several factors, including: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Id.* (footnoted omitted). "A decision to disregard the corporate entity," though "generally results not from a single factor, but rather some combination of them[.]" *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at \*11 (Del. Ch. Dec. 30, 2010). At bottom, "because Delaware public policy does not lightly disregard the separate legal existence of corporations, a plaintiff must do more than plead that one corporation is the alter ego of another in conclusory fashion in order for the Court to disregard their separate legal existence." *Doberstein*, 2015 WL 6606484, at \*4 (footnote omitted). Plaintiffs cannot overcome that high bar. They have pleaded neither fraud nor injustice arising from the corporate form, nor any other circumstances suggesting a lack of corporate separateness between EIG GEP and LBR.

The preliminary injunction proceedings further support this conclusion. There, this Court addressed—and *rejected*—Plaintiffs' similar argument that Terminals and LBR are not "distinct legal entities such that the actions or omissions of one may be properly attributed to the other." ECF No. 285 at 13–14. As the Court noted, Plaintiffs introduced significant evidence during the preliminary injunction hearing relating to Terminal's and LBR's shared services and facilities, in an attempt to establish interconnectedness for purposes of liability. That evidence, however, was "insufficient—both legally and factually—to establish that Terminals and LBR are not distinct

legal entities." *Id.* at 14. The same reasoning applies with even more force here. Not only do Plaintiffs allege no fraud or abuse of the corporate form, but the Plaintiffs allege nothing close to shared services among or between EIG GEP and the purported tortfeasors or one another.

          **i.**          **Plaintiffs do not plead fraud or injustice from the corporate form.**

Plaintiffs have failed to (because they cannot) allege any facts demonstrating that EIG GEP possessed "exclusive domination and control" of the Refinery, or that EIG GEP's use of the corporate form "cause[d] fraud or similar injustice," or "exist[ed] for no other purpose than as a vehicle for fraud." That failure alone dooms Plaintiffs' SAC. *Wallace*, 752 A.2d at 1184. In other instances where courts ***have*** pierced the corporate veil, the "fraud" at issue ranged from improperly managing funds, *Zimmerman v. Puccio*, 613 F.3d 60, 73–76 (1st Cir. 2010) (disregarding the corporate form when money was improperly shuffled between two family-owned businesses, with no attempt to keep separate books), to tax evasion, *Towe v. Martinson*, 195 B.R. 137, 144 (D. Mont. 1996) (reasoning tax evasion is reason enough to pierce corporate veil), and using the corporate form as a vehicle to manage the defendant's personal expenses, *Int'l Env't Mgmt., Inc. v. Envirotron, Ltd.*, 724 F. Supp. 2d 230, 236–37 (D. Mass. 2010) (corporation kept no records, held no meetings, and paid the defendant's personal expenses).

Plaintiffs fail to allege any exceptional circumstances warranting veil piercing. Plaintiffs contend that "[n]o corporate separateness existed between the Limetree Defendants in the restart of the Refinery;" that "ArcLight, Freepoint and EIG dominated and controlled the [Refinery] through yet another corporate facade;" and that the entities "operating the [Refinery] . . . were set up as entities merely existing to create layers of separation between the Restart Defendants. SAC ¶¶ 172, 176. These are precisely the sort of conclusory statements courts reject as insufficient. *See, e.g.*, *MicroStrategy Inc.*, 2010 WL 5550455, at *12 (holding that the plaintiff "has not adequately

pled a claim to pierce [defendant's] corporate veil and attribute its actions to its subsidiary" because "the Complaint merely pleads in a conclusory fashion that [the defendant] is the alter ego of [its subsidiary]"). Plaintiffs do not allege facts plausibly suggesting LBR's corporate structure had "no other purpose" than to commit fraud, or that EIG GEP was not legally distinct from the purported tortfeasors. Nor could they. This is not a leveraged buy-out gone wrong: LBR did not become insolvent because its equity owners loaded it up with debt and then siphoned out its cash, thus profiting at the expense of LBR's creditors. It is undisputed that the project's investors (including EIG GEP) lost billions of dollars on the indirect investment in the Refinery.

Instead, Plaintiffs simply repeat and repackage their underlying *tort* allegations. *See, e.g.*, SAC ¶ 178 ("Upon information and belief, [EIG GEP] and BP Products were directly involved in the decision to continue Refinery operations after the first, second, and third Incidents." (emphasis omitted)). The *Doberstein* court rejected that same maneuver, holding that "[the defendant's] wrongful acts must be tied to the manipulation of the corporate form in order to make veil-piercing justifiable," even if the "allegations may or may not support a[n] [underlying] claim for fraud." 2015 WL 6606484, at *4; *see also MicroStrategy*, 2010 WL 5550455, at *12 (rejecting veil piercing when plaintiff "merely pleads that the two corporations took actions that allegedly constitute breaches of contract and fraud without asserting any facts suggesting that such wrongs arose out of a 'misuse of the corporate structure.'" (footnote omitted)). Here, even setting aside whether Plaintiffs' allegations would support the underlying tort claims (and EIG GEP maintains they do not), these allegations fall well short of alleging "manipulation of the corporate form." *See Doberstein*, 2015 WL 6606484, at *4. This Court should reject Plaintiffs' attempt to recast their substantive claims as support for piercing the corporate veil.[4]

---

[4] To reach EIG GEP, Plaintiffs would have to pierce not only the corporate veil of LBR, but also of LBV and every other entity between LBR and the other Restart Defendants. *Harthman v. Texaco, Inc. (In re Tutu Wells Contamination*

###### ii.    Plaintiffs' remaining allegations do not justify veil piercing.

Plaintiffs additionally have not sufficiently alleged the other factors necessary to disregard the corporate form. *See id*. For starters, as to whether the Refinery-related entities were adequately capitalized, Plaintiffs make the threadbare allegation that "[t]he Restart Defendants . . . fully [knew] Limetree Bay Ventures, Limetree Bay Energy. . . Limetree Bay Refining and Limetree Bay Terminals were undercapitalized[.]" SAC ¶ 177. But nowhere do Plaintiffs allege any facts supporting that claim, or any factual allegations of any of those entities' capital structure, debt obligations, or other facts suggesting the Refinery was undercapitalized at the time of formation, or that EIG GEP knew they were undercapitalized. Instead, Plaintiffs again repeat their underlying substantive allegations about the Refinery generally. *See, e.g.*, *id.* ("The entity's undercapitalization is evidenced by, among other things, the four significant environmental disasters that occurred in less than four months of operation (one occurring within the first three days of operation), the wholly inadequate staffing at the Refinery in the short time it operated, particularly in the HSE Department, and the Refinery's current deplorable condition."). That is facially insufficient. Capitalization is examined *ex ante*¸ at the time of corporate formation—not in hindsight. *In re Opus East, LLC*, 528 B.R. 30, 59 (D. Del. 2015); *Robinson Mech. Contractors, Inc. v. PTC Grp. Holdings Corp.*, 2017 WL 2377509, at *6 (E.D. Mo. June 1, 2017) (applying Delaware law). If capitalization were viewed in hindsight, every entity that files for bankruptcy would necessarily be undercapitalized for veil-piercing purposes. *See In re RSL COM PRIMECALL, Inc.*, 2003 WL 22989669, at *16 (Bankr. S.D.N.Y. Dec. 11, 2003) (explaining that "[i]f lack of adequate capitalization w[as] alone enough to justify piercing the corporate veil, the

---

*Litig.)*, 909 F. Supp. 1005, 1009 (D.V.I. 1995); *Brown v. GE Capital Corp. (In re Foxmeyer Corp.)*, 290 B.R. 229, 242 (Bankr. D. Del. 2003). Plaintiffs do not even attempt to meet this heavy burden.

10

veil of every insolvent subsidiary or failed start-up corporation could be pierced."). Plaintiffs plead no facts indicating the Refinery was undercapitalized at the time of corporate formation.

As for corporate formalities, Plaintiffs claim that "Limetree Bay Ventures, Limetree Bay Energy, Limetree Bay Preferred Holdings and Limetree Bay Holdings . . . served no separate existence or function outside of the corporate interest of Limetree Bay Refining and Limetree Bay Terminals" based on "(i) maintenance of insurance coverage for the Refinery, (ii) lack of employees and (iii) shared officers with Limetree Bay Refining and Limetree Bay Terminals." CAC ¶ 172. Critically, that allegation makes no mention of EIG GEP whatsoever.[5]

Finally, Plaintiffs make no attempt to plead any facts suggesting that the Refinery-related entities "simply functioned as a façade" for EIG GEP. The most that Plaintiffs can muster is a conclusory allegation that "EIG dominated and controlled the Limetree Defendants through yet another corporate facade." *Id.* ¶ 176. But slapping the label "façade" on a corporate entity is not sufficient to plead veil piercing. Plaintiffs must allege ***facts*** to advance that theory, and they have not done so. Even putting aside these threshold pleading failures, "[m]ere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity," and "anything short of 'complete domination and control" will not suffice to 'pierce the corporate veil'" where Plaintiffs cannot establish fraud. *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *27 (Del. Ch. Sept. 30, 2013) ("Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence.") (footnote omitted); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 349–50 (S.D.N.Y.

---

[5] Plaintiffs' assertions aimed at satisfying "whether the dominant shareholder siphoned company funds" fail for the same reason. *See, e.g.*, SAC ¶ 175 (alleging that "Limetree Bay Terminals also siphoned funds from Limetree Bay Refining" but making no mention of EIG GEP).

2013) (dismissing veil-piercing claim under Delaware law where the "allegations do not allege facts beyond relationships 'typical of a majority shareholder or parent corporation'" and also failed to plead that investor "used its subsidiaries' corporate forms as a sham' to perpetrate a 'fraud or injustice'"); *Wenske v. Blue Bell Creameries, Inc.*, No. CV 2017-0699-JRS, 2018 WL 5994971, at *1 and n. 36 (Del. Ch. Nov. 13, 2018) (finding that plaintiffs' conclusory allegations of "domination and control" did not overcome presumption of corporate separateness). In sum, Plaintiffs' allegations cannot satisfy the high burden required to pierce the corporate veil. Their claims should be dismissed.

## II.     PLAINTIFFS FAIL TO PLEAD ANY DIRECT CLAIM AGAINST EIG GEP.

### A.     The SAC Does Not Allege Any Tortious Conduct By EIG GEP.

To the extent Plaintiffs assert direct claims against EIG GEP, the SAC fails to state a claim against EIG because it is completely devoid of any well-pled allegations of conduct by EIG GEP. Specifically, the SAC does not contain any well-pled allegations reflecting that EIG GEP ever directly owned or operated the Refinery. Plaintiffs' allegation that EIG GEP held a controlling indirect equity interest in LBR is not sufficient to state a direct claim against EIG GEP. It is blackletter law that "'the exercise of 'control' which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary.'" (quoting *United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998)); *see also, e.g.*, *See, e.g.*, 6 Del. C. § 18-303 (members of a limited liability company are not obligated for the "debts, obligations and liabilities of a limited liability company, whether arising in contract, tort, or otherwise"); *Herman v. Blockbuster Ent. Grp.*, 18 F. Supp. 2d 304, 312 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) (granting summary judgment where "Plaintiffs offer no evidence that [parent company] played any role in the employment decisions and allegedly discriminatory conduct particularly affecting them"). Accordingly, Plaintiffs' bare allegation that EIG GEP "controlled" LBV is at most "merely

12

consistent with" the possibility of liability, but falls far "short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007)). As the Supreme Court made clear in *Iqbal*, the "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* at 678. Mere speculation is insufficient to plead a claim.

Plaintiffs' remaining allegations in the SAC fail to state a claim because they are either impermissibly group-pled, entirely conclusory, and/or contradicted by other more specific allegations in the SAC such that they cannot be credited as to EIG GEP.  It is well established in this Circuit that the Federal Rules prohibit shotgun-style pleadings in which the plaintiff "fail[s] to attribute wrongful conduct to any particular defendant." *Batista v. Countrywide Home Loans, Inc.*, 627 F. App'x 178, 179 (3d Cir. 2015); *Shaw v. Hous. Auth. of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) ("Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants."). Accordingly, courts routinely dismiss complaints, like this one, that attribute allegedly wrongful conduct to all defendants, rather than specifying the tortious acts committed by any particular defendant. *See, e.g., Shaw*, 2012 WL 3283402, at *2; *Dillard v. Morris Cnty. Prosecutor's Off.*, 2020 WL 4932527, at *3 (D.N.J. Aug. 24, 2020); *D'Addario v. Johnson & Johnson*, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020); *Hodge*, 2014 WL 1757229, at *8 (concluding that "Plaintiff's general and conclusory claim that *all* Defendants" committed tortious acts was "not sufficient" to survive a motion to dismiss (emphasis added)); *Island Green, LLC v. Querrard*, 429  F. App'x 90, 92 (3d Cir. 2011) (dismissing claims where the plaintiff failed to plead "specifically what wrongful conduct was

13

committed and by whom," and instead simply "nam[ed] 'the Defendants' generally . . . as having committed the objectionable acts").

The opinion in *Sheeran v. Blyth Shipholdings S.A.* is particularly instructive. 2015 WL 9048979 (D.N.J. Dec. 16, 2015). There, the plaintiff, Sheeran, asserted various tort claims against several defendants, "lumping all of the defendants together and accusing them all of the same general negligent conduct." *Id.* at *2. As Plaintiffs do here, Sheeran identified each defendant with a registered place of business and alleged that the defendants "collectively" "owned, leased, operated, occupied, maintained, managed and/or otherwise controlled the [property]" whose ownership and control was relevant to liability. *Id*. at *3. The *Sheeran* court dismissed the complaint because Sheeran "fail[ed] to plead the liability of [each defendant] with the requisite specificity" required under Rule 8 of the Federal Rules of Civil Procedure. *Id*. at *2. In particular, the court concluded that it "lack[ed] sufficient facts to draw a reasonable inference that [the individual defendant] [was] actually responsible for . . . the negligence alleged," rejecting outright Sheeran's strategy of simply stating that "all Defendants were negligent in the enumerated ways." *Id*. at *3–4. As the *Sheeran* court acknowledged, the rule against group pleading ensures that defendants are placed "on notice of the claims against each of them." *Id.* (collecting cases). Accordingly, at a minimum, a complaint must "describe[] the nature of each entity Defendant and precisely what they were responsible for" so that the court could "infer the theory of liability for each Defendant by comparing the specific role each played . . . with the list of duties allegedly breached." *Id*. at *3.

Here, Plaintiffs level sweeping allegations against all Defendants collectively, including that *all* Defendants "own, operate and/or performed work at or regarding the [Refinery] which has caused harm to the Plaintiffs and Class Members." SAC ¶ 34. This type of "shotgun pleading"

14

cannot be credited and does not state a claim including because it "fail[s] to attribute wrongful conduct to any particular defendant." *See Batista v. Countrywide Home Loans, Inc.*, 627 F. App'x 178, 179 (3d Cir. 2015)); *see also, e.g.*, *Etrailer Corp. v. Unbeatablesale.com, Inc.*, No. 21-cv-10172-RK-RLS, 2024 WL 1016200, at *6 (D.N.J. Mar. 8, 2024) ("Failing to specifically allege which [Defendants] engaged in what wrongful conduct and the nature of [Plaintiff's relationship] with each [Defendant] is by itself grounds for dismissal" because [w]ithout specifying what each [Defendant] did, the Court is unable to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)); *Arunachalam v. Int'l Bus. Machines Corp.*, No. 20-cv-1020-LPS, 2021 WL 7209362, at *8 (D. Del. Dec. 29, 2021) (dismissing complaint where "it is impossible to discern which Defendants allegedly did what, where, or when" and, "in many instances the [complaint] fails to link claims to specific defendants, and constitutes impermissible group pleading").

Furthermore, Plaintiffs' allegations of "direct involvement" by EIG GEP in the "acquisition, rehabilitation, permitting, and/or operation of the Refinery" are belied by Plaintiffs' more specific allegations in the SAC, which fail to identify any direct involvement by EIG GEP in these activities. *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (A court need not credit allegations "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations . . . [Here,] the facts in Griffin's own complaint plainly contradict [its] conclusory allegation[s] . . . ."). For example, contrary to Plaintiffs' allegation of "direct involvement" in the "acquisition" of the Refinery (which occurred in January 2016, *see* SAC ¶

15

64), the funds managed by EIG GEP had no alleged involvement with the Refinery until November 2018—nearly three years after the bankruptcy sale. *See id.* ¶¶ 45, 71. Likewise, Plaintiffs' allegations regarding the permitting process do not identify a single action taken by EIG GEP with respect to that process. *See id.* ¶¶ 76-103. This is not surprising given that the SAC alleges that nearly all of the permitting activities took place well before the EIG-managed funds made their first investment in November 2018. *Compare id.* ¶¶ 45, 71 (allegations regarding investment by EIG-managed funds and accounts in November 2018) *with, e.g.*, *id.* ¶¶ 76 (July 2, 2018 Operating Agreement between the Government of the Virgin Islands and LBR), 82 (July 2018 press conference "with ArcLight and Limetree officials"), 88 (2017 meeting between President Trump and a principal at ArcLight Capital, among others), 95 (May 2018 submission to the EPA allegedly by ArcLight and Terminals), 97 (May 2016 transfer of Title V Permit to Terminals). In light of the complete lack of facts showing EIG GEP's connection to the project at the time of these activities, Plaintiffs' vague allegations of "direct involvement" by EIG GEP cannot be credited. *Ingris v. Borough of Caldwell*, No. 14-855, 2015 WL 3613499, at *4-5 (D.N.J. June 9, 2015) ("To the extent that plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading.").

Next, Plaintiffs allege, "upon information and belief," that "the Restart Defendants and BP Products were directly involved in the decision to continue Refinery operations after the first, second, and third Incidents" but "refused to close operations." SAC ¶¶ 178; *see also id.* (alleging "the Limetree Defendants, Restart Defendants, and BP Products" had an "opportunity to comprehensively evaluate the safety of continued Refinery operations"). Once again, there are no facts supporting these allegations whatsoever. *See In re Schering Plough Corp. Intron/Temodar*

16

*Consumer Class Action*, 678 F.3d 235, 252-53 (3d Cir. 2012) (rejecting allegations based "on 'information and belief'" because the complaint "never explains . . . the basis for its conclusion that [the defendant engaged in certain conduct]" and thus "fails to allege sufficient facts to 'show' that [the plaintiff is entitled to relief]"); *Guzman v. City of Newark*, No. 20-cv-6276, 2022 WL 1044957, at *7 (D.N.J. Apr. 7, 2022) (holding allegations made upon information and belief were "conclusory" because the complaint provided no basis for the plaintiff's purported knowledge and recognizing that, "[w]hen a plaintiff makes allegations based on information and belief, he must explain the basis for the information and belief"); *Iqbal*, 556 U.S. at 664-65 (rejecting "bare assertions" that defendants were the "principal architect" of or "instrumental" in the allegedly wrongful conduct because such allegations "are conclusory and not entitled to be assumed true"); *Gambina v. Fed. Bureau of Prisons*, No. 10-cv-02376, 2011 WL 4502085, at *4 (D. Colo. Sept. 29, 2011) (rejecting allegations of "decisionmaking authority" and "'direct involvement" . . . without identifying what that authority or involvement consists of" as "nothing more than a conclusory assertion").

Similarly, Plaintiffs allege that "Defendants Arclight, EIG and Freepoint, were 'hands-on' in the acquisition, rehabilitation, permitting and operation of the Refinery," SAC ¶ 216, but that allegation too is wholly conclusory as to EIG GEP. Plaintiffs' attempt to support their allegations of "hands-on" activity or "direct involvement" by alleging that "[n]either ArcLight Capital nor Freepoint nor EIG nor BP Products is a passive investor" is futile. SAC ¶ 66. That allegation not only fails to show any conduct by EIG GEP concerning the Refinery, it lacks any support whatsoever. Plaintiffs cite statements from EIG GEP's "About Us" webpage describing EIG's "deep sector experience and internal technical capabilities." *Id.* Yet, those statements are about structuring financial investments and have nothing to do with the Limetree Facility or operating a

17

petroleum refinery. *See id.* Likewise, Plaintiffs reference the same webpage and allege that EIG GEP's "investment approach" emphasizes "the opportunity to participate in the upside of projects," *id.*, but that is the entire point of an equity investment—to participate in profits when the company is successful.[6] That EIG GEP generally seeks "opportunity[ies] to participate in the upside of projects," *id.*, does not show that EIG GEP takes on a hands on operational role with investments in general, much less that it had any specific role in operating the Refinery.

Finally, while Plaintiffs vaguely allege that "the Restart Defendants" somehow "pressured" the Contractor Defendants and Limetree Defendants to open the Refinery, *id.* ¶ 111; *see also id.* ¶¶ 113, 114, Plaintiffs offer no facts identifying how EIG GEP supposedly exerted any pressure on any party. "[W]ithout some further factual enhancement," bare allegations of unspecified "pressure" simply fall far short of demonstrating "plausibility of 'entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557. Nor would such allegations satisfy Fed. R. Civ. P. 8's threshold requirement that "the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief,'" as the Supreme Court recognized in *Twombly*. *Id.* at 557-58 ("[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." (internal quotation marks omitted)).

In short, the SAC's generalized and otherwise conclusory allegations regarding the ownership and operation of the Refinery, after several opportunities to amend, are not even

---

[6] Plaintiffs also allege that the "Restart Defendants were the primary entities responsible for capitalizing, and profiting from, the recommissioning of the Limetree Bay Facility," SAC ¶ 176, but that just describes the nature of an investor. *See, e.g., Austrian, M.D. v. United Health Grp., Inc.*, No. X06-cv-054010357S, 2007 WL 2363301, at *5 (Conn. Super. Ct. July 17, 2007) (striking antitrust claims against ultimate controlling parent company because allegations that the parent had "an 'economic interest' in the products of its subsidiaries and generates 'revenue' flowing to [the parent] . . . in effect, merely describe the nature of the parent-subsidiary relationship").

arguably additive and cannot establish that EIG GEP is plausibly liable. The SAC should be dismissed.

### B.    Plaintiffs Fail to Plead Proximate Causation.

Having failed to plead any specific conduct by EIG GEP beyond holding an ownership interest in LBV and/or managing funds that indirectly invested in LBV, Plaintiffs have not plausibly alleged that EIG GEP caused any of their alleged injuries. Proximate causation is an essential element to every single one of Plaintiffs' causes of action. *See, e.g.*, *McCurdy v. Johnson & Johnson*, No. 1:23-cv-00018-WAL-EAH, 2023 WL 10512305, at *5 (D.V.I. Oct. 16, 2023) (recognizing negligence claims require "factual and legal [often referred to as 'proximate'] causation" (alteration in original)); *Klein v. Bassil*, No. 2021-0044, 2023 WL 8716520, at *8 (V.I. Dec. 18, 2023) (trespass claim requires that the defendant "***caused*** a thing or [person]" to enter the land in the possession of another (emphasis added)); Restatement § 431 cmt. e (providing that concepts of proximate cause "are equally applicable" to negligence-based claims and claims "where the conduct is intended to cause harm, or where it is such as to result in strict liability"). Indeed, it is widely recognized that proximate causation is an essential element in ***all*** tort cases. *See, e.g.*, *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) ("as in any tort case, [the plaintiff] must demonstrate that defendants' actions were the proximate cause of the harm he suffered"); *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 201 (2017) ("It is a ''well established principle of [the common] law that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause.''" (alteration in original)). Proximate cause requires "that 'an original act is ***wrongful or negligent*** and in a natural and continuous sequence produces a result which would not have taken place without the act.'" *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 432 (V.I. Nov. 23, 2009) (emphasis added), *overruled on other grounds by Machado v. Yacht Haven, U.S.V.I., LLC*, 61 V.I. 373 (V.I. 2014). To determine whether proximate cause has

19

been sufficiently alleged, courts must "disregard[] legal conclusions, and decide[] whether the facts alleged in the complaint show a plausible claim for relief." *McCurdy*, 2023 WL 10512305, at *5 (granting motion to stay discovery based on failure to plead proximate causation where complaint "provid[ed] no facts that link Plaintiffs' use of [defendant's product] to their injuries").

Here, Plaintiffs fail to plead any act by EIG GEP that could have proximately caused Plaintiffs' alleged injuries. Without any well-pled factual allegations even suggesting EIG GEP — or the funds and accounts it allegedly managed—did anything beyond own a controlling equity interest in LBV, the SAC fails to plausibly allege any claim against EIG GEP. *See Herman*, 18 F. Supp. 2d at 312 ("[o]wnership of a controlling interest in a corporation entitles the controlling stockholder to exercise the normal incidents of stock ownership, such as the right to choose directors and set general policies, without forfeiting the protection of limited liability"); *Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'").

## CONCLUSION

For the foregoing reasons, the SAC fails to state a claim and the claims against EIG GEP should be dismissed with prejudice pursuant to Rule 12(b)(6).

Dated: September 12, 2025

/s/ Adam B. Zuckerman
Kenneth M. Klemm (solely with respect to case nos. 21-00253, 00260 & 00261, admitted *pro hac vice*)
Adam B. Zuckerman (solely with respect to case nos. 21-00253, 00259 & 00260, admitted *pro hac vice*)
Anne Derbes Wittmann (admitted *pro hac vice*)
Leonard J. Yanez (admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
kklemm@bakerdonelson.com
azuckerman@bakerdonelson.com
awittmann@bakerdonelson.com
lyanez@bakerdonelson.com

*and*

Amy L. Champagne (solely with respect to case nos. 21-00253, 00259 & 00261, admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Telephone: (601) 351-8912
achampagne@bakerdonelson.com

*and*

Dated: September 12, 2025

/s/ Adam N. Marinelli
Adam N. Marinelli (V.I. Bar No. 1294)
BOLTNAGI PC
Merchants Financial Center
4608 Tutu Park Mall, Suite 202
St. Thomas, Virgin Islands 00802-1816
Telephone: (340) 774-2944
amarinelli@vilaw.com

***Counsel for Limetree Bay Ventures, LLC and Limetree Bay Energy, LLC***

21

**CERTIFICATE OF SERVICE**

I certify that on September 12, 2025, the foregoing notice was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send a notification of such filing (NEF) to all counsel of record.

/s/ *Adam B. Zuckerman*
Adam B. Zuckerman