# Exhibit C

# Limetree Bay Terminals, LLC and Limetree Bay Refining, LLC's Supplemental Memorandum

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

CLIFFORD BOYNES, et al., )
)
    Plaintiffs, )
)   CIVIL ACTION NO. 2021-0253
v. )
)
LIMETREE BAY VENTURES, LLC, et al., )
)
    Defendants. )
)

HELEN SHIRLEY, et al., )
)
    Plaintiffs, )
)   CIVIL ACTION NO. 2021-0259
v. )
)
LIMETREE BAY VENTURES, LLC, et al., )
)
    Defendants. )
)

MARY L. MOORHEAD, )
)
    Plaintiffs, )
)   CIVIL ACTION NO. 2021-0260
v. )
)
LIMETREE BAY VENTURES, LLC, et al., )
)
    Defendants. )
)

BEECHER COTTON, et al., )
)
    Plaintiffs, )
)   CIVIL ACTION NO. 2021-0261
v. )
)
LIMETREE BAY VENTURES, LLC, et al., )
)
    Defendants. )
)

**DEFENDANT LIMETREE BAY TERMINALS, LLC AND LIMETREE BAY REFINING, LLC'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Limetree Bay Terminals, LLC ("Terminals") and  nominal defendant Limetree Bay Refining, LLC ("Refining") (collectively, "Defendants") submit this Supplemental Memorandum of Law in support of dismissal of Count III of Plaintiffs' Consolidated Second Amended Class Action Complaint [Docket No. 1327, *Boynes et al.* (Civil No. 3:21-cv-253)] (the "CSAC"), showing the Court as follows:

## INTRODUCTION

This action arises out of alleged releases of contaminants from the Limetree Bay Refinery (the "Refinery") in early 2021. In Count III of the CSAC, Plaintiffs assert a negligence *per se* claim against Terminals and Refining. In connection with that claim, Plaintiffs allege that Defendants violated the federal Clean Air Act ("CAA"), the Comprehensive Environmental Response, Compensation & Liability Act ("CERCLA"), and three local environmental protection laws. (CSAC, ¶ 234.)   As described below, each of those claims fails to state a claim upon which relief may be granted to the Plaintiffs and should be dismissed.[1]

## RELEVANT FACTS[2]

This action arises from the restart and operation of the Refinery in early 2021. CSAC ¶°1. In January 2016, defendant Limetree Bay Holdings, LLC purchased the Refinery and related terminal facility from its prior owner and operator, HOVENSA, LLC ("HOVENSA") through a bankruptcy sale. *Id.*  ¶ 64. Terminals, an  affiliate of Holdings, began operating the Terminal in 2016 (*id.* ¶¶ 40, 70) and Refining operated the Refinery.  *Id.* ¶ 39.  In 2018, Holdings began the

---

[1]      In addition to its individual motion to dismiss, Defendants join in the Joint Motion to Dismiss filed by other defendants filed contemporaneously herewith.

[2]      For purposes of its Motion, Defendants accept all of the well-pleaded factual allegations in the CSAC as true. Defendants reserve the right to contest those facts at the appropriate time.

2

process of obtaining permission to resume operation of the Refinery. (*Id.* ¶¶ 70-75)  As part of that process, in July 2018, Terminals and Refining entered into separate operating agreements with the government of the Virgin Islands (collectively the "Operating Agreements"). (*Id.* ¶ 96, n. 69.)[3] Plaintiffs allege that  Terminals and Refining were owned by Limetree Bay Ventures, LLC until on or around April 20, 2021, when ownership of Terminals and Refining transferred to Limetree Bay Energy, LLC *Id.* ¶ 35.

In February 2021, Refining restarted operation of the Refinery. (CSAC ¶ 114). Plaintiffs allege that they suffered personal injuries and/or property damage as a result of four incidents of the release of "hazardous and toxic chemicals, substances, gases and odors, including, without limitation, oil, hydrogen sulfide, sulfur dioxide, polycyclic aromatic hydrocarbons,[4] including naphthalene[], other petroleum hydrocarbons, and other chemicals, toxins, and particulates" from the Refinery. (*Id.* ¶ 1) (collectively the "Incidents"). The Incidents are alleged to have occurred on February 4, April 19-23, May 5, and May 12, 2021. (*Id.* ¶¶ 117, 129, 141, and 154). During all

---

[3]    Plaintiffs have referred to the Operating Agreements in their Complaint although they misidentified the date of the documents. (CSAC, ¶ 96, n. 69 ("In July 2019, Limetree Bay Terminals and Limetree Bay Refining each entered into separate 'operating agreements' with the Virgin Islands' government …"). Copies of the Operating Agreements are attached hereto as Exhibits A and B. Under the incorporation by reference doctrine, on a motion to dismiss, the Court may consider documents that are "integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) *quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see generally Hess Oil Virgin Islands Corp. v. Daniel*, 72 V.I. 676 (V.I. Super. 2020) (finding  the incorporation by reference doctrine further "limits the ability of ***the plaintiff*** to take language out of context, because the defendants can point the court to the entire document . . . [and] enables courts to dispose of meritless complaints at the pleading stage") (emphasis added); and *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.,* 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputably authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

[4]    These compounds are commonly referred to as "PAHs."

four of the Incidents, Plaintiffs allege that a "mixture of oil and water," "aerosolized oil droplets," and/or "liquid droplets of oil" were released into the air from the Refinery. (*Id.* ¶¶ 118, 133, 152, 155.)  Plaintiffs allege that during the second Incident, hydrogen sulfide was released from the Refinery above the level allowed under the Permit. (*Id.* ¶ 131).  On May 14, 2021, operation of the Refinery halted. (*Id.* ¶ 167). Operation of the Refinery has not restarted. (*Id.* ¶ 168).

Plaintiffs filed this litigation in 2021. In Count III of their CSAC, Plaintiffs allege the following against Defendants:

> Defendant had a duty to comply with numerous statutes, and subsequently failed to do so. Specifically, Defendants failed to comply with 28 V.I.C. § 331 (Private Nuisance), (*see infra* Count VII), 42 U.S.C. § 7401, *et seq.* (Clean Air Act), 42 U.S.C. § 9601, *et seq.* (CERCLA), 12 V.I.C. § 201 *et seq.* (Virgin Islands Pollution Control Act), 12 V.I.C. § 701 *et seq.* (Oil Spill and Pollution Control Act), and 12 V.I.C. § 181 *et seq.* (Virgin Islands Water Pollution Control Act).

(*Id.* ¶ 234).[5]  On those bases, Plaintiffs assert a right to recover under a negligence *per se* theory of liability.[6]  As explained below, Count III of the CSAC fails to state a claim on which relief may be granted and should be dismissed.

<u>**ARGUMENT AND CITATIONS OF AUTHORITY**</u>

**A.**     <u>**Legal Standard On Motion To Dismiss**</u>**.**

"A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rule of Civil Procedure tests the sufficiency of a complaint." *Tutein v. InSite Towers, LLC*, Civ. No. 12-71, 2018 WL 6599163, *3 (D.V.I. Dec. 17, 2018). To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter accepted as true, to 'state

---

[5]     The official title of the statute known as CERCLA is the "Comprehensive Environmental Response, Compensation, and Liability Act."

[6]     Defendants do not seek dismissal of Plaintiffs' negligence *per se* claim based on 28 V.I.C. § 331. *See Dorval v. Sapphire Village Condo. Ass'n*, 2020 WL 902524, *4 (Feb. 25, 2020) ("A negligence per se action can be premised on the violation of private nuisance laws."). Terminals reserves the right to challenge this claim and Plaintiffs' claim based on 28 V.I.C. 331 at a later date.

4

a claim that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis." Tutein, 2018 WL 6599163 at *3. "'First, the court must "take note of the elements a plaintiff must plead to state a claim."'" *Id.* (citing, *Malleus v. George,* 641 F.3d 744, 750 (3d Cir. 2005)). Second, the court must 'review the complaint to strike conclusory allegations.' *Id.* (quoting *Iqbal,* 556 U.S. at 675)). Finally, the Court must assume the veracity of all well-pleaded factual allegations and 'determine whether the facts are sufficient to show that plaintiff has a "plausible claim for relief."' *Id.* (citations omitted). Applying that test, it is clear that Count III of the CSAC fails to state a claim against Defendants as a matter of law.

**B.      Count III Fails to State a Claim for Negligence *Per Se* Based on the Federal Statutes.**

In order to state a claim for negligence *per se*, a plaintiff must allege "that the defendant had a duty to follow the law, failed to follow the law, and that such failure caused damages to the plaintiff as a person within the class intended to be protected by the statute of regulation." *Antilles School, Inc. v. Lembach*, 64 V.I. 400, 423 (V.I. 2016); *Louis v. Caneel Bay, Inc.,* 50 V.I. 7, 15 (2008) ("A violation of a statute establishing an affirmative duty is generally considered negligence *per se* if the claimant is within the statue's zone of interest."). As noted above, the statutes on which Plaintiffs rely in this action as support for their negligence *per se* claim are environmental protection statutes. Multiple courts have held that alleged violations of federal environmental

protection statutes cannot form the basis for a negligence *per se* claim. *See, e.g., In re Gold King Mine Release in San Juan County, Colorado on August 2, 2015*, No. 1:18-md-02824-WJ, 2022 WL 4103996, *4-5 (D.N.M. Sept. 8, 2022) (no negligence *per se* claim based on the Colorado Water Quality Control Act, the New Mexico Hazardous Waste Act or the federal Clean Water Act); *Hicksville Water Dist. v. Phillips Elecs. N. Am. Corp.*, 2:17-cv-04442 (ADS)(ARL), 2018 WL 1542670 (E.D.N.Y. Mar. 29, 2018) (no negligence *per se* for alleged CERCLA violation); *Bristow First Assembly of God v. BP P.L.C.*, Case No. 15-CV-523-TCK-FHM, 2017 WL 3123661 (N.D. Okla. July 21, 2017) (same); *Hollingsworth v. Hercules, Inc.*, Civil Action No. 2:15-CV-113-KS-MTP, 2016 WL 7409130 (S.D. Miss., Dec. 22, 2016) (no negligence *per se* for alleged RCRA violation); *Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1567, 1571 (N.D. Ga. 1995) (no negligence *per se* for alleged violation of federal or state Clean Air Act).

In the CERCLA context, one court described the rationale behind not allowing negligence *per se* claims to rest on violations of the statute as follows:

> Because the CERCLA is an environmental statute that is not tailored to 'protect a particular class of individuals,' it does not establish the applicable standard of care for purposes of negligence law.

*Trinity Indus., Inc. v. Greenlease Holding Co.*, 35 F. Supp.3d 698, 725 (W.D. Pa. 2014) (granting defendant's motion for summary judgment on negligence *per se* claims based on CERCLA, RCRA and the Hazardous Sites Cleanup Act ("HSCA")). Another federal court followed similar reasoning in entering judgment against plaintiffs on a negligence per se claim in a case involving releases of chlorinated solvents at a government air base. *W. Greenhouses v. U.S.*, 878 F. Supp. 917, 930 (N. D. Tex. 1995) ("CERCLA and RCRA are strict liability statutes that fail to define a standard for conduct" for the purpose of a negligence per se claim); *See also Hicksville Water Dist*, 2018 WL 1542670 at *10 ("CERCLA establishes a strict liability regime that fails to define a standard of

6

care for the purposes of negligence law. Because it is not designed to protect a particular class of persons, it may not be used to establish a negligence *per se* claim.")

Additionally, "the issue of whether a plaintiff can assert a cause of action based on negligence *per se* is closely related to the question of whether a private cause of action exists under a statute.... Both ... address the question of whether the policy behind the legislative enactment will be appropriately served by using it to impose and measure civil damage liability." *Lutz v. Chromatex, Inc.,* 718 F.Supp. 413, 428 (M.D. Pa. 1989). Here, in passing CERCLA, Congress specifically chose *not* to allow recovery of damages in private actions brought under the statute. The CERCLA "citizen suit" provision allows "any person" to "commence a civil action on his own behalf" in order to enforce the requirements of the statute. 42 U.S.C. § 9659(a). But the *only* relief available in such actions is a judgment granting an injunction "to correct the violation, and to impose any civil penalty provided for the violation." *Id.* § 9659(c). Section 9607, which allows recovery of money, limits the recovery to "necessary response costs" – recovery of damages for personal injury or property damage are not allowed. *See Polcha v. AT&T Nassau Metals Corp.,* 837 F. Supp. 94, 96 (M.D. Pa. 1993) ("Thus, there is no private cause of action under either CERCLA or RCRA to recover damages for personal injuries suffered as a result of violations of those statutes."); *Milbut v. Hi-Score Plant Food Co.,* Civ. A. No. 91-2008, 1992 WL 396774 (E.D. Pa. Dec. 24, 1992) (finding that plaintiffs may not assert a claim for damages, including medical monitoring damages, under CERCLA); *Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1238 (M.D. Pa. 1009) (noting that, "[i]n passing [CERCLA], Congress did not intend to make injured parties whole or to create a general vehicle for toxic tort actions.")

Given this clear law, it would stretch CERCLA well beyond its intended purpose to allow Plaintiffs to shoehorn a recovery of tort damages into alleged violations of the statute. RCRA has

7

been interpreted similarly. In granting summary judgment on the plaintiff's negligence *per se* claim, the court in *Hollingsworth* stated:

> RCRA creates a private right of action [cit.], but it limits the available remedies to "civil penalties, injunctive relief, and attorney's fees." [Cit.] . . . [A] majority of federal district courts have held that "allowance of a negligence per se claim under state law based on violation of RCRA would contravene the clear legislative intent of the statute not to allow damages based on violation of its provisions … The Court elects to follow the majority rule.

2016 WL 7409130 at \*5 (internal citations omitted). Accordingly, the court held that a party "'cannot use the theory of negligence per se to bootstrap a private right of action for damages when one is not provided for by the RCRA.'" *Id.* (quoting *Short v. Ultramar Diamond Shamrock*, 46 F. Supp.2d 1199, 1201 (D. Kan. 1999)).[7]

The same is true for Plaintiffs' claims of negligence *per se* based on the Clean Air Act. In *Satterfield*, the plaintiffs brought claims arising out of alleged air emissions from the defendant's manufacturing facility. They sought damages for bodily injury and property damage under, among other theories, negligence *per se* based on alleged violations of the Clean Air Act. In granting defendant's motion for summary judgment on plaintiffs' claim, the court held that "the federal and Georgia Clean Air Acts do not provide for an action for private recovery" and therefore their negligence *per se* claims based on these statutes failed. (internal citations omitted) *Id.* at 1571. Similarly, in *Moxie ATE LP v. Bostwick Design P'ship*, Case No. 1:21-cv-167, 2022 WL 4120626, \*6-7 (W.D. Pa. Sept. 9, 2022), the court granted defendants' motion to dismiss claim for negligence *per se* based on violation of Clean Air Act, finding that the damages sought by plaintiffs were not "within the intended purpose of the CAA to protect and/or remediate." *See also, Abuhouran v. Kaiserkane, Inc.,* Civil No. 10-6609 (NLH/KMW), 2011 WL 6372208, \*4 (D.N.J. Dec. 19, 2011)

---

[7]    The court in *Short v. Ultramar* granted a motion to dismiss negligence *per se* claims under Rule 12(b)(6). *Short,* 46 F. Supp.2d at 1201.

(dismissing negligence *per se* claim with prejudice where it "impermissibly seeks compensatory and punitive damages under the Clean Air Act …); *Santa Clarita Valley Water Agency v. Whittaker Corp.,* Case No. 2:18-cv-06925-SB-RAO, 2021 WL 6104175 (C.D. Cal. Dec. 3, 2021) ("[V]iolations of RCRA and the CWA do not give rise to negligence per se liability."); *Modern Holdings, LLC v. Corning, Inc.,* Civil No. 5:13-cv-00405-GFVT, 2022 WL 903196 (E.D. Ky. Mar. 28, 2022) (plaintiffs cannot support a negligence *per se* claim on violations of the Clean Air Act).

As in the cases set forth above, Plaintiffs here seek to premise their claims for damages, including personal injury and medical monitoring, on violations of CERCLA and the CAA. These claims are "effectively [CERCLA and CAA] claims for compensatory damages, which are not permitted." *See Hollingsworth,* 2016 WL 7409130 at * 5. These claims fail to state a claim upon which relief may be granted and should be dismissed.[8]

## C.    Count III – Negligence *Per Se* – The Territorial Statutes.

Plaintiffs also premise their negligence *per se* claims based on three territorial environmental statutes, the Virgin Islands Air Pollution Control Act, the Oil Spill Prevention and Pollution Control Act and the Virgin Islands Water Pollution Control Act. (CSAC, ¶ 234). For similar reasons, these claims also fail as a matter of law.

### 1.    Virgin Islands Water Pollution Control Act.

The Water Pollution Control Act ("WPCA") was passed specifically to "authorize the United States Virgin Islands to implement the provisions of the Federal Water Pollution Control

---

[8]    Plaintiffs' claims based on the regulations for flares enacted pursuant to the Clean Air Act suffer from the same defect and should also be dismissed. *Hicksville,* 2018 WL 1542670 at *9 (noting that a negligence *per se* claim could not be brought pursuant to regulations that were related to hazardous waste management, and that the "enabling statute at issue that is associated with these regulations also bars the claim."); *Modern Holdings,* 2022 WL 903196 at * 9 (noting that plaintiff could not support a negligence *per se* claim with the Clean Air Act and its accompanying regulations).

Act (the "Clean Water Act"). 12 V.I.C. § 181. Like the Clean Water Act, the WPCA creates a private right of action, but limits the remedies available in any such action to *injunctive relief and recovery of civil penalties*. Under the WPCA, "any resident of the United States Virgin Islands is authorized to commence a civil action . . .  for appropriate relief, including a permanent or temporary injunction" and to pursue civil penalties to be assessed by the Department of Planning and Natural Resources. *Id.* § 191(a), (b). Similarly, under the Clean Water Act, "any citizen may commence a civil action on his own behalf" seeking to enforce "an effluent standard or limitation" and to "apply for appropriate civil penalties."  33 U.S.C. § 1365(a). And this Court has expressly held that damages are not an available remedy under either the WPCA or the Clean Water Act. *Comm'r Dep't. of Planning and Natural Res. v. Century Alumina Co.*, Civil No. 2005/0062, 2008 WL 4809897, *11 (D.V.I. Oct. 31, 2008) ("The statutory language 'appropriate relief, including a permanent or temporary injunction" in the WPCA ***does not*** provide for a damages remedy.") (emphasis supplied). The WPCA was not intended to protect these specific plaintiffs from the injuries they claim to have suffered. Therefore, it would be improper to allow the plaintiffs in this case to circumvent the clear legislative intent in the passage of the WPCA to create a private remedy for tort damages through the guise of a negligence *per se* claim. *See In re E.I. Dupont de Nemours and Co. C-8 Personal Injury Litigation,* Civil Action No. 2:13-md-2433, 2015 WL 4092866, * 21 (S.D. Ohio July 6, 2015) (negligence *per se* claim not permitted based on violations of the Ohio WPCA).

      2.      Virgin Islands Air Pollution Control Act.

Like the WPCA, the Air Pollution Control Act (the "APCA") was passed expressly to allow implementation of its counterpart federal environmental protection law – in this case, the Clean Air Act. 12 V.I.C. § 201 ("It is the express objective of this law . . . to authorize the Virgin Islands

10

Department of Planning and Natural Resources to implement the provisions of the federal Clean Air Act . . . and federal regulations and guidelines issued pursuant to thereto . . ..”). However, unlike the WPCA and the Clean Air Act, *see id.* § 190 and 42 U.S.C. § 7604(a), there is *no* provision in the APCA permitting a suit by private citizens to enforce its provisions. On the contrary, the APCA contemplates exclusive enforcement of its provision by the Commissioner of the Department of Planning and Natural Resources. *See* 12 V.I.C. § 209(a) (“the Commissioner or his authorized representative . . . may cause written notice of violation to be served upon the alleged violator or violators”) and § 215(a) (“the Commissioner shall, as appropriate . . . commence a civil action for a permanent or temporary injunction, or assess and recover a civil penalty”). In the absence of any indication of the intent to create any private remedy under the APCA, a private plaintiff is precluded from converting an alleged violation of the statute into a basis for recovering tort damages by asserting a negligence *per se* theory. *See, e.g., Satterfield,* 888 F.Supp. at 1571 (no negligence *per se* claim premised on the federal or Georgia Clean Air Acts).

3.      <u>Virgin Islands Oil Spill Prevention and Pollution Control Act</u>.

In passing the Oil Spill Prevention and Pollution Control Act (the “Spill Prevention Act”), the Virgin Islands Legislature declared its intent as follows:

> The Legislature further finds and declares that:
>
> (a)    The transfer of pollutants between vessels, between onshore facilities and vessels and between offshore facilities and vessels within the jurisdiction of the territory and the territorial waters is a hazardous undertaking;
>
> (b)    Spills, discharges and escapes of pollutants occurring as a result of procedures involved in the transfer, storage and transportation of such products pose threats of great danger and damage to the environment of the territory, to owners and users of shore front property, to public and private recreation, to citizens of the territory and other interests deriving livelihood from marine related activities, and to the beauty of the territorial shorelines;

(c)     Such hazards have frequently occurred in he past, are occurring now and present future threats of potentially catastrophic proportions, all of which are expressly declared to be inimical to the paramount interests of the territory as herein set forth; and

(d)     Such territorial interests outweigh any economic burden imposed by the Legislature upon hose engaging in transferring pollutants and related activities.

12 V.I.C. § 702(3)(a)-(d). From that declared intent, it is clear that the Legislature intended to address spills that occurred during the transfer, storage, and transportation of petroleum and like pollutants that impact the shoreline and the territorial waters of the Virgin Islands. This is confirmed by references in other provisions in the Spill Prevention Act. *See, e.g., id.* § 704 ("The discharge of oil, petroleum products or their by-products, and other pollutants into or upon any coastal waters, estuaries, tidal flats, beaches and land adjoining the seacoast of the territory are prohibited."). The claims in this action are based on alleged releases of oil into the atmosphere from the Refinery during the course of its operations. (*See, e.g.,* CSAC ¶¶ 117, 119, 129, 136, 142, 155, 158). Plaintiffs do *not* allege that any of the Releases occurred during the course of the transfer, storage, or transportation of petroleum. Nor are there any allegations that the oil allegedly released at the Refinery impacted the territorial waters of the Virgin Islands or adjacent shoreline. In short, the express allegations of the CSAC indisputably demonstrate that the Spill Prevention Act was not enacted to address the *type of harm* about which the Plaintiffs in this action complain. Accordingly, no claim based on negligence *per se* exists in this case based on the Spill Prevention Act. *See Antilles Sch.*, 64 V.I. at 423; *Louis v. Caneel Bay, Inc.,* 50 V.I. 7, 14 (2008) ("Plaintiffs cannot assert a claim under the Virgin Islands Air Pollution Control Act because the Court finds, as a matter of law, that the type of harm Plaintiffs contend is not negligence *per se* under the statute.")

12

## CONCLUSION

For the reasons set forth above, Plaintiffs' claims for negligence *per se* contained in Count III based on alleged violations of federal and territorial environmental protection statutes fail to state a claim upon which relief may be granted. Those claims should be dismissed as a matter of law.

Respectfully submitted,

Dated: September 12, 2025

*/s/ Carl A. Beckstedt*
Carl A. Beckstedt III, Esq.
V.I. Bar No. 684
**BECKSTEDT & KUCZYNSKI LLP**
Attorneys for Limetree Bay Terminals, LLC
2162 Church Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
carl@beckstedtlaw.com

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

Dated: September 12, 2025

*/s/ Shubhra R. Mashelkar*
Shubhra R. Mashelkar
Ga. Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant Limetree Bay Terminals, LLC*

Dated: September 12, 2025

**Wilson Elser Moskowitz Edelman & Dicker LLP**

/s/ *Carolyn F. O'Connor, Esq*
Carolyn F. O'Connor, Esq.
V.I. Bar Number R2100

13

Joseph T. Hanlon, Esq.
V.I. Bar Number R2099
7 Giralda Farms,
Madison, NJ 07940
Telephone: (973) 624-0800
carolyn.oconnor@wilsonelser.com
joseph.hanlon@wilsonelser.com

*Attorneys for Defendant Limetree Bay Refining, LLC*

14