**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| CLIFFORD BOYNES, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>LIMETREE BAY VENTURES, LLC, et al.,<br><br>  Defendants. | Civil Action No. 2021-0253 |
| HELEN SHIRLEY, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>LIMETREE BAY VENTURES, LLC, et al.,<br><br>  Defendants. | Civil Action No. 2021-0259 |
| MARY L. MOOREHEAD, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>LIMETREE BAY VENTURES, LLC, et al.,<br><br>  Defendants. | Civil Action No. 2021-0260 |
| BEECHER COTTON, et al.,<br><br>  Plaintiffs,<br><br>   v.<br><br>LIMETREE BAY VENTURES, LLC, et al.,<br><br>  Defendants. | Civil Action No. 2021-0261 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER AND REOPEN FACT DISCOVERY

Pursuant to Fed. R. Civ. P. 16(b)(4), Defendants Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals ("LBT") and nominal Defendant Limetree Bay Refining, LLC ("LBR") (collectively, "Defendants"), by and through undersigned counsel, submits this Memorandum of Law in Support of their Motion to Amend the Scheduling Order and Reopen Fact Discovery, showing the Court as follows:[1]

### INTRODUCTION

These consolidated cases arise from the above-captioned four putative class actions filed in 2021 following certain emissions events that occurred at the St. Croix oil refinery ("Refinery") between February 2021 and May 2021.[2] The cases allege multiple claims against multiple defendants on behalf of classes of tens of thousands of individuals seeking hundreds of millions of dollars in damages. Fact discovery opened on June 11, 2024, and given the number of parties and the size of the classes, the scope and volume of discovery was enormous and involved many moving parts. The Parties exchanged well over a million pages of documents, took and defended over fifty (50) depositions and subpoenaed more than two dozen third parties. But throughout the discovery period, Plaintiffs both delayed and outright refused to allow legitimate discovery, and despite Defendants' diligence and best efforts, many of these discovery issues were *still outstanding* at the time fact discovery closed on October 17, 2025.

---

[1] Pursuant to LRCi 7.1(f), Defendants reached out to all counsel on December 4, 2025, to seek concurrence on the substance of this Motion. Plaintiffs do not concur in the relief sought by this motion. The non-moving party defendants have neither given nor denied concurrence.

[2] The *Shirely* case (Case No. 1:21-cv-0259) was filed in the Superior Court of the Virgin Islands on May 19, 2021. The *Moorhead* case (Case No. 1:21-cv-0260) and the *Cotton* case (Case No. 1:21-cv-0261) were filed in the Superior Court of the Virgin Islands on May 20, 2021. The *Boynes* case (Case No. 1:21-cv-0253) was filed in this Court on May 21, 2021.

First, in January 2025, immediately after the defense asked for their depositions, Plaintiffs sought to voluntarily dismiss nearly half of their class representatives from this case. Plaintiffs' counsel thereafter blocked all attempts by Defendants to obtain discovery from or depose these class representatives or *any* absent class members, insisting that Defendants are only entitled to discovery from a few cherry-picked persons Plaintiffs' counsel selected, out of the more than 10,000 purported class members. And they did so after representing to the Court that discovery from the Plaintiffs they wanted to dismiss or from any putative class members was unnecessary and would be "inefficient," while simultaneously (and without disclosure to the Court or the Defendants) testing their properties and obtaining other discovery from numerous putative class members. While the Court (in late July) ultimately held that Plaintiffs' dismissals were valid, it expressly noted that Defendants could seek discovery from them as absent class members. But Plaintiffs still thwarted Defendants' attempts to obtain discovery from or depose absent class members, filing a Motion to Quash subpoenas to them, which remains pending. (Dkt. No. 1415).[3] This key issue of discovery of absent class members remains unresolved, while Plaintiffs and their experts continue to use the information they unilaterally gathered from the absent class members they selected.

Second, Plaintiffs delayed providing authorizations to enable Defendants to obtain medical records critical to Plaintiffs' claims for personal injuries and medical monitoring. To date, Defendants have not received a single medical record from any provider. These documents are fundamental to Plaintiffs' claims for personal injuries and medical monitoring.

Third, there are unresolved issues with respect to third-party discovery, including: (1) the production of documents from Plaintiffs' law firms related to litigation over rum fungus on the

---

[3] Unless otherwise indicated, all docket citations are to the *Boynes* docket (Case No. 1:21-cv-0253).

3

Island of St Croix; and (2) documents related to certifications submitted by or to the Department of Planning and Natural Resources and other third parties pursuant to the Safe Water Drinking Act for the geographical area within Plaintiffs' putative class. The documents are vitally important to Plaintiffs' claims that their properties were contaminated or damaged due to the emissions events, including issues of causation, damages, and class certification.

In addition to these outstanding disputes, there are circumstances outside of Defendants' control that impacted scheduling and the course of discovery in this case. Most importantly, in August 2025, Defendants learned that former Magistrate Judge Henderson had an undisclosed and unwaivable conflict of interest because he has family members that are included in the proposed putative class.[4] Given this conflict, Magistrate Judge Henderson was required to recuse himself months earlier, but it was only *after* LBT filed a Motion in September 2025 that he did so. But by then, with less than a month remaining for fact discovery, Magistrate Judge Henderson had already ruled on (and, at times, intimated how he viewed the dispute and/or suggested how he was inclined to rule) numerous issues that narrowed the scope and time frame for the discovery to which Defendants were entitled, essentially depriving Defendants of their Due Process right to fully defend this multi-million dollar case.

In sum, Defendants were diligent from the outset in pursuing the fact discovery they need in this complex case to defend against Plaintiffs' claims and attempt to certify a class of thousands. But although fact discovery remains incomplete and was curtailed due to Magistrate Judge Henderson's rulings, this case has plowed forward toward expert depositions and class

---

[4] Plaintiffs claim that LBT somehow should have known of this conflict years earlier because it is "common knowledge that Magistrate Judge Henderson is a St. Croix resident and was raised on St. Croix." (Dkt. No. 1491 at p. 5). But even assuming this to be true, Plaintiffs previously defined their class to include those who not only lived on St. Croix but were also "harmed by the Defendants' conduct." (Dkt. No. 1 at p. 28). It was not until August 2025, when Plaintiffs filed their Second Amended Complaint defining the putative class solely based on residency, that LBT learned about the conflict.

certification. Moving forward with expert discovery without the full benefit of fact discovery creates a snowball effect of the prejudice suffered by Defendants, especially given Plaintiffs' use and reliance on discovery and information unilaterally obtained from absent class members. Fairness dictates allowing *all* discovery issues to be resolved before proceeding with expert depositions and class certification. Accordingly, Defendants respectfully submit that good cause exists to amend the Scheduling Order, reopen fact discovery, and extend the current expert deadlines.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Initial Scheduling Order.

A timeline of the significant events that have taken place in this large and complex litigation, and the rulings by former Magistrate Judge Henderson is helpful to understand the basis for this Motion. Plaintiffs initially filed these cases in 2021, shortly after the emissions events giving rise to their claims. Plaintiffs asserted claims against more than a dozen defendants, sought to certify a class of thousands and to recover hundreds of millions of dollars in damages. After defendant Limetree Bay Refining, LLC ("LBR") declared bankruptcy, the cases were stayed until September 2022. The Parties then spent the better part of 2023 litigating the issue of Plaintiffs' request for injunctive relief, which involved significant briefing and two multi-day evidentiary hearings. On June 11, 2024, the Court entered its initial Scheduling Order which formally opened fact discovery and provided, among other deadlines, that document production would be completed by March 7, 2025, fact discovery would close on July 11, 2025 and initial expert reports would be exchanged on the same day. (Dkt. No. 677). For the remainder of 2024 and during the early months of 2025, the Parties exchanged written discovery, negotiated the scope of the massive

ESI collection and production, pursued third-party discovery, and moved forward with depositions of several defense witnesses.

## II.    The Amended Scheduling Order.

Despite working diligently to move discovery forward, several issues arose which made it apparent that additional time would be needed to complete fact discovery. First, given the number of parties and the size of the class Plaintiffs sought to certify, the sheer size of the ESI collection and exchange took a significant amount of time.

In addition, as soon as defense counsel asked to depose the named Plaintiffs, in an attempt to cherry-pick who Defendants would be permitted to depose, in January 2025, Plaintiffs "withdrew" the claims of twenty-one (21) of their named Plaintiffs, leaving just sixteen (16) named Plaintiffs.[5] This delayed the case and created uncertainty as to which class members Defendants could depose, which, as discussed below, is *still* unresolved to date.[6] Given the unresolved issues with the "dismissed" Plaintiffs, the massive ongoing document review and ESI collection, and the ongoing third party discovery disputes (as also discussed further below), on February 25, 2025, Defendants filed a Motion to Extend Pretrial Deadlines, seeking to extend certain discovery deadlines by six (6) months. (Dkt. No. 978). Just two days later, on February 27, 2025, Plaintiffs sought leave to file a Second Amended Consolidated Complaint which not only requested to add LBR as a nominal defendant, but significantly expanded the scope of the putative class to include

---

[5]  Plaintiffs filed both a Notice of Voluntary Dismissal of certain class representatives (Dkt. No. 904) and an "Alternative" Motion for Leave to Dismiss certain class representatives. (Dkt. No. 905). Defendants moved to strike Plaintiffs' Notices (Dkt. No. 924) and opposed their "Alternative" Motion (Dkt. No. 923).
[6] Defendants proceeded with depositions of the (few) remaining named Plaintiffs in early 2025 without the benefit of their full and complete document productions. By way of example, Plaintiffs delayed in executing authorizations for all remaining named Plaintiffs that would allow Defendants to obtain medical records and other documents important to their claims ahead of the depositions, in spite of long outstanding discovery requests As set forth in detail below, the issue of production of Plaintiffs' medical and other records critical to their claims is still outstanding.

more than half of the Island of St. Croix, further cementing the fact that a discovery extension was necessary. (Dkt. No. 985).

In the midst of these many unresolved issues, Plaintiffs insisted on proceeding with depositions of numerous high-ranking defendant witnesses. On March 5, 2025, Plaintiffs and Defendants conducted a meet and confer to determine if they could agree on a limited stay of deposition discovery, to avoid the potential repetition of depositions following LBR's addition as a defendant. After the Parties were unable to come to a resolution, former Magistrate Judge Henderson held an informal conference on March 12, 2025. He refused to enter a stay, and conveyed his full intent to order the parties to proceed with depositions.[7]

Thereafter, Magistrate Judge Henderson scheduled a hearing on Defendants' Motion to Extend Pretrial Deadlines by six months for April 8, 2025. In light of Judge Henderson's refusal to stay depositions and clear and repeated indications that he was not inclined to grant an extension – among other statements from the Magistrate Judge that made clear that relief would not be forthcoming – Defendants were forced to a much more limited extension of approximately three months, rather than risk no extension being granted at all. Plaintiffs, meanwhile, repeatedly observed that if Defendants did not accept whatever Plaintiffs deemed proper, Defendants could just face Magistrate Judge. Magistrate Judge Henderson entered the Parties' agreed-to Amended Scheduling Order on April 11, 2025. (Dkt. No. 1160). The Amended Scheduling Order provided that fact discovery would close on October 17, 2025 and initial expert reports would be due on the same day. Rebuttal Reports were due on November 17, 2025 and Reply Reports were due on

---

[7] This was the first of many rulings by Magistrate Judge Henderson in which he refused to provide relief to Defendants, and narrowed the scope or timing of discovery to which they were entitled. At that time, unbeknownst to Defendants, Magistrate Judge Henderson had an unwaivable conflict, because members of his family are included within the putative class. This conflict ultimately led to his recusal in September 2025 once LBT discovered the conflict.

December 12, 2025, with expert discovery closing on February 10, 2026. Plaintiffs' Motion for Class Certification is currently due on March 16, 2026, and Defendants' responses are due April 17, 2026.[8]

### III.   Despite Defendants' Diligence, Many Discovery Issues Remained Unresolved at the Close of Fact Discovery.

Following entry of the Amended Scheduling Order, the Parties continued with discovery. Fact discovery closed on October 17, 2025. The Parties exchanged initial expert reports on November 7, 2025.[9] The Parties are currently working with experts to prepare rebuttal reports as required under the Amended Scheduling Order. However, as set forth below, despite Defendants' diligence and best efforts, several discovery issues remained unresolved at the close of fact discovery. The outstanding discovery is critical to the defense of class certification and the merits of the case, and includes important information that would be useful to Defendants' experts and the rebuttal of Plaintiffs' experts.

### A.   The Issue of Defendants' Entitlement to Discovery from the Putative Class Remains Unresolved.

In January 2025, Plaintiffs sought to voluntarily dismiss twenty-one (21) of the named class representatives, leaving just sixteen (16) class representatives to represent Plaintiffs' proposed class of tens of thousands. Since that time, Plaintiffs have blocked every effort by Defendants to obtain discovery from any absent class members.

---

[8] After one of Plaintiffs' experts was in a car accident, the parties agreed to extend the deadlines for all expert reports as follows: Initial Reports due on November 7, 2025, Rebuttal Reports due on December 22, 2025 and Reply Reports due on January 28, 2026. They also agreed to extend expert discovery to March 6, 2026. On November 3, 2025, the Court entered an Order memorializing these new dates. (Dkt. No. 1540). The date for class certification has not changed. This means that the Parties will potentially be taking and defending over thirty (30) expert depositions in little over a month before its responsive certification briefing is due. It is conceivable that Defendants will hardly have time to incorporate transcripts, much less receive and review any errata sheets which are not due for thirty (30) days after the deposition is completed.
[9] Collectively, the Parties exchanged twenty-four (24) initial reports.

In early April 2025, LBT served deposition Notices on the twenty-one (21) "dismissed" named Plaintiffs. Plaintiffs objected to the depositions, claiming that they were unnecessary and that they dismissed over half of the named Plaintiffs in the name of "efficiency." On May 2, 2025, the Parties held another informal conference with Magistrate Judge Henderson. Judge Henderson refused to allow the depositions the defense wanted to take to go forward.

On July 25, 2025, the Court denied Defendants' Motion to Strike the Notices of Voluntary Dismissal of Named Plaintiffs, and granted Plaintiffs' Motion for Leave to File their Second Amended Complaint, which significantly expanded the size of the putative class. In its Order, the Court noted that "**Defendants are, of course, free to continue to seek discovery from these now-absent putative class members under the discovery framework for absent class members.**" (Dkt. 1316 at p. 22) (emphasis added). Accordingly, on August 28, 2025, LBT filed its Notice of Intent to serve subpoenas on nineteen absent class members, six of whom are previously named Plaintiffs who have been dismissed. The proposed deponents were selected based location of residence on various parts of the Island, alleged previous contamination due to rum fungus, red dust or other contaminants, results of inspections by Sedgwick and other factors. In other words, LBT sought a very *limited* number (nineteen out of tens of thousands) of additional depositions that were specifically directed to obtain discovery on a variety of class-related issues going to the heart of Plaintiffs' claims. Plaintiffs moved to quash the subpoenas and for a protective order, again arguing to the Court that such discovery is not necessary and "efficiency" was better served with fewer class representatives. Incredibly, they did so while *unilaterally pursuing testing and discovery from putative class members for their own benefit,* which they now intend to use to the defense's detriment. This Motion remains pending.

The prejudice to Defendants due to Plaintiffs' simultaneous denial of class member discovery to them while unilaterally pursuing their own discovery from class members cannot be understated. By way of example, at least two of Plaintiffs' experts – Marco Kaltofen and Ricardo Alvarez – rely heavily on testing done at putative class members' properties that are *not* named Plaintiffs (because the testing done at the named Plaintiffs' properties was not favorable to their position). Indeed, Mr. Alvarez relies on the alleged costs of "cleanup," including costs of cleaning cisterns and roofs, for only *three* "exemplar" properties to form his opinions, none of which are those of the named Plaintiffs. Defendants have been deprived of the ability to depose any of these individuals or obtain any information whatsoever about the use or cleaning of their cisterns before or after the events at issue, prior damage or impact to any of their property, or any other relevant facts that would be highly relevant to their claims and of critical import to Dedendants' experts. Put short, Plaintiffs have cherry-picked properties which they believe show "contamination" – presumably on a classwide basis – to justify their alleged hundreds of millions of dollars in damages, while simultaneously depriving Defendants of any opportunity to obtain any discovery whatsoever from these allegedly damaged properties.[10] Thus, even after fact discovery has closed and as the Parties push forward with expert reports and discovery, the very significant issue of discovery from members of the huge putative class remains undecided.

## B. **Defendants Have Not Received Plaintiffs' Medical Records.**

In addition to discovery from putative class members – which is critical to class certification – there are other discovery issues that remain ongoing to date. One of these issues involves Defendants' efforts to obtain authorizations for the release of records from the (few

---

[10] To be clear, LBT does not believe that even Plaintiffs' cherry-picked testing is reliable to show what their experts claim, but fairness and Due Process dictates that, at a minimum, LBT be given an opportunity to obtain discovery relating to these same and other allegedly "similarly situated" properties.

remaining) named Plaintiffs, so Defendants can obtain important documents from medical providers and other third parties. On June 5, 2024, Defendants served Plaintiffs with a request to produce "Completed and signed HIPAA, employment, and social security authorization forms."

Thereafter, the parties conducted multiple meet and confer sessions about this issue.[11] On July 1, 2025, Magistrate Judge Henderson held an informal conference on the issue of authorizations, and conveyed that he would deny compelling the authorizations unless their scope was narrowed. On July 22, 2025, Defendants wrote to Plaintiffs with their narrowed scope for authorizations for nine (9) Plaintiffs, as instructed by Magistrate Judge Henderson. On *October 17, 2025*, the last day of discovery, Plaintiffs produced additional authorizations for medical records from named Plaintiffs. And on November 4, 2025, Plaintiffs produced two more authorizations. After the authorizations were finally provided, on November 14, 2025, on Defendants' behalf, Defendant BP filed Notices of Intent to serve subpoenas on Plaintiffs' medical providers (Dkt. Nos. 1571-1586). To date, no medical records have been produced.

On November 18, 2025, Plaintiffs filed Objections to these Notices of Intent to serve Subpoenas, arguing that fact discovery was closed. (Dkt. No. 1588). Tellingly, Plaintiffs' Objections do not mention that they failed to provide numerous authorizations until the last day of fact discovery and some after fact discovery was closed. On November 19, 2025, the Court ordered BP to respond to Plaintiffs' Objections by December 1, 2025. (Dkt. No. 1595). BP timely filed its response, which correctly notes that Plaintiffs are invoking the deadline for fact discovery as a "shield to block access to evidence they were obligated to disclose months ago." (Dkt No. 1598 at p. 3). The Court has not yet ruled on these Objections.

---

[11] By March 2025, the Plaintiffs had produced some authorizations for eleven of the named Plaintiffs, but as set forth herein, this dispute lasted many months, involved many meet and confer sessions between the Parties and an informal conference with Magistrate Judge Henderson.

Given Plaintiffs' claims for personal injuries and for medical monitoring, it is critical for Defendants' experts to have these records. Plaintiffs' delay in providing all of the relevant authorizations prejudiced the Defendants' preparation for taking the Plaintiffs' depositions and their investigation and defense of the case, and now threatens to prejudice their experts' ability to rebut certain opinions of Plaintiffs' experts.

### C. There are Unresolved Discovery Issues Involving Third Parties.

In addition to discovery issues between the Parties, there are also outstanding discovery issues with third parties.

### 1. The Rum Fungus Files.

LBT subpoenaed certain of the Plaintiffs' law firms to obtain non-privileged files relating to litigation involving alleged contamination of plaintiffs' real and personal property due to Rum Fungus – some of which are the same properties that Plaintiffs herein contend were contaminated and needed cleaning solely because of the events in this litigation, even though the properties were already contaminated before the events at issue. The Law Firms refused to respond to these subpoenas, forcing LBT to file a Motion to Compel. Magistrate Judge Henderson held a hearing on this issue on July 22, 2025 and on August 19, 2025 denied LBT's Motion. (Dkt. No. 1367). He did so despite expressly finding that that it was important that LBT has "access to evidence that might demonstrate that multiple sources caused the harms alleged in a complaint." *Id.* at p. 12 . On September 2, 2025, LBT filed objections to the Court's Order. (Dkt. No. 1387), which are still outstanding. On September 30, 2025, following Magistrate Judge Henderson's recusal from this matter, LBT also filed a Motion to Vacate the Order. (Dkt. No. 1460). This Motion is also still pending. The rum fungus documents are vitally important to issues of causation, damages, and class certification.

**2. Documents From the Virgin Islands Department of Planning and Natural Resources ("DPNR") and Ocean Systems Laboratory.**

LBT also served subpoenas on several third parties, including the Virgin Islands Department of Planning and Natural Resources, Ocean Systems Laboratory, and Tysam Tech, LLC, seeking documents and information relating to certifications submitted by or to these parties pursuant to the Safe Water Drinking Act for the geographical area within Plaintiffs' putative class. These certifications are highly relevant to Plaintiffs' claims that their cisterns and sources of drinking water have been contaminated due to the emissions events at issue in this case. After these third-parties failed to object to the subpoenas or produce any documents, on October 17, 2025, LBT filed Motions to Compel the production of documents from the DPNR and Ocean Systems. (Dkt. Nos. 1503 and 1505).[12] These Motions remain pending.

## ARGUMENT AND CITATION TO AUTHORITIES

### I. Legal Standard.

"Scheduling orders 'may be modified only for good cause and with the judge's consent.'" *FirstBank P.R. v. Misite*, No. 17-09, 2018 U.S. Dist. LEXIS 135048, at \*11 (D.V.I. Aug. 10, 2018) (quoting Fed. R. Civ. P. 16(b)(4)). Federal Rule of Civil Procedure 16 vests district courts with "broad discretion to control and manage discovery." *Cevdet Aksut Ogullari Koll, STI v. Cavusoglu,* No. 14-3362, 2017 U.S. Dist. LEXIS 109445 (D.N.J. July 14, 2017).

"To modify a scheduling order, a party must demonstrate 'good cause.'" *Gautier-James v. Hovensa, LLC*, Civil Action No. 2006-106, 2012 U.S. Dist. LEXIS 68409, \* 5 (D.V.I. May 16, 2012) (quoting Fed. R. Civ. P. 16(b)(4)). "The 'good cause' inquiry 'focuses on the moving party's burden to show due diligence.'" *Hoffman v. Hammerhead Constr. LLC*, No. 3:21-cv-00046-RAM-

---

[12] Defendants also moved to compel documents from Tysam Tech (Dkt. No. 1507) but subsequently withdraw this Motion. (*See,* Dkt. Nos. 1528, 1602).

13

EAH, 2023 U.S. Dist. LEXIS 146182, at *12 (D.V.I. Aug. 21, 2023) (quoting *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010)). "Courts have defined 'good cause' to include 'circumstances beyond the control' of a party." *Id.* (quoting *Partners Coffee Co., LLC v. Oceana Servs. & Prods. Co.*, No. 09-CV-236, 2010 WL 1726829, at *3 (W.D. Pa. Apr. 28, 2010)).

In evaluating whether discovery should be reopened, courts have considered "(1) the good faith and diligence of the moving party, (2) the importance of the evidence, (3) the logistical burdens and benefits of re-opening discovery, [and] (4) prejudice to the nonmoving party." *Goldrich v. City of Jersey City,* Case No. 15-cv-885 (SDW) (LDW), 2018 U.S. Dist. LEXIS 114565, *3 (D.N.J. July 10, 2018); *see also, Hoffman v. Hammerhead Constr. LLC*, No. 3:21-cv-00046-RAM-EAH, 2023 U.S. Dist. LEXIS 146182, at *12-13 ("Courts consider several factors when determining whether to reopen discovery, including '(1) whether the moving party's lack of diligence or the opposing party's conduct contributed to the delay; (2) potential prejudice caused by the discovery extension; and (3) any other factors the trial court, in its discretion, determines to be relevant.'") (quoting *Trask v. Olin Corp.*, 298 F.R.D. 244, 267 (W.D. Pa. 2014)).

Where discovery disputes impede the process of discovery, it is appropriate to permit modification of a scheduling order. *See, e.g., Reese v. U.S. Airways, Inc*., Civil Action No. 2010-088, 2011 U.S. Dist. LEXIS 119504, at *1-4 (D.V.I. Oct. 14, 2011) (where parties contended that the dispute over plaintiff's medical records stalled discovery efforts, the court agreed to extend the time to complete discovery and to extend expert deadlines.); *Quick v. Geo Grp., Inc.*, No. 3:18-cv-93, 2019 U.S. Dist. LEXIS 138809, at *5-8 (W.D. Pa. Aug. 16, 2019) (extending fact discovery to conduct depositions where the moving party showed due diligence "in pursuing the emails and attempting to resolve the discovery dispute" and "that factors out of [the plaintiff's] control justify

extending the discovery deadline" to review the untimely disclosure of 4,900 emails and attachments.); *Sears v. Mooney,* No. 1:17-cv-00050, 2018 U.S. Dist. LEXIS 191481 (Nov. 8, 2018) (extending both discovery and the dispositive motion deadline due to "unresolved discovery issues among the parties."); *Stanley v. Frock,* Civil NO. 1:20-CV-2258, 2022 U.S. Dist. LEXIS 27325 (M.D. Pa. Feb. 15, 2022) (extending dispositive motions deadline to allow the parties to address unresolved discovery matters).

**II.    Good Cause Exists to Amend the Scheduling Order.**

   **A.    LBT Has Been Diligent in Proceeding with the Voluminous Discovery Involved in this Case and Attempting to Resolve Disputes with Plaintiffs and Third Parties.**

Courts have found that good cause is met where a party shows that the schedule "cannot reasonably be met despite the party's diligence …" *Black Bear Energy Services, Inc. v. Youngstown Pipe & Steel, LLC,* 551 F.Supp.3d 555, 560 (E.D. Pa. 2021) (citing 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure, *Modifying Scheduling Orders* § 1522.1 at 313-14 (3d 2010). There can be no dispute that LBT has been diligent in its pursuit of discovery in this case. Knowing the size and complexity of this case, LBT took action to engage in fact discovery from the time that fact discovery opened on June 11, 2024. It has spent significant time and effort: (1) collecting and reviewing responsive documents and data pursuant to the parties' agreed-upon ESI parameters; (2) pursuing the required documentation, including authorizations, necessary to depose plaintiffs; (3) taking, defending and participating in over fifty (50) depositions; and (4) issuing third-party subpoenas and requests upon learning of potentially relevant incidents and third parties who may have information or documents pertinent to this lawsuit. LBT has pursued he resolution of disputes, either through negotiations

with the parties involved or through court intervention. Despite this diligence, many outstanding disputes still remained, leaving fact discovery incomplete by the October 17, 2025 deadline.

Moreover, Plaintiffs' delay in providing some authorizations and outright refusal to provide other authorizations, baseless objections to Defendants' Notice of Subpoenas to medical providers and refusal to allow any discovery of putative class members contributed to the delays. Indeed, LBT still does not have medical records for those Plaintiffs claiming alleged personal injuries and the issue of absent class depositions remains unresolved. *See Hoffman*, 2023 U.S. Dist. LEXIS 146182, at \*14 (quoting *Marlowe Patent Holdings LLC v. Dice Electronics, LLC*, 293 F.R.D. 688, 701 (D.N.J. 2013) (reopening discovery where "Defendants' conduct clearly contributed to the delay, not a lack of diligence on the Plaintiffs' part" and concluding that "[u]nder these circumstances, Plaintiffs 'could not have reasonably met the scheduling order deadline'"). Plaintiffs' contribution to the discovery delay supports Defendants' request to reopen and complete fact discovery before proceeding further with expert discovery.

### B.      The Outstanding Discovery is Critical to this Case.

Courts have recognized that "[t]he importance of the evidence is often the most significant factor" to a motion to reopen discovery. *800 Cooper Fin., LLC v. Shu-Lin Liu,* Civil No. 16-736, 2023 U.S. Dist. LEXIS 43470 (D.N.J. March 15, 2023). Here, the outstanding discovery and unresolved disputes – including depositions of absent class members, third party discovery and Plaintiffs' medical records – are essential to both liability and class issues. Given the size and complexity of this case, limiting Defendants to depositions of a handful of Plaintiffs – which were cherry-picked by Plaintiffs' counsel – is prejudicial to Defendants and deprives them of their ability to fully defend this case. This is true especially since Plaintiffs have unilaterally taken discovery and done testing at putative class members' properties –without allowing discovery from

those putative class members – and their experts are now relying heavily on this testing. Continuing down the path toward expert reports and depositions without this essential fact discovery only compounds the prejudice to Defendants. *See, 800 Cooper Fin.,* 2023 U.S. Dist. LEXIS 43470 at *7 (granting motion to reopen discovery to depose late-disclosed witnesses, where evidence was important to counterclaim plaintiffs' ability to "fully prosecute its case."); *Virginia St. Fidelco, LLC v. Orbis Prods. Corp.,* Civil Action No. 11-2057 (KM), 2017 U.S. Dist. LEXIS 81729 (D.N.J. May 30, 2017) (granting motion to reopen discovery where the discovery sought was essential to the claims).

### C. Factors Beyond Defendants' Control Relevant to Scheduling or Causing Delay.

Courts have also defined "good cause" to include "circumstances beyond the control" of a party. *Gautier,* 2012 WL 1739723 at *2. Here, despite Defendants' diligent effort to obtain the necessary discovery on both class and liability issues within the confines of the current schedule, many of the delays and restrictions on discovery were out of Defendants' control.

#### 1. Former Magistrate Judge Henderson's Rulings Narrowing the Scope and Timing of Discovery Should Have Never Been Entered.

As set forth in detail above, a number of formal and informal rulings by former Magistrate Judge Henderson had an impact on the scope and timing of discovery in this case and impacted all aspects of Defendants' defense strategy. These rulings were on significant issues such as Defendants' ability to depose class members, the scope of medical records they could subpoena, proceeding with depositions absent full document production and even the limited length of the one extension already granted. This pattern of rulings has tainted the entire litigation and forced LBT to make decisions and concessions that it otherwise might not have made. And because Magistrate Judge Henderson had an unwaivable conflict of interest as early as February 27, 2025

(when Plaintiffs sought to expand their class definition), he should never have been in a position to enter those rulings. Magistrate Judge Henderson knew (or should have known) months earlier that he had a conflict, and he should have recused himself at that point and entered no further rulings in the case. *See, e.g.*, *Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir. 1988) ("A judge who is obliged to recuse acts outside his jurisdiction."); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850, 108 S. Ct. 2194, 2197, 100 L. Ed. 2d 855 (1988) ("the appropriate remedy was to vacate the court's judgment" where judge "should have immediately disqualified himself" under the less stringent, permissive recusal requirement of § 455(a); *see also id.*, 486 U.S. at 866, 108 S. Ct. at 2206 ("it is remarkable – and quite inexcusable – that Judge Collins failed to recuse himself" when judge would have received notice of conflict, such that "he would have been under a duty to recuse himself *before* he entered judgment") (italics in original). Indeed, Plaintiffs and their counsel apparently also knew of Magistrate Judge Henderson's unwaivable conflict for years. (Dkt. No. 1491, p. 5). But tellingly, Plaintiffs' counsel also never raised this issue with the Court.

The circumstances surrounding these improper rulings are outside of Defendants' control, and impacted discovery and deprived Defendants of their Due Process rights to defend themselves. It was not until Plaintiffs filed their Second Amended Complaint on August 4, 2025 that LBT counsel's investigation revealed that former Magistrate Judge Henderson has family members that are members of Plaintiff's newly expanded and defined class. Accordingly, on September 15, 2025, LBT filed a Motion to Recuse Judge Henderson, which he granted on September 19, 2025, without waiting for any response from Plaintiffs. (Dkt. No. 1446). While LBT cannot definitively know whether a Judge without a conflict of interest would have ruled differently on any of these issues, the taint caused by Magistrate Judge Henderson's rulings cannot be ignored and weighs in favor

18

of allowing the completion of outstanding fact discovery and all other appropriate remedies before proceeding any further with expert discovery and class certification.

### 2. Plaintiffs' Removal of Class Representatives was Also Outside of Defendants' Control.

Plaintiffs' unilateral removal of themselves from this case, impacting discovery and causing months of delay, is also outside of Defendants' control. Although the Court ultimately ruled that those named plaintiffs were permitted to withdraw as class representatives and proceed as absent class members, the Court recognized that Defendants can still pursue absent class member discovery. This class discovery is critical to Defendants' ability to defend Plaintiff's attempt to certify a class of thousands. And it is especially prejudicial to Defendants that Plaintiffs have unilaterally been pursuing discovery from and testing of putative class members' properties while blocking Defendants' ability to obtain similar discovery at every turn.

### D. The Benefit of Re-Opening Discovery Outweighs any Prejudice to Plaintiffs.

The benefits of reopening discovery outweigh any prejudice to Plaintiffs. *800 Cooper,* 2023 U.S. Dist. LEXIS 43470 at *6; *Dennis Kissman & Marina Mgmt. Servs. v. St. Thomas Marina Corp., L.P.*, No. 2018-18, 2020 U.S. Dist. LEXIS 266945, at *9 (D.V.I. Sep. 9, 2020) (quoting *Unlimited Holdings, Inc. v BertramYacht, Inc.*, 2008 U.S. Dist. LEXIS 82142, at *19, 50 V.I. 727 (D.V.I. Oct. 15, 2008)). In *800 Cooper,* 2023 U.S. Dist. LEXIS 43470 at *8, the court weighed the benefits of re-opening discovery with the prejudice to the non-moving party. It found that the benefit to the moving party in getting the discovery to which it was entitled outweighed any burden to the opposing party, noting "[w]hile there is some burden associated with additional delay, in the scheme of this protracted litigation, this burden is negligible." The same is true here. Defendants should be permitted to complete fact discovery before moving forward with expert depositions and class certification. This is especially true given Plaintiffs' position that they are somehow entitled

19

to unilateral discovery from class members. Moreover, logistical efficiency mandates that fact discovery be completed before expert discovery, so that all experts have a full understanding of the evidence upon which they rely in forming their opinions. In the scheme of this complex litigation involving hundreds of millions of dollars, any delay in allowing for the completion of fact discovery is minimal.

## CONCLUSION

For the above-stated reasons, Defendants respectfully requests that the Court GRANT their motion, amend the Scheduling Order to reopen fact discovery, extend the current expert deadlines, and for all other appropriate relief this Court deems just in an effort to remedy the Due Process violations outlined herein.

Respectfully submitted,

**Beckstedt & Kuczynski LLP**

Dated: December 5, 2025

*/s/ Carl A. Beckstedt III*
Carl A. Beckstedt III, Esq.
VI Bar No. 684
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: (340) 719-8086 / Fax: (800) 886-6831
carl@beckstedtlaw.com

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

Dated: December 5, 2025

*/s/ Shubhra R. Mashelkar*
Shubhra R. Mashelkar
Ga. Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA  30326
Tel: (404) 876-2600 / Fax: (404) 875-9433
smashelkar@wwhgd.com
*Admitted Pro Hac Vice*

*Attorneys for Defendant Limetree Bay Terminals, LLC*

Dated: December 5, 2025

**WILSON ELSER, LLP**

/s/ Carolyn F. O'Connor, Esq
Carolyn F. O'Connor, Esq.
V.I. Bar Number R2100
Joseph T. Hanlon, Esq.
V.I. Bar Number R2099
7 Giralda Farms,
Madison, NJ 07940
Telephone: (973) 624-0800
carolyn.oconnor@wilsonelser.com
joseph.hanlon@wilsonelser.com

*Attorneys for Limetree Bay Refining, LLC a nominal defendant.*