**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| CLIFFORD BOYNES, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | No. 1:21-253 |
| | : | |
| LIMETREE BAY VENTURES, LLC, *et al.* | : | |

**PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF**
**PRELIMINARY SETTLEMENT APPROVAL AND RELATED RELIEF[1]**

Plaintiffs, on behalf of themselves and the proposed Settlement Class defined below, respectfully seek preliminary approval of a collective $6,745,000.00 in settlements that will resolve their claims against the Settling Defendants[2] arising from the series of environmental releases from the Limetree Bay Refinery that occurred from February 2021 to May 2021.[3] The proposed Settlement represents a significant monetary recovery for Settlement Class members from these Contractor Defendants, achieved after years of hard fought litigation and an extensive, arm's-length negotiation process guided by an experienced Court-appointed mediator. The

---

[1] Plaintiffs file this Motion and Memorandum of Law as one document in compliance with Local Rule 7.1(a)(1), which provides: "A motion shall include a statement of the relief requested, any relevant factual or procedural background, and the argument in support of the motion, with citation to relevant legal authority. No separate memorandum in support may be filed." However, Plaintiffs are mindful of the Court's Policies and Procedures relating to motion practice, including those that contemplate the filing of a motion limited to five pages, a proposed order, and an attached memorandum. Accordingly, should the Court prefer that Plaintiffs file a separate motion in addition to the present submission, Plaintiffs shall do so promptly.

[2] "Settling Defendants" is defined as Universal Plant Services (VI), LLC ("UPS"); Excel Construction and Maintenance VI, Inc. ("Excel"); Elite Turnaround Specialists, Ltd. ("ETS"); and Versa Integrity Group, Inc. ("Versa"). Plaintiffs continue to negotiate and finalize additional settlements with certain other Defendants and related insurers. Substantial progress has been made and Plaintiffs remain hopeful of resolution with all Parties other than BP Products North America Inc. ("BP") before May 26, 2026 (the date of the Preliminary Approval Hearing). Finalization of the other settlements has taken time given the number of parties involved, including multiple insurance towers which adds additional complexity. A further complication has arisen from the cross-claims just filed by BP, which the parties are working to address.

[3] The Settlement Agreements between Plaintiffs and the Settling Defendants are attached as follows: Exhibit A, the Settlement Agreement between Plaintiffs and UPS; Exhibit B, the Settlement Agreement between Plaintiffs and Excel; Exhibit C, the Settlement Agreement between Plaintiffs and ETS; Exhibit D, the Settlement Agreement between Plaintiffs and Versa. Further, Plaintiffs incorporate by reference the Claim Form, Long Form Notice, Summary Notice, Claimant Payment Formula, and the Affected Zone Map (Dkt. 1637-1 through 1637-5), which the Court previously approved (Dkt. 1686), as well as the Declaration of Epiq previously submitted to the Court. Dkt. 1099-7.

1

Settlement provides immediate tangible benefits to the Settlement Class who would otherwise face significant risk and delay by continuing to prosecute their claims against Settling Defendants.

Should preliminary approval be granted, Plaintiffs intend that it be administered jointly with the ArcLight/Freepoint Settlement and the Pinnacle Settlement, which the Court preliminarily approved on February 16, 2026.[4] In granting preliminary approval of those settlements, the Court considered opposition, conducted an extensive hearing, required revised notices and forms, and made findings that apply with equal force to this proposed Settlement. *See Prelim. App. Opinion.*

The Court previously held that Plaintiffs satisfied the prerequisites of Federal Rule of Civil Procedure 23(a): (i) the thousands of members in the proposed Settlement Class are sufficiently numerous; (ii) there are common issues of fact underlying the personal injury and property damage allegedly suffered by Plaintiffs as a result of the releases; (iii) the Class representatives' claims are typical of the proposed Settlement Class in that their claims arise from the same events (the releases) and are based on common legal theories; and (iv) Class Counsel and the proposed Class representatives have adequately represented the Settlement Class. *Prelim. App. Opinion*, 2026 WL 439681, at *5–8. In addition, the Court found Plaintiffs satisfied Rule 23(b)(3)'s predominance inquiry because common questions of law and fact predominate over any individual factual questions. *Id*. at *9. The Court also found that there is "no doubt" that the class action vehicle is a superior method to resolving the litigation. *Id*. at *9–10. The Court concluded that a presumption of fairness applied to the settlements since there was nothing to indicate that the settlements were "not the result of good faith, arm's-length negotiations between adversaries," discovery was extensive, "various discovery issues have been well-litigated throughout, and the settlements were aided by the mediator's involvement." *Id*. at *10–11 (citation omitted).

---

[4] Dkt. 1686; *see Boynes v. Limetree Bay Ventures, LLC*, 2026 WL 439681, at *1 (D.V.I. Feb. 16, 2026) ("*Preliminary Approval Opinion*").

The Court should apply the thoughtful analysis of the ArcLight/Freepoint and Pinnacle Settlements to the present Settlement that similarly satisfies Rules 23(a) and (b)(3) and was reached only after Class Counsel thoroughly investigated the facts and law, conducted significant discovery, and engaged in arm's-length negotiations with Settling Defendants, including through the Court-appointed mediator John W. Perry, Jr. There is even more reason to apply the presumption of fairness now as additional discovery was completed since those Settlements.

Plaintiffs respectfully request that the Court enter the Proposed Preliminary Approval Order (1) conditionally certifying the Settlement Class and preliminarily approving the Settlement as fair, reasonable, and adequate; (2) ordering that the Settlement be administered with the ArcLight/Freepoint and Pinnacle Settlements; (3) confirming the appointment of Co-Lead Class Counsel to represent the Settlement Class; (4) approving the proposed Notice Plan; (5) establishing the Objection and Opt-Out Deadline; (6) confirming Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator; (7) approving the other terms of the Settlement; and (8) setting a date for the Final Approval Hearing.[5]

## I.    LITIGATION OVERVIEW

This case arises from the disastrous failed restart of the Limetree Bay Refinery. From February to May 2021, the Refinery repeatedly malfunctioned, causing the emission, release, and discharge of hazardous and toxic chemicals, substances, gases, and odors. After a "flare out" on May 12, 2021, which resulted in a rain of oil over residents near the Refinery, the EPA ordered the Refinery to shut down. Plaintiffs allege the Refinery's failed restart is the result of rushed, inadequate, intentional, reckless, and negligent actions taken by each Defendant in the litigation,

---

[5] Pursuant to Local Rule 7.1(e), Plaintiffs have provided Defendants with a copy of this Motion as well as Plaintiffs' Proposed Order and sought consent concerning the requested relief. Certain Defendants have indicated that they intend to object to the Settlement.

including Settling Defendants. Settling Defendants vigorously dispute Plaintiffs' allegations and do not concede any liability in seeking to settle Plaintiffs' claims, particularly given their role as Contractor Defendants. Plaintiffs seek redress for property owners, employees, businesses, and residents who lived, worked, or were present in the Affected Geographic Area.

In the five years since the initial lawsuits were filed, Plaintiffs and their counsel have diligently prosecuted their claims completing both fact and expert discovery, allowing them to weigh the adequacy of the Settlement against the costs, risks, and delay of continuing to litigate the claims against Settling Defendants through trial and appeal.

Two months after the EPA shutdown, Limetree Bay Refining, LLC ("LBR") filed for bankruptcy protection (Dkt. 48) and, thus, the class action suits that Plaintiffs filed weeks earlier were stayed pending the resolution of that bankruptcy. *See, e.g.*, Dkts. 68, 80, 82. Plaintiffs, through counsel, immediately took action to protect their rights in the bankruptcy. Plaintiffs also engaged separate bankruptcy counsel, who ensured that Plaintiffs' rights were preserved through the filing of hundreds of individual claim notices and, ultimately, a negotiated provision in LBR's confirmed Chapter 11 plan that preserved Plaintiffs' right to pursue claims against the debtor's insurance estate. Plaintiffs also negotiated with the liquidating trustee to resolve individual claims asserted against the bankruptcy estate and to obtain insurance coverage for Plaintiffs' claims against LBR.

After the stay was lifted, Plaintiffs and their counsel resumed prosecution of their claims in this litigation. In January 2023, Plaintiffs moved for a preliminary injunction requiring Limetree Bay Terminals, LLC (D.B.A. Ocean Point Terminals) ("LBT") to provide class members with safe, clean, potable water. Dkts. 121, 141, 142. This Court held a two-phase hearing over eight days and held that Plaintiffs satisfied the preliminary injunction factors as to Plaintiffs and putative class members who cannot afford to purchase water without trading off other basic necessities. *See* Dkts.

4

284, 285, 388, 389. This Court's grant of the preliminary injunction was affirmed by the Third Circuit. *Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604, 608 (3d. Cir. 2024) ("Extraordinary harm warrants extraordinary relief.").

While LBT's appeal from the preliminary injunction orders was pending, Plaintiffs and Class Counsel continued to actively prosecute their claims against all Defendants. In September 2023, Plaintiffs moved to amend their complaints and consolidate the four class action proceedings, relief that this Court granted in March of 2024. Dkts. 453, 526, 527. In May 2024, Defendants, including Settling Defendants, filed motions to dismiss which Plaintiffs, through Class Counsel, opposed the same month. Dkts. 642, 643, 670. In all, Plaintiffs opposed eleven separate memoranda in support of the consolidated motions to dismiss, including those filed by Contractor Defendants. Dkts. 670-1–11.

Plaintiffs also vigorously opposed Defendants' attempt to stay discovery pending resolution of the motions to dismiss, and in June 2024, following the denial of that motion (Dkt. 663), and submission of competing discovery plans, this Court entered a scheduling order commencing discovery and setting a trial date and pre-trial deadlines. Dkt. 677. Plaintiffs then served written discovery on Defendants and subpoenas to third parties, which resulted in the production of millions of pages of documents. Plaintiffs diligently analyzed these documents, and noticed and took approximately 40 depositions of fact witnesses.[6] Plaintiffs also engaged top-tier liability, environmental, and damage experts and, through the expert discovery phase of the litigation, worked with the experts to submit initial, rebuttal, and reply reports, deposed Defendants' experts, and defended depositions of Plaintiffs' experts. Plaintiffs also opposed

---

[6] During the discovery period, Plaintiffs moved for leave to file a Consolidated Second Amended Class Action Complaint ("SCAC") (Dkt. 985–86) and, after the motion was granted, filed the SCAC on August 4, 2025. This Court also recently denied BP's motion to dismiss the SCAC (Dkt. 1740).

motions filed by Defendants concerning discovery and the Court's schedule.[7]

Plaintiffs and Settling Defendants engaged in arm's-length negotiations before reaching settlement, including mediation sessions with the assistance of Mr. Perry. Plaintiffs and each Settling Defendant ultimately reached agreements to settle and, thereafter, negotiated the final terms of, and executed, the underlying Settlement Agreements. Ex. A–D.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Proposed Settlement Class.

The Settlement Class is defined as all persons or entities who: (a) owned or rented property (real and/or personal) in the Affected Geographic Area on or after February 3, 2021; or (b) resided, worked, operated a business, or were present in the Affected Geographic Area between February 3, 2021 and May 26, 2021, and includes, without limitation, all persons or entities who are retained clients of any law firms comprising Class Counsel before the date of execution of the Settlement Agreement and who assert claims arising out of the Incidents.[8] The "Affected Geographic Area" means the western portion of the Island of St. Croix, more particularly described as bounded by 64.74 degrees West Longitude and the sea.[9]

### B.    Settlement Consideration and Administration.

Plaintiffs and Settling Defendants have come to a fair and reasonable result to be added to the pot for the benefit of the Settlement Class. Settling Defendants have agreed to a total payment of $6,745,000.00 (the "Gross Settlement Fund") consisting of: (1) $995,000.00 from UPS; (2)

---

[7] For example, on November 14, 2025, Defendant BP filed its Notice of Intent to Serve Subpoenas for Production of Documents and Things Without Deposition From Non-Party (Dkt. No. 1586, "BP Notice"); on December 5, 2025, Defendants LBT and LBR filed their Motion to Amend Scheduling Order and Reopen Fact Discovery (Dkt. No. 1616, "Motion to Reopen Discovery"); and on December 23, 2025, BP, LBT and LBR filed a Joint Motion for a Status Conference and Temporary Administrative Stay Pending the Requested Conference (Dkt. 1639, "Motion for Status Conference"). Plaintiffs filed objections to the BP Notice and opposed the Motion to Reopen Discovery and Motion for Status Conference. *See* Dkt. Nos. 1588, 1625, 1638, 1652.

[8] Ex. A ¶ 1AA; Ex. B ¶ 1DD; Ex. C ¶ 1AA; Ex. D ¶ 1AA.

[9] Ex. A ¶ 1A; Ex. B ¶ 1A; Ex. C ¶ 1A; Ex. D ¶ 1A.

$1,400,000.00 from Excel; (3) $3,850,000.00 from ETS; and (4) $500,000.00 from Versa.[10] These payments are to be deposited into a Settlement Escrow Account in exchange for the release of claims as defined in the Settling Defendants' respective Settlement Agreements, which includes a release of all claims against the Released Parties (only) on the basis of, arising from, or relating to the claims alleged in the litigation.[11] Once the Effective Date[12] is reached, ***no portion*** of the Gross Settlement Fund will ever revert to any of the Settling Defendants.

The underlying Settlement Agreements also contain a Bar Order provision foreclosing certain claims, including cross-claims, against Settling Defendants, and providing any non-settling defendant that has a judgment entered against them in the litigation with a pro tanto credit equal to the dollar amount of these Settlements. *See* Ex. A ¶ 25; Ex. B ¶ 25; Ex. C ¶ 24; Ex. D ¶ 24. This eliminates the prospect of any double recovery by Plaintiffs.

The Net Settlement Fund will be distributed to Settlement Class Members by the Court-appointed Settlement Administrator. As set forth in the Claim Payment Formula (Dkt. 1637-1) and Claim Form (Dkt. 1637-2), payments to individual Settlement Class Members will be apportioned fairly using a point system based on the nature of the harm (Property Damages, Nuisance Harm, Cistern Related Impact, Physical Health Manifestations, and other Economic Harm) experienced by each Settlement Class Member.[13] Each Claimant's point total will be divided by the total points allocated across all Eligible Claimants and the ensuing ratio will be used to calculate individual distributions on a pro rata basis. The Claim Form is designed for clarity and to minimize the need for documentary proof, except as required for certain categories of damages.

---

[10] Ex. A ¶ 3; Ex. B ¶ 3; Ex. C ¶ 3; Ex. D ¶ 3.
[11] Ex. A ¶ 7; Ex. B ¶ 8; Ex. C ¶ 7; Ex. D ¶ 7.
[12] Ex. A ¶ 1I; Ex. B ¶ 1I; Ex. C ¶ 1I; Ex. D ¶ 1I.
[13] The allocation also depends on the claimant's "Zone" within the Affected Geographic Area. *See* (Dkt. 1637-3).

Co-Lead Class Counsel previously selected Epiq as Settlement Administrator, which is already administering the Limetree Water Distribution Program and has already been approved by the Court as Settlement Administrator of the ArcLight/Freepoint and Pinnacle Settlements. Copies of the Settlement, Claim Form, and related documents will also be available at the local Law Offices of certain Class Counsel. *See* (Dkt 1637-5 at 6.) The Notice Plan provides the best notice practicable under the circumstances. *See* Epiq Decl. ¶ 44. If preliminary approval is granted, Co-Lead Class Counsel will work with Epiq to encourage and assist those in the Affected Geographic Area to receive the benefits of the Settlement Agreement.[14]

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

To obtain preliminary approval of a settlement and send notice to the Settlement Class, the proponents must show that "the court will likely be able to . . . certify the class for purposes of judgment on the [settlement] proposal." Fed R. Civ. P. 23(e)(1)(B); *see also Stechert v. Travelers Home & Marine Ins. Co.*, NO. 17-0784-KSM, 2021 WL 5235221, *3-4 (E.D. Pa. Nov. 9, 2021) (detailing standard for granting preliminary approval of class action settlement); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632 (2004). Thus, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)." *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (citation modified). *See also Prelim. App. Order*, 2026 WL 439681, at *2–3 (discussing the stages of the approval process). Here, as the Court already found regarding the previous settlements, the requirements of Rules 23(a) and 23(b)

---

[14] The Settlement also includes fulsome procedures for Settlement Class Members to object or opt-out of the Settlement to pursue their own litigation. *See* Ex. A ¶11–18; Ex. B ¶12–19; Ex. C ¶11–18; Ex. D ¶ 11–18.

are met for settlement purposes, and the proposed settlement is fair to the class under Rule 23(e).

### A. Rule 23(a) Is Satisfied.

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1. Numerosity Is Satisfied.

Generally, if the potential number of plaintiffs exceeds 40, the numerosity prong of Rule 23(a) is satisfied. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016). In granting preliminary approval of the ArcLight/Freepoint and Pinnacle Settlements, the Court found the numerosity requirement satisfied, crediting Plaintiffs' estimation that there are at least 24,000 people in the Settlement Class, and observing that at one point, there were 43 named class representatives, which alone satisfy numerosity. 2026 WL 439681, at *5. Numerosity is met here.

### 2. Commonality Is Satisfied.

Rule 23(a)(2) requires "questions of law or fact common to the members of the class."

> A finding of commonality does not require that all class members share identical claims, and indeed "factual differences among the claims of the putative class members do not defeat certification. The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."

*In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (citation omitted). The commonality requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001). As the Court observed in granting preliminary approval of the ArcLight/Freepoint and Pinnacle Settlements, "commonality . . . has been met on both questions of law and fact in light of the common issues of fact underlying the personal injury and property damage allegedly suffered by

9

Plaintiffs as a result of the four Release Events at the Refinery, and the common questions of territorial tort law underlying Defendants' alleged liability stemming from those events." 2026 WL 439681, at *6. Commonality is satisfied.

### 3. Typicality Is Satisfied.

Rule 23 requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "There is a low threshold for typicality; provided the interests of the class and the class representative are aligned, courts will find typicality even when class members' claims are only legally similar, and not factually similar." *Stechert*, 2021 WL 5235221, at *5 (citation modified). Typicality exists "[i]f the representative's claims and those of the absent class members arise from the same course of conduct and are based on the same legal theories . . . regardless of factual differences underlying the individual claims." *In re. Wellbutrin XL Litig.*, 282 F.R.D. 126, 138 (E.D. Pa. 2011) (citing *Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994)). Here, the Court already found the named Plaintiffs' claims are typical of the Settlement Class, noting "[a]lthough factual differences exist between the precise injury sustained by each named representative, their claims of damage arise from the same events—the Release Events at the Refinery—and are based on common legal theories of tort liability." 2026 WL 439681, at *6. Each member's claim arises from the same alleged course of conduct: Settling Defendants' allegedly rushed, inadequate, intentional, reckless, and negligent actions in repairing and restarting the Refinery, which caused and contributed to the toxic Releases. Typicality is thus met.

### 4. Adequacy Is Satisfied.

The Court must measure the adequacy of representation by two standards: "(1) . . . that the named plaintiff and its counsel have the ability and the incentive to represent the claims of the class vigorously, and (2) that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa.

10

2017); *see also In re Fasteners Antitrust Litig.*, 2014 WL 285076, at \*6 (E.D. Pa. Jan 24, 2014) (stating the adequacy of representation requirement "has dual concerns: to ensure that class representatives do not have interests antagonistic to the class and that class counsel have the necessary skills and qualifications to adequately represent the class"). Both standards are met here.

As the Court has acknowledged, the Plaintiffs have adequately represented the Settlement Class having "been responsive and involved at the appropriate junctures [of the litigation]; . . . aware of case developments; . . . [and] subjected to discovery." 2026 WL 439681, at \*8. Plaintiffs' participation exceeds that which is necessary to demonstrate adequacy under Rule 23(a)(4). *See Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 WL 7711409, at \*5 (E.D. Pa. 2020) (finding that a class plaintiff "represented the class capably and diligently," by "provid[ing] counsel with the paperwork and information they needed to initiate this case and substantiate [plaintiff's] claims" and actively participating in settlement).

Co-Lead Class Counsel also satisfy the adequacy requirements of Rule 23(a)(4). In appointing Co-Lead Class Counsel in connection with the ArcLight/Freepoint and Pinnacle Settlements, the Court noted that its previous finding that counsel are "well-qualified for appointment . . . has not changed as this matter has continued to be vigorously litigated at every turn, as evidenced, *inter alia*, by briefing and argument in opposition to a motion to stay, in support of the preliminary approval of settlements, and by numerous discovery disputes on the record." 2026 WL 439681, at \*7 (citation omitted). Co-Lead Class Counsel (along with Class Counsel) thoroughly investigated the class claims, promptly filed suit, participated in Limetree Bay Refining's bankruptcy to preserve Class Members' claims, successfully obtained injunctive relief after extensive evidentiary hearings, opposed Defendants' attempts to dismiss the litigation and stay discovery, participated in mediations, and vigorously engaged in both fact and expert

11

discovery.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied.

#### 1.    Common Legal and Factual Questions Predominate Plaintiffs' Claims.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (citation omitted). Requiring common issues to predominate does not mean all issues must be common to every class member. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("We have never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class."). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (cleaned up). In addition, with a proposed settlement class, "manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (citing *Sullivan*, 667 F.3d at 303); *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) (finding predominance test more readily satisfied with settlement-only class because "the court certifying the class need not examine issues of manageability").

Plaintiffs possess substantially overlapping legal claims arising out of the same underlying facts about the Refinery, Defendants' conduct, and the harms suffered. As the Court recognized in finding predominance with respect to the ArcLight/Freepoint and Pinnacle Settlements, "[i]n the mass tort context, predominance can be found when the proposed class 'seek[s] relief based on exposure alone,' and 'individual differences in medical histories, lifestyles and property uses do

12

not affect the causation analysis for purposes of liability.'" 2026 WL 439681, at *9 (quoting *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 443 (E.D. Pa. 2008)). Further "the common question of whether there was exposure dominates the individual issues as to the amount of exposure, which may vary from well to well, or the actual decrease in property value." *Id.* (quoting *Gates*, 248 F.R.D. at 443). With respect to the Refinery's releases, the Court found that "common questions of law and fact stemming from the Release Events' effect on class members predominate over any individual factual questions, such as the specific degree of damages incurred." *Id.* Indeed, the preliminary injunction phase of this litigation already demonstrated that Plaintiffs will be able to utilize common evidence to prove the central issues at the heart of the litigation. Predominance has been met.

### 2.    A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication.

Rule 23(b)(3) also requires that a class action be "superior to other available methods fairly and efficiently adjudicating the controversy." The Court may consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 434–35 (3d Cir. 2016). A settlement is also deemed superior where it creates a resolution that achieves "economies of time, effort, and expense, and promote[s] . . . uniformity of decision . . . without sacrificing procedural fairness or bringing about other undesirable results." *Sullivan*, 667 F.3d at 336 (Scirica, J., concurring) (quoting *Amchem*, 521 U.S. at 615).

Here, the Court already determined that "[t]here can be no doubt that the class action vehicle is a superior method to resolving the instant litigation, when compared to individual suits by each class member." 2026 WL 439681, at *10. The Settlement permits the Settlement Class Members to simultaneously and efficiently resolve their common claims against Settling

13

Defendants in a single forum and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

### C.    Co-Lead Counsel Should Be Appointed as Class Counsel.

In connection with the ArcLight/Freepoint and Pinnacle Settlements, the Court previously reaffirmed the appointment of Kerry Miller of Miller Thibodeaux Dysart Veith & Paschal, L.L.P., Daniel Charest of Burns Charest LLP, and Shanon J. Carson of Berger Montague PC as Co-Lead Class Counsel, and Lee J. Rohn of Lee J. Rohn & Associates LLC as Liaison Counsel. *Id.* at *7. Plaintiffs move to again confirm this appointment to represent the Settlement Class.

Rule 23(g)(1)(A) instructs a court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Each factor weighs strongly in favor of confirming the previous appointment. Co-Lead Class Counsel has and continues to commit substantial resources to identifying and investigating claims, obtaining injunctive relief for class members, opposing motions to dismiss and other attempts to thwart the litigation, retaining experts, obtaining and reviewing document discovery, deposing relevant witnesses, completing expert discovery, negotiating a favorable outcome for the Settlement Class in the prior ArcLight/Freepoint and Pinnacle Settlements, and negotiating with the Settling Defendants in the present Settlements. Co-Lead Class Counsel also has extensive experience handling complex class action litigation, including in the toxic release and environmental contamination contexts. *See* Dkt. 454.

### D.    The Proposed Settlement Is Sufficiently Fair, Reasonable, and Adequate to Warrant Preliminary Approval and Authorize Dissemination of Notice.

At the preliminary approval stage, "the court need not reach any ultimate conclusions on

the issues of fact and law that underlie the merits of the dispute." *Curiale v. Lenox Grp., Inc.*, 2008

WL 4899474, at \*4 (E.D. Pa. Nov. 14, 2008) (citation omitted). Rather, the court considers the

likelihood that the proposed settlement will ultimately be approved, taking into account whether:

> (a) the class representatives and class counsel have adequately represented the class;
> (b) the proposal was negotiated at arm's length;
> (c) the relief provided for the class is adequate, taking into account:
>> (i)     the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (d) the proposal treats class members equitably relative to one another.

*See* Fed. R. Civ. P. 23(e)(1) and (2). If, taking these factors and the showings made regarding class

certification into account, the court concludes that the proponents have shown that "the court will

likely be able to: (i) approve the proposal [for settlement] under Rule 23(e)(2); and (ii) certify the

class for purposes of judgment on the proposal," the court "must direct notice in a reasonable

manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1).[15]

The Third Circuit recognizes an overriding public interest in settling complex litigation.

*See, e.g.*, *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("[T]he settlement of complex

litigation before trial is favored by the federal courts."); *see also Austin v. Penn. Dep't of Corrs.*,

876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("[T]he extraordinary amount of judicial and private

resources consumed by massive class action litigation elevates the general policy encouraging

settlements to 'an overriding public interest.'" (citation omitted)).

---

[15] "[A]n initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig*, 55 F.3d 768, 784 (3d Cir. 1995); *see also* 2026 WL 439681, at \*3. These considerations align with the factors identified in Rule 23(e) that are met here.

Preliminary approval "is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). At the preliminary approval stage, "the bar to meet the 'fair, reasonable, and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *In re NFL Players Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (citation omitted). The standard for preliminary approval is simply whether the settlement is free of obvious defects and falls within the range of possible approval so as to warrant issuance of notice and scheduling of a final approval hearing. *Id.*

**1.    The Settlement Is the Product of Arms-Length Negotiations By Counsel Who Adequately Represented the Class.**

The Settlement satisfies the first two factors. Fed. R. Civ. P. 23(e)(2)(A) and (B). Here, negotiations resulting in the Settlement were conducted at arm's length by advocates experienced in complex litigation, with full knowledge of the strengths and weaknesses of this litigation (as against Settling Defendants), and who are committed to vigorous representation of the Class as demonstrated by their aggressive litigation of this case.

Co-Lead Class Counsel (along with all Class Counsel) have the qualifications and experience to lead this litigation on behalf of Plaintiffs and the Settlement Class. They have a proven track record of success over decades of involvement in highly complex class action lawsuits, including environmental matters such as this one. Co-Lead Class Counsel analyzed the challenges the putative Settlement Class faced going forward, including those specific to Settling Defendants, and carefully reviewed the discovery record. These efforts allowed Class Counsel to make informed demands and evaluate the strengths and weaknesses of Settling Defendants'

16

respective positions including in comparison to that of other Defendants. Class Counsel believe the Settlement is a fair resolution of the Settlement Class's claims against Settling Defendants—a determination which has traditionally carried "considerable weight" with the court. *Esslinger v. HSBC Bank Nevada, N.A.*, No. 10-3213, 2012 WL 5866074, at *8 (E.D. Pa. Nov. 20, 2012). The factors in Rule 23(e)(2)(A)–(B) weigh strongly in favor of preliminary approval.

### 2. The Relief Provided Is Adequate and Will Be Fairly Allocated.

#### i. The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and Delay of Trial and Appeal.

This Settlement provides meaningful all-cash relief ($6,745,000.00 million) from the Settling Defendants and was achieved following nearly five years of litigation at a juncture when the costs, risks, and delay associated with trial and appeal weigh decidedly in favor of this Settlement. Absent the Settlement, Settling Defendants would have vigorously challenged the merits of Plaintiffs' claims, including through class certification, summary judgment, trial, and appeal. Indeed, some of these Contractor Defendants have outstanding motions to dismiss that would remain unresolved absent settlement. While Plaintiffs believe they would have prevailed on those motions, they did present litigation risk.

Litigating against the Settling Defendants would be costly and the outcome uncertain, but the proposed Settlement provides certainty through an immediate monetary recovery. Settling Defendants dispute Plaintiffs' allegations and do not concede liability but are settling to avoid ongoing litigation costs. Under the circumstances, "the Court has a sufficient showing to conclude that the proposed settlements do not disclose any grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval." *Prelim. App. Order*, 2026 WL 439681, at *12 (cleaned up).

###### ii.    The Proposed Method of Processing Claims and Distributing Relief Is Fair and Effective and Treats Class Members Equitably Relative to Each Other.

"A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all [Settlement Class members].'" *Sullivan*, 667 F.3d at 326 (citation omitted). The method proposed for processing Claims of Eligible Claimants is fair and effective. The Net Settlement Funds will be distributed to Settlement Class Members in accordance with a point system considering the specific nature of the harm experienced by each Class Member. This ensures Class Members are compensated according to the harms they sustained due to the Incidents. This objective approach is fair, reasonable, and adequate as "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citation omitted); *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*, 347 F.R.D. 113, 131 (W.D. Pa. 2024) ("[C]ourts 'consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'"). As described in the Claim Form, Notice Plan, and Claimant Payment Formula, the proposed allocation plan is easily calculable, objective, and a practicable method for efficient and equitable distribution.

###### iii.    The Terms of the Proposed Attorneys' Fees are Appropriate.

Class Counsel will file a separate motion seeking an award not to exceed one-third of the Gross Settlement Fund upon approval of the Court, an amount that courts in the Third Circuit commonly find to be fair, reasonable, and adequate. *See, e.g.*, *Ahrendsen v. Prudent Fiduciary Servs., LLC*, 2023 WL 4139151, *5 (E.D. Pa. June 22, 2023) ("class counsel reasonably seeks one-third of the settlement fund . . . for attorneys' fees"); *Katz v. DNC Servs. Corp.*, 2023 WL 2955887, at *10 (E.D. Pa. Apr. 14, 2023) (approving attorneys' fees of one-third of the settlement fund in an order granting preliminary approval of a class settlement for FLSA claims). Out-of-pocket

18

expenses incurred to date will also be deducted from the Gross Settlement Fund after Court approval. The Notice Plan advises the Settlement Class of proposed attorneys' fees and costs.

The proposed Settlement Class has been adequately represented and the Settlement was achieved as the result of an arm's-length negotiation process informed by extensive litigation. The amount is reasonable in connection with the Settling Defendants, and the proposed distribution will be fair, efficient, and consistent with analogous cases. The Court will likely be able to approve the Settlement, which further supports preliminary approval. *See* Fed. R. Civ. P. 23(e).

**IV.  THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED AND EPIQ SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR**

For a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *NFL Players*, 821 F.3d at 435 (citation omitted).

Plaintiffs adopt the same robust Notice Plan that the Court already approved in connection with the ArcLight/Freepoint and Pinnacle Settlements (Dkts. 1686, 1637) and shall submit for the Court's approval modified versions of notices the Court previously approved to account for the administration of the present settlements with the ArcLight/Freepoint and Pinnacle Settlements. The Plan includes (1) individually mailed Short-Form Notices to the Settlement Class; (2) email notice to known addresses; (3) Publication Notice, including in local radio and print; (4) a Settlement Website that makes accessible to Settlement Class Members information regarding the Settlement and important documents regarding the Settlement, including, *inter alia*, the Long-Form Notice and Claim Form; (5) a toll-free number to provide Settlement Class Members with

information on the Settlement; and (6) information at local Law Offices. *See* Dkt. 1099 at 24–26. This broad manner of providing Notice satisfies both Rule 23 and due process and constitutes the best notice practicable under the circumstances. *See Stechert*, 2021 WL 5235221, at *10 (finding that notice via first-class mail, website, and toll-free phone number was "the best notice practicable under the circumstances and [wa]s reasonably calculated to provide actual notice to the Class Members"); *see also* Epiq Decl. ¶ 44.

The proposed Notice of Settlement complies with the requirements of Rule 23(c)(2)(B). It describes the nature of the action and the claims at issue; the Settlement Class; the Settlement benefits; the Settlement Class Members' rights, including the right to opt out or object; the binding effect of a class judgment; the date of the fairness hearing; and other relevant information for the Class Members to make informed decisions. *See NFL Players*, 821 F.3d at 435. Finally, Plaintiffs also request the Court to confirm the appointment of Epiq who was appointed as Settlement Administrator in connection with the ArcLight/Freepoint and Pinnacle Settlements. Dkt. 1686.

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Finally, Plaintiffs request that the Court schedule a Final Approval Hearing. *See* Manual for Complex Litigation, Fourth § 21.634. At that time, Plaintiffs will ask the Court to: (i) finally approve the Settlement; (ii) certify the Class for settlement purposes; (iii) find that the Notice Plan fully complies with Rule 23 and due process mandates; (iv) authorize the parties to implement the terms of the Settlement Agreements; and (v) enter a Final Approval Order dismissing the case against the Settling Defendants. Plaintiffs respectfully request that the Court set the final hearing to take place in October 2026.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the proposed order filed herewith.

DATED: May 8, 2026                    Respectfully submitted,

                                      BY:  /s/ *Y. Michael Twersky*
                                           Shanon J. Carson
                                           Yechiel Michael Twersky
                                           John Kerrigan
                                           BERGER MONTAGUE PC
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           Telephone: (215) 875-3000
                                           scarson@bm.net
                                           mitwersky@bm.net
                                           jkerrigan@bm.net

DATED: May 8, 2026                    BY:  /s/ *Lee J. Rohn*
                                           Lee J. Rohn
                                           Rhea R. Lawrence
                                           1108 King Street, Suite 3 (mailing)
                                           56 King Street, Third Floor (physical)
                                           Christiansted, St. Croix
                                           U.S. Virgin Islands 00820
                                           Telephone: (340) 778-8855
                                           lee@rohnlaw.com
                                           rhea@rohnlaw.com

                                           Counsel for the *Cotton* Plaintiffs

DATED: May 8, 2026                    BY: /s/ *Daniel H. Charest*
                                           Warren T. Burns
                                           Daniel H. Charest
                                           Martin D. Barrie
                                           Quinn M. Burns
                                           Anna Katherine Benedict
                                           BURNS CHAREST LLP
                                           900 Jackson Street, Suite 500
                                           Dallas, Texas 75202
                                           Telephone: (469) 904-4550
                                           wburns@burnscharest.com
                                           dcharest@burnscharest.com
                                           mbarrie@burnscharest.com
                                           qburns@burnscharest.com
                                           abenedict@burnscharest.com

DATED: May 8, 2026                    BY:  /s/ *Korey A. Nelson*
                                           Korey A. Nelson

21

H. Rick Yelton
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, LA 70130
Telephone: (504) 799-2845
knelson@burnscharest.com
ryelton@burnscharest.com

DATED: May 8, 2026            BY:    */s/ Timothy W. Burns*
                             Timothy W. Burns
                             BURNS BAIR LLP
                             10 E. Doty Street, Suite 600
                             Madison, Wisconsin 53703
                             Telephone: (608) 286-2302
                             tburns@burnsbair.com

DATED: May 8, 2026            BY:    */s/ Vincent Colianni II*
                             Vincent Colianni, II
                             Vincent A. Colianni
                             Marina Leonard
                             COLIANNI & LEONARD LLC
                             2120 Company Street
                             Christiansted, VI 00820
                             Telephone: (340) 719-1766
                             vinny@colianni.com
                             vince@colianni.com
                             marina@colianni.com

DATED: May 8, 2026            BY:    */s/ C. Jacob Gower*
                             C. Jacob Gower
                             GOWER LEGAL LLC
                             1919 Pine Street
                             New Orleans, LA 70118
                             Telephone: (337) 298-9734
                             jacob@gowerlegal.com

                             Counsel for the *Shirley* Plaintiffs

DATED: May 8, 2026            BY:    */s/ Kerry J. Miller*
                             Kerry J. Miller
                             Paul C. Thibodeaux
                             Rebekka C. Veith
                             C. Hogan Paschal
                             Carly E. Jonakin

22

MILLER THIBODEAUX DYSART VEITH & PASCHAL, L.L.P.
643 Magazine Street, Suite 405
New Orleans, Louisiana 70130
Telephone: (504) 977-9150
kmiller@mtdvp.com
pthibodeaux@mtdvp.com
rveith@mtdvp.com
hpaschal@mtdvp.com
cjonakin@mtdvp.com

DATED: May 8, 2026                    BY:   */s/ Hugh Lambert*
                                      Hugh Lambert
                                      J. Christopher Zainey
                                      Brian Mersman
                                      LAMBERT ZAINEY SMITH & SOSO, APLC
                                      701 Magazine Street
                                      New Orleans, Louisiana 70130
                                      Telephone: (504) 581-1750
                                      Facsimile: (504) 529-2931
                                      hlambert@lambertzainey.com
                                      czainey@lambertzainey.com
                                      bmersman@lambertzainey.com

DATED: May 8, 2026                    BY:   */s/ John K. Dema*
                                      John K. Dema
                                      LAW OFFICES OF JOHN K. DEMA, PC
                                      1236 Strand Street, Suite 103
                                      Christiansted, St. Croix, VI 00820

DATED: May 8, 2026                    BY:   */s/ Jennifer Jones*
                                      Jennifer Jones
                                      9003 Havensight Mall, Ste. 319
                                      St. Thomas, V.I. 00802
                                      Telephone: (340) 779-7386
                                      jjones@vienvironmentallaw.com

                                      Counsel for the *Boynes* Plaintiffs

DATED: May 8, 2026                    BY: */s/ John K. Dema*
                                      John K. Dema (V.I. Bar. No. 357)
                                      LAW OFFICES OF JOHN K. DEMA, PC
                                      1236 Strand Street, Suite 103
                                      Christiansted, St. Croix, VI 00820
                                      Telephone: (340) 773-6142
                                      jdema@demalaw.com

DATED: May 8, 2026                BY: */s/ Hugh Lambert*

                                        Hugh Lambert
                                        J. Christopher Zainey, Esq.
                                        Brian Mersman, Esq.
                                        LAMBERT ZAINEY SMITH & SOSO, APLC
                                        701 Magazine Street
                                        New Orleans, Louisiana 70130
                                        Telephone: (504) 581-1750
                                        Facsimile: (504) 529-2931
                                        hlambert@lambertainey.com
                                        czainey@lambertzainey.com
                                        bmersman@lambertzainey.com

                                        Counsel for the *Moorhead* Plaintiffs

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I filed the foregoing with the Court's ECF system on May 8, 2026.


*/s/ Y. Michael Twersky*
Y. Michael Twersky