**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **CLIFFORD BOYNES,** *et al.* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 1:21-253** |
| | : | |
| **LIMETREE BAY VENTURES, LLC,** *et al.* | : | |

### JOINDER OF DEFENDANTS VERSA, EXCEL, UPS, AND ETS IN PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Defendants Universal Plant Services (VI), LLC ("UPS"); Excel Construction and Maintenance VI, Inc. ("Excel"); Elite Turnaround Specialists, Ltd. ("ETS"); and Versa Integrity Group, Inc. ("Versa") (collectively, the "Settling Defendants") join in Plaintiffs' Motion for Preliminary Approval of the Class Action Settlements (the "Motion") reached with each of them that total $6,745,000 in dollar amount.[1]  Settling Defendants join in the grounds for preliminary approval set forth in the Motion, and they wish to elaborate on a very important condition of each Settlement Agreement.

As stated in the Motion, each of the Settlement Agreements are conditioned on the entry by the Court of a Bar Order at the time the Court preliminarily approves the Settlement Agreement. Motion at 6.  That Bar Order would, *inter alia*, bar any Defendant from bringing a cross-claim or third party claim against any of the Settling Defendants and in exchange give a Defendant who goes to trial a credit against any judgment awarded against it in the aggregate amount of $6,745,000.  The text of the Bar Order is set forth in each Settlement Agreement, and each Agreement makes issuance of a Bar Order in substantially that form a condition of settlement.  *See*

---

[1] The dollar amounts of the four Settlement Agreements are as follows:  UPS-$995,000.00; (2) Excel-$1,400,000.00 (3) ETS-$3,850,000.00; and (4) Versa-$500,000. *See* Motion at pp. 6-7.

1

Settlement Agreements attached to Motion as Exhibits A, ¶ 25; B, ¶ 25; C, ¶ 24; and  D, ¶ 24.[2]

Courts routinely enter Bar Orders in multiparty cases as a means of promoting settlement. Sometimes, as here, a settlement agreement is made contingent on entry of a Bar Order; on other occasions one or more parties seek entry of a Bar Order without making it an express condition of settlement.  As explained in the *Manual for Complex Litigation, Fourth* § 13.13 at 171 (2004),

> To facilitate partial settlements in multiparty cases, the court may (unless prohibited by the underlying statute) approve as a term of the settlement an order barring claims for contribution or indemnification by nonsettling defendants. To ensure binding effect, the affected parties or their representatives should be before the court, and their rights protected. Such orders typically contain a formula for calculating a setoff for the nonsettling defendants based on the settlement amount or the settlors' adjudged proportion of fault.

(citations omitted).  The *Manual* emphasizes that Bar Orders are especially important in class action settlements, and indeed that many class action settlements could not be made in the absence of a Bar Order:

> the reason for the modern trend of incorporating bar orders in class action settlements is that bar orders play an integral role in facilitating settlement. Defendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation. The propriety of the settlement bar order should turn upon the interrelatedness of the claims that it precludes, not upon the labels which parties attach to those claims. If the cross-claims that the district court seeks to extinguish through the entry of a bar order arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims in reaching a fair and equitable settlement.

*Id*. at § 13.13, p. 171 (citation and internal marks and footnote omitted); *see also U.S. Fidelity & Guar. Co. v. Patriot's Point Dev. Auth.*, 788 F. Supp. 880, 882 (D. S.C. 1992) ("any party who

---

[2] There are a few minor stylistic and punctuation differences in the language of the Bar Order as between the four Settlement Agreements that are not material to their preliminary approval. At the appropriate time, the Settling Defendants will file a short Notice to the Court that identifies these differences to aid it in fashioning a Bar Order.

settles without a bar order is courting disaster," and "as this case well demonstrates, settlement often may be impossible without an effective and comprehensive Bar Order"); *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (because defendants who "are willing to settle buy little peace through settlement unless they are assured that they will be protected against co-defendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation…modern settlements increasingly incorporate settlement bar orders…"); *Daiwa Secs. Am., Inc. v. Grande Holdings Ltd.*, No. 98-CV-336 (JG)(JO), 2007 WL 4180664, at *1, n. 1 (E.D.N.Y. Nov. 20, 2007).

The Third Circuit has joined other courts in recognizing that the district court's authority to issue a bar order derives from "federal common law." *See Eichenholtz*, *supra*, 52 F.3d at 486; *see also Wardlow Funding, LLC v. Foasberg Laundry & Cleaners, Inc.*, 8:21-cv-01519-SPG-JDE, 2025 WL 3725038, at *2 (C.D. Cal. Oct. 27, 2025) ("Federal courts have the inherent authority under federal common law to issue bar orders barring future claims for contribution and indemnity") (citation and internal marks omitted).

The district court's inherent authority under federal common law authority is sufficiently expansive that even if the Virgin Islands had its own statutory bar order rule (and it does not), this Court could implement a Bar Order different in terms from the territorial rule. *See Eichenholtz*, *supra*, 52 F.3d at 486 (in formulating a bar order under federal common law, the district court "may either adopt the forum state's statute or fashion a uniform federal rule");

As stated in the excerpt from the Manual for Complex Litigation quoted above, inasmuch as a bar order eliminates the ability of a non-settling defendant to bring a cross-claim or third party claim for indemnification or contribution, the bar order usually affords the non-settling defendant(s) protection in the form of a setoff or reduction against any judgment rendered against

3

it.  There are three principal types of set-off or judgment reduction approaches used in connection with bar orders.  Those three methods are designated the proportionate or proportionate fault rule, the *pro tanto* method and the *pro rata* rule. *See generally In re Enron Corp. Secs. Derivative & ERISA Litig.*, 228 F.R.D. 541, 560-61 (S.D. Tex. 2005).  Under the *pro tanto* method, the court reduces the "non-settling defendant's liability for the judgment against him by the amount paid (dollar for dollar) by a settling defendant [or defendants]." *Id*. at 561.  Under the proportionate rule, the jury in the trial involving the non-settling defendant is asked to assess the relative culpability of both settling and non-settling defendants in a special verdict form, and the judgment against the non-settling defendant pays only its commensurate percentage of the judgment as determined by the jury.  The third rule, the *pro rata* rule, is less commonly used as a judgment reduction method in a bar order.  Under that rule for "reducing judgment against nonsettling defendants after a partial settlement[,] the court divides the amount of the total judgment by the number of settling and non-settling defendants," multiplies that dollar amount by the number of settling defendants, and reduces the judgment by that sum. *Id.* at 560.[3]

Each of the three principal methods of judgment credit used in connection with bar orders has its advantages and disadvantages, and the Plaintiffs and Settling Defendants ultimately decided that the *pro tanto* method was the most appropriate.  The text of the Bar Order set forth in each Settlement Agreement – and whose entry is a condition of each settlement – accordingly requires

---

[3]A fourth method of judgment reduction reduces the judgment against the non-settling defendant by whichever amount is greater – the amount corresponding to the *pro tanto* rule or the proportionate rule amount. The Private Securities Litigation Reform Act of 1995 ("PSLRA") mandated use of this judgment reduction method in conjunction with bar orders issued in federal securities fraud cases. As a result of enactment of the PSLRA, this fourth method of judgment reduction has since then generally been used in place of federal common law rules in that class of cases. *See 15 U.S.C. § 78u–4(g)(7)(B; In re Enron Corp. Secs. Derivative & ERISA Litig.*, 228 F.R.D. at 546, n.15

the use of the *pro tanto* rule for judgment credit. *See* Settlements attached to Motion, and specifically Exhibit A, ¶ 25(b); Exhibit B, ¶ 25(b); Exhibit C, ¶ 24; and Exhibit D, ¶ 24.

The proportionate rule allows a plaintiff to reap a windfall in the form of a dollar recovery greater than the amount of any judgment. The aggregate settlement amount associated with these four Settlement Agreements is $6,745,000. Assume hypothetically that Plaintiffs obtain a judgment against the Non-Settling Defendants for $20,000,000, and the jury determines in a special verdict form that the Settling Defendants are collectively 10% at fault. The judgment will be reduced by $2,000,000 to $18,000,000 and the Plaintiffs will have recovered $24,745,000, which is $4,750,000 more than the verdict amount. A variation on this hypothetical would assume that the Plaintiffs recover less against the Non-Settling Defendants than the $6,745,000 they have collected in settlement from the Settling Defendants. If, hypothetically, Plaintiffs obtain a judgment of $3,327,500 against the Non-Settling Defendants, and the jury makes the same 10% assessment of fault on the part of the Settling Defendant, Plaintiffs would then have recovered $6,745,000 plus $332,275, or $7,072,500, which is more than twice the judgment amount. This conflicts with the equitable rule that a plaintiff may only obtain a single satisfaction for an injury. The *pro tanto* method of judgment credit, by contrast, ensures that the Plaintiffs will recover the exact amount of the judgment and not a penny more (or less).

In addition to creating the risk that the Plaintiffs will be made more than whole, the proportionate rule puts additional burdens on a jury because it requires "trying the empty chair" and obligates the jury to ascertain the relative fault of "all defendants including settling defendants who are not represented at trial." *See In re Exxon Valdez*, A89-0095-CV (HRH), 1993 WL 649104, at *2 (D. Alaska Dec. 8, 1993) (citation and internal marks omitted). "In complex litigation, the burden on the jury's time and perception is already considerable, and "add[ing] to this burden the

5

task of apportioning fault between absent and present defendants would obviate much of the advantage of partial settlement." *Id*. at *2. The economies of settlement are undercut when a court is required to try claims of defendants who have settled.

The *pro tanto* method of judgment reduction has the advantage of not involving the jury at all, being simplest to implement, and avoiding the necessity of awkward and time-consuming proofs at trial regarding the relative culpability of the "empty chair" Settling Defendants, including testimony from one or more employees of one or more of the Settling Defendants who could well be subpoenaed for trial. Under the *pro tanto* approach, when the jury reaches a verdict, the Court will simply subtract the $6,475,000 from the amount awarded in entering a judgment.

Finally, the *pro tanto* method of judgment reduction has the advantage of certainty and makes it much easier to frame a notice to the class which fairly presents the merits of the proposed settlement. Under the proportionate rule, "the amount of the set-off [against any jury verdict] is not known until after the trial" and this "makes adequate notice of the settlement to the class difficult." *In re Enron Corp. Secs. Derivative & ERISA Litig.*, *supra*, 228 F.R.D. at 560; *see also In re: Atlantic Fin. Mgmt., Inc.*, 718 F. Supp. 1012, 1018 (D. Mass. 1988).

As discussed above, the Settlement Agreements are conditioned on the entry by the Court of a Bar Order at the time the Court preliminarily approves them. Moreover, the Bar Order agreed upon by the parties includes the *pro tanto* method of judgment reduction, which the Settling Defendants believe is fair, adequate, and reasonable. The Court should approve the Settlement Agreements with the Bar Order provisions as drafted to permit these four settlements to go forward and provide finality for the claims asserted against the Settling Defendants.

In situations like this one, in which the class settlement agreement being considered "is conditioned on entry of a contribution bar order with a pro tanto method of setoff," the courts treat

the bar order condition as being presented "in a take it or leave it posture," such that the court "is not free to modify the agreement to force the parties to agree to proportionate share" setoff. *See In re Enron Corp. Secs. Derivative & ERISA Litig.*, 228 F.R.D. at 563 (citation and internal marks omitted). The Court in the *Enron* case was asked to approve a settlement agreement with Enron arising out of ERISA and other derivative claims in the amount of $85,000,000. *Id*. at 545 and n. 12. The agreement was conditioned on entry of a bar order precluding claims against the settling defendant for indemnity and contribution and providing for a *pro tanto* judgment reduction of any judgment in the amount of $85,0000, as supplemented by another judgment reduction of $10,000,000 for amounts that the non-settling defendants had paid to fund a related interpleader action. *See id.* at 545, n. 12 and 561. The Court recognized that it had "no right to prefer the proportionate fault method," and that is should "accept the parties' right to apply [the pro tanto] offset," so long as it was "fair, reasonable and adequate for Plaintiffs, settling Defendants, non-settling Defendants, and the public." *Id.* at 563. The Court then approved the class action settlement and adopted its bar order provisions, including its *pro tanto* judgment reduction provision, as fair, reasonable and adequate. *See id*. at 566-567.

In *Eichenholtz, supra*, the settlement agreement in a class action was conditioned on entry of a bar order, in which the district court, in approving the settlement, would bar "all claims for contribution or indemnification, however denominated, against the settling defendants," and it also included a provision which in effect required any judgment obtained by Plaintiffs against the non-settling defendant to be reduced by the proportionate liability of the settling defendants. 52 F.3d at 481. Faced with that condition of settlement, the district court adopted a bar order with the only reduction method consistent with that condition – i.e., a bar order with the "proportionate judgment reduction rule." *See id*. at 486-487. The Third Circuit observed that "approval of a class action

7

settlement is committed to the sound discretion of the district court." *Id*. at 487.  It held that under these circumstances the district court did not abuse its discretion in approving the settlement and entering a Bar Order with the proportionate judgment reduction approach.  *Id.*  Nothing in *Eichenholtz* suggests that the Third Circuit would have ruled any differently had the district court in that case been faced, as it is here, with a class action settlement agreement requiring a bar order with a *pro tanto* judgment reduction, and the district court had exercised its discretion to approve that settlement by issuance of a bar order using that method of judgment reduction.[4]

These Settling Defendants respectfully join in Plaintiffs' motion for approval of the four Settlement Agreements and entry of a Bar Order in the same form set forth in those Agreements.

Respectfully submitted,

**UNIVERSAL PLANT SERVICES (VI), LLC**

By Its Attorneys:

DATED: May 18, 2026

/s/ Michelle M. Byers
James M. Campbell, *pro hac vice*
Michelle M. Byers, *pro hac vice*
Kristin M. Dupre, *pro hac vice*
Brian M. Epstein, *pro hac vice*
**CAMPBELL CONROY & O'NEIL, P.C.**
20 City Square, Suite 300
Boston, MA 02129
Tel: (617) 241-3052
Fax: (617) 241-5115
jmcampbell@campbell-trial-lawyers.com
mbyers@campbell-trial-lawyers.com
kdupre@campbell-trial-lawyers.com
bepstein@campbell-trial-lawyers.com

---

[4]Judge Lewis's February 16, 2026 Memorandum Opinion preliminarily approving the ArcLight/Freepoint and Pinnacle Settlements discusses in passing the *pro tanto* and proportionate rules of damage apportionment, but not in the context of a bar order provision, as there are no bar orders in those Settlements.  *See* Dkt. 1687, pp. 9-10, 32-33.  Ultimately, Judge Lewis granted preliminary approval without at that time reaching  the issues regarding apportionment of damages that were raised by three objecting Defendants in connection with the ArcLight/Freepoint Settlement.  *See id.* at 34.

and

LAW OFFICES OF KARIN A. BENTZ, P.C.

DATED: May 18, 2026

/s/ Karin A. Bentz
Karin A. Bentz (V.I. Bar 413)
7605 Lower Hull
St. Thomas, VI 00802
Tel: (340) 774-2669
kbentz@virginlaw.com

EXCEL CONSTRUCTION AND MAINTENANCE VI, INC.

By Its Attorneys:

DUDLEY NEWMAN FEUERZEIG LLP

DATED:  May 18, 2026

/s/ Stefan B. Herpel
Stefan B. Herpel (V.I. Bar No. 1019)
1131 King Street – Suite 204
Christiansted, St. Croix
U.S. Virgin Islands 00820-4971
Telephone:    (340) 773-3200
E-Mail:        sherpel@DNFvi.com

and

DUDLEY NEWMAN FEUERZEIG LLP

DATED:  May 18, 2026

/s/ Charlotte K. Perrell
Charlotte K. Perrell (V.I. Bar No. 1281)
Law House
1000 Frederiksberg Gade
St. Thomas, VI 00802-6736
Telephone:    (340) 774-4422
E-Mail:        cperrell@DNFvi.com

9

**ELITE TURNAROUND SPECIALISTS, LTD.**

By Its Attorneys:

**LABORDE SIEGEL LLC**

DATED: May 18, 2026

/s/ Brendan P. Doherty
Brendan P. Doherty
Texas Bar No. 24075923
Louisiana Bar No. 28556
bdoherty@labordesiegel.com
Alexander L. Cochran
Texas Bar No. 24108163
acochran@labordesiegel.com
5151 San Felipe, Suite 750
Houston, Texas 77056
832-255-6000 (Phone)
832-255-6001 (Fax)

**LABORDE SIEGEL LLC**

DATED: May 18, 2026

/s/ J. Michael DiGiglia
J. Michael DiGiglia
Louisiana Bar No. 24378
Colorado Bar No. 30712
701 Poydras Street, Suite 4800
New Orleans, LA 70139
504-561-0400 (Phone)
504-561-1011 (Fax)
jdigiglia@labordesiegel.com

Listed Counsel from Louisiana and Texas admitted *pro hac vice*

and

10

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, LLC**

**DATED**: May 18, 2026

*/s/ Adam G. Christian*

Adam G. Christian (V.I. Bar No. 441)
Simone R.D. Francis (V.I. Bar No. 537)
1336 Beltjen Road, Suite 201
St. Thomas, VI 00802-4701
(340) 714-1235 (phone)
(340) 714-1245 (fax)
adam.christian@ogletree.com
simone.francis@ogletree.com

**VERSA INTEGRITY GROUP, INC.**

By Its Attorneys:

**MICHAEL L. SHEESLEY, LLC**

**DATED**: May 18, 2026

*/s/* Michael L. Sheesley

Michael L. Sheesley
V.I. Bar #1010
Condo Torre Del Mar, Apt 2201
1477 Ashford Ave
San Juan, PR 00907
Telephone: (412)972-0412
michael@sheesley-law.com

R:\DOCS\9557\7\PLDG\36H0912.DOCX

11