**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| CLIFFORD BOYNES, et al., Plaintiffs, <br> v. <br> LIMETREE BAY VENTURES, LLC, et al., Defendants. <br> ———— | Civil Action No. 2021-0253 <br><br> Civil Action No. 2021-0259 |
| HELEN SHIRLEY, et al., Plaintiffs, <br> v. <br> LIMETREE BAY VENTURES, LLC, et al., Defendants. <br> ———— | Civil Action No. 2021-0260 |
| MARY L. MOORHEAD, et al., Plaintiffs, <br> v. <br> LIMETREE BAY VENTURES, LLC, et al., Defendants. <br> ———— | Civil Action No. 2021-0261 |
| BEECHER COTTON, et al., Plaintiffs, <br> v. <br> LIMETREE BAY VENTURES, LLC, et al., Defendants. | |

**DEFENDANTS LIMETREE BAY TERMINALS, LLC AND LIMETREE BAY REFINING, LLC, A NOMINAL DEFENDANT'S, LIMITED OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND RELATED RELIEF**

Defendants Limetree Bay Terminals, LLC (d/b/a Ocean Point Terminals) ("LBT") and

Limetree Bay Refining, LLC, a Nominal Defendant, ("LBR") (collectively, "Defendants") submit

this Limited Objection to Plaintiffs' Motion and Memorandum of Law in Support of Preliminary

Settlement Approval and Related Relief (Dkt. No. 1744) (the "Motion"), which seeks preliminary

approval of settlements with certain contractor defendants—Universal Plant Services (VI), LLC

("UPS"), Excel Construction and Maintenance VI, Inc. ("Excel"), Elite Turnaround Specialists,

Ltd. ("ETS"), and Versa Integrity Group, Inc. ("Versa") (collectively, the "Contractor Settling Defendants")—and the entry of associated bar orders (the "Bar Orders").

## INTRODUCTION

Defendants object to Plaintiffs' proposed Settlement with the Contractor Settling Defendants because the Bar Orders as proposed are fundamentally defective in their current form.[1] As written, the Bar Orders provide only a *pro tanto* credit equal to the dollar amount of each contractor settlement—an approach that the United States Supreme Court and the Third Circuit have expressly identified as inferior to, and potentially inequitable compared to, a proportionate share reduction rule. *See McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994); *Eichenholtz v. Brennan*, 52 F.3d 478 (3d Cir. 1995). The Bar Orders further purport to bar Defendants from asserting fault-apportionment rights at trial and from obtaining any determination of the Contractor Settling Defendants' proportionate share of responsibility—thereby exposing Defendants to liability for fault properly attributable to those contractors. Additionally, the Bar Orders make no provision to protect Defendants' indemnity rights that exist where Defendants' alleged exposure is wholly derivative of or vicarious to the conduct of the Contractor Settling Defendants.

The Bar Orders, as written, are thus unreasonable and unfairly prejudicial to the Defendants' rights under Virgin Islands law, including those recognized in *World Fresh Markets, LLC v. Palermo*, 74 V.I. 455 (2021), under 5 V.I.C. § 1451(d), and under federal common law principles governing partial settlements and bar orders. At a minimum, to be approvable, any bar

---

[1] Defendants do not oppose the principle that partial settlements can appropriately include bar orders as a mechanism to encourage resolution of complex multi-party litigation. Indeed, Defendants are themselves engaged in ongoing settlement discussions with Plaintiffs and recognizes the vital role that well-crafted bar orders play in achieving finality for settling defendants. This objection is therefore not that bar orders are *per se* improper or unavailable in this litigation.

order must: (1) expressly permit the trier of fact to apportion fault to the Contractor Settling Defendants and reduce any judgment against LBT and LBR, individually, by the *greater* of the settlement amount or the proportionate fault allocated by the jury; (2) preserve Defendants' right to a jury determination distinguishing any derivative or vicarious theories of liability from LBT's or LBR's individual direct negligence, if any; and (3) adequately address LBT's and LBR's indemnity rights arising from the derivative nature of any liability they each face.

<u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

This litigation arises from the failed restart of the Limetree Bay Refinery (the "Refinery") from February through May 2021. Plaintiffs and the putative class allege that the releases caused harm to residents and property owners in western St. Croix. The Refinery was owned and operated by LBR at the time of the alleged releases. LBT is a wholly distinct entity that operates a distinct terminal operation from the Refinery. Plaintiffs seek to hold LBT liable with respect to permit compliance for the Title V Permit at the Refinery because LBT is identified on the permit (along with LBR), even though all Refinery operations were conducted exclusively by LBR.[2]

The Contractor Settling Defendants—UPS, Excel, ETS, and Versa—are contractor and service companies that Plaintiffs allege played an active role in the rushed, inadequate restart of the Refinery. Plaintiffs' own complaint alleges these contractors "knowingly pushed forward with a hurried and substandard Refinery restart" and "negligent[ly] and reckless[ly]" failed to repair the Refinery. Second Amended Consolidated Class Action Complaint, Dkt. No. 1327 ("SAC") ¶¶ 111–113. To the extent LBT faces any liability at trial, any such liability will be derivative of— not independent from—the negligent actions of those who actually operated and worked on the Refinery, including these Contractor Settling Defendants. To the extent LBR faces any liability at

---

[2] LBR has been in bankruptcy since 2021 and is named solely as a nominal defendant.

trial, any such liability will be derivative of the Contractor Settling Defendants. In fact it should be noted that Noel Van Wood, LBR's liability expert, offered an opinion directly criticizing the actions of ETS in connection with the releases.

On May 8, 2026, Plaintiffs filed the Motion seeking preliminary approval of the Group 2 Settlements totaling $6,745,000.00 and requesting entry of Bar Orders that would permanently bar all crossclaims and third-party claims against the Contractor Settling Defendants and limit any credit to a simple *pro tanto* dollar reduction. Each of the four proposed settlement agreements contains a materially identical Bar Order. Defendants file this timely challenge to those Bar Orders because, as discussed below, they are structurally deficient under controlling precedent and Virgin Islands law.

<u>**ARGUMENT**</u>

**A.**     <u>**Defendants Have Standing to Object to the Proposed Bar Orders**</u>

As a threshold matter, Defendants have standing to object to these Proposed Settlements. Non-settling defendants generally lack standing to contest a partial settlement, but a recognized exception applies where a non-settling defendant "can demonstrate that they will suffer some formal legal prejudice as a result of the partial settlement." *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995) (citing *In re School Asbestos Litig.*, 921 F.2d 1330, 1332 (3d Cir. 1990)). There is "consensus that a non-settling defendant has standing to object to a partial settlement which purports to strip it of a legal claim or cause of action, an action for indemnity or contribution for example, or to invalidate its contract rights." *Eichenholtz*, 52 F.3d at 482 (quoting *Waller v. Financial Corp. of America*, 828 F.2d 579, 583 (9th Cir. 1987)). To establish standing, a non-

4

settling defendant must show "some cognizable prejudice to a legal relationship between it and the settling parties." *In re School Asbestos Litig.*, 921 F.2d at 1332.[3]

The Bar Orders here plainly satisfy this standard. By their terms, the Bar Orders permanently extinguish the Defendants' ability to apportion fault to the Contractor Settling Defendants, bar any claim for indemnity against them and preclude a proportionate reduction of any verdict. These provisions directly strip Defendants of legally recognized rights—apportionment, contribution, and indemnity—that exist as a matter of Virgin Islands substantive law and, where applicable, contract. Defendants therefore have clear standing to bring this objection.

B.    **The Present Motion Marks a Material Departure from Prior Settlements—the Court's Prior Approval Orders Do Not Sanction Bar Orders of This Kind**

A critical contextual point deserves emphasis at the outset. This is not the first time the Court has been called upon to address how partial settlements in this case should protect non-settling defendants' apportionment rights. The issue was extensively briefed and argued in connection with the First Preliminary Approval Motion (Dkt. No. 1098), and it was the central subject of the December 10, 2025 hearing before the Honorable Wilma A. Lewis. The Court's resolution of that earlier dispute was fundamentally different in character from what Plaintiffs now seek.

When LBT, LBR and other non-settling defendants objected to the ArcLight/Freepoint settlement (Dkt. No. 1172), neither that settlement nor the Pinnacle settlement included a bar order

---

[3] In preliminarily approving the settlements with other settling defendants – the ArcLight and Freepoint Defendants – the Court addressed the standing argument and expressly noted "[t]hus, taken at face value, Opposing Defendants appear to have standing to challenge the proposed settlement on the grounds that it would 'strip [Opposing Defendants] of a legal claim or cause of action.'" *See,* Memorandum Opinion, dated February 16, 2026 at p. 27 (Dkt No. 1687).

of the type now at issue. The prior objections centered on whether the ArcLight/Freepoint settlement agreement's language—which required settling defendants to *oppose* cross-claims—adequately preserved non-settling defendants' apportionment rights. At the December 10, 2025 hearing, counsel LBT argued at length, to the benefit of all non-settling Defendants, that its substantive Virgin Islands right to apportionment would be extinguished if the settling defendants were dismissed without crossclaims being preserved. Dkt. No. 1650 Hrg. Tr. 93-121. The Court repeatedly engaged with this argument, acknowledged the importance of the apportionment right, and indicated an understanding that the right could be preserved through Rule 13/14 crossclaim practice. Hr'g Tr. 99:5; 102:10-15; 131:1-25.

The Court's First Preliminary Approval Order (Dkt. No. 1687)—entered following that hearing—resolved the prior objection by expressly preserving crossclaim rights. The Order specifically provided that non-settling defendants "retain all opportunities afforded to them under Rules 13 and 14 of the Federal Rules of Civil Procedure to pursue crossclaims, including against settling co-defendants." Dkt. No. 1687 at 31. That language directly addressed the concern that counsel for LBT had raised for the non-settling Defendants: that without crossclaims, apportionment could be lost. The Court's solution was to preserve the procedural mechanism that Virgin Islands law—as interpreted in *Palermo*—recognized as the means of maintaining apportionment.

The present motion is categorically different. These settlements now abandon the approach the Court previously endorsed. The Contractor Settling Defendants' proposed Bar Orders do not preserve crossclaims; they expressly extinguish them. And unlike the prior settlements, these Bar Orders substitute only a *pro tanto* credit for the apportionment rights that the Court previously held must be preserved. This is not a continuation of the prior settlement approach—it is a reversal of

6

it. Any suggestion that the Court's prior approval of the ArcLight/Freepoint and Pinnacle settlements implies approval of the Bar Order structure now before the Court must be rejected.

Plaintiffs' own prior briefing recognized that the ArcLight/Freepoint settlement "contains robust Contribution Protection and Offsetting provisions." Dkt. No. 1192 at 1 (Pls.' Reply ISO ArcLight Settlement). Plaintiffs then argued, and the Court accepted, that those provisions adequately protected non-settling defendants' rights. The present Contractor Settlements contain no such equivalent protections. A *pro tanto* dollar credit bears no relationship to the proportionate share mechanism Plaintiffs' own prior submissions touted as sufficient. The Court should not be misled into treating the current Bar Orders as simply carrying forward the prior approach when they in fact represent a fundamental departure from it.

C.    **The Bar Orders as Proposed Are Deficient Because They Fail to Protect Defendants' Right to Apportionment of Fault Under Virgin Islands Law**

1.    *Virgin Islands Law Mandates Apportionment of Fault Among All Tortfeasors, Including Settling Defendants*

The Virgin Islands Supreme Court in *World Fresh Markets, LLC v. Palermo*, 74 V.I. 455 (2021), held that apportionment of fault is a substantive right under Virgin Islands law that cannot be eliminated without an equivalent substitute. The Court explained that Virgin Islands Code section 1451(d)—which provides that the trier of fact "shall" apportion damages among defendants—is a substantive mandate, not a discretionary procedural device, and that courts are "not free to supersede the legislative enactment by creating an inconsistent common law rule." *Palermo*, 74 V.I. at 462.

Critically, the *Palermo* Court recognized that a non-settling defendant can preserve its apportionment rights by "return[ing] a settling defendant to the case" through third-party practice under Rule 14 or crossclaims. *Id.* At 466-67. Because a reinstated settling defendant becomes a "defendant" within the meaning of section 1451(d), the statute would "require apportionment to

prevent the plaintiff from receiving a double recovery." *Id.* This Court's First Preliminary Approval Order expressly endorsed this approach, retaining for non-settling defendants "all opportunities afforded to them under Rules 13 and 14 of the Federal Rules of Civil Procedure to pursue crossclaims, including against settling co-defendants." Dkt. No. 1687 at 31.

The Bar Orders as proposed directly contradict these principles. They bar both crossclaims and third-party claims, thereby eliminating the procedural mechanisms the *Palermo* Court identified as the means by which apportionment rights are preserved. Without any mechanism for the jury to allocate fault to the Contractor Settling Defendants, section 1451(d)'s mandate that "each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant" becomes a hollow guarantee.

### 2. *A Simple Pro Tanto Credit Is Insufficient—Controlling Authority Requires Proportionate Fault Reduction*

The Bar Orders provide only a *pro tanto* credit: any judgment against LBT or LBR would be reduced by the dollar amount of the contractor settlement, without regard to the trier of fact's allocation of fault. That approach is inadequate under both Supreme Court and Third Circuit precedent, which have identified the proportionate share rule as the clearly superior—and fairer— approach in partial settlement contexts.

The Supreme Court in *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), squarely rejected the *pro tanto* credit in favor of the proportionate share approach. The Court explained that under the *pro tanto* rule, "a litigating defendant's liability will frequently differ from its equitable share, because a settlement with one defendant for less than its equitable share requires the non-settling defendant to pay more than its share." *Id.* at 212-213 (internal citation omitted). "Such deviations from the equitable apportionment of damages will be common, because settlements seldom reflect an entirely accurate prediction of the outcome of a trial." *Id.*

8

The Court further observed that "the settlement figure is likely to be significantly less than the settling defendant's equitable share of the loss, because settlement reflects the uncertainty of trial and provides the plaintiff with a 'war chest' with which to finance the litigation against the remaining defendants." *Id.* at 212–13. The Court also rejected the notion that a hearing on the fairness of the settlement could account for the potential inequitable allocation of liability because such hearings "would have to be minitrials on the merits, but in practice they are often quite cursory." *Id.* at 213-214. Also, "there might still be substantial unfairness when the plaintiff's success at trial is uncertain." *Id.* Such that the "*pro tanto* approach, even when supplemented with good-faith hearings, is likely to lead to inequitable apportionments of liability …." *Id.* The Court, in approving the proportionate share rule, explained that "[u]nder the proportionate share approach, no suits for contribution from the settling defendants are permitted, nor are they necessary, because the non-settling defendants pay no more than their share of the judgment." *Id.* at 209–10; 219.

While decided in the context of admiralty law, the principles in *McDermott* are analogous and applicable here because the Supreme Court was fashioning judge-made common law rules — not interpreting an admiralty-specific statute — and expressly confirmed that there is "no tension" between joint and several liability and a proportionate share approach to partial settlements. *McDermott*, 511 U.S. at 221. Virgin Islands Code section 1451(d) likewise combines joint and several liability with mandatory proportionate apportionment of fault among defendants, creating the same structural framework. *See Palermo*, 74 V.I. at 463–64 (§ 1451(d) mandated apportionment among defendants, provided for joint and several liability, and recognized a cause of action for contribution). The equitable rationale of *McDermott* — that a non-settling defendant

should pay no more than its proportionate share, regardless of what a settling defendant paid —

applies with equal force under the VI statutory scheme.

The Third Circuit reached the same conclusion in *Eichenholtz v. Brennan*, 52 F.3d 478 (3d

Cir. 1995), affirming the district court's adoption of "the proportionate judgment reduction" as

"the fairest method" because it shifts "[t]he risk of a 'bad' settlement" to the plaintiffs, "who have

a financial incentive to make certain that each defendant bears its share of the damages." *Id.* at

487. The court held that "the proportionate fault rule is the equivalent of a contribution claim; the

non-settling defendants are only responsible for their portion of the liability." *Id.* Critically, the

Third Circuit quoted with approval the Tenth Circuit's admonition that "[o]rders barring

contribution claims are permissible only because a court or jury has or will have properly

determined proportionate fault and awarded the equivalent of a contribution claim, not because of

the compensatory award alone." *TBG, Inc. v. Bendis*, 36 F.3d 916, 923 (10th Cir. 1994) (quoted in

*Eichenholtz*, 52 F.3d at 487 n.17).

Here, the Contractor Settling Defendants are collectively settling for just $6,745,000.

Plaintiffs are seeking more than one billion dollars in damages. The mismatch between the

settlement amounts and the contractors' potential allocated fault—particularly given Plaintiffs'

own allegations that these contractors were centrally responsible for the "hurried and substandard"

restart—is obvious. Reducing a potential billion-dollar judgment by only $6.745 million while

barring any further fault allocation would force LBT and/or LBR to absorb damages properly

attributable to the contractors. That result is precisely the inequity that *McDermott* and *Eichenholtz*

condemned.

At minimum, the Bar Orders must provide that any judgment against the Defendants

individually be reduced by the *greater* of: (i) the contractor settlement amount (*pro tanto* credit);

or (ii) the percentage of fault allocated to each Contractor Settling Defendant by the trier of fact multiplied by the total verdict (proportionate share credit). This approach would adequately protect the Defendants to preserve their individual contribution rights consistent with the protections approved in *McDermott* and *Eichenholtz*.

### D.    The Bar Orders Fail to Adequately Protect Defendants' Indemnity Rights

The Bar Orders' deficiencies extend beyond the contribution and apportionment context. They also purport to extinguish all claims "for common law, implied, equitable, contractual, or express indemnification." This broad sweep would eliminate LBT's and LBR's indemnity claims against the contractors—claims that are qualitatively distinct from contribution claims and must be analyzed separately.

LBT's exposure in this litigation is derivative in nature. LBT is named as a defendant because of its interest in the Title V air permit; it did not own, operate, manage, or supervise the day-to-day operations of the Refinery. LBR hired contractors to specialize in the construction, repair and maintenance of the Refinery who should be held responsible for their actions. The Contractor Settling Defendants were actively engaged in the Refinery's restart operations and allegedly bear direct, active negligence for the releases. Where one party is actively negligent and another faces only derivative or passive liability arising from that active negligence, the law of indemnity—as distinct from contribution—may entitle the derivative party to full indemnification. A simple *pro tanto* credit against a verdict is categorically insufficient to protect a right of full indemnity. The Third Circuit has recognized that bar orders in the contribution context must be structured to avoid extinguishing substantive rights without providing an adequate substitute. *See Eichenholtz*, 52 F.3d at 486–87. The same principle applies a fortiori to indemnity, where the

11

interests of the non-settling defendant are even more directly threatened by a broadly worded bar order that provides only a dollar credit against a specific verdict amount.

E.    **The Bar Orders Must Expressly Permit Apportionment of Fault to Contractor Settling Defendants at Trial and Bar Plaintiffs' Recovery Against LBR or LBR for That Fault**

Whatever form the Court ultimately selects for judgment reduction, the Bar Orders must at minimum expressly provide that:

(1)  The verdict form shall include the Contractor Settling Defendants for purposes of the jury's fault allocation, so that the trier of fact can determine the proportionate share of fault attributable to each;

(2)  Any judgment against LBT or LBR shall be reduced by no less than the percentage of fault allocated to the Contractor Settling Defendants (proportionate share reduction), with a floor of no less than the dollar amount of the corresponding settlement (pro tanto credit);

(3)  Plaintiffs shall not be entitled to recover from LBT or LBR any damages that the trier of fact allocates to a Contractor Settling Defendant;

(4)  To the extent the jury determines that LBT's or LBR's liability is purely derivative or vicarious of a Contractor Settling Defendant's direct negligence, Plaintiffs shall be barred from any recovery against LBT or LBR for that portion of the verdict.

These protections are consistent with—and indeed required by—*Palermo*'s recognition that apportionment must be preserved even in partial settlement contexts, *McDermott*'s holding that proportionate share reduction best fulfills the equitable purposes of contribution law, and *Eichenholtz*'s confirmation that a bar order on contribution claims is permissible only when the trier of fact will properly determine proportionate fault and a credit in that amount will be ordered.

## CONCLUSION

For the foregoing reasons, LBT and LBR respectfully requests that the Court: (1) deny the Motion to the extent it seeks approval of the Bar Orders in their current form; or alternatively, (2)

require modification of the Bar Orders to: (a) ensure that any judgment against LBT or LBR is reduced by the *greater* of the contractor settlement amount or the proportionate fault allocated to each Contractor Settling Defendant by the trier of fact; (b) expressly preserve LBT's and LBR's ability to have fault apportioned to the Contractor Settling Defendants at trial via a jury verdict form that includes them as fault-allocation defendants; (c) bar Plaintiffs from recovering from LBT or LBR any amounts attributable to the Contractor Settling Defendants' allocated fault; (d) ensure that the Contractor Settling Defendants remain subject to trial cooperation obligations to the extent necessary for fault allocation; and (e) expressly preserve LBT's and LBR's right to seek appropriate relief at trial where LBT's and LBR's liability is purely derivative of or vicarious to a Contractor Settling Defendant's direct negligence.

Respectfully submitted this **18th** day of **May 2026**.

**Beckstedt & Kuczynski LLP**

*/s/Carl A. Beckstedt III*
Carl A. Beckstedt III, Esq.
VI Bar No. 684
2162 Church Street
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel: 340-719-8086 / Fax: 800-886-6831
carl@beckstedtlaw.com

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

/s/ *Shubhra R. Mashelkar*
Shubhra Mashelkar, Esq.
Georgia Bar No. 475388
3344 Peachtree Road, NE
Suite 2400
Atlanta, GA 30326
Rel: 404-876-2600 / Fax: 404-875-9433
smalshekar@wwhgd.com
*Admitted Pro Hac Vice (1:21-cv-00253)*

13

Attorneys for Defendant Limetree Bay Terminals, LLC

**Wilson Elser Moskowitz Edelman & Dicker LLP**

*/s/ Carolyn F. O'Connor*
Carolyn F. O'Connor, Esq.
V.I. Bar No. R2100
7 Giralda Farms
Madison, NJ  07940
Tel: 973-624-0800 / Fax: 973-624-0808
Carolyn.oconnor@wilsonelser.com

Attorneys for Nominal Defendant Limetree Bay Refining, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth above, a true and correct copy of the foregoing was electronically served upon all counsel of record pursuant to the Federal Rules of Civil Procedure.

**Weinberg Wheeler Hudgins Gunn & Dial, LLC**

/s/ *Shubhra R. Mashelkar*
Shubhra Mashelkar
Georgia Bar No. 475388
smalshekar@wwhgd.com
*Admitted Pro Hac Vice (1:21-cv-00253)*
Attorneys for Defendant Limetree Bay Terminals, LLC

14