**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,** <br>      *Plaintiffs*, <br> v. <br> **LIMETREE BAY VENTURES, LLC, et al.,** <br>      *Defendants*. | **Civil Action No. 2021-0253** |

**EIG GLOBAL ENERGY PARTNERS, LLC'S**
**RESPONSE TO ORDER TO SHOW CAUSE**

EIG Global Energy Partners, LLC ("EIG GEP") submits this memorandum pursuant to this Court's June 25, 2026 Order (No. 1777). EIG GEP does not ask to conceal the substance of Plaintiffs' class certification arguments, nor does it rely solely on the confidentiality designations under the operative protective order. Rather, EIG GEP seeks the narrow continued redaction or sealing of only ten documents exhibited to Plaintiffs' Memorandum of Law in Support of Class Certification and the corresponding lines of Plaintiffs' memorandum that quote, summarize, or disclose the substance of those exhibits. The exhibits contain EIG GEP's investment committee materials, private investor communications, fund performance and valuation data, proprietary third-party consultant analyses, capital structure and financing terms, counterparty negotiation positions, toll and penalty economics, distressed recovery options, and non-public operating forecasts. None of this information is publicly available, it is unrelated to class certification, it is unnecessary for the public's understanding of the alleged environmental contamination, and its disclosure would provide competitors, counterparties, lenders, and future portfolio companies with a roadmap to exploit EIG GEP's decision-making processes and commercial positions.

**LEGAL STANDARD**

Because documents submitted in connection with a motion for class certification are

judicial records, the common law presumption of public access applies.[1] This presumption is distinct from and more rigorous than the "good cause" standard governing protective orders under Federal Rule of Civil Procedure 26(c) and further established in *Pansy v. Borough of Stroudsburg*.[2] The party seeking to seal must identify specific, compelling countervailing interests and demonstrate that disclosure will cause a "clearly defined and serious injury."[3]

The Third Circuit has recognized that courts may seal judicial records where disclosure would reveal "business information that might harm a litigant's competitive standing," including trade secrets and confidential business information tied to concrete competitive harm.[4] Courts permit narrowly tailored sealing of financial terms, negotiation strategies, proprietary analyses, investor materials, and counterparty communications when the movant demonstrates particularized harm.[5] This Court has applied a "surgical approach" to unsealing portions necessary to make judicial reasoning intelligible while maintaining seals over genuinely sensitive materials.[6]

## ARGUMENT

EIG GEP identifies below each exhibit's specific categories of information warranting continued protection and the harm that disclosure would cause. Only the lines of Plaintiffs' memorandum that quote, summarize, or rely on this protected content need remain redacted while

---

[1] *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019).

[2] 23 F.3d 772, 786-87 (3d Cir. 1994).

[3] *Avandia*, 924 F.3d at 672.

[4] *Id.* at 679; *see also Pansy*, 23 F.3d at 787-91 (articulating factors including privacy interests, potential competitive injury, and reliance on protective order).

[5] *Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 513-14 (D. Del. 2012) (recognizing that confidential financial information, pricing, and negotiation strategy may be redacted where disclosure could undercut future negotiations); *Genentech Inc. v. Amgen Inc.*, No. 18-924, 2020 WL 9432700, at *2-3 (D. Del. Sept. 2, 2020) (sealing trade secrets, proprietary information, and confidential commercial terms upon particularized showing of competitive harm).

[6] *See Bryan v. United States*, No. 08-31, 2017 WL 1347681, at *2 (D.V.I. Jan. 27, 2017) (applying surgical approach and requiring parties to identify specific information by docket, page, and line with factual and legal support); *see also Danielson v. Tropical Shipping & Constr. Co.*, No. 12-17, 2016 WL 715744, at *3 (D.V.I. Feb. 22, 2016) (sealing contracts revealing below-tariff negotiations because disclosure could create competitive pressure).

the balance of Plaintiffs' factual narrative, allegations, and legal arguments may be filed publicly.

### A.  Exhibit 47: EIG GEP Investment Committee Posting Memo (Aug. 2018).

Exhibit 47 is an internal EIG GEP email and attached investment committee posting memorandum containing proposed transaction structure, preferred equity pricing, dividend/payment-in-kind terms, warrants, redemption provisions, financial covenants, governance rights, valuation assumptions, projected internal rate of return/return on investment, BP toll economics, and net present value analysis.  Disclosure would reveal EIG GEP's diligence strategy, investment underwriting methodology, returns thresholds, and negotiating positions to counterparties, lenders, competitors, fund investors, and future portfolio companies, which is information that effectively functions as a pricing and strategy playbook.[7]  Accordingly, Exhibit 47 should remain under seal.

### B.  Exhibit 69: Baker & O'Brien Report.

Exhibit 69 is an email chain with investors and attached third-party consultant report prepared for EIG GEP containing proprietary PRISM refinery-modeling outputs, operating-cost comparisons, risk-category assessments, and technical conclusions protected by contractual confidentiality and non-reliance restrictions. Disclosure would harm both EIG GEP and non-party Baker & O'Brien by exposing proprietary analytical methodology and competitively sensitive refinery economics and could chill future reliance on outside experts.[8]  In addition, the email chain identifies specific investors and their email addresses, and references the subject matter of the

---

[7] *See Mosaid*, 878 F. Supp. 2d at 513 (protecting financial information and licensing/valuation strategy from competitors); *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 163-64 (S.D.N.Y. 2015) (permitting redactions of trading strategies and proprietary modeling assumptions).

[8] *See Legend Biotech USA Inc. v. Liu*, No. 22-3388, 2023 WL 12098270, at *4 (D.N.J. Nov. 21, 2023) (sealing proprietary R&D/technical information not publicly known); *Genentech*, 2020 WL 9432700, at *3 (sealing proprietary scientific and manufacturing information).

attached report. Accordingly, Exhibit 69 should remain under seal, and the first sentence on page 8 of Doc. 1768-1 following "Limetree and" should remain redacted.

### C.  Exhibits 70 & 71: EIG GEP Investor/LP and Prequalified-Investor Presentations.

Exhibits 70 and 71 contain EIG GEP's fund-level performance data (committed / invested / realized / unrealized values, gross multiples, gross and net internal rates of return), capital-structure and ownership percentages, distressed-recovery analyses, proposed incremental financing terms, management-transition strategies, and market outlook provided exclusively to existing limited partners and prequalified investors under strict confidentiality.  Disclosure of fund-performance metrics and LP-facing materials would impair EIG GEP's fundraising, investor relations, and competitive positioning.[9] In addition, the email in Exhibit 70 discusses EIG GEP's considerations in preparing the attached presentations.  Accordingly, Exhibits 70 and 71 should remain under seal, and the second parentheticals following "App. 2583" in footnote 42 and "App. 2621-22" in footnote 44 of Doc. 1768-1 should remain redacted.

### D.  Exhibit 77: Internal EIG GEP Email (Feb. 2020).

Exhibit 77 is a candid internal email containing EIG GEP's investment recommendation, numerical risk scoring, project-controls critique, liquidity-model weaknesses, HSE/consent-decree contingency analysis, commodity-price outlook, and internal defense-funding strategy.  This is precisely the kind of internal deliberation whose disclosure would give adversaries and market participants a roadmap to exploit EIG GEP's decision-making processes, risk tolerances, and walk-away conditions.[10]   Accordingly, Exhibit 77 should remain under seal, and the second

---

[9] *See Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-1589, 2016 WL 1276450, at *4 (S.D.N.Y. Mar. 29, 2016) (justifying sealing of competitive analyses and financial data due to competitive harm); *SOHC, Inc. v. Zentis Sweet Ovations Holding LLC*, No. 12-7639, 2014 WL 5643683, at *2 (S.D.N.Y. Nov. 4, 2014) (redacting financial figures not relevant to the legal dispute).
[10] *See Alchem USA Inc. v. Cage*, No. 21-2859, 2022 WL 3043153, at *2 (3d Cir. Aug. 2, 2022) (protecting confidential

parenthetical following "App. 2708-10" in footnote 50 of Doc. 1768-1 should remain redacted.

### E.  Exhibits 79 & 105: BP/EIG GEP CEO Negotiation Emails (Feb. 2020).

Exhibits 79 and 105 contain CEO-level correspondence disclosing EIG GEP's capital commitments, funding-authorization conditions, tolerance for penalties, toll-increase positions, and walk-away triggers, as well as BP's confidential negotiating positions.  Public disclosure would provide future counterparties with detailed insight into EIG GEP's negotiation tactics and BP's commercial risk management posture, which is competitive intelligence that could be exploited in future transactions.[11]  Accordingly, four paragraphs of the Feb. 15, 2020 10:58 email in Exhibits 79 (at App. 2723-24) and 105 (at App. 3117) beginning with "Because of" through the final paragraph of the email ending with "ensuring success," the first complete sentence on page 12 of Doc. 1768-1, and the second parenthetical following "App. 2722-24" in footnote 55 of Doc. 1768-1 should remain redacted.

### F.  Exhibits 106 & 111: Tolling Agreement Restructuring (Feb. 2021).

Exhibits 106 and 111 reveal the substance of live, confidential commercial negotiations between BP and EIG GEP regarding restructuring of the Tolling Agreement, including boundary conditions, clause-deletion proposals, waivers and releases, revised SCO/FCT metrics, toll economics, legal-team reservations, and lender-communication strategy. Disclosure of the granular terms and negotiation dynamics would harm EIG GEP and BP in future distressed-investment and energy-sector transactions and undermine the confidentiality relied upon in arm's-

---

business information where disclosure would cause competitive harm); *Danielson*, 2016 WL 715744, at *3 (granting sealing where disclosure of confidential contracts could create competitive pressure).

[11] *See Mosaid*, 878 F. Supp. 2d at 513-14 (sealing pricing, financial, and negotiation-strategy information); *Dodona*, 119 F. Supp. 3d at 163-64 (permitting limited redactions of trading strategies, proprietary modeling assumptions, and pricing information).

length commercial dealings.[12] Accordingly, the second sentence of the Feb. 5, 2021 16:00 email in Exhibits 106 (at App. 3126) and 111 (at App. 3208) (following the sentence ending in "afternoon?") and the second sentence in the first full paragraph on page 12 of Doc. 1768-1 should remain redacted.

### G. Exhibit 127: Fuel-Burn Forecast and Operating Assumptions (Jan. 2021).

Exhibit 127 contains non-public operational forecasts including fuel-burn volumes, cost variances, landed-price assumptions, sensitivity analyses, liquidity impacts, and internal assessments of H2S/EPA regulatory exposure. Disclosure would reveal the refinery's cost structure and operational optimization timeline to competitors, lenders, and counterparties, who could use such intelligence to pressure pricing in future transactions.[13] Accordingly, Exhibit 127 should remain under seal, and the second parenthetical following "App. 3258" in footnote 82 of Doc. 1768-1 should remain redacted.

### H. The *Pansy* Factors Support Continued Sealing.

While the *Pansy* factors do not alone displace the common law standard, they confirm that sealing is appropriate here.[14] EIG GEP and affected third parties are private commercial actors whose privacy interests in proprietary financial, strategic, and operational information are substantial. The sealed information is not public health and safety data; it is commercial intelligence whose harm lies in competitive exploitation, not concealment of environmental facts. Sharing among litigants has occurred under the Protective Order, and no public entity or official is the beneficiary of sealing. Critically, reliance on the Protective Order, while not dispositive, is

---

[12] *See Genentech*, 2020 WL 9432700, at *3 (protecting confidential settlement and license terms); *Danielson*, 2016 WL 715744, at *3 (sealing below-tariff negotiations from competitive scrutiny).

[13] *See Playtex*, 2016 WL 1276450, at *4 (sealing cost and revenue data, disclosure of which would cause competitive harm).

[14] *See Avandia*, 924 F.3d at 676.

relevant to EIG GEP's reasonable expectation that information produced under discovery's compulsory process would not become publicly available absent compelling justification.[15]

The public interest in this class action is fully served by public access to Plaintiffs' allegations, expert evidence, regulatory facts, EPA chronology, and legal arguments. The narrow categories of information EIG GEP seeks to protect are not necessary to evaluate the merits of class certification and their public disclosure would add nothing to public understanding of the environmental claims at issue but would instead directly harm EIG GEP.

### CONCLUSION

EIG GEP requests that this Court maintain under seal Exhibits 47, 69, 70, 71, 77, and 127; maintain the above noted redactions to Exhibits 79, 105, 106, and 111; and preserve corresponding redactions to the lines of Plaintiffs' unredacted memorandum in support of class certification (ECF No. 1768-1) that quote, summarize, or disclose the protected information identified herein, while permitting public filing of the remaining non-sensitive portions of the memorandum. Plaintiffs have advised that should any Defendant satisfy this Court's required showing as to why such relief is warranted, Plaintiffs do not oppose such relief. Should the Court determine that less restrictive means are available to protect EIG GEP's interests, EIG GEP respectfully requests that it be permitted to proffer additional proposed redactions compliant with the Court's opinion.

---

[15] *Pansy*, 23 F.3d at 790-91 (holding that reliance on an existing confidentiality order is relevant but not dispositive when evaluating continued sealing).

Respectfully submitted,

Dated: July 7, 2026

*/s/ Anne Derbes Wittmann*

Kenneth M. Klemm (solely with respect to case nos. 21-00253, 00260 & 00261, admitted *pro hac vice*)
Adam B. Zuckerman (solely with respect to case nos. 21-00253, 00259 & 00260, admitted *pro hac vice*)
Anne Derbes Wittmann (admitted *pro hac vice*)
Leopoldo J. Yanez (admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-5200
kklemm@bakerdonelson.com
azuckerman@bakerdonelson.com
awittmann@bakerdonelson.com
lyanez@bakerdonelson.com

*and*

Amy L. Champagne (solely with respect to case nos. 21-00253, 00259 & 00261, admitted *pro hac vice*)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
Telephone: (601) 351-8912
achampagne@bakerdonelson.com

*and*

Dated: July 7, 2026

*s/ Adam N. Marinelli*

Adam N. Marinelli (V.I. Bar No. 1294)
BOLTNAGI PC
Merchants Financial Center
4608 Tutu Park Mall, Suite 202
St. Thomas, Virgin Islands 00802-1816
Telephone: (340) 774-2944
amarinelli@vilaw.com

***ATTORNEYS FOR EIG GLOBAL ENERGY PARTNERS, LLC***

8

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2026, the foregoing was filed electronically via CM/ECF. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Anne Derbes Wittmann*