# Exhibit 1

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **CLIFFORD BOYNES, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0253** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **HELEN SHIRLEY, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0259** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **MARY L. MOORHEAD, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0260** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |
| **BEECHER COTTON, et al.,** | |
| **Plaintiffs,** | **Civil Action No. 2021-0261** |
| **v.** | |
| **LIMETREE BAY VENTURES, LLC, et al.,** | |
| **Defendants.** | |

179146066.1

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Agreement," "Settlement," or "Settlement Agreement") sets forth the terms of settlement between Plaintiffs Ryan Alleyne, Agnes Augustus, Esther Clifford, Sirdina Isaac Joseph, Isidore Jules, John Sonson, Mary Moorhead, Margaret Thompson, Alvina (Jean-Marie) Ilarraza, Cristel Rodriguez, Clifford Boynes, Delia Almestica, Helen Shirley, Guidrycia Wells & Minor Child "O.N.", Edna Santiago, and Virginie George (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined below), and Defendants EIG Global Energy Partners, LLC, Limetree Bay Ventures, LLC, and Limetree Bay Energy, LLC, in the above-captioned Litigation and also memorializes the settlement agreement in connection with the Parallel Litigations.

## I. RECITALS

WHEREAS, the Litigation (as defined below) was filed in May 2021, and on March 1, 2024, was consolidated "for all purposes," *Boynes*, Dkt. 526;

WHEREAS, on August 4, 2025, Plaintiffs filed the Complaint (as defined below) alleging that all of the Defendants in the Litigation, through their alleged actions as set forth in the Complaint, were responsible for certain incidents at the Limetree Bay Refinery (the "Refinery"), that took place during the time period from February 2021 to May 2021, at which time the Refinery was forced to shut down;

WHEREAS, Plaintiffs' Complaint alleges that Plaintiffs and those similarly situated suffered economic and non-economic injuries resulting from the incidents at the Refinery;

WHEREAS, the Settling Defendants dispute Plaintiffs' allegations, do not believe they are responsible for any of Plaintiffs' alleged harms, and have filed motions to dismiss the Consolidated Cases, which Plaintiffs have opposed, and that remain pending;

2

WHEREAS, Plaintiffs and Class Counsel have conducted a thorough investigation of the facts and law relating to the matters alleged in the Litigation, have conducted extensive written discovery and participated in numerous depositions, and have retained and worked with expert witnesses and consultants who have analyzed facts and evidence relating to Plaintiffs' claims;

WHEREAS, Plaintiffs and Class Counsel have concluded that it is in the best interests of Plaintiffs and the Settlement Class to resolve their claims asserted in the Litigation against the Settling Defendants, and to settle these claims on the terms set forth herein, and that the proposed settlement with the Settling Defendants set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class;

WHEREAS, the Settling Defendants have conducted a thorough investigation of the facts and law relating to the matters alleged in the Litigation, have participated in the preparation of extensive written discovery, and continue to deny the allegations asserted by Plaintiffs, and maintain that they have meritorious defenses to Plaintiffs' claims, but have entered into this Agreement to avoid further expenses, inconvenience, and the distraction of burdensome and protracted litigation, and in order to resolve this controversy and avoid the risks inherent in complex litigation; and

WHEREAS, the Parties to this Settlement Agreement engaged in extensive, difficult, complex, and arm's-length negotiations regarding the settlement of Plaintiffs' and the Settlement Class Members' claims, including through mediation overseen by the Court-appointed mediator, John W. Perry, Jr. (the "Mediator"), which has led to the settlement set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are

3

hereby acknowledged, the Parties agree to the following terms and conditions of settlement pertaining to the Settling Defendants.

## II.    DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings set forth below:

1.    **"Affected Geographic Area"** means the western portion of the Island of St. Croix, more particularly described as bounded by 64.74 degrees West Longitude and the sea.

2.    **"ArcLight/Freepoint Settlement"** means that settlement agreement (No. 21-CV-253, ECF No. 1099-1) signed on March 17-18, 2025, between Plaintiffs, on the one hand, and, on the other, ArcLight Capital Partners, LLC, ArcLight Energy Partners Fund VI, L.P., ArcLight Limetree AIV, L.P., Limetree Bay Holdings, LLC, and Limetree Bay Preferred Holdings, LLC (collectively, "ArcLight") and Freepoint Commodities LLC ("Freepoint").

3.    **"Bankruptcy Approval Order"** means a final, non-appealable order entered by the Bankruptcy Court either (a) approving the Settling Insurers' (as defined below) payment of their shares of the Gross Settlement Fund toward the Settlement or (b) providing that approval of such a payment by the Bankruptcy Court is not required (whether because the Bankruptcy Court lacks jurisdiction over such issue, because the Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors does not require such approval, or otherwise).

4.    **"Bankruptcy Court"** means the U.S. Bankruptcy Court for the Southern District of Texas, which heard the proceedings in the matters of *In re Limetree Bay Services, LLC, et al.*, No. 4:21-bk-32351 (Lead Case), and the following jointly administered matters: *In re Limetree Bay Refining Holdings, LLC*, No. 4:21-bk-32532; *In re Limetree Bay Holdings II, LLC*, No. 4:21-bk-32523; *In re Limetree Bay Refining, LLC*, No. 4:21-bk-32354; *In re Limetree Bay Refining*

4

Docusign Envelope ID: F7ED7295-3B98-88AB-81D3-7FB0B86A9A17

*Operating, LLC*, No. 4:21-bk-21-32355; and *In re Limetree Bay Refining Marketing, LLC*, No. 4:21-bk-32356.

5.　**"Claim"** means a claim made by a Claimant via the submission of a Claim Form to the Settlement Administrator pursuant to this Settlement Agreement.

6.　**"Claimant"** means a Settlement Class Member who submits a Claim Form pursuant to this Settlement Agreement.

7.　**"Claim Form"** means a proposed Claim Form to be agreed to by the Parties which will be used by Settlement Class Members to submit a Claim under this Settlement Agreement. It is anticipated that the Claim Form will be substantially similar to the form previously approved by the Court (ECF No. 1637-2), with modifications as necessary to reflect the terms of this Settlement.

8.　**"Claim Deadline"** means the date by which a Claim Form must be submitted or postmarked to be considered timely. The Claim Deadline shall be set forth in the Preliminary Approval Order, all forms of notice of this Settlement, and the Settlement Website, and shall be one hundred and twenty (120) days from the Notice Date.

9.　"**Class Counsel**" means all attorneys of record for Plaintiffs in the cases comprising the Litigation.

10.　**"Class Notice"** or **"Notice of Settlement"** means the various forms of notice that will be provided to Settlement Class Members to inform them about the terms of this Settlement Agreement, their right to participate in the Settlement and how to do so, to opt out or object to the Settlement, and their right to appear at the Final Approval Hearing. The proposed long form Notice of Class Action Settlement ("Long Form Notice") and a copy of the proposed short-form Summary Notice ("Summary Notice") will be agreed to by the Parties prior to the filing of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and it is anticipated that the Notice of

Settlement will be substantially similar to the notices previously approved by the Court (ECF Nos. 1637-4, 1637-5), with modifications as necessary to reflect the terms of this Settlement.

11. **"Co-Lead Class Counsel"** means Kerry Miller of Miller Thibodeaux Dysart Veith & Paschal, LLC, Daniel Charest of Burns Charest LLP, and Shanon J. Carson of Berger Montague PC.

12. **"Complaint"** means Plaintiffs' Consolidated Second Amended Class Action Complaint filed on August 4, 2025, in the Litigation (No. 21-CV-253, ECF No. 1327) and any amendments thereto.

13. **"Counsel for Settling Defendants"** means Kenneth M. Klemm, Adam B. Zuckerman, and Amy L. Champagne of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., and Adam N. Marinelli of Boltnagi PC as counsel for Defendants EIG Global Energy Partners, LLC, Limetree Bay Ventures, LLC, and Limetree Bay Energy, LLC.

14. **"Counsel for Settling Insurers"** means Jennifer E. Michel of Lewis Brisbois Bisgaard & Smith LLP and Marie L. Van Dam of Jackson & Campbell, P.C. as counsel for Settling Insurers.

15. **"Court"** means the United States District Court for the Virgin Islands, Division of St. Croix.

16. **"Defendants"** means all Defendants named in the Complaint.

17. **"Effective Date"** means the first date on which all of the following conditions have been satisfied: (1) the Final Approval Order becomes final: (a) if no objection to the proposed Settlement Agreement is raised at the Final Approval Hearing, this is the date on which the Court enters the Final Approval Order; or (b) if one or more objections are raised at the Final Approval Hearing and not withdrawn prior to entry of the Final Approval Order, the latest of: (i) the

6

expiration of the time to file or give notice of any appeal from the Final Approval Order; (ii) the date of final affirmance of the Final Approval Order on appeal; (iii) the expiration of the time to file, or the denial of, a petition for a writ of certiorari seeking review of the Final Approval Order and, if certiorari is granted, the date of final affirmance following such review; or (iv) the date of final dismissal of any appeal from the Final Approval Order or of any proceeding on certiorari seeking review of the Final Approval Order; and (2) the Bankruptcy Approval Order has been entered by the Bankruptcy Court and has become a final order, meaning that the time for appeal or notice of appeal has expired without appeal, or any appeal or request for certiorari has been finally resolved, dismissed, or otherwise concluded. The Effective Date shall not occur unless both of the foregoing conditions have been satisfied.

18.     "**EIG**" means EIG Global Energy Partners, LLC; EIG Asset Management, LLC; EIG Management Company, LLC; and the EIG Funds, and all of their respective predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents or any persons acting or purporting to act on their behalf (though it specifically excludes any Non-Released Parties).

19.     "**EIG Funds**" mean (i) EIG Limetree Co-Investment, L.P.; (ii) EIG-Keats Energy Partners, L.P.; (iii) EIG Energy Fund XVII-E, L.P.; (iv) EIG Energy Fund XVII, L.P.; (v) EIG Energy Fund XVII-B, L.P.; (vi) EIG Energy Fund XVII (Cayman), L.P.; and (vii) EIG Energy Fund XVII (Scotland), L.P., including their current and former investors, partners and general partners, including but not limited to EIG Limetree Co-Investment GP, LLC; EIG-Keats Energy Partners GP, LLC; and EIG Energy Fund XVII GP, LLC; and all of their respective predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers,

directors, employees, attorneys, contractors, consultants, and agents or any persons acting or purporting to act on their behalf (though it specifically excludes any Non-Released Parties).

20. **"Eligible Claimant"** means a Claimant who has submitted a valid and timely Claim form as determined by the Settlement Administrator.

21. **"ETS Settlement"** means that Settlement Agreement signed on November 25, 2025, between Plaintiffs and Elite Turnaround Specialists, Ltd.

22. **"Excel Settlement"** means that Settlement Agreement signed on May 7, 2026, between Plaintiffs and Excel Construction and Maintenance VI, Inc.

23. **"Final Approval Hearing"** means the hearing set by the Court to consider final approval of the Settlement.

24. **"Final Approval Order"** means the Court's Final Approval Order and Judgment with respect to the Settlement.

25. **"Gross Settlement Fund"** means the non-reversionary common fund total gross amount of $35,000,000.00, plus any interest earned on the Gross Settlement Amount from and after the date such amount is deposited in the interest-bearing account referred to in paragraph II(53), of which: (1) 50% shall be funded by or on behalf of EIG Global Energy Partners, LLC; and (2) 50% shall be funded by the Settling Insurers on behalf of LBV and LBE.[1] The Gross Settlement Fund shall be used as set forth in this Agreement to make settlement payments to Settlement Class Members, pay attorneys' fees and costs to Class Counsel, pay any service awards, and pay Settlement Administration Costs, all as approved by the Court and pursuant to the terms set forth in the Settlement Agreement, and to make payments to resolve the Parallel Litigations.

---

[1] The Settling Insurers' respective contribution is as follows: $15,000,000.00 shared equally by Lloyd's of London Syndicate 1084 and Apollo Liability Consortium 9984, as joint subscribers under Policy No. ENCAS2000011; and $2,500,000.00 by AXIS Surplus Insurance Company under Policy No. EAU646295/01/2020.

26. **"Incidents"** shall have the same meaning as used in Plaintiffs' Complaint. *See* Dkt. 1327 at ¶ 8.

27. **"LBE"** means Limetree Bay Energy, LLC and any of its current and former predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents or any persons acting or purporting to act on their behalf (though it specifically excludes any Non-Released Parties).

28. **"LBV"** means Limetree Bay Ventures, LLC and any of its current and former predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents or any persons acting or purporting to act on their behalf (though it specifically excludes any Non-Released Parties).

29. **"LBR"** means Limetree Bay Refining, LLC, together with all of its predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents, and any persons acting or purporting to act on its behalf.

30. **"LBT"** means Ocean Point Terminals, LLC (formerly Limetree Bay Terminals, LLC), together with all of its predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents, and any persons acting or purporting to act on its behalf.

31. **"Liaison Counsel"** means Lee J. Rohn of Lee J. Rohn & Associates LLC.

32. **"Litigation"** means the following litigations, including any consolidated litigation thereof: (1) *Shirley, et al. v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00259 (D.V.I.);

9

(2) *Cotton, et al. v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00261 (D.V.I.); (3) *Moorhead, et al. v. Limetree Bay Ventures, LLC, et al.*, No. 1:21-cv-00260 (D.V.I.); (4) *Boynes, et al. v. Limetree Bay Refining, LLC, et al.*, No. 1:21-cv-00253 (D.V.I.) ("*Boynes*"); (5) *Boynes, et al. v. Limetree Bay Refining, LLC, et al.*, No. 1:21-cv-00252 (D.V.I.).

33.     **"Limetree Bay Refinery"** or **"Refinery"** shall have the same meaning as used in Plaintiffs' Complaint. *See* Dkt. 1327 at ¶ 1.

34.     **"Liquidating Trust"** means the liquidating trust established by the Bankruptcy Court pursuant to the Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors. *See In re Limetree Bay Services, LLC, et al.*, No. 4:21-bk-32351 (ECF No. 1454).

35.     **"Liquidating Trustee"** means David M. Dunn of Province, LLC, the trustee of the Liquidating Trust appointed by the Bankruptcy Court pursuant to the Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors. *See In re Limetree Bay Services, LLC, et al.*, No. 4:21-bk-32351 (ECF No. 1454).

36.     **"Net Settlement Fund"** means the Gross Settlement Fund minus any Court-approved attorneys' fees and costs to Class Counsel, service awards, and Settlement Administration Costs.

37.     **"Non-Released Parties"** means any of the Defendants in the Litigation (including their parent companies, subsidiaries, shareholders, members, officers, directors, employees, contractors, insurers, attorneys, and successors), except the Released Parties and the Related Settlement Parties.

38.     "**Non-Settling Insurers**" means any insurer other than the Settling Insurers.

39.     "**Notice Date**" means the date on which the Settlement Administrator has implemented the Notice Plan approved by the Court in its Preliminary Approval Order and shall

be no later than thirty (30) days after the entry of the Court's Preliminary Approval Order. It is the intention of the Parties that the Notice Date shall be the same for both this Settlement and the Related Settlements.

40.    "**Notice Plan**" means the plan of providing notice of the Settlement Agreement to the Settlement Class as approved by the Court in its Preliminary Approval Order.

41.    **"Objection and Opt-Out Deadline"** means the date sixty (60) days after the Notice Date.

42.    "**Parallel Litigations**" means (1) *Carol McCurdy Ritter et al. v. Limetree Bay Terminals, LLC et al.*, Case No. SX-2021-CV-00781 (the "Carol McCurdy Action") and (2) *Wyn Charlery v. Limetree Bay Terminals LLC et al.*, Case No. SX-2021-CV-00494 (the "Charlery Action"). Except for the Carol McCurdy Action, the Charlery Action, and *Hilda McCurdy Ritter et al. v. Limetree Bay Terminals, LLC et al.*, Case No. SX-2022-CV-00142, which is expressly excluded from the definition of "Parallel Litigations," Class Counsel represent and warrant that they are not currently aware of any other pending individual action, lawsuit, claim, or proceeding asserted by any individual plaintiff against the Settling Defendants or any of the Released Parties arising out of, based upon, or relating to the Incidents or the subject matter of the foregoing litigations.

43.    "**Party**" or "**Parties**" means Plaintiffs, the Settling Defendants, and the Settling Insurers.

44.    "**Pinnacle Settlement**" means that Settlement Agreement (No. 21-CV-253, ECF No. 1199-1) signed on April 28-29, 2025, between Plaintiffs and Pinnacle Services, LLC.

45.    **"Plaintiffs"** has the meaning set forth in the preamble.

11

46.    "**Preliminary Approval Order**" means the Court's Order granting preliminary approval of the Settlement Agreement. The Parties will agree to a proposed Preliminary Approval Order prior to the filing of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and such proposed Preliminary Approval Order will be an exhibit to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and subject to the approval of the Court.

47.    "**Related Settlements**" means the ArcLight/Freepoint Settlement, the ETS Settlement, the Excel Settlement, the Pinnacle Settlement, the UPS Settlement, the Versa Settlement, and any other settlement as to which a preliminary approval motion is submitted prior to, or reasonably contemporaneous with, the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement resolving the Parties' Settlement as set forth herein.

48.    "**Related Settlement Parties**" and each a "**Related Settlement Party**" means Defendants ArcLight Capital Partners, LLC; ArcLight Energy Partners Fund VI, L.P.; ArcLight Limetree AIV, L.P.; Limetree Bay Holdings, LLC; Limetree Bay Preferred Holdings, LLC; Freepoint Commodities LLC; Pinnacle Services, LLC; Universal Plant Services (VI), LLC; Excel Construction and Maintenance VI, Inc.; Elite Turnaround Specialists, Ltd.; Versa Integrity Group, Inc.; and any other Defendant for whom a preliminary approval motion is submitted prior to, or reasonably contemporaneous with, the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement resolving the Parties' Settlement as set forth herein.

49.    "**Released Parties**" has the meaning set forth in paragraph VI(1).

50.    "**Settlement Administrator**" means Epiq Class Action & Mass Tort Solutions, Inc., or another independent third-party administrator agreed to by the Parties to effectuate the Notice Plan, administer this Settlement jointly with the Related Settlements, and perform all duties assigned to the Settlement Administrator in this Settlement and the Related Settlements. All

reasonable fees and costs billed by the Settlement Administrator approved by Co-Lead Class Counsel will be paid from the Gross Settlement Fund and the Settlement Funds established in the Related Settlements, which are intended to be administered together.

51. "**Settlement Administration Costs**" means the reasonable fees and expenses of the Settlement Administrator incurred in providing notice to the Settlement Class and administering the Settlement. Settlement Administration Costs that have been incurred are not recoverable by the Settling Defendants in the event the Settlement is not finally approved, is not upheld on appeal, or does not reach the Effective Date, but the remainder of the Gross Settlement Fund (including any interest earned on the Gross Settlement Fund) if the Settlement is not finally approved shall be returned to the Settling Defendants and the Settling Insurers by the Settlement Administrator.

52. "**Settlement Class**" or "**Settlement Class Members**" means all persons or entities: (a) who owned or rented property (real and/or personal) in the Affected Geographic Area on or after February 3, 2021; or (b) who resided in, worked in, owned or operated a business in, or were present in the Affected Geographic Area during the time period from February 3, 2021 to May 26, 2021, and includes, without limitation, all persons or entities who are retained clients of any law firms comprising Class Counsel before the date of execution of the Settlement Agreement and who assert or could assert claims arising out of the Incidents.

53. "**Settlement Escrow Account**" means an interest-bearing escrow account at Huntington Bank to be treated as a "Qualified Settlement Fund" for federal income tax purposes pursuant to Internal Revenue Code Section 468B and the Regulations issued thereto. Co-Lead Class Counsel shall be parties to the escrow agreement for the Settlement Escrow Account. The Settlement Administrator shall timely and properly prepare and deliver the necessary

documentation for signature by all necessary parties and thereafter cause the appropriate filings to occur. The Settlement Administrator shall be responsible for filing federal, state, and local tax returns for the Settlement Escrow Account and paying from the Settlement Escrow Account any taxes owed with respect to the Qualified Settlement Fund.

54.    "**Settlement Payment**" means any settlement payment issued to a Settlement Class Member by the Settlement Administrator for approved payments made pursuant to the method by which Settlement Class Members qualify for payment as described in this Agreement. Settlement Payments may be made via check if a paper check is requested by the Settlement Class Member on their Claim Form, or via other reasonable payment methods such as Zelle, Venmo, or payment card.

55.    "**Settlement Website**" means the settlement website established by the Settlement Administrator, on which the Class Notice and other information relevant to this Settlement Agreement will be posted for the Settlement Class Members' benefit. The URL of the Settlement Website shall be www.LimetreeBaySettlement.com.

56.    "**Settling Defendants**" means EIG, LBV, and LBE (though it specifically excludes any Non-Released Parties).

57.    "**Settling Insurers**" means (i) Lloyd's of London Syndicate 1084 ("The Chaucer Group") and Apollo Liability Consortium 9984 ("Apollo Syndicate Management Limited"), as joint subscribers to Policy No. ENCAS2000011 (the "First Layer Excess Policy"), the $15,000,000.00 limit of which is fully exhausted through their contribution to the Gross Settlement Fund; and (ii) AXIS Surplus Insurance Company ("AXIS") with respect to Policy No. EAU646295/01/2020 (the "AXIS Policy"), but only to the extent of AXIS's obligations to defend and indemnify LBV and LBE for the claims asserted in the Litigation by Plaintiffs and the

14

Settlement Class. This definition of "**Settling Insurers**" includes The Chaucer Group, Apollo Syndicate Management Limited, AXIS and their respective predecessors, successors, subsidiaries, affiliates, assigns, and agents, and any persons acting or purporting to act on their behalf, but only in those capacities. For the avoidance of doubt, this definition of "**Settling Insurers**" excludes The Chaucer Group, Apollo Syndicate Management Limited, AXIS, and any such predecessors, successors, subsidiaries, affiliates, assigns, agents, or persons acting or purporting to act on their behalf with respect to any insurance coverage other than the First Layer Excess Policy or the AXIS Policy that provide or may provide coverage for the claims asserted in the Litigation and Parallel Litigations.

58.     "**UPS Settlement**" means that Settlement Agreement signed on October 24, 2025, between Plaintiffs and Universal Plant Services (VI), LLC.

59.     "**Versa Settlement**" means that Settlement Agreement signed on October 14, 2025, between Plaintiffs and Versa Integrity Group, Inc.

## III.    <u>MOTION FOR PRELIMINARY APPROVAL</u>

Prior to July 21, 2026, Plaintiffs shall file with the Court a Motion for Preliminary Approval of Class Action Settlement ("Motion for Preliminary Approval"), which seeks entry of the Preliminary Approval Order that conditionally certifies the Settlement Class and preliminarily approves the Settlement as fair, reasonable, and adequate, and seeks to administer this Settlement in conjunction with the other Settlement Agreements referenced in the definitions section above.

## IV.    <u>SETTLEMENT CONSIDERATION</u>

1.     Within thirty (30) days after entry of the Preliminary Approval Order or thirty (30) days after the conditions in paragraph IV(2) have been met (whichever is later), EIG Global Energy Partners, LLC shall deposit or cause to be deposited into the Settlement Escrow Account an amount

equal to $150,000.00, and The Chaucer Group and Apollo Syndicate Management Limited shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $150,000.00 on behalf of LBV and LBE. Within thirty (30) days after the Effective Date, EIG Global Energy Partners, LLC shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $750,000.00, and The Chaucer Group and Apollo Syndicate Management Limited shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $750,000.00 on behalf of LBV and LBE. Within ninety (90) days after the Effective Date, EIG Global Energy Partners, LLC shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $16,600,000.00; The Chaucer Group and Apollo Syndicate Management Limited shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $14,100,000.00, on behalf of LBV and LBE; and AXIS shall deposit or cause to be deposited into the Settlement Escrow Account an amount equal to $2,500,000.00, on behalf of LBV and LBE. EIG Global Energy Partners, LLC's and the Settling Insurers' respective obligations to make the payments contemplated in this Agreement shall be individual obligations and not a joint and several obligation.

2.      Within fourteen (14) days after the execution of this Settlement Agreement, Class Counsel shall provide the Settling Defendants and the Settling Insurers with payment instructions for the Settlement Escrow Account on the letterhead of Huntington Bank, and shall be available to verify the payment instructions by telephone or other audio means. In no event shall the payments specified in paragraph IV(1) be due before adequate payment instructions are provided and verified in accordance with this paragraph.

3.      Any interest that accrues on any portion of the Gross Settlement Fund shall be included in the definition of "Gross Settlement Fund." Other than their contribution of the Gross

16

Settlement Fund as set forth above, Settling Defendants and Settling Insurers shall have no obligation to make any additional payment in connection with the Settlement. If the Settlement is not finally approved, is not upheld on appeal, or does not reach the Effective Date, the Gross Settlement Fund (including any interest earned) other than any Settlement Administration Costs incurred up to that date (as allocated to this Settlement), shall be returned by the Settlement Administrator to the entities that funded the Gross Settlement Fund, in proportion to their respective contributions, within ten (10) days of, as applicable, the failure to obtain a Final Approval Order, issuance of a mandate by the appellate court, or an occurrence indicating a final failure to reach the Effective Date.

4.      If approved by the Court as provided herein, the Gross Settlement Fund shall be added to any other Gross Settlement Funds established as part of the Related Settlements and shall be managed and distributed through the Allocation Plan set forth in the ArcLight/Freepoint Settlement Agreement, including all notices and plan administration.

## V.      SETTLEMENT CLASS CERTIFICATION

The Parties stipulate and agree for purposes of effectuating this Agreement that all prerequisites for certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) are met. If the Court does not grant final approval of this Settlement Agreement, or if this Settlement Agreement does not reach the Effective Date for any reason, then the certification of the Settlement Class shall be void and any order conditionally certifying the Settlement Class shall become null and void and shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in the Litigation or in any other case or controversy, and the Parties shall be restored to their respective positions as of the date before this Settlement Agreement was executed.

17

Docusign Envelope ID: F75D7295-3808-88AB-81D3-7FB0B86A9A17

## VI.    RELEASED CLAIMS

1.      Upon the Effective Date, Plaintiffs and the Settlement Class shall release and discharge (i) the Settling Defendants and their respective present and former predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents, and any persons acting or purporting to act on their behalf (but specifically excluding any Non-Released Parties); and (ii) the Settling Insurers (items (i) and (ii), collectively, the "**Released Parties**"), from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or any Settlement Class Members ever had, now have, may have, or hereafter can, shall, or may ever have against the Released Parties, on the basis of, arising from, or relating to the claims alleged in the Litigation and Parallel Litigations, less any opt-out Plaintiffs as contemplated herein.

2.      For the avoidance of doubt, the Settlement shall not release, waive, compromise, or otherwise affect any claims, rights, demands, or causes of action that Plaintiffs, Settlement Class Members, and plaintiffs in the Parallel Litigations have or may have against any Non-Released Party or Non-Settling Insurer.

3.      With respect to the subject matter of the Litigation and Parallel Litigations, Plaintiffs and Settlement Class Members hereby expressly waive the benefits of any statutory provision or common law rule that provides, in substance or effect, that a general release does not extend to claims which the party does not know or suspect to exist in its favor at the time of

executing the release, which if known by it, would have materially affected its settlement with any other party.

4.    This Agreement shall be binding upon, and shall inure to the benefit of, the heirs, successors, assigns, executors, and legal representatives of the Parties to this Settlement Agreement and all Released Parties; provided, however, that the term "Released Parties" as used herein shall not include any Non-Released Parties or Non-Settling Insurers, and all claims that can be asserted by Plaintiffs and Settlement Class Members, directly or derivatively, against any Non-Released Parties or Non-Settling Insurers, including through the Settling Defendants, are hereby preserved and not released under this Agreement. For the avoidance of doubt, this Settlement Agreement shall not release, waive, compromise, or otherwise affect any claims, rights, demands, or causes of action that Plaintiffs or Settlement Class Members have or may have against any Non-Released Party or Non-Settling Insurer.

5.    Upon the Effective Date, the Settling Defendants and Settling Insurers hereby release and discharge all Related Settlement Parties and their present and former respective predecessors, successors, parent companies, subsidiaries, affiliates, assigns, shareholders, members, officers, directors, employees, attorneys, contractors, consultants, and agents or any persons acting or purporting to act on their behalf (though specifically excluding any Non-Released Parties or Non-Settling Insurers) from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Settling Defendants or Settling Insurers ever had, now have, may have, or hereafter can, shall,

19

or may ever have against the Related Settlement Parties, on the basis of, arising from, or relating to the claims alleged in the Litigation and Parallel Litigations. However, the release by the Settling Defendants and Settling Insurers in favor of any Related Settlement Party shall be effective only to the extent that such Related Settlement Party obtains final approval of a settlement with Plaintiffs and the Settlement Class Members and, further, only to the extent that such Related Settlement Party provides a reciprocal release of the Settling Defendants and the Settling Insurers in like manner. Nothing in this Settlement shall prevent the Settling Defendants or Settling Insurers from asserting any claim by way of defense, crossclaim, counterclaim, or setoff against a Related Settlement Party that pursues a claim against the Settling Defendants or Settling Insurers.

6.      Except with respect to the exhaustion of the First Layer Excess Policy and the AXIS Policy by the amounts of the Settling Insurers' contributions to the Gross Settlement Fund, to the extent any insurance policy issued by or to a Non-Released Party provides, or may provide, primary coverage, drop-down coverage, or any other form of coverage for any portion of Plaintiffs' or Settlement Class Members' losses, no payment made by or on behalf of the Settling Defendants (or Settling Insurers) shall be construed to (a) satisfy, substitute for, or operate as coverage for any such losses by any Non-Released Party; or (b) reduce, waive, or otherwise affect any obligations owed by any Non-Released Party.

7.      The Settling Insurers agree not to pursue any rights of contribution, indemnity, subrogation and/or apportionment that they may have against any other person or entity relating to the payment of the Gross Settlement Fund, except that the Settling Insurers may assert such a claim solely by way of defense, counterclaim, or setoff against a person or entity that pursues a claim of coverage, contribution, indemnity, subrogation, and/or apportionment against them. For the avoidance of doubt, nothing in this paragraph shall affect any rights that the Settling Insurers

20

may have with respect to their reinsurers (in their capacity as such) pursuant to reinsurance agreements, contracts, treaties, or other reinsurance relationships.

8.     Upon the Effective Date, LBV and LBE agree to release any and all claims that they may have against The Chaucer Group and Apollo Syndicate Management Limited as joint subscribers to the First Layer Excess Policy for past, present, and future attorneys' fees and costs under such policy relating to or arising out of the Litigation or the Incidents. The Chaucer Group and Apollo Syndicate Management Limited shall have no obligation under the First Layer Excess Policy to pay any further amounts to or on behalf of LBV and LBE other than their shares of the Gross Settlement Fund as set forth above. Upon the Effective Date, The Chaucer Group and Apollo Syndicate Management Limited likewise agree to release any claims that they may have against LBV or LBE in connection with the First Layer Excess Policy.

9.     Upon the Effective Date, LBV and LBE agree to release any and all claims that they may have against AXIS under the AXIS Policy for the claims against LBV and LBE that are released by the Plaintiffs and the Settlement Class as set forth herein. AXIS has represented that it has committed its remaining limits under the AXIS Policy (above AXIS's $2,500,000.00 contribution to the Gross Settlement Fund) toward settlement on behalf of other insureds and, on that basis, asserts that the AXIS Policy is therefore deemed exhausted. Based on this representation regarding the exhaustion of the AXIS Policy, and contingent upon AXIS actually paying its remaining limits in connection with the foregoing settlement, LBV and LBE agree to release any and all claims they may have against AXIS for additional amounts (above the $2,500,000.00 contribution to the Gross Settlement Fund) under the AXIS Policy arising out of or related to the Litigation or the Incidents, including but not limited to any attorneys' fees or costs, and further agree that no additional amounts shall be owed by AXIS. LBV and LBE further agree that AXIS's

21

commitment of its remaining limits, and its expected payment of its remaining limits, under the AXIS Policy toward a settlement on behalf of other insureds: (a) does not constitute a breach of any duty owed by AXIS to LBV or LBE; and (b) such payments will erode the applicable limit of the AXIS Policy and, once paid, are unavailable for recovery by LBV and LBE. Upon the Effective Date, AXIS likewise agrees to release any claims that it may have against LBV or LBE in connection with the AXIS Policy, in reciprocal scope and coextensive with the exhaustion of AXIS Policy limits as set forth in this paragraph VI(9).

10.     For the avoidance of doubt, the releases of the Settling Insurers set forth in this Agreement do not affect or apply to any insurance policy other than the First Layer Excess Policy and the AXIS Policy, and do not affect or apply to any person or entity (including all Non-Released Parties) other than the persons and entities identified in paragraph II(57).

11.     It is also the intention of the Parties that upon the Effective Date, plaintiffs in the Parallel Litigations shall be deemed to have released and discharged the Released Parties from all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that plaintiffs in the Parallel Litigations ever had, now have, may have, or hereafter can, shall, or may ever have against the Released Parties, on the basis of, arising from, or relating to the claims alleged in those Parallel Litigations in exchange for consideration from the Gross Settlement Fund.

## VII.   SETTLEMENT ADMINISTRATION AND NOTICE PLAN

22

1.      The Parties intend that the Settlement shall be administered jointly with the Related Settlements and utilize the same Notice Plan and Notice of Settlement as set forth in Section VI of the ArcLight/Freepoint Settlement, which shall be modified to account for the Settlement as well as the Related Settlements. The Parties acknowledge and agree that the Notice Plan constitutes due and sufficient notice under Rule 23 of the Federal Rules of Civil Procedure and due process.

2.      The Settling Defendants shall give notice of the Settlement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), by mailing the CAFA notice within ten (10) days of the filing of the Motion for Preliminary Approval of Class Action Settlement and shall provide Class Counsel with a copy of all such notices.

## VIII.   **CLAIMS SUBMISSION PROCESS AND ADMINISTRATION**

The Parties intend that the Settlement shall utilize the same Claim Submission Process, and Claim Form as set forth in Section VII of the ArcLight/Freepoint Settlement.

## IX.      **OBJECTIONS AND OPT-OUTS**

1.      Any Settlement Class Member who wishes to object to this Settlement Agreement must serve on the Settlement Administrator his or her objection no later than the Objection and Opt-Out Deadline. Class Counsel shall use reasonable, good faith efforts to encourage participation in the Settlement Class. Any objection must be in writing, and include the following information: (a) the objector's name, address, telephone number, email address, and, if represented by counsel, the name, address, telephone number, and email address of his or her counsel; (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or his or her counsel; (c) copies of any papers, briefs, or other documents upon which the objection is based or upon which the objector or his or her counsel intends to rely; (d) a statement of whether the objector or his or her counsel intends to appear at the Final Approval Hearing, either

23

in person or through counsel; and (e) the objector's handwritten signature. Any objector or his or her counsel who intends to make an appearance at the Final Approval Hearing shall serve on all Co-Lead Class Counsel and Counsel for Settling Defendants a notice of intention to appear at the Final Approval Hearing by no later than the Objection and Opt-Out Deadline.

2.    The Settlement Administrator shall provide Co-Lead Class Counsel and Counsel for Settling Defendants with copies of any objections received by it on a weekly basis.

3.    Any Settlement Class Member who wishes to be excluded from the Settlement (*i.e.*, to opt out of the Settlement Class such that they are not bound by the Settlement Agreement) must serve a written request for exclusion to the Settlement Administrator, emailed or postmarked by the Objection and Opt-Out Deadline. For individuals, each written request to be excluded from the Settlement Class must set forth the name, address, telephone number, and email address of the individual seeking exclusion, state that the individual requests exclusion from the Settlement Class (and can only request exclusion for that one individual), and be personally signed by the individual seeking exclusion. For legal entities, each written request to be excluded from the Settlement Class must set forth the name of the entity seeking exclusion, be signed by an officer or director of the entity with authority to seek exclusion, and can only request exclusion for that one entity. Non-conforming opt-out notices shall have no effect.

4.    Any Settlement Class Member who does not submit a timely objection or request for exclusion shall be bound by all subsequent proceedings and orders in the Litigation.

5.    The Settlement Administrator shall receive and maintain the exclusion requests and provide copies of any exclusion requests to Co-Lead Class Counsel and Counsel for Settling Defendants, as they are received. A complete list of all Settlement Class Members who submitted timely, valid exclusion requests, as well as any objections to the Settlement, will be filed with the

Court as part of a Declaration of the Settlement Administrator at the same time that Plaintiffs file their Motion for Final Approval of Class Action Settlement.

6.    Any statement or submission purporting or appearing to be both an objection and opt-out shall be treated as a request for exclusion.

7.    No later than five (5) days after the Objection and Opt-Out Deadline, the Settlement Administrator shall provide to Co-Lead Class Counsel and Counsel for Settling Defendants a complete list of opt-outs together with copies of the opt-out requests and any other related information.

8.    In the event that the number of valid requests for exclusion identified in the exclusion list exceeds thirty (30) Settlement Class Members, any Settling Defendant or Settling Insurer may elect to, but is not obligated to, withdraw from the Settlement. The Parties agree that if any Settling Defendant or Settling Insurer withdraws pursuant to the foregoing sentence, the Settlement shall be void ab initio and have no force or effect whatsoever, and that no Party will have any further obligation to perform under this Agreement. Each Settling Defendant or Settling Insurer must notify Class Counsel and the Court of its election to withdraw not later than ten (10) days after the Administrator sends the final exclusion list to Counsel for Settling Defendants; late elections will have no effect. If any Settling Defendant or Settling Insurer withdraws from the Settlement pursuant to this paragraph, any deposits made toward the Gross Settlement Fund, including any interest earned and excluding any Settlement Administration Costs incurred up to that date of withdrawal, shall be returned by the Settlement Administrator to the entities that funded the deposits in proportion to their contribution to the deposits.

9.    The Settling Insurers', Class Counsel's and Counsel for Settling Defendants commit to act in good faith and refrain from any act that would deny, limit or hamper the benefits

25

of the Settlement Agreement. The Settling Insurers, Class Counsel and Counsel for Settling Defendants, to the fullest extent allowed by law and professional responsibility obligations, agree to not solicit any Settlement Class Member to opt-out of participation in this Settlement.

## X.     ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1.      On behalf of all Class Counsel, Co-Lead Class Counsel will file a Motion for Attorneys' Fees, Costs, and Service Awards twenty-one (21) days before the Objection and Opt-Out Deadline, with the total amount of attorneys' fees requested not to exceed one-third of the Gross Settlement Fund, plus reimbursement of out-of-pocket expenses as documented to the Court. These amounts, as approved by the Court, shall be paid to Co-Lead Class Counsel within thirty (30) days after the Effective Date, and thereafter allocated to Class Counsel by Co-Lead Class Counsel. Plaintiffs may make an application for service awards in amounts not to exceed $5,000.00 for each Plaintiff to compensate them for their time and efforts, and services performed, on behalf of the Settlement Class, which, if granted by the Court, will be paid out of the Gross Settlement Fund within thirty (30) days after the Effective Date. At the option of Co-Lead Class Counsel, a motion under this paragraph may address this Settlement Agreement and any other settlement agreement in a combined motion.

2.      The Parties acknowledge that they negotiated and agreed upon all consideration to the Plaintiffs and Settlement Class and that Settling Defendants and Settling Insurers have not discussed or negotiated and will play no part in determining the amount or allocation of Class Counsels' attorneys' fees and expenses, or service awards. The Settling Defendants and Settling Insurers shall not be responsible for or otherwise obligated to pay any amounts whatsoever in excess of the Gross Settlement Fund for Attorneys' Fees, Costs, and Service Awards or any other costs.

## XI.    ENTRY OF FINAL APPROVAL ORDER AND JUDGMENT

This Settlement Agreement is subject to and conditioned upon the issuance by the Court of a Final Approval Order that grants final approval of this Settlement Agreement. The Final Approval Order shall:

1.    Grant final certification of the Settlement Class for settlement purposes only;

2.    Finally approve the Settlement Agreement as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3.    Find that the Notice Plan complied with the Due Process Clause, and was fair, adequate, and sufficient, as the best practicable notice under the circumstances, and reasonably calculated to apprise Settlement Class Members of the Litigation, the Settlement Agreement, their objection rights, and their opt-out rights;

4.    Direct that the Litigation be dismissed with prejudice as to the Settling Defendants; and

5.    Retain the Court's continuing and exclusive jurisdiction over the Parties, including all Settlement Class Members, to construe and enforce this Settlement Agreement in accordance with its terms for the mutual benefit of the Parties.

## XII.    TERMINATION

If this Settlement Agreement is not finally approved, is not upheld on appeal, or does not reach the Effective Date, including if Settling Defendants or Settling Insurers elect to terminate this Settlement Agreement pursuant to paragraph IX(8), then this Settlement Agreement shall be terminated and rendered null and void; all negotiations, proceedings, and documents prepared, and statements made in connection therewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law, including but not limited to with respect to the Settlement Class definition; and

Docusign Envelope ID: F7ED7295-3898-88AB-81D3-7FB0B96A9A17

all Parties to this Agreement shall be restored to their respective positions as of the date before this Settlement Agreement was executed and stand in the same procedural position as if this Settlement Agreement had not been negotiated, made, or filed with the Court.

## XIII.  DENIAL OF WRONGDOING AND LIABILITY

By negotiating and signing this Settlement Agreement and settling the Litigation and Parallel Litigations, the Settling Defendants are not admitting any liability, fault, or violation of law. The Settling Defendants deny all allegations and claims asserted against them and do not believe that they are liable for any of Plaintiffs' or the Settlement Class Members' alleged harms. The Parties agree and acknowledge that the Settling Defendants are entering into this Agreement and settling the Litigation and Parallel Litigations to avoid the risk, burden, and expense of continued litigation.

## XIV.  ADDITIONAL PROVISIONS

1.  **Parties to the Related Settlement Agreements**.  The Settling Defendants release the Related Settlement Parties for any claims, third-party claims, crossclaims, counterclaims, or causes of action arising out of or related to the Litigation and Parallel Litigations. Plaintiffs and Settlement Class Members agree that, in any future class settlement in the Litigation with any future settling Defendant(s), that Plaintiffs and Settlement Class Members shall obtain a release from such settling Defendant(s) of any third-party claims, crossclaims, or counterclaims that such future settling Defendant(s) may have or assert against the Settling Defendants.

2.  **Provisions in Related Settlement Agreements**.  Plaintiffs represent and warrant that the terms and conditions provided to the Settling Defendants and Settling Insurers in this Agreement specific to the number of opt-outs and protections afforded against existing or future cross-claims or other incidental demands (including any bar orders) are and will be at least as

favorable to the Settling Defendants as those provided to any other defendant in the Litigation and Parallel Litigations. If Plaintiffs enter into a settlement agreement with any other Defendant with such terms or conditions that are more favorable than those in this Agreement, then—after such other settlement agreement is preliminarily approved by the Court and upon Settling Defendants' and Settling Insurers' written request to Co-Lead Class Counsel—Plaintiffs shall promptly amend this Agreement to afford the Settling Defendants those same, more favorable terms, and promptly seek Court approval thereof.

3.     **Offsetting**.  To the extent any Plaintiff or Settlement Class Member or any Non-Released Party obtains a final and non-appealable judgment against any party other than a Settling Defendant or Settling Insurer for any claims or causes of action arising out of or related to the Litigation and Parallel Litigation that are subject to the release contained in the Settlement Agreement with the Settling Defendants and the Settling Insurers, then the specific portion of any such judgment that may later be found via a final, non-appealable judgment of a court of competent jurisdiction to be the responsibility of the Settling Defendants or Settling Insurers shall not be recoverable by any Plaintiff, Settlement Class Member or Non-Released Party, and the recovery of all such Plaintiffs, Settlement Class Members and Non-Released Parties shall be reduced by the amount of the Settling Defendants' or the Settling Insurers' responsibility therefor. Each Plaintiff and Settlement Class Member agrees as part of the release in the Settlement to disclaim such recovery and agrees to forfeit it, and to take all appropriate legal action to have such claims dismissed at every opportunity and at their own expense.

4.     The Parties intend that this Settlement shall result in a *pro rata* reduction of the Plaintiffs' and Settlement Class Members' damages recoverable against any Non-Released Party but only to the extent provided under any applicable law, statute, regulation, or common law

29

principle that provides contribution rights against the Settling Defendants and the Settling Insurers concerning any claim relating to the Litigation and Parallel Litigation. For the avoidance of doubt, such pro rata reduction would allow any Non-Released Parties to reduce the amount of the Plaintiffs' and Settlement Class Members' recoverable damages against them in an amount equal to any share that is actually apportioned to the Settling Defendants and the Settling Insurers pursuant to a final, non-appealable judgment of a court of competent jurisdiction.

5. In any future settlement in the Litigation and Parallel Litigation with any future settling party(ies), Plaintiffs shall obtain from such settling party(ies) a release of any third-party claims, crossclaims, or counterclaims that the settling party(ies) may have or assert against the Settling Defendants or the Settling Insurers. When such future settling party(ies) provide a release of any such claims, then the Settling Defendants and the Settling Insurers shall provide a reciprocal release to those settling party(ies); provided, however, that nothing herein shall require the Settling Defendants to provide any consideration for such a mutual release beyond the mutual release itself, to release any claims relating to putative class members who opt out of any settlement class, or to provide any releases prior to the Effective Date.

6. **<u>Bar Order</u>**. This Settlement Agreement is conditioned on entry by the Court of a Bar Order (the "Bar Order"), at the time the Court preliminarily approves the Settlement Agreement, the terms of which Bar Order shall be substantially the same as that set forth in Exhibit A–Proposed Bar Order. Additionally, Settling Defendants and Settling Insurers may, at their option, elect to proceed with the Settlement even in the absence of such Bar Order.

7. **<u>Medicare, Medicaid, and Other Liens</u>**. The Parties agree to cooperate in good faith to set forth procedures to fully protect the interests of Medicare under the Medicare Secondary Payor Act ("MSP"). The procedures the Parties will implement will determine whether there are

any healthcare liens or recovery claims related to the Incidents, this Litigation, or this Settlement Agreement that are, or may be, properly asserted on behalf of Medicare or any Medicare Advantage Organization, and will provide for the resolution of any such applicable liens.

8.      **Additional Litigation Obligations**.   In conjunction with seeking Preliminary Approval, Plaintiffs and the Settling Defendants shall file a notice with the Court to inform it of the Settlement and request that the Litigation be stayed solely as to the Settling Defendants pending the Court's approval of the Settlement and the Effective Date. The Settling Defendants agree not to move for a stay of the Litigation with respect to any other Defendants.

9.      **Cooperation**.   The Plaintiffs agree that Settling Defendants shall be relieved of their discovery obligations in the Litigation, and Plaintiffs shall likewise be relieved of their discovery obligations to Settling Defendants. Nothing herein shall affect obligations imposed by any protective order issued in the Litigation, including the Court's June 14, 2024 Confidentiality and Protective Order (No. 21-CV-00253, ECF. No. 680).

10.     **Settling Defendants' Attorneys' Fees and Costs**.   The Plaintiffs and the Settling Defendants shall bear their own attorneys' fees and costs in the Litigation and Parallel Litigations, provided, however, that except to the extent expressly released in Section VI, nothing in this Settlement Agreement shall be construed to prevent or preclude the Settling Defendants from seeking payment of defense and indemnity costs, including but not limited to such costs with respect to opt-outs and claims by Non-Released Parties, from Non-Settling Insurers.

11.     **Limitation on Liability**.   No person or entity shall have any claim against the Settling Defendants, Counsel for Settling Defendants, Settling Insurers, Plaintiffs, Class Counsel, Co-Lead Class Counsel, the Released Parties, and/or the Settlement Administrator based on any determinations, distributions, or payments made with respect to any Claim so long as this

31

Docusign Envelope ID: F75D7295-3898-88AB-81D3-7FB0B86A9A17

Agreement is administered in accordance with the Court's Preliminary Approval Order and Final Approval Order. The Settling Defendants, Counsel for Settling Defendants, Settling Insurers, Plaintiffs, Class Counsel, and Co-Lead Class Counsel shall not have any liability for claims of wrongful or negligent conduct on the part of the Settlement Administrator.

12. **<u>Bankruptcy Court Approval</u>**. After the entry of the Preliminary Approval Order, Co-Lead Class Counsel and Liaison Counsel shall, at their own expense, obtain the Bankruptcy Approval Order. Co-Lead Class Counsel shall coordinate with counsel for the Settling Defendants and the Settling Insurers to seek and obtain the Bankruptcy Approval Order. The Settling Defendants may, in their sole discretion and option, participate in briefing seeking the Bankruptcy Approval Order. For the avoidance of doubt, this paragraph is included in an abundance of caution and is not intended as an acknowledgment: (1) that the Liquidating Trust or Liquidating Trustee's statements regarding bankruptcy approval have merit, (2) that the Bankruptcy Court has jurisdiction over the Settling Defendants or Settling Insurers for purposes of the Bankruptcy Approval Order, or (3) that the Settling Defendants or Settling Insurers have consented or otherwise submitted to the jurisdiction of the Bankruptcy Court in connection with this Settlement, or otherwise.

13. **<u>Discussions with Liquidating Trust and Liquidating Trustee</u>**. Co-Lead Class Counsel shall exert reasonable efforts to resolve all disputes between, on the one hand, the Plaintiffs, the Settlement Class, the Settling Defendants, and the Settling Insurers and, on the other hand, the Liquidating Trust and the Liquidating Trustee.

14. **<u>Entire Agreement</u>**. This Settlement Agreement, including all exhibits hereto, shall constitute the entire agreement among the Parties with regard to this Settlement and shall supersede any previous agreements, representations, communications, and understandings among the Parties

with respect to the subject matter of this Settlement Agreement. This Settlement Agreement may not be changed, modified, or amended except in a writing signed by all Parties and if required, approved by the Court. The Parties contemplate that certain of the exhibits to the Motion for Preliminary Approval relating to the Notice Plan and Notice may have non-material modifications made by subsequent agreement of the Parties prior to dissemination to the Settlement Class without requirement of Court approval.

15.    **Governing Law**.  This Settlement Agreement shall be construed under and governed by the laws of the Virgin Islands, applied without regard to laws applicable to choice of law.

16.    **Counterparts and Electronic Signatures**.  This Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Electronic signatures sent by email or by electronic signature service such as DocuSign shall be treated as original signatures and shall be binding.

17.    **Representation by Counsel**.  The Parties are represented by competent counsel, and they have had an opportunity to consult and have consulted with counsel prior to executing this Agreement. Each Party represents that it understands the terms and consequences of agreeing to this Agreement and agrees to be bound by the terms set forth herein knowingly, intelligently, and voluntarily.

18.    **Binding Effect**.  This Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, assigns, executors, and legal representatives of the Parties to this Settlement Agreement and all Released Parties.

19.     **No Primary Drafter**.   The drafting of this Settlement Agreement has been by mutual participation of the Parties and their respective counsel after negotiation. None of the Parties shall be considered to be the primary drafter of this Settlement Agreement.

20.     **Effect of Waiver**.   The waiver by any Party of any provision of this Settlement Agreement shall not constitute a waiver of any other provision of this Settlement Agreement.

21.     **Authorization**.   All individuals signing this Settlement Agreement are fully authorized to do so.

22.     **Press Releases**.   The Parties, including Class Counsel and Counsel for Settling Defendants, shall provide one another any draft press releases regarding this Settlement at least five (5) days in advance of issuing any press release and each such press release is subject to the reasonable, good faith approval of the other party. Any other written public statement issued to the media concerning the Settlement that specifically mentions the Settling Defendants must contain reference to this Agreement's acknowledgment of the Settling Defendants' denial of any wrongdoing or liability as a part of the settlement.

23.     **Notices**.   All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by mail and email to the following addresses:

a.     If to the Plaintiffs or Co-Lead Class Counsel:

Shanon J. Carson
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
scarson@bm.net

Kerry J. Miller
MILLER THIBODEAUX
DYSART VEITH & PASCHAL, LLC
643 Magazine Street, Suite 405

34

New Orleans, Louisiana 70130

Daniel H. Charest
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
dcharest@burnscharest.com

            b.      If to Settling Defendants:

Kenneth M. Klemm
Adam B. Zuckerman
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
kklemm@bakerdonelson.com
azuckerman@bakerdonelson.com

Amy L. Champagne
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi 39211
achampagne@bakerdonelson.com

Adam N. Marinelli
BOLTNAGI PC
Merchants Financial Center
4608 Tutu Park Mall, Suite 202
St. Thomas, Virgin Islands 00802-1816
amarinelli@vilaw.com

*Counsel for Settling Defendants*


**AGREED TO BY THE PARTIES BY AND THROUGH THEIR RESPECTIVE COUNSEL.**

Dated: July 11, 2026

_____
Adam B. Zuckerman
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
For Settling Defendants

Dated: 7/13/2026

Signed by:
Shanon J. Carson
2A88C7565552496...
_____
Shanon J. Carson
BERGER MONTAGUE PC
For Plaintiffs

Dated:

July 10, 2026

_____
Kerry J. Miller
MILLER THIBODEAUX
DYSART VEITH & PASCHAL, LLC
For Plaintiffs

Dated: 7/10/26

_____
Daniel H. Charest
BURNS CHAREST LLP
For Plaintiffs

Settling Insurers:

Dated: July 10, 2026

_____
By: Jennifer E. Michel
For The Chaucer Group for and on behalf of
Lloyd's Underwriter Syndicate No. 1084 CSL,
subscribing to Policy No. ENCAS2000011

Dated: July 10, 2026

_____
By: Jennifer E. Michel
For Apollo Syndicate Management Ltd.,
subscribing to Policy No. ENCAS2000011

Dated: July 13, 2026

_____
By: Marie VanDam
For Axis Surplus Insurance Company, subscribing
to Policy No. EAU646295/01/2020

36

# EXHIBIT A

# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

# DIVISION OF ST. CROIX

CLIFFORD BOYNES, et al.,

   *Plaintiffs,*

  v.

LIMETREE BAY VENTURES, LLC, et al.,

   *Defendants.*

Civil Action No. 2021-0253

## [PROPOSED] ORDER

**AND NOW**, this ___ day of _____, 2026, upon considering Plaintiffs' Motion for Preliminary Settlement Approval (Dkt. No. 1744), the Parties' arguments before this Court on June 10, 2026 (Dkt. No. 1765), and upon considering Plaintiffs' supplemental memoranda and the following stipulation submitted by all parties to this action and dated June ____, 2026 (the "Stipulation") in response to this Court's Order at Dkt. No. 1766, the Stipulation is **SO-ORDERED**.

_____

     **KEARNEY, J.**

1

## STIPULATION

WHEREAS all Plaintiffs to the following actions pending in the United States District Court for the Virgin Islands, Civil Action Nos. 2021-0253, 2021-0259, 2021-0260, and 2021-0261 (the "Consolidated Cases" or the "Litigation") Clifford Boynes, Margaret Thompson, Delia Almestica, Edna Santiago, Guidrycia Wells, Mary L. Moorhead, Sirdrina Isaac-Joseph, Esther Clifford, Ryan Alleyne, Agnes Augustus, Alvina Jean-Marie Ilaraza, Helen Shirley, Cristel Rodriguez, John Sonson, Isidore Jules, Virginie George, and Minor Child O.N. (collectively, "Plaintiffs") on behalf of themselves and any Settlement Class Members as defined in Plaintiffs' respective settlement agreements with Settling Defendants (defined below) have entered and intend to enter into Class Action Settlement Agreements with certain defendants to the Litigation;

WHEREAS, on February 16, 2026 (Dkt. No. 1686), this Court entered an Order granting preliminary approval of settlements reached between Plaintiffs and ArcLight Capital Partners, LLC ("ArcLight CP"), ArcLight Energy Partners Fund VI, L.P. ("ArcLight Energy"), ArcLight Limetree AIV, L.P. ("ArcLight Limetree,"), Limetree Bay Holdings, LLC ("LBH"), Limetree Bay Preferred Holdings, LLC ("LBPH," and together with ArcLight Limetree, ArcLight Energy, ArcLight CP, and LBH "ArcLight"), and Freepoint Commodities, LLC ("Freepoint") (the "ArcLight/Freepoint Agreement"), and Pinnacle Services, LLC (the "Pinnacle Agreement," and together with the ArcLight/Freepoint Agreement, the "Group 1

Agreements") (ArcLight, Freepoint, and Pinnacle collectively, the "Group 1 Settling Defendants");

WHEREAS, Plaintiffs and Universal Plant Services (VI), LLC entered into a Class Action Settlement Agreement dated October 24, 2025 (the "UPS Agreement"), which is conditioned upon entry by the Court of a Bar Order as set forth in Section 25 of the Agreement;

WHEREAS, Plaintiffs and Excel Construction and Maintenance VI, Inc. entered into a Class Action Settlement Agreement dated May 7, 2026 (the "Excel Agreement"), which is conditioned upon entry by the Court of a Bar Order as set forth in Section 25 of the Agreement;

WHEREAS, Plaintiffs and Versa Integrity Group, Inc. entered into a Class Action Settlement Agreement dated October 14, 2025 (the "Versa Agreement"), which is conditioned upon entry by the Court of a Bar Order as set forth in Section 24 of the Agreement;

WHEREAS, Plaintiffs and Elite Turnaround Specialists, Ltd. entered into a Class Action Settlement Agreement dated November 25, 2025 (the "Elite Agreement"), which is conditioned upon entry by the Court of a Bar Order as set forth in Section 24 of the Agreement;

WHEREAS, "Group 2 Settling Defendants" shall refer collectively to Defendants Universal Plant Services (VI), LLC ("UPS"), Excel Construction and Maintenance VI, Inc. ("Excel"), Elite Turnaround Specialists, Ltd. ("Elite"), and Versa Integrity Group, Inc. ("Versa");

3

WHEREAS, "Group 2 Agreements" shall refer to the UPS Agreement, the Excel Agreement, the Versa Agreement, and the Elite Agreement;

WHEREAS, on May 4, 2026, Defendant BP Products North America Inc. filed an Answer, Affirmative Defenses and Cross-Claim (Dkt. No. 1743) against certain defendants to this action (the "Cross-Claim");

WHEREAS, "Settling Defendant" shall mean any defendant who prior to trial has been dismissed from this Litigation by reason of settlement with Plaintiffs, including but not limited to the Group 1 Settling Defendants;

WHEREAS, on May 18, 2026, certain Defendants in the Litigation—namely Limetree Bay Terminals, LLC ("LBT") and Limetree Bay Refining, LLC ("LBR") (ECF No. 1748); BP Products North America Inc. ("BP") (ECF No. 1749); and EIG Global Energy Partners, LLC ("EIG"), Limetree Bay Ventures, LLC ("LBV"), and Limetree Bay Energy, LLC ("LBE") (ECF No. 1751)—filed objections or responses to Sections 24 or 25 of the Group 2 Agreements ("Bar Orders"), all of which contain substantially similar bar orders;

WHEREAS, in response to those objections and to protect the rights of Remaining Defendants (defined below) to have the trier of fact allocate fault amongst all defendants to the Litigation regardless of whether they have settled prior to trial or not, and consistent with Federal Rule of Civil Procedure 1's directive that the Rules be construed, administered, and employed to secure the just, speedy, and inexpensive determination of every action and proceeding, the Parties to this Stipulation have agreed to the following terms as a condition to entry of any Settlement Agreement

4

and Bar Order between Plaintiffs and Settling Defendants, which may also serve to amend Sections 24 or 25 of the Group 2 Agreements (as relevant) as set forth herein;

WHEREAS, the Group 2 Agreements are conditioned upon entry of a bar order, and the Plaintiffs and the Group 2 Settling Defendants have agreed that the bar order contemplated by this Stipulation meets that condition;

WHEREAS, the provisions of this Stipulation and Bar Order shall apply to all prior, pending, and future Settlement Agreements between Plaintiff and any Settling Defendant, and shall amend and supersede any inconsistent provision in the Group 1 Agreements previously preliminarily approved at Dkt. Nos. 1686 and 1687; and

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Plaintiffs and Group 2 Settling Defendants, and any other Settling Defendant, stipulate and agree that any previously executed or future Settlement Agreement and Bar Order between Plaintiffs and any Settling Defendant is governed by this Stipulation and Order and must include the following language:

1.    **Bar Order**. This Settlement Agreement is conditioned on entry by the Court of a Bar Order (the "Bar Order"), at the time the Court preliminarily approves the Group 2 Settlement Agreements, the terms of which Bar Order shall include the following provisions or provisions substantially the same as the following provisions:

      a. Any and all Defendants to this action are barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim, whether styled as a cross-claim, a third-party claim, or as a claim in a separate action or in some other way, against Settling Defendants and

5

any of their predecessors, successors, direct or indirect subsidiaries, affiliates, assigns, insurers, and reinsurers arising under any federal, state, U.S. Virgin Islands, or foreign statutory or common-law rule, however styled, whether for common law, implied, contractual, or express indemnification, or contribution, or otherwise denominated, including claims for breach of contract or for negligence, where the claim is or arises from Plaintiffs' claims in the Litigation and the alleged injury to such person or entity arises from that person's or entity's alleged liability to a Plaintiff or any Settlement Class Member, including any claim in which a person or entity seeks to recover from Settling Defendants and any of their predecessors, successors, direct or indirect subsidiaries, affiliates, assigns, insurers, and reinsurers for (i) any amounts such person or entity has paid or might become liable to pay to a Plaintiff, the Class, or any Settlement Class Member and/or (ii) any costs, expenses, or attorneys' fees from defending any claim by a Plaintiff, the Class, or any Settlement Class Member. Except as stated in subsection c of this Section, all such claims are hereby extinguished, discharged, satisfied, and unenforceable.

b.  This Bar Order is intended to, and shall have the effect of, precluding any liability of the Settling Defendants and any of their predecessors, successors, direct or indirect subsidiaries, affiliates, assigns, insurers, and reinsurers to any person or entity for common law, implied, contractual, or express indemnification, contribution, or otherwise, on any cross-claim, third-party, or other claim that arises from a Plaintiffs' or Settlement Class Members' claim and where the alleged injury or damage to such person or entity arises from Settling Defendants' alleged liability to a Plaintiff, the Class, or any Settlement Class Member.

c.  Notwithstanding the terms of 1(a) and 1(b) above, with respect to any joint and several claim (*i.e.*, any claim in the operative complaint other than punitive damages directed at a specific party or any claim pled against a specific party that is not joint and several) that may be asserted against any Defendant who has not been dismissed from this action, either by reason of settlement or otherwise (the "Remaining Defendants"), the following shall apply:

(i)     **Verdict form.** For any claim in this Litigation submitted by the Court to the trier of fact, any Settling Defendant shall be included on the verdict form or other fact-finding instrument with any Remaining Defendant, so the trier of fact can determine the proportionate share of fault attributable to each. For the avoidance of doubt, and notwithstanding BP's voluntary withdrawal of the Cross-Claim as a condition of this Order, for purposes of the verdict form and apportioning fault, each and every Settling Defendant shall

6

be deemed to qualify as a "defendant" to the Litigation against whom "recovery is allowed" under 5 V.I.C. § 1451(d) or other applicable statute or common law by which the trier of fact will allocate the proportionate share of fault attributable to each such defendant, regardless of Settling Defendants' settlement or dismissal from the Litigation prior to the allocation of fault under this subsection (i). Plaintiffs shall not object, on the basis that Settling Defendants are not parties to this action or are not a "defendant" to the Litigation against whom "recovery is allowed" under 5 V.I.C. § 1451(d), to the inclusion of Settling Defendants on the verdict form and the submission of evidence of their conduct and fault for purposes of apportionment of all categories of damages subject to joint and several liability. Nothing in this Order precludes a party from making a motion under Rule 50 of the Federal Rules of Civil Procedure at the close of evidence presented at trial to narrow the list of Defendants to be listed on the verdict sheet or from arguing to the trier of fact regarding the proportionate share of fault to be allocated to any Defendant on the verdict form to the extent otherwise permitted. Nor does this Order allow the submission of inadmissible evidence at trial, including evidence (fact or expert) that has not been disclosed and/or produced in discovery, which is now closed. Any such and all other objections are preserved under this Order. Additionally, no finding, allocation, or apportionment of fault (including any allocation of punitive damages) made against any Settling Defendant under this subsection shall (a) constitute an adjudication of liability against any Settling Defendant outside of this proceeding, (b) have any res judicata, collateral estoppel, or issue- or claims-preclusive effect against any Settling Defendant in any proceeding, or (c) be admissible against any Settling Defendant in any other action, the same being made solely for the limited purpose of fault apportionment among Remaining Defendants.

(ii)     **Proportionate Reduction.** Any Remaining Defendant shall be entitled to a reduction of the judgment equal to the greater of (1) the proportionate share of fault allocated by the trier of fact to Settling Defendants, as reflected in a final, non-appealable judgment or (2) the dollar amount of Settling Defendants' total settlements. Notwithstanding 5 V.I.C. § 1451 or any other applicable statutory or common-law rule: (A) no Remaining Defendant shall be responsible for the proportionate share of fault allocated by the trier of fact to Settling Defendants; and (B) no Remaining Defendant shall be responsible for any judgment entered in favor of any Plaintiff or Settlement Class Member in an amount greater than the share of fault apportioned to that Remaining Defendant by the trier of fact under subsection (i) of this Section. The specific portion of any final, non-appealable judgment found by the trier of fact to be the responsibility of any Settling Defendant that exceeds the dollar amount of that Settling Defendant's settlement with Plaintiffs shall not be recoverable by any Plaintiff or Settlement Class Member, and each Plaintiff and Settlement Class Member expressly agrees to disclaim any right of

7

recovery with respect to such portion and agrees to forfeit it.

d. Each and every Settling Defendant is permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim against any former, current, and future Defendants to this action, whether styled as a cross-claim, a third-party claim, or a separate action in some other way, arising under federal, state, U.S. Virgin Islands, or foreign statutory or common-law rule, common law, contractual and express indemnification or contribution, or otherwise denominated, including claims for breach of contract and for negligence, where the claim arises from Plaintiffs' claims and the alleged injury to a Settling Defendant arises from its alleged liability to the Class or any Settlement Class Member, including any claim in which a Settling Defendant seeks to recover from any person or entity (including another Released Party) (i) any amounts Settling Defendants have paid or might become liable to pay to the Class or any Settlement Class Member and/or (ii) any costs, expenses, or attorneys' fees from defending any Claim by the Class or any Settlement Class Member. All such claims are hereby extinguished, discharged, satisfied and unenforceable.

e. Nothing in this Stipulation operates to extinguish, discharge, satisfy, render unenforceable, bar, enjoin, restrain, release, or otherwise affect or preclude any rights or claim that any Defendant may have or seek to assert against any insurer or reinsurer in that Defendant's capacity as an insured or an additional insured under any insurance policy (or under any reinsurance contract), including under any insurance policy (or under any reinsurance contract) issued to or covering any other Settling Defendant. The provisions of paragraphs 1(a) through 1(d) of this Order do not apply to rights and claims preserved by this paragraph 1(e). This paragraph 1(e) does not apply to the following policies: Ace American Insurance Company, policy no. PHF D38250097 004; Scottsdale Insurance Company, policy no. ENS0008376; Indian Harbor Insurance Company, policy nos. CEO7420840, CEO742084004, CEO742084005, CEO742084006, CEO742084007, and CEO742084008; Illinois Union Insurance Company, policy no. CPYG24882895 007; National Fire & Marine Insurance Company, policy no. 42-XIF-100868-03; Westchester Surplus Lines Insurance Company, policy no. G72503284 001, Lloyd's of London Syndicate 1084 and Apollo Liability Consortium 9984, as joint subscribers, policy no. ENCAS2000011; and AXIS Surplus Insurance Company, policy no. EAU646295/01/2020; provided, however, that this paragraph 1(e) continues to apply to and preserve rights and claims made under all of these listed policies by LBT, LBV, or LBE and, further, this paragraph 1(e) continues to preserve rights and claims as to all policies

8

not listed.

2.      In light of the above, unless otherwise Ordered by the Court, no response to the Cross-Claim is required and such Cross-Claim is hereby withdrawn as to any Settling Defendants by entry of this Order.

3.      This Order is effective immediately; provided, however, that, if the Court does not grant final approval of any Settlement Agreement, or if such Settlement Agreement does not reach the Effective Date for any reason, then the Defendant(s) party to such Settlement Agreement(s) shall be deemed never to have been a "Settling Defendant" hereunder for any purpose and shall revert to being a "Remaining Defendant" under the terms of the Bar Order.

**AGREED TO BY THE PARTIES BY AND THROUGH THEIR RESPECTIVE COUNSEL.**

Dated: _____          _____
                                  [COUNSEL]
                                  [FIRM]
                                  [EMAIL]
                                  For Defendant Elite Turnaround
                                  Specialists, Ltd.

Dated: _____          _____
                                  [COUNSEL]
                                  [FIRM]
                                  [EMAIL]
                                  For Defendant Universal Plant
                                  Services, (VI), LLC

Dated: _____          _____
                                  [COUNSEL]
                                  [FIRM]
                                  [EMAIL]
                                  For Defendant Excel Construction and
                                  Maintenance VI, Inc.

Dated: _____          _____
                                  [COUNSEL]
                                  [FIRM]
                                  [EMAIL]
                                  For Defendant Versa Integrity Group,
                                  Inc.

Dated: _____          _____
                                  Lori B. Leskin
                                  ARNOLD & PORTER KAYE
                                  SCHOLER LLP
                                  lori.leskin@arnoldporter.com
                                  For Defendant BP Products North
                                  America Inc.

Dated: _____          _____

10

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant EIG Global Energy
Partners, LLC

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Limetree Bay Ventures,
LLC

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Limetree Bay Energy,
LLC

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Limetree Bay
Terminals, LLC d/b/a Ocean Point
Terminals

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]
For Nominal Defendant Limetree Bay
Refining, LLC

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]

11

For Defendant ArcLight Capital
Partners, LLC

Dated: _____      _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant ArcLight Energy
Partners Fund VI, L.P.

Dated: _____      _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant ArcLight Limetree AIV,
L.P.

Dated: _____      _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Limetree Bay Holdings,
LLC

Dated: _____      _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Limetree Bay Preferred
Holdings, LLC

Dated: _____      _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Freepoint Commodities,
LLC

12

Dated: _____    _____

[COUNSEL]
[FIRM]
[EMAIL]
For Defendant Pinnacle Services, LLC

Dated: _____    _____

Shanon J. Carson
BERGER MONTAGUE PC
For Plaintiffs

Dated: _____    _____

Kerry J. Miller
FISHMAN HAYGOOD, L.L.P.
For Plaintiffs

Dated: _____    _____

Daniel H. Charest
BURNS CHAREST LLP
For Plaintiffs

13