**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **CLIFFORD BOYNES,** *et al.* | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **No. 1:21-253** |
| | **:** | |
| **LIMETREE BAY VENTURES, LLC,** *et al.* | **:** | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**PRELIMINARY SETTLEMENT APPROVAL AND RELATED RELIEF**

**TABLE OF CONTENTS**

I.      LITIGATION OVERVIEW ............................................................................. 3

II.     TERMS OF THE PROPOSED SETTLEMENT ........................................... 5

        A.      Proposed Settlement Class. ................................................................ 5

        B.      Settlement Consideration and Administration. ................................. 5

III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 9

        A.      Rule 23(a) Is Satisfied. ...................................................................... 9

                1.      Numerosity Is Satisfied. ........................................................ 10

                2.      Commonality Is Satisfied. ...................................................... 10

                3.      Typicality Is Satisfied. ........................................................... 10

                4.      Adequacy Is Satisfied. ........................................................... 11

        B.      The Requirements of Rule 23(b)(3) Are Satisfied. ......................... 12

                1.      Common Legal and Factual Questions Predominate Plaintiffs'
                        Claims. ................................................................................... 12

        C.      Co-Lead Counsel Should Be Appointed as Class Counsel. ............. 14

        D.      The Proposed Settlement Is Sufficiently Fair, Reasonable, and Adequate to
                Warrant Preliminary Approval and Authorize Dissemination of Notice. ............. 15

                1.      The Settlement Is the Product of Arm's-Length Negotiations by
                        Counsel Who Adequately Represented the Class. ................... 16

                2.      The Relief Provided Is Adequate and Will Be Fairly Allocated. ............. 17

                        a.      The Amount of the Relief Is Adequate, Especially Considering
                                the Costs, Risks, and Delay of Trial and Appeal. ................. 17

                        b.      The Proposed Method of Processing Claims and Distributing
                                Relief Is Fair and Effective and Treats Class Members
                                Equitably Relative to Each Other. ............................... 18

                        c.      The Terms of the Proposed Attorneys' Fees Are Appropriate. ..... 19

IV.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED AND EPIQ
        SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR ......................... 19

i

V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED .................................. 20

VI.   CONCLUSION ............................................................................................................. 20

Plaintiffs, on behalf of themselves and the proposed Settlement Class defined below, respectfully seek preliminary approval of a *$35 million* settlement that will resolve their claims against the EIG, LBV, and LBE Defendants arising from the series of environmental releases from the Limetree Bay Refinery that occurred from February 2021 to May 2021.[1] The proposed Settlement represents a significant monetary recovery for Settlement Class members from these Defendants, achieved after years of hard-fought litigation and an extensive, arm's-length negotiation process guided by an experienced Court-appointed mediator. The Settlement provides immediate tangible benefits to Settlement Class Members, who would otherwise face significant risk and delay in continuing to prosecute their claims against the EIG, LBV, and LBE Defendants.[2]

Should preliminary approval be granted, Plaintiffs intend that it be administered jointly with the ArcLight/Freepoint Settlement and the Pinnacle Settlement ("Group 1 Settlements"), which the Court preliminarily approved on February 16, 2026,[3] as well as the Contractor Settlements ("Group 2 Settlements") currently pending before the Court.[4]

---

[1] "EIG, LBV, and LBE Defendants" refers to EIG Global Energy Partners, LLC ("EIG"), Limetree Bay Ventures, LLC ("LBV"), and Limetree Bay Energy, LLC ("LBE"). The Settlement with the EIG, LBV, and LBE Defendants also provides for the release of certain Settling Insurers, as further explained below. Plaintiffs continue to negotiate additional settlements with certain other Defendants and insurers.

[2] The Settlement Agreement among Plaintiffs, the EIG, LBV, and LBE Defendants, and certain Settling Insurers is attached as Exhibit 1. Plaintiffs also attach revised versions of the Long Form Notice (Exhibit 2), Summary Notice (Exhibit 3), Claim Form (Exhibit 4), and Claimant Payment Formula (Exhibit 5). Plaintiffs further incorporate by reference the Affected Zone Map (Dkt. 1637-3), which the Court previously approved (Dkt. 1686), and the Declaration of Epiq (Dkt. 1099-7), which was previously submitted to the Court.

[3] Dkt. 1686; *see Boynes v. Limetree Bay Ventures, LLC*, 2026 WL 439681, at *1 (D.V.I. Feb. 16, 2026) ("*Prelim. App. Opinion*").

[4] Dkt. 1744. As the Court is aware from the parties' briefing and argument at the recent hearing on preliminary approval, the Contractor Settlements was subject to several objections, including (1) BP's argument that the Court should defer consideration of certification of Plaintiffs' proposed settlement class until it addresses certification of Plaintiffs' proposed litigation class(es), and (2) Certain Defendants' objections to the proposed bar-order provisions in the underlying settlement agreements. Dkts. 1748, 1749, 1751. As an initial matter, and as Plaintiffs have previously

In granting preliminary approval of the Group 1 Settlements, the Court considered opposition, conducted an extensive hearing, required revised notices and forms, and made findings that apply with equal force to this Settlement. *See generally Prelim. App. Opinion*, 2026 WL 439681. The Court found that Plaintiffs satisfied Federal Rule of Civil Procedure 23(a): (i) the thousands of members are sufficiently numerous; (ii) common issues of fact underlie the personal injury and property damage allegedly suffered by Plaintiffs; (iii) the Class representatives' claims are typical because they arise from the same events and rest on common legal theories; and (iv) Class Counsel and the Class representatives have adequately represented the Class. *Id.* at *5–8. The Court also found that common questions of law and fact predominate over individual questions and held that there is "no doubt" the class action is a superior method of resolution. *Id.* at *9–10. Finally, the Court found a presumption of fairness applied because nothing indicated the settlements were "not the result of good faith, arm's-length negotiations," discovery was extensive, and "the settlements were aided by the mediator's involvement." *Id.* at *10–11 (citation omitted).

The Court should apply the same thoughtful analysis to the present Settlement, which similarly satisfies Rule 23(a) and (b)(3) and was reached only after Class Counsel thoroughly investigated the facts and law, conducted significant, years-long discovery, litigated numerous dispositive motions, and engaged in hard-fought, arm's-length negotiations with the EIG, LBV, and LBE Defendants and Settling Insurers, including through the Court-appointed mediator, John W. Perry, Jr. Indeed, there is even more reason to apply the presumption of fairness now, given that both fact

---

asserted, BP's argument regarding deferral should be rejected because, among other things: (1) BP lacks standing to raise it; (2) the parties have demonstrated that certification is warranted; and (3) the Court previously rejected the same argument when it provisionally certified the settlement class in the Group 1 Settlements. Dkt. 1761. With respect to the bar-order provisions, Plaintiffs have worked with all parties and, at the Court's direction, submitted post-hearing supplemental memoranda (Dkts. 1773, 1773-1, 1790) in an effort to resolve the issue. Those efforts are ongoing. This issue is discussed further in Section II.B, *infra*.

and expert discovery are complete and that the parties negotiated with full appreciation of the risks of continued litigation.

Plaintiffs respectfully request that the Court enter the Proposed Preliminary Approval Order (1) conditionally certifying the Settlement Class and preliminarily approving the Settlement as fair, reasonable, and adequate; (2) ordering that the Settlement be administered with the Group 1 and Group 2 Settlements; (3) confirming the appointment of Co-Lead Class Counsel to represent the Settlement Class; (4) approving the proposed Notice Plan; (5) establishing the Objection and Opt-Out Deadline; (6) confirming Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Settlement Administrator; and (7) scheduling the Final Approval Hearing.[5]

## I.      LITIGATION OVERVIEW

This case arises from the disastrous failed restart of the Limetree Bay Refinery. From February to May 2021, the Refinery repeatedly malfunctioned, releasing hazardous and toxic chemicals, substances, gases, and odors. Following a "flare out" on May 12, 2021, which rained oil over nearby residents, the EPA ordered the Refinery to shut down. Plaintiffs allege the Refinery's failed restart is the result of rushed, inadequate, intentional, reckless, and negligent actions taken by each Defendant, including the EIG, LBV, and LBE Defendants. The EIG, LBV, and LBE Defendants vigorously dispute Plaintiffs' allegations and do not concede liability in settling Plaintiffs' claims. Plaintiffs seek redress for property owners, employees, businesses, and residents who lived, worked, or were present in the Affected Geographic Area.

In the five years since the initial lawsuits were filed, Plaintiffs and their counsel have

---

[5] Pursuant to this Court's Order (Dkt. 1791), Plaintiffs file a separate Notice attaching a proposed Order granting the requested preliminary approval. The proposed Order would administer all three settlement groups on a common schedule and would utilize the Bar Order proposed to this Court (Dkt. 1790-2), to which only the Contractor Defendants have objected. As Plaintiffs have respectfully submitted to the Court, the Group 2 Settling Defendants are attempting to expand the scope of the settlement agreements beyond their original terms. Dkt. 1790.

completed extensive fact and expert discovery, enabling them to weigh the Settlement against the costs, risks, and delay of continued litigation against the EIG, LBV, and LBE Defendants. Plaintiffs' efforts in these matters include, without limitation (1) preserving their rights in the LBR bankruptcy proceedings, including by filing hundreds of individual claim notices and a negotiated provision in LBR's confirmed Chapter 11 plan that preserved Plaintiffs' right to pursue claims against the debtor's insurance estate; (2) obtaining injunctive relief to provide class members with safe, clean, and potable water;[6] (3) opposing Defendants' consolidated motions to dismiss and responding to eleven separate memoranda in support of the motions, including those filed by the EIG, LBV, and LBE Defendants;[7] (4) defending against Defendants' numerous attempts to stay discovery or otherwise slow the litigation;[8] (5) serving extensive discovery on Defendants and third parties, which resulted in the production of millions of pages of documents that Plaintiffs diligently analyzed, and taking approximately 40 depositions of fact witnesses;[9] (6) engaging and working with top-tier experts to submit initial, rebuttal, and reply reports; deposing Defendants' experts; and defending depositions of Plaintiffs' experts. *See generally* Dkt. 1744 at 4–6.

Plaintiffs and the EIG, LBV, and LBE Defendants engaged in extensive arm's-length negotiations, including numerous mediation sessions with the assistance of Mr. Perry, and ultimately negotiated and executed the Settlement Agreement. Ex. 1.

---

[6] Dkts. 284, 285, 388, 389; *see also Boynes v. Limetree Bay Ventures, LLC*, 110 F.4th 604, 608 (3d Cir. 2024) ("Extraordinary harm warrants extraordinary relief.").

[7] Dkts. 642, 643, 670, 670-1 to -11.

[8] Dkts. 485 (Motion to Stay), 503 (Opposition), 663 (Order denying Motion); Dkts. 1586 (BP Notice), 1588 (Objections); Dkts. 1616 (Motion to Reopen Discovery), 1638 (Opposition); Dkts. 1639 (Motion for Status Conference and Administrative Stay), 1652 (Opposition).

[9] During discovery, Plaintiffs moved for leave to file a Consolidated Second Amended Class Action Complaint ("SCAC"). Dkts. 985–86. After the Court granted that motion, Plaintiffs filed the SCAC on August 4, 2025. Dkt. 1327. The Court subsequently denied BP's motion to dismiss the SCAC on April 20, 2026. Dkt. 1740.

## II.    TERMS OF THE PROPOSED SETTLEMENT

### A.    Proposed Settlement Class.

The Settlement Class is defined as all persons or entities: (a) who owned or rented property (real and/or personal) in the Affected Geographic Area on or after February 3, 2021; or (b) who resided in, worked in, owned or operated a business in, or were present in the Affected Geographic Area during the time period from February 3, 2021 to May 26, 2021; it includes, without limitation, all persons or entities who are retained clients of any law firms comprising Class Counsel before the date of execution of the Settlement Agreement and who assert or could assert claims arising out of the Incidents. Ex. 1 § II ¶ 52. The "Affected Geographic Area" means the western portion of the Island of St. Croix, more particularly described as bounded by 64.74 degrees West Longitude and the sea. Ex. 1 § II ¶ 1.

### B.    Settlement Consideration and Administration.

*Released Parties*. The EIG, LBV, and LBE Defendants have agreed to a collective total payment of $35,000,000.00 (the "Gross Settlement Fund"). Ex. 1 § II ¶ 25.[10] This payment is to be deposited into a Settlement Escrow Account in exchange for the release of claims as defined in the EIG, LBV, and LBE Defendants' Settlement Agreement, which includes a release of all claims against the Released Parties (only) on the basis of, arising from, or relating to the claims alleged in the litigation. Ex. 1 § VI ¶ 1. The term "Released Parties" is defined to include Defendants EIG Global Energy Partners, LLC, Limetree Bay Ventures, LLC, and Limetree Bay Energy, LLC and the Settling Insurers. The Settling Insurers are: (1) Lloyd's of London Syndicate 1084 and Apollo Liability Consortium 9984 as joint subscribers to Policy No. ENCAS2000011 (the "First Layer Excess Policy"); and (2) AXIS Surplus Insurance Company ("AXIS") with respect to Policy No.

---

[10] The Gross Settlement Fund is to be paid by Defendant EIG Global Energy Partners, LLC and the Settling Insurers as set forth in the Settlement.

EAU646295/01/2020, but only to the extent of AXIS's obligations to defend and indemnify LBV and LBE for the claims asserted in the Litigation. *See* Ex. 1 § II ¶ 57.

Notably, the First Layer Excess Policy is fully exhausted through the contribution here to the Gross Settlement Fund, Ex. 1 § II ¶ 57, and AXIS has committed its remaining limits under the AXIS Policy (above AXIS's $2,500,000.00 contribution to the Gross Settlement Fund) toward settlement on behalf of other insureds, Ex. 1 § VI ¶ 9. Further, the releases of the Settling Insurers set forth in the Agreement do not affect or apply to any insurance policy other than the First Layer Excess Policy and the AXIS Policy, including as to Chaucer Group, Apollo Syndicate Management Limited, AXIS, and any of their predecessors, successors, subsidiaries, affiliates, assigns, agents, or persons acting or purporting to act on their behalf. Ex. 1 § II ¶ 57; *id.* § VI ¶¶ 6, 9–10. Nor does anything in the release of AXIS as a Settling Insurer release AXIS from, or otherwise affect, its commitment to pay its remaining limits under the AXIS Policy. *See* Ex. 1 § VI ¶ 9.

*Bar Order Provision.* The Settlement is conditioned on entry by the Court of a Bar Order at the time the Court grants preliminary approval of the Settlement Agreement. Ex. 1 § XIV ¶ 6. The proposed Bar Order, attached to the Settlement Agreement as Exhibit A, is consistent with the prior revised versions Plaintiffs have submitted to the Court (*see* Dkt. 1790-2, Ex. B) and reflects Plaintiffs' engagement with all parties in seeking a prompt and practical solution.

The proposed Bar Order provides that, for any joint and several claim asserted against a Remaining Defendant and submitted to the trier of fact, (1) Settling Defendants shall be included on the verdict form so the trier of fact can determine the proportionate share of fault attributable to each; and (2) in the event of an adverse judgment, the Remaining Defendant is entitled to a reduction equal to the greater of (i) the Settling Defendants' proportionate share of fault, or (ii) the dollar amount of their total settlements. Ex. 1, Ex. A. The provision thus contemplates a

determination of proportionate fault, and the Remaining Defendants are not limited to a pro tanto credit equal to the underlying settlements. This resolves the initial objections to the Bar Order provisions in the Contractor Settlements.

The proposed Bar Order also does not release any claim a Defendant may have against any insurer or reinsurer in its capacity as an insured or additional insured, but it excludes certain policies. Ex. 1, Ex. A ¶ 1(e). This provision was initially added following the preliminary approval hearing on the Contractor Settlements and included a placeholder for the excluded policies. Dkt. 1773-1. After the Contractor Defendants identified the policies to be excluded, certain objecting Defendants required additional language preserving their existing rights to defense costs against those policies if defense costs are denied directly to them ("[T]his paragraph 1(e) continues to apply to and preserve rights and claims made under all of these listed policies by LBT, LBV, or LBE."). The Bar Order reflects these changes.[11]

*Distribution of Settlement Fund.* Once the Effective Date[12] is reached, no portion of the

---

[11] The Contractor Defendants oppose the Objecting Defendants' additional language preserving claims under the excluded policies by LBT, LBV, or LBE. Dkt. 1790. Plaintiffs disagree; releasing the excluded insurers from potential defense obligations to other co-defendants was never part of the underlying Contractor Settlement agreements, and including the language in the proposed Bar Order is consistent with those agreements. *Id.* at 2–3.

[12] Ex. 1 § II ¶ 17. "Effective Date" is defined in the Settlement Agreement as "the first date on which all of the following conditions have been satisfied: (1) the Final Approval Order becomes final; (a) if no objection to the proposed Settlement Agreement is raised at the Final Approval Hearing, this is the date on which the Court enters the Final Approval Order; or (b) if one or more objections are raised at the Final Approval Hearing and not withdrawn prior to entry of the Final Approval Order, the latest of: (i) the expiration of the time to file or give notice of any appeal from the Final Approval Order; (ii) the date of final affirmance of the Final Approval Order on appeal; (iii) the expiration of the time to file, or the denial of, a petition for a writ of certiorari seeking review of the Final Approval Order and, if certiorari is granted, the date of final affirmance following such review; or (iv) the date of final dismissal of any appeal from the Final Approval Order or of any proceeding on certiorari seeking review of the Final Approval Order; and (2) the Bankruptcy Approval Order has been entered by the Bankruptcy Court and has become a final order, meaning that the time for appeal or notice of appeal has expired without appeal, or any appeal or request for certiorari has been finally resolved, dismissed, or otherwise concluded. The Effective

Gross Settlement Fund will ever revert to any of the EIG, LBV, and LBE Defendants or Settling Insurers.[13] The Net Settlement Fund will be distributed to Settlement Class Members by the Court-appointed Settlement Administrator. As set forth in the Claim Payment Formula (Ex. 5) and Claim Form (Ex. 4), payments to individual Settlement Class Members will be apportioned fairly using a point system based on the nature of the harm (Property Damages, Nuisance Harm, Cistern Related Impact, Physical and Emotional Health Manifestations, and other Economic Harm) experienced by each Settlement Class Member.[14] Each Claimant's point total will be divided by the total points allocated across all Eligible Claimants and the ensuing ratio will be used to calculate individual distributions on a pro rata basis. The Claim Form is designed for clarity and to minimize the need for documentary proof.

*Settlement Administrator.* Co-Lead Class Counsel previously selected Epiq as Settlement Administrator, which is already administering the Limetree Water Distribution Program, has already been approved by the Court as Settlement Administrator of the Group 1 Settlements, and is being proposed to administer the Group 2 Settlements. Copies of the Settlement, Claim Form, and related documents will also be available at the local Law Offices of certain Class Counsel. *See* Ex.

---

Date shall not occur unless both of the foregoing conditions have been satisfied." *Id*. "Bankruptcy Approval Order" is defined as a final, non-appealable order entered by the U.S. Bankruptcy Court for the Southern District of Texas, which heard the proceedings in No. 4:21-bk-32351 and other related matters, "either (a) approving the Settling Insurers' payment of their shares of the Gross Settlement Fund toward the Settlement or (b) providing that approval of such a payment by the Bankruptcy Court is not required (whether because the Bankruptcy Court lacks jurisdiction over such issue, because the Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors does not require such approval, or otherwise)." *Id*. § II ¶¶ 3–4.

[13] The Settlement Agreement also provides that, upon the Effective Date, plaintiffs in certain related "Parallel Litigations" (as defined in the Settlement Agreement, Ex. 1 § II ¶ 42) shall release and discharge the Released Parties from all claims arising from or relating to the claims alleged in the Parallel Litigations in exchange for consideration from the Gross Settlement Fund.

[14] The allocation also depends on the claimant's "Zone" within the Affected Geographic Area. *See* Dkt. 1637-3.

2 (Long Form Notice) at 6. The Notice Plan provides the best notice practicable under the circumstances. *See* Dkt. 1099-7, Epiq Decl. ¶ 44. If preliminary approval is granted, Co-Lead Class Counsel will work with Epiq to encourage and assist those in the Affected Geographic Area to receive the benefits of the Settlement Agreement.[15]

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

To obtain preliminary approval of a settlement and send notice to the Settlement Class, the proponents must show that "the court will likely be able to . . . certify the class for purposes of judgment on the [settlement] proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784-KSM, 2021 WL 5235221, at *3–4 (E.D. Pa. Nov. 9, 2021) (detailing standard for granting preliminary approval of class action settlement); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632 (2004). Thus, "when a district court is presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met, and must separately determine that the settlement is fair to the class under Rule 23(e)." *In re NFL Players Concussion Inj. Litig.*, 775 F.3d 570, 581 (3d Cir. 2014) (citation modified); *see also Prelim. App. Opinion*, 2026 WL 439681, at *2–3 (discussing the stages of the approval process). Here, as the Court already found regarding the previous settlements, the requirements of Rule 23(a) and (b) are met for settlement purposes, and the proposed settlement is fair to the class under Rule 23(e).

### A.    Rule 23(a) Is Satisfied.

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

---

[15] The Settlement also includes fulsome procedures for Settlement Class Members to object or opt-out of the Settlement to pursue their own litigation. *See* Ex. 1 § IX.

and (4) the representative parties will fairly and adequately protect the interests of the class."

### 1.    Numerosity Is Satisfied.

Generally, if the potential number of plaintiffs exceeds 40, the numerosity prong of Rule 23(a) is satisfied. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249–50 (3d Cir. 2016). In granting preliminary approval of the ArcLight/Freepoint and Pinnacle Settlements, the Court found the numerosity requirement satisfied, crediting Plaintiffs' estimation that there are at least 24,000 people in the Settlement Class. *Prelim. App. Opinion*, 2026 WL 439681, at *5. Numerosity is met here.

### 2.    Commonality Is Satisfied.

Rule 23(a)(2) requires "questions of law or fact common to the members of the class." "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Prudential Ins. Co. Am. Sales Pracs. Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (citation omitted). The requirement "is easily met because it may be fulfilled by a single common issue." *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 205 (E.D. Pa. 2001). As the Court observed in granting preliminary approval of the ArcLight/Freepoint and Pinnacle Settlements, "commonality . . . has been met on both questions of law and fact in light of the common issues of fact underlying the personal injury and property damage allegedly suffered by Plaintiffs as a result of the four Release Events at the Refinery, and the common questions of territorial tort law underlying Defendants' alleged liability stemming from those events." *Prelim. App. Opinion*, 2026 WL 439681, at *6. Commonality is satisfied.

### 3.    Typicality Is Satisfied.

Rule 23 requires that "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "There is a low threshold for typicality; provided the interests of the class and the class representative are aligned, courts will find typicality even when class members' claims are only legally similar, and not factually similar." *Stechert*, 2021

WL 5235221, at *5 (citation modified). Typicality exists "[i]f the representative's claims and those of the absent class members arise from the same course of conduct and are based on the same legal theories . . . regardless of factual differences underlying the individual claims." *In re Wellbutrin XL Litig.*, 282 F.R.D. 126, 138 (E.D. Pa. 2011) (citing *Baby Neal v. Casey*, 43 F.3d 48, 57–58 (3d Cir. 1994)). Here, the Court already found the named Plaintiffs' claims are typical of the Settlement Class, noting that "[a]lthough factual differences exist between the precise injury sustained by each named representative, their claims of damage arise from the same events—the Release Events at the Refinery—and are based on common legal theories of tort liability." *Prelim. App. Opinion*, 2026 WL 439681, at *6. Each Class member's claim arises from the same alleged course of conduct: the EIG, LBV, and LBE Defendants' allegedly rushed, inadequate, intentional, reckless, and negligent actions in restarting the Refinery, which caused and contributed to the toxic Releases. Typicality is thus satisfied.

### 4.  Adequacy Is Satisfied.

The Court must measure the adequacy of representation by two standards: "(1) . . . that the named plaintiff and its counsel have the ability and the incentive to represent the claims of the class vigorously, and (2) that there is no conflict between the individual's claims and those asserted on behalf of the class." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 199 (E.D. Pa. 2017). Both standards are met here.

As the Court has acknowledged, the Plaintiffs have adequately represented the Settlement Class, having "been responsive and involved at the appropriate junctures [of the litigation]; . . . aware of case developments; . . . [and] subjected to discovery." *Prelim. App. Opinion*, 2026 WL 439681, at *8. Plaintiffs' participation exceeds that which is necessary to demonstrate adequacy under Rule 23(a)(4). *See Wood v. Saroj & Manju Invs. Phila. LLC*, No. 19-2820-KSM, 2020 WL 7711409, at *5 (E.D. Pa. 2020) (finding that a class plaintiff "represented the class capably and

diligently," by "provid[ing] counsel with the paperwork and information they needed to initiate this case and substantiate [plaintiff's] claims" and actively participating in settlement).

Co-Lead Class Counsel also satisfies the adequacy requirements of Rule 23(a)(4). In appointing Co-Lead Class Counsel in connection with the Group 1 Settlements, the Court noted that its previous finding that counsel are "well-qualified for appointment . . . has not changed as this matter has continued to be vigorously litigated at every turn, as evidenced, *inter alia*, by briefing and argument in opposition to a motion to stay, in support of the preliminary approval of settlements, and by numerous discovery disputes on the record." *Prelim. App. Opinion*, 2026 WL 439681, at *7 (citation omitted). Co-Lead Class Counsel (along with Class Counsel) has thoroughly investigated the class claims, preserved Class Members' claims in the LBR bankruptcy, obtained injunctive relief after extensive evidentiary hearings, opposed Defendants' motions to dismiss and to stay discovery, participated in mediations, and completed fact and expert discovery.

### B.    The Requirements of Rule 23(b)(3) Are Satisfied.

#### 1.    Common Legal and Factual Questions Predominate Plaintiffs' Claims.

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (citation omitted). Requiring common issues to predominate does not mean all issues must be common to every class member. *See, e.g.*, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011) ("We have never required the presentation of identical or uniform issues or claims as a prerequisite to certification of a class."). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (internal quotation marks

and citation omitted). In addition, with a proposed settlement class, "manageability issues that are of obvious concern for anticipated litigation consideration are not similarly relevant." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 WL 3584632, at *8 (E.D. Pa. June 30, 2016) (citing *Sullivan*, 667 F.3d at 303); *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) (finding predominance test more readily satisfied with settlement-only class because "the court certifying the class need not examine issues of manageability").

Plaintiffs possess substantially overlapping legal claims arising out of the same underlying facts about the Refinery, Defendants' conduct, and the harms suffered. *See also* Dkt. 1768 (Plaintiffs' Motion for Class Certification). As the Court recognized in finding predominance with respect to the Group 1 Settlements, "[i]n the mass tort context, predominance can be found when the proposed class 'seek[s] relief based on exposure alone,' and 'individual differences in medical histories, lifestyles and property uses do not affect the causation analysis for purposes of liability.'" *Prelim. App. Opinion*, 2026 WL 439681, at *9 (quoting *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 443 (E.D. Pa. 2008)). Further, "the common question of whether there was exposure dominates the individual issues as to the amount of exposure, which may vary from well to well, or the actual decrease in property value." *Id.* (quoting *Gates*, 248 F.R.D. at 443). With respect to the Refinery's releases, the Court found that "common questions of law and fact stemming from the Release Events' effect on class members predominate over any individual factual questions, such as the specific degree of damages incurred." *Id.* The preliminary injunction phase of this litigation already demonstrated that Plaintiffs will be able to utilize common evidence to prove the central issues of this litigation. Predominance has been met.

### 2.    A Rule 23(b)(3) Class Action Is Superior to Other Methods of Adjudication.

Rule 23(b)(3) also requires that a class action be "superior to other available methods for

13

fairly and efficiently adjudicating the controversy." The Court may consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL Players Concussion Inj. Litig.*, 821 F.3d 410, 434–35 (3d Cir. 2016). A settlement is superior if it achieves "economies of time, effort, and expense, and promote[s] . . . uniformity of decision . . . without sacrificing procedural fairness or bringing about other undesirable results." *Sullivan*, 667 F.3d at 336 (Scirica, J., concurring) (citation omitted).

Here, the Court determined that "[t]here can be no doubt that the class action vehicle is a superior method to resolving the instant litigation, when compared to individual suits by each class member." *Prelim. App. Opinion*, 2026 WL 439681, at *10. The Settlement permits the Settlement Class Members to resolve their common claims against the EIG, LBV, and LBE Defendants in a single forum without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would entail.

### C.  Co-Lead Counsel Should Be Appointed as Class Counsel.

In connection with the Group 1 Settlements, the Court previously reaffirmed the appointment of Kerry Miller of Miller Thibodeaux Dysart Veith & Paschal, L.L.P., Daniel Charest of Burns Charest LLP, and Shanon J. Carson of Berger Montague PC as Co-Lead Class Counsel, and Lee J. Rohn of Lee J. Rohn & Associates LLC as Liaison Counsel. *Id*. at *7. Plaintiffs move to confirm that appointment for the Settlement Class. Each of the Rule 23(g)(1)(A) factors—"(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class"—weighs strongly in favor of appointing Co-Lead Class Counsel as class counsel. Co-Lead Class Counsel has committed, and continues to commit, substantial

14

resources to this litigation, including investigating claims, obtaining injunctive relief, defeating dispositive motions, retaining experts, conducting discovery, negotiating the Group 1 and Group 2 Settlements, and negotiating the present Settlement with the EIG, LBV, and LBE Defendants and Settling Insurers. Counsel also has extensive experience with complex class actions, including in the toxic release and environmental contamination contexts. *See* Dkt. 454.

**D.    The Proposed Settlement Is Sufficiently Fair, Reasonable, and Adequate to Warrant Preliminary Approval and Authorize Dissemination of Notice.**

At this stage, the court need not reach ultimate conclusions on the merits. *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (citation omitted). Rather, the court considers whether:

(a) the class representatives and class counsel have adequately represented the class;
(b) the proposal was negotiated at arm's length;
(c) the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(d) the proposal treats class members equitably relative to one another.

*See* Fed. R. Civ. P. 23(e)(1)–(2). If, taking these factors and the showings made regarding class certification into account, the court concludes that the proponents have shown that "the court will likely be able to: (i) approve the proposal [for settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," the court "must direct notice in a reasonable manner to all class members who would be bound." Fed. R. Civ. P. 23(e)(1).[16]

---

[16] "[A]n initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *see*

The Third Circuit recognizes an overriding public interest in settling complex litigation. *See, e.g.*, *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) ("[T]he settlement of complex litigation before trial is favored by the federal courts."); *see also Austin v. Pa. Dep't of Corrs.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) ("[T]he extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy encouraging settlements to 'an overriding public interest.'" (citation omitted)). Preliminary approval "is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). "At the preliminary approval stage, the bar to meet the 'fair, reasonable, and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *In re NFL Players Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (citation omitted).

### 1.    The Settlement Is the Product of Arm's-Length Negotiations by Counsel Who Adequately Represented the Class.

The Settlement satisfies the first two factors. Fed. R. Civ. P. 23(e)(2)(A)–(B). The negotiations resulting in the Settlement were conducted at arm's length by advocates experienced in complex litigation, with full knowledge of the strengths and weaknesses of the claims (both as against the EIG, LBV, and LBE Defendants and with respect to the coverage provided by the Settling Insurers), and who have demonstrated their commitment to vigorous representation of the Class through their aggressive litigation of this case.

Co-Lead Class Counsel (along with Class Counsel) has the qualifications and experience

---

*also Prelim. App. Opinion*, 2026 WL 439681, at *3. These considerations align with the factors identified in Rule 23(e) that are met here.

to lead this litigation, with decades of success in complex class actions, including environmental matters. Counsel analyzed the challenges the Settlement Class faced going forward, including those specific to the EIG, LBV, and LBE Defendants, and reviewed the fact and expert discovery record. These efforts enabled Class Counsel to make informed demands and evaluate the strengths and weaknesses of the EIG, LBV, and LBE Defendants' position relative to other Defendants. Class Counsel believe the $35 million Settlement is a fair resolution of the Class's claims against the EIG, LBV, and LBE Defendants—a determination that traditionally carries "considerable weight" with the court. *Esslinger v. HSBC Bank Nev., N.A.*, No. 10-3213, 2012 WL 5866074, at *8 (E.D. Pa. Nov. 20, 2012) (citation omitted). Rule 23(e)(2)(A)–(B) weighs strongly in favor of preliminary approval.

### 2. The Relief Provided Is Adequate and Will Be Fairly Allocated.

#### a. The Amount of the Relief Is Adequate, Especially Considering the Costs, Risks, and Delay of Trial and Appeal.

This Settlement provides meaningful all-cash relief (***$35 million***) from the EIG, LBV, and LBE Defendants following five years of litigation, at a juncture when the costs, risks, and delay of trial and appeal weigh decidedly in favor of Settlement. Absent settlement, the EIG, LBV, and LBE Defendants would have vigorously challenged Plaintiffs' claims through class certification, summary judgment, trial, and appeal. While Plaintiffs believe they would have prevailed, each stage presented litigation risk.

Litigating against the EIG, LBV, and LBE Defendants would be costly and the outcome uncertain, whereas the proposed Settlement provides certainty through an immediate monetary recovery. The EIG, LBV, and LBE Defendants dispute Plaintiffs' allegations and do not concede liability but are settling to avoid ongoing litigation costs. Under the circumstances, "the Court has a sufficient showing to conclude that the proposed settlements do not disclose any grounds to doubt

17

its fairness or other obvious deficiencies, and appears to fall within the range of possible approval."

*Prelim. App. Opinion*, 2026 WL 439681, at *12 (citation modified).

                    **b.**        **The Proposed Method of Processing Claims and Distributing Relief Is Fair and Effective and Treats Class Members Equitably Relative to Each Other.**

"A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all [Settlement Class members]." *Sullivan*, 667 F.3d at 326 (internal quotation marks and citation omitted). The method proposed for processing Claims of Eligible Claimants is fair and effective. The Net Settlement Funds will be distributed to Settlement Class Members in accordance with a point system considering the specific nature of the harm experienced by each Class Member. This ensures Class Members are compensated according to the harms they sustained due to the Incidents. This objective approach is fair, reasonable, and adequate as "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Computron Software, Inc.*, 6 F. Supp. 2d 313, 321 (D.N.J. 1998) (citation omitted); *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prods. Litig.*, 347 F.R.D. 113, 131 (W.D. Pa. 2024) ("[C]ourts 'consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable.'" (quoting *Sullivan*, 667 F.3d at 328)). As described in the Claim Form, Notice Plan, and Claimant Payment Formula, the proposed allocation plan is easily calculable, objective, and a practicable method for efficient and equitable distribution.[17]

---

[17] The proposed Short Form Notice, Long Form Notice, Payment Formula, and Claim Form being submitted are updated versions of the documents previously approved by the Court in connection with the Group 1 Settlements. *See* Dkt. 1686. These documents also contain minor modifications for clarity and formatting. Most significantly, language has been added to clarify that the points previously labeled for Physical Health Manifestations apply to both Physical and Emotional Health Manifestations, and to explain the distinction between the 15- and 20-point allocations within those categories. Related clarifying language appears in Questions 14 and 15 of the Claim Form.

           **c.**        **The Terms of the Proposed Attorneys' Fees Are Appropriate.**

Class Counsel will file a separate motion seeking an award not to exceed one-third of the Gross Settlement Fund, an amount courts in the Third Circuit commonly find fair, reasonable, and adequate. *See, e.g.*, *Ahrendsen v. Prudent Fiduciary Servs., LLC*, No. CV 21-2157, 2023 WL 4139151, at *5 (E.D. Pa. June 22, 2023) ("[C]lass counsel reasonably seeks one-third of the settlement fund . . . for attorneys' fees."); *Katz v. DNC Servs. Corp.*, No. CV 16-5800, 2023 WL 2955887, at *10 (E.D. Pa. Apr. 14, 2023) (approving one-third fee in FLSA class settlement). Out-of-pocket expenses to date will also be deducted after Court approval. The Notice Plan advises the Class of proposed fees and costs. The Settlement is the product of arm's-length negotiations informed by extensive litigation, the amount is reasonable in connection with the EIG, LBV, and LBE Defendants, and the proposed distribution is fair and consistent with analogous cases. Preliminary approval is warranted. *See* Fed. R. Civ. P. 23(e).

## IV.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED AND EPIQ SHOULD BE APPOINTED AS SETTLEMENT ADMINISTRATOR

For a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Generally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *NFL Players*, 821 F.3d at 435 (citation omitted).

Plaintiffs adopt the robust Notice Plan approved for the Group 1 Settlements (Dkts. 1637, 1686) and submit updated versions of the previously approved notices. *See* Exs. 2 and 3.[18] The Plan includes (1) individually mailed Short-Form Notices to the Class; (2) email notice to known

---

[18] These documents have been updated as described above. *See supra* note 17.

addresses; (3) Publication Notice, including local radio and print; (4) a Settlement Website making the Long-Form Notice, Claim Form, and other key documents accessible to Class Members; (5) a toll-free information number; and (6) information at local Law Offices. *See* Dkt. 1099 at 24–26. This satisfies Rule 23 and due process and constitutes the best notice practicable under the circumstances. *See Stechert*, 2021 WL 5235221, at *10; *see also* Dkt. 1099-7, Epiq Decl. ¶ 44.

The proposed Notice complies with Rule 23(c)(2)(B). It describes the action and claims at issue; the Settlement Class; the Settlement benefits; Class Members' rights, including to opt out or object; the binding effect of a class judgment; the date of the fairness hearing; and other information relevant to informed decision-making. *See NFL Players*, 821 F.3d at 435. Plaintiffs also request that the Court confirm the appointment of Epiq as Settlement Administrator, as it was in the Group 1 Settlements. Dkt. 1686.

## V.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

Finally, Plaintiffs request that the Court schedule a Final Approval Hearing. *See* Manual for Complex Litigation (Fourth) § 21.634. At that time, Plaintiffs will ask the Court to: (i) finally approve the Settlement; (ii) certify the Class for settlement purposes; (iii) find that the Notice Plan fully complies with Rule 23 and due process mandates; (iv) authorize the parties to implement the terms of the Settlement Agreements; and (v) enter a Final Approval Order dismissing the case against the EIG, LBV, and LBE Defendants.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the proposed order filed herewith.

DATED: July 14, 2026                     Respectfully submitted,

                                                  BY:    /s/Y. Michael Twersky
                                                         Shanon J. Carson
                                                         Yechiel Michael Twersky

20

John Kerrigan
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
scarson@bm.net
mitwersky@bm.net
jkerrigan@bm.net

DATED: July 14, 2026                 BY:   */s/ Lee J. Rohn*
                                           Lee J. Rohn
                                           Rhea R. Lawrence
                                           1108 King Street, Suite 3 (mailing)
                                           56 King Street, Third Floor (physical)
                                           Christiansted, St. Croix
                                           U.S. Virgin Islands 00820
                                           Telephone: (340) 778-8855
                                           lee@rohnlaw.com
                                           rhea@rohnlaw.com

                                           Counsel for the *Cotton* Plaintiffs


DATED: July 14, 2026                 BY:  /s/ *Daniel H. Charest*
                                           Warren T. Burns
                                           Daniel H. Charest
                                           Martin D. Barrie
                                           Quinn M. Burns
                                           Anna Katherine Benedict
                                           BURNS CHAREST LLP
                                           900 Jackson Street, Suite 500
                                           Dallas, Texas 75202
                                           Telephone: (469) 904-4550
                                           wburns@burnscharest.com
                                           dcharest@burnscharest.com
                                           mbarrie@burnscharest.com
                                           qburns@burnscharest.com
                                           abenedict@burnscharest.com

DATED: July 14, 2026                 BY:   */s/ Korey A. Nelson*
                                           Korey A. Nelson
                                           H. Rick Yelton
                                           BURNS CHAREST LLP
                                           365 Canal Street, Suite 1170
                                           New Orleans, LA 70130
                                           Telephone: (504) 799-2845

21

knelson@burnscharest.com
ryelton@burnscharest.com

DATED: July 14, 2026                    BY:    */s/ Timothy W. Burns*

Timothy W. Burns
BURNS BAIR LLP
10 E. Doty Street, Suite 600
Madison, Wisconsin 53703
Telephone: (608) 286-2302
tburns@burnsbair.com

DATED: July 14, 2026                    BY:    */s/ Vincent Colianni II*

Vincent Colianni, II
Vincent A. Colianni
Marina Leonard
COLIANNI & LEONARD LLC
2120 Company Street
Christiansted, VI 00820
Telephone: (340) 719-1766
vinny@colianni.com
vince@colianni.com
marina@colianni.com

DATED: July 14, 2026                    BY:    */s/ C. Jacob Gower*

C. Jacob Gower
GOWER LEGAL LLC
1919 Pine Street
New Orleans, LA 70118
Telephone: (337) 298-9734
jacob@gowerlegal.com

Counsel for the *Shirley* Plaintiffs

DATED: July 14, 2026                    BY:    */s/ Kerry J. Miller*

Kerry J. Miller
Paul C. Thibodeaux
Rebekka C. Veith
C. Hogan Paschal
Carly E. Jonakin
MILLER THIBODEAUX DYSART VEITH &
PASCHAL, L.L.P.
643 Magazine Street, Suite 405
New Orleans, Louisiana 70130
Telephone: (504) 977-9150
kmiller@mtdvp.com
pthibodeaux@mtdvp.com

22

rveith@mtdvp.com
hpaschal@mtdvp.com
cjonakin@mtdvp.com

DATED: July 14, 2026     BY:  _/s/ Hugh Lambert_____
                Hugh Lambert
                J. Christopher Zainey
                Brian Mersman
                LAMBERT ZAINEY SMITH & SOSO, APLC
                701 Magazine Street
                New Orleans, Louisiana 70130
                Telephone: (504) 581-1750
                Facsimile: (504) 529-2931
                hlambert@lambertainey.com
                czainey@lambertzainey.com
                bmersman@lambertzainey.com

DATED: July 14, 2026     BY:  _/s/ John K. Dema_____
                John K. Dema
                LAW OFFICES OF JOHN K. DEMA, PC
                1236 Strand Street, Suite 103
                Christiansted, St. Croix, VI 00820

DATED: July 14, 2026     BY:  _/s/ Jennifer Jones_____
                Jennifer Jones
                9003 Havensight Mall, Ste. 319
                St. Thomas, V.I. 00802
                Telephone: (340) 779-7386
                jjones@vienvironmentallaw.com

                Counsel for the _Boynes_ Plaintiffs

DATED: July 14, 2026     BY: _/s/ John K. Dema_____
                John K. Dema (V.I. Bar. No. 357)
                LAW OFFICES OF JOHN K. DEMA, PC
                1236 Strand Street, Suite 103
                Christiansted, St. Croix, VI 00820
                Telephone: (340) 773-6142
                jdema@demalaw.com

DATED: July 14, 2026     BY: _/s/ Hugh Lambert_____
                Hugh Lambert
                J. Christopher Zainey, Esq.
                Brian Mersman, Esq.
                LAMBERT ZAINEY SMITH & SOSO, APLC
                701 Magazine Street

23

New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
hlambert@lambertainey.com
czainey@lambertzainey.com
bmersman@lambertzainey.com

Counsel for the *Moorhead* Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing with the Court's ECF system on July 14, 2026.

/s/  *Y. Michael Twersky*
Y. Michael Twersky

25